E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as )<br>Administrator of the Estate of BOBBY JO )<br>KLUM, ) | **CASE NO.:** |
| ) | |
| **Plaintiff,** ) | **ORIGINAL NOTICE** |
| ) | |
| **vs.** ) | |
| ) | |
| CITY OF DAVENPORT and MASON ) | |
| ROTH, ) | |
| ) | |
| **Defendants.** ) | |

**TO THE ABOVE-NAMED DEFENDANTS:**

You are notified that a Petition at Law has been filed in the office of the Clerk of this Court naming you as the Defendants in this action. A copy of the Petition at Law (and any documents filed with it) is attached to this notice. The attorneys for the Plaintiff are David A. O'Brien, whose address is Dave O'Brien Law, 1500 Center St. NE, Cedar Rapids, IA 52402; phone number is (319) 861-3001; facsimile number (319) 861-3007 and Nicholas C. Rowley and Barrie Duchesneau, Trial Lawyers for Justice, 421 W. Water Street, Decorah, IA 52101; phone number is (563)382-5071.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Scott County, at the county courthouse in Davenport, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition at Law.

If you require the assistance of auxiliary aids or services to participate in Court because of a disability, immediately call your District ADA Coordinator (319) 398-3920, ext. 1103. If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.

_____
CLERK OF COURT
Scott County Courthouse
Davenport, Iowa 52801

**IMPORTANT YOU ARE ADVISED TO SEEK LEGAL ADVICE
AT ONCE TO PROTECT YOUR INTEREST**

Exhibit A

E-FILED  2022 AUG 24 3:26 PM SCOTT - CLERK OF DISTRICT COURT

# Iowa Judicial Branch

| | |
|---|---|
| *Case No.* | **LACE135302** |
| *County* | **Scott** |

*Case Title*   KLUM NICOLE VS CITY OF DAVENPORT

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

---

*Scheduled Hearing:*

---

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(563) 328-4145** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*   **08/24/2022 03:26:43 PM**



*District Clerk of Court or/by Clerk's Designee of* Scott            *County*

**/s/ Shelley Korf**

Exhibit A

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

**IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY**

| | |
|---|---|
| **NICOLE KLUM, individually, and as Administrator of the Estate of BOBBY JO KLUM,** | **Case No.** |
|     **Plaintiff,** | |
| **v.** | **PETITION AT LAW AND JURY DEMAND** |
| **CITY OF DAVENPORT and MASON ROTH,** | |
|     **Defendants.** | |

    **COMES NOW** the Plaintiff, Nicole Klum, individually and as Administrator of the Estate of Bobby Jo Klum, to file this Petition and Jury Demand against Defendants City of Davenport and Mason Roth, as follows:

<u>**PARTIES**</u>

    1.    At all times material hereto, Nicole Klum (hereinafter referred to as "Klum") was a resident of Scott County, Iowa.  Klum is the wife of Bobby Jo Klum and the Personal Representative of the Estate of Bobby Jo Klum, deceased (hereinafter referred to as "Bobby") who was a citizen and resident of Scott County, Iowa.

    2.    The Defendant City of Davenport employed Defendant, Mason Roth, as a police officer, and failed to properly train him, equip him, limit his conduct in matters outside his area of expertise and/or maintain appropriate oversight of his activities.

    3.    Defendant, Mason Roth, (hereinafter referred to as "Roth") was at all times material hereto an employee of the City of Davenport and acting within the scope of his employment.

<u>**FACTUAL BACKGROUND**</u>

Exhibit B

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

4.      Bobby was 37 years old at the time he was killed by Defendant Roth on or about October 13, 2021.

5.      A police officer attempted to execute a warrant for Bobby's arrest on October 13, 2021.

6.      Bobby did not want to go to jail and left his home into an alley and ran away.

7.      Additional police arrived and set up a perimeter while they searched for and monitored Bobby who was holding a gun to his own head.

8.      The gun in Bobby's possession was a BB gun.

9.      Bobby was surrounded by police officers as he walked through the neighborhood.

10.      All of the officers present had adequate distance and cover from Bobby and were never in danger of being shot by Bobby.

11.      Bobby never pointed the gun at anyone other than himself.

12.      There were numerous other officers on the scene adequately containing the situation which involved Bobby holding a gun to his own head.

13.      Bobby was completely surrounded by police, inside the secure perimeter, as he walked through the neighborhood.

14.      Bobby never threatened anyone.

15.      Bobby he never approached another person.

16.      Bobby remained calm while completely surrounded by law enforcement officers.

17.      Bobby was walking slowly past several bystanders only pointing the gun at his own head just moments before Defendant Roth shot him.  See screen grab from video.

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT



18.     An attempt was made to subdue Bobby using a non-lethal weapon and two rubber bullets or bean bag rounds were fired at Bobby.

19.     The attempt to subdue Bobby using less than lethal means was confirmation by all other law enforcement officers present that Bobby was not engaging in any conduct that justified the use of deadly force.

20.     Then, within a short period of time after firing the non-lethal rounds and without any change in circumstances regarding the level of threat Bobby posed, Defendant Roth shot and killed Bobby.

21.     Bobby was walking away from the officers and all others present at the time Roth shot him thru the back and killed him.

Exhibit B

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

22.     None of the other numerous law enforcement officers in the area at the time assessed the threat Bobby posed as sufficient to respond with the use of deadly force.

23.     Defendant Roth was then asked if he used a less than lethal weapon and he responded that he fired a lethal shot.

24.     Bobby took no actions that justified the use of deadly force.

25.     Defendant Roth failed to use less lethal force as suggested by surrounding police officers.

26.     Defendant Roth failed to take into account that a perimeter had been set up to protect the surrounding public.

27.     Defendant Roth failed to follow protocol by using lethal force when only less than lethal force was justified in order to apprehend Bobby.

28.     Defendant Roth failed to follow protocol by shooting and killing Bobby even though Bobby engaged in no conduct that justified the use of deadly force.

29.     Defendant Roth did not act as an objectively reasonable officer would have acted under the circumstances given that he was the only one of the numerous armed law enforcement officers present who believed Bobby's conduct warranted the use of deadly force.

30.     The prohibition against using lethal force against an individual who posed no immediate threat of serious injury or death to anyone else was clearly established at the time Defendant Roth violated that rule in shooting and killing Bobby through the back while he was walking away from officers holding a BB gun to his own head.  See I.C.A. 804.8 and *Tennessee v. Garner*, 471 U.S. 1 (1985).

31.     Defendant Roth was aware that all law enforcement officers were attempting to subdue Bobby with less than lethal means.

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

32.     While the rubber bullets or ben bag rounds did not immediately subdue Bobby, there was absolutely no change to the circumstances that required lethal force before Defendant Roth fired the kill shot.

33.     Defendant Roth took it entirely upon himself, despite the clear intent of all other officers to use less than lethal force, to murder Bobby.

34.     Defendant Roth murdered a vulnerable emotionally distraught man holding a BB gun to his own head while all other reasonable officers in the area took measures to deescalate the situation.

35.     The State's own investigation indicates that the BB gun Bobby held was never pointed at anyone other than himself.

36.     Bobby's wife, Nicole, went through the horror of listening to the entire encounter while attempting to calm her mentally ill husband.

37.     Upon information and belief, Defendant Roth was trained regarding how to handle armed and mentally unstable individuals with the axiom that distance + cover = time and time is on the side of law enforcement officers in such situations.

38.     Upon information and belief all Officers present, including Defendant Roth, were trained to set up at a sufficient distance, and behind sufficient cover, so that they are not in danger while one officer calmly attempts to establish a rapport and negotiate with the distraught individual.

39.     Defendant Roth had adequate distance and adequate cover, but panicked and killed Bobby anyway.

Exhibit B

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

40.     Any suggestion that Defendant Roth feared a hostage situation as Bobby walked through the perimeter is completely unfounded.

41.     It should have been clear to Defendant Roth, as it was to every other law enforcement officer present, that lethal force was unnecessary, reactive, and would constitute criminal behavior.

42.     The Iowa Office of the State Medical Examiner deemed Bobby's death a homicide.

43.     The bullet from Defendant Roth's rifle entered Bobby's back and tore through his spinal cord, adrenal gland, liver, diaphragm and right lung before exiting through his chest and causing his entirely avoidable death.

44.     There can be no dispute what happened because it was all captured on numerous cruiser and body cameras, along with the recording from a number of bystanders.

45.     All the alleged actions of the Defendants were conducted under color of state law.

46.     Defendant City of Davenport is liable for the conduct of Defendant Roth under the doctrine of *Respondeat Superior*.

47.     In exonerating Defendant Roth from criminal charges for the wrongful death of Bobby, Scott County Attorney, Michael Walton, accurately noted that Bobby "never pointed the BB gun" at anyone, but completely misapplied applicable law by opining that the shooting was justified because of "how quickly the direction of the gun could change."  If that was the actual legal standard to be applied than anyone carrying a weapon could automatically be shot and killed at any time by law enforcement officers.

48.      Using the standard that anyone carrying a gun could be shot because the direction of the gun could change, allows Scott County law enforcement officers to shoot and kill anyone

Exhibit B

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

in carrying a gun, including the approximately one out of ten Iowans who exercise their constitutional right to own a gun and hold a permit to open or conceal carry a firearm.

49.     The standard applied for use of deadly force by the Scott County Attorney is also in direct violation of I.C.A. 704.2(2)(Justification for the use of deadly force "does not include [responding to] a threat to cause serious injury or death, by the production, display, or brandishing of a deadly weapon, as long as the actions of the person are limited to creating an expectation that the pe person may use deadly force to defend oneself, another, or as otherwise authorized by law.").

## COUNT I

## USE OF EXCESSIVE FORCE IN VIOLATION OF ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION

50.     Plaintiff incorporate paragraphs 1 through 49 above as though fully set forth herein.

51.     Defendant Roth's use of excessive force in causing Bobby's wrongful death was in violation of the Constitution of the State of Iowa, Article 1, Section 8.   Defendant Roth fired his weapon at Bobby in an unreasonable, unnecessary and reckless manner, resulting in Bobby's death.

52.     Defendant Roth violated the right of Bobby to be free from the use of excessive force in being placed under arrest, as guaranteed by Article I, Section Eight, of the Iowa Constitution.

53.     Defendant City of Davenport caused Bobby's death by failing to adequately train and supervise Defendant Roth in the use of deadly force.

54.     Defendants proximately caused damages including emotional pain and trauma,

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

past and future, to Plaintiff by the use of excessive force in effectuating the wrongful death of

Bobby in violation of rights guaranteed by Article I, Section Eight, of the Iowa Constitution.

55.     Defendants deprived Plaintiff of the rights guaranteed under Section I,

Article 8, of the Iowa Constitution by seizing Bobby such that no reasonable person in Bobby's

position would have believed they were free to leave without being taken into custody.

56.     Plaintiff has been damaged as a direct and proximate result of Defendants' acts

and omissions, as set out in this petition.

57.     Defendant Roth acted with reckless disregard for the health and safety of Bobby

and/or in a malicious manner subjecting him to punitive damages.

**WHEREFORE,** the Plaintiff prays for judgment against the Defendants, the City of

Davenport and Mason Roth, individually, in an amount which will fully and fairly compensate her

for her injuries and damages; for punitive damages against Defendant Roth; for attorneys' fees as

allowed by law; for interest and costs as allowed by law; and for such other and further relief as

may be just in the premises.

## COUNT II

## VIOLATION OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF ARTICLE I SECTION 9 OF THE IOWA CONSTITUTION

58.     Plaintiff incorporates paragraphs 1 through 57 above as though fully set forth

herein.

59.     Defendant Roth fired his service weapon at Bobby in an unreasonable,

unnecessary and reckless manner, resulting in Bobby's death.

60.     At the time Defendant Roth fired his service weapon he knew Bobby presented

no danger to the public.

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

61.     Defendant Roth made the decision to discharge his firearm at Bobby at a time when none of the numerous armed officers present believed Bobby posed an imminent threat to them or anyone else.

62.     Defendant Roth had ample opportunity for deliberation prior to shooting and killing Bobby.

63.     Defendant Roth made the decision to shoot and kill Bobby at a time when waiting, seeking additional cover, or even retreating, were clear and viable options, and without using other strategies and alternative weapons, other than lethal force, to neutralize Bobby.

64.     Defendant Roth's conduct in shooting and killing Bobby shocks the conscience.

65.     In firing his weapon at Bobby, Defendant Roth acted with the specific intent to cause harm without justification.

66.     Defendant Roth acted under the color of state law and within the scope of his employment with the Defendant City of Davenport Police Department when he violated the right of Plaintiff to substantive due process as guaranteed by the Article I, Section 9 of the Iowa Constitution.

67.     Plaintiff has been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this petition.

**WHEREFORE,** the Plaintiff prays for judgment against the Defendants, the City of Davenport and Mason Roth, individually, in an amount which will fully and fairly compensate her for her injuries and damages; for punitive damages against Defendant Roth; for attorneys' fees as allowed by law; for interest and costs as allowed by law; for and for such other and further relief as may be just in the premises.

## COUNT III

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

## WRONGFUL DEATH – NEGLIGENCE - IOWA COMMON LAW

68.     Plaintiff incorporates paragraphs 1 through 67 above as though fully set forth herein.

69.     Defendant Roth owed Plaintiff a duty to act reasonably in the use of deadly force and to conform to an objectively reasonable standard of conduct regarding when, where and under what circumstances the use of deadly force is warranted.

70.     Defendant Roth breached that duty by discharging his service weapon at Bobby when Bobby did not pose an imminent threat and the options of waiting, seeking additional cover, using non-lethal weapons, or retreating, as the other armed officers present chose to do were all readily available to him.

71.     Defendant City of Davenport, owed Plaintiff a duty to have in place reasonable policies and procedures regarding the use of deadly force, and/or to properly train, equip and supervise its officers, including Defendant Roth, in an objectively reasonable standard of conduct regarding when, where and under what circumstances the use of deadly force is warranted.

72.     Defendant City of Davenport breached that duty by not having in place reasonable policies and procedures regarding the use of deadly force, and/or by failing to properly train, equip and/or supervise Defendant Roth regarding the appropriate use of deadly force.

73.     The Defendants' breach of duty owed caused injuries and damages to the Plaintiff including the wrongful death of Bobby and the loss of consortium for Klum.

74.     Defendant Roth acted negligently and recklessly by using excessive force to shoot and kill Bobby even though Bobby posed no imminent threat to Roth or anyone else at the time.

75.     Defendant City of Davenport ratified the conduct of Defendant Roth after he took

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

the actions complained of in this complaint.

76.    The Defendants have no immunities for common law claims in this case pursuant to the Iowa Municipal Tort Claims Act, I.C.A. 670.4, because on information and belief the City of Davenport has purchased insurance coverage for claims including the subject matter lawsuit and pursuant to I.C.A. 670.7(2)("The procurement of [] insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4 to the extent stated in the policy…").

**WHEREFORE,** the Plaintiff prays for judgment against the Defendants, the City of Davenport and Mason Roth, individually, in an amount which will fully and fairly compensate her for her injuries and damages; for punitive damages against Defendant Roth; for interest and costs as allowed by law; for punitive damages as allowed by law; and for such other and further relief as may be just in the premises.

## COUNT IV

## LOSS OF CONSORTIUM – NICOLE KLUM

77.    Plaintiff incorporates paragraphs 1 through 76 above as though fully set forth herein.

78.    Plaintiff, Nicole Klum, was the wife of deceased, Bobby Jo Klum.

79.    Since Bobby's death, Plaintiff, Nicole Klum has suffered a loss of consortium, including but not limited to: a loss of aid, companionship, cooperation, and spousal affection of Bobby.

80.    As a result of said losses, Plaintiff, Nicole Klum, has been damaged.  The

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

Defendants are liable to Nicole Klum for her loss of consortium.

81.     Klum's losses are in addition to the losses sustained by the Estate of Bobby Jo Klum as the result of his death caused by the wrongful conduct of the Defendants.

**WHEREFORE**, Plaintiff Nicole Klum prays for judgment against the Defendants in an amount sufficient to fairly and adequately compensate her for losses and damages; for punitive damages against Defendant Roth; for interest and costs as allowed by law; and for such other and further relief as the Court deems appropriate.

## JURY DEMAND

The Plaintiff, Nicole Klum, individually, and as Administrator of the Estate of Bobby Jo Klum, respectfully requests a trial by jury on all legal claims raised by her Petition.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Telephone:  (319) 861-3001
Facsimile:   (319)861-3007
E-mail: dave@daveobrienlaw.com

By:     /s/ David A. O'Brien
        DAVID A. O'BRIEN, AT0005870

By:     /s/ Nicholas C. Rowley
        NICHOLAS C. ROWLEY AT0022407
        Trial Lawyers for Justice
        421. W. Water Street
        Decorah, IA 52101
        (563)382-5071

By:     /s/ Barrie Duchesneau
        BARRIE DUCHESNEAU AT0015198
        Trial Lawyers for Justice

E-FILED  2022 AUG 24 10:36 AM SCOTT - CLERK OF DISTRICT COURT

421 W. Water Street
Decorah, IA 52101
(563)382-5071

ORIGINAL FILED.

E-FILED  2022 AUG 29 12:22 PM SCOTT - CLERK OF DISTRICT COURT

# RETURN OF SERVICE
**Service Type: Substitute**

| | |
|---|---|
| Case Caption | NICOLE KLUM INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF BOBBY JO KLUM vs CITY OF DAVENPORT, MASON DAVID ROTH |
| Case # | LACE135302 |
| Received | 08/25/2022 |
| Hearing | |

STATE OF IOWA

ss.

Scott COUNTY

I certify that I served a copy of ORIGINAL NOTICE, PETITION to MASON DAVID ROTH by serving Brian Krup, City Administrator, at 416 HARRISON ST  DPD DAVENPORT IA 52801 on 08/29/2022 at 10:32 am.

Tim Lane, Sheriff, Scott County, Iowa

By

_____
SERGEANT ERIC ROLOFF 12

| Fees | |
|---|---|
| Copy Fee | $5.00 |
| Second Service | $20.00 |

Fees charged to/paid by Atty/Party:
DAVE O'BRIEN LAW
1500 CENTER STREET NE
CEDAR RAPIDS IA 52402

| | |
|---|---|
| **Total** | **$25.00** |

**(This is NOT an Invoice - an advance deposit may have been sent.)**

E-FILED  2022 AUG 29 12:22 PM SCOTT - CLERK OF DISTRICT COURT

# RETURN OF SERVICE
**Service Type: Substitute**

| | |
|---|---|
| Case Caption | NICOLE KLUM INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF BOBBY JO KLUM vs CITY OF DAVENPORT, MASON DAVID ROTH |
| Case # | LACE135302 |
| Received | 08/25/2022 |
| Hearing | |

STATE OF IOWA

          ss.

Scott COUNTY

I certify that I served a copy of ORIGINAL NOTICE, PETITION to CITY OF DAVENPORT by serving Brian Krup, City Administrator, at 226 WEST 4TH STREET  DAVENPORT IA on 08/29/2022 at 10:30 am.

Tim Lane, Sheriff, Scott County, Iowa

By

_____

SERGEANT ERIC ROLOFF 12

| Fees | |
|---|---|
| Copy Fee | $5.00 |
| 01-Zone 1 Mileage | $1.88 |
| Notice | $30.00 |

Fees charged to/paid by Atty/Party:
DAVE O'BRIEN LAW
1500 CENTER STREET NE
CEDAR RAPIDS IA 52402

**Total**                   **$36.88**

**(This is NOT an Invoice - an advance deposit may have been sent.)**

E-FILED  2022 SEP 19 3:48 PM SCOTT - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF DAVENPORT and MASON ROTH, <br><br> Defendants. | Case No.  LACE135302 <br><br><br> **ENTRY OF APPEARANCE** |

Alex C. Barnett of Lane & Waterman LLP hereby enters his Appearance on behalf of Defendant City of Davenport and Mason Roth.

Dated:  September 19, 2022                    LANE & WATERMAN LLP

*/s/Alex C. Barnett*
Jason J. O'Rourke AT0005963
Alex C. Barnett AT0012641
220 North Main Street, Suite 600
Davenport, IA 52801
Telephone: (563) 324-3246
Fax: (563) 324-1616
Email: jorourke@l-wlaw.com
Email: abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2022, I electronically filed the foregoing with the Scott County Clerk of Court using the Iowa Courts E-Filing system which will provide notification of such filing to all counsel of record.

By */s/Alex C. Barnett*

Exhibit E

E-FILED  2022 SEP 19 3:48 PM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | | |
|---|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, | ) ) ) ) | Case No.  LACE135302 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **ENTRY OF APPEARANCE** |
| CITY OF DAVENPORT and MASON ROTH, | ) ) ) | |
| Defendants. | ) ) | |

Jason J. O'Rourke of Lane & Waterman LLP hereby enters his Appearance on behalf of Defendants City of Davenport and Mason Roth.

Dated:  September 19, 2022

LANE & WATERMAN LLP

*/s/Jason J. O'Rourke*
Jason J. O'Rourke AT0005963
Alex C. Barnett AT0012641
220 North Main Street, Suite 600
Davenport, IA 52801
Telephone: (563) 324-3246
Fax: (563) 324-1616
Email: jorourke@l-wlaw.com
Email: abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2022, I electronically filed the foregoing with the Scott County Clerk of Court using the Iowa Courts E-Filing system which will provide notification of such filing to all counsel of record.

By */s/Jason J. O'Rourke*

Exhibit F

E-FILED  2022 SEP 23 9:06 AM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, | ) ) ) |
| | ) Case No.  LACE135302 |
| Plaintiff, | ) ) |
| vs. | ) **DEFENDANTS' MOTION TO DISMISS** ) |
| CITY OF DAVENPORT and MASON ROTH, | ) ) ) |
| Defendants. | ) ) |

Defendants City of Davenport and Mason Roth, submit the following Motion to Dismiss Plaintiff's Petition pursuant to Iowa Rule of Civil Procedure 1.421.

## I.        INTRODUCTION

This case arises out of a Davenport Police Officer's use of force on a repeat felon who fled into a residential area while armed with a handgun to avoid going back to jail.  Davenport Police Officers attempted to use less than lethal force (rubber bullets) on the felon, but that method did not stop him.  As the felon walked near a group of innocent bystanders with his handgun in hand, Officer Mason Roth used lethal force to neutralize the threat.  This lawsuit follows.  As discussed further below, Plaintiff's Petition should be dismissed because, even accepting as true all facts alleged in the Petition, the City of Davenport and Officer Roth are entitled to emergency response immunity under Iowa Code Sections 670.4(1)(k) and 670.12.  Alternatively, Plaintiff's claim based on Article I Section 9 of the Iowa Constitution (substantive due process) must be dismissed because it fails to state a claim upon which relief can be granted.

E-FILED  2022 SEP 23 9:06 AM SCOTT - CLERK OF DISTRICT COURT

## II.    FACTUAL BACKGROUND

Bobby Klum, a repeat felon who had been in and out of prison several times,[1] was scheduled to be on parole until 2024 for Failure to Comply with Sex Offender Registry Requirements Second or Subsequent and Habitual Offender.  (Oct. 31, 2019 Preliminary Parole Violation, Scott County Case 0781 AMCR405798).  In August 2021, Klum was charged with and arrested for three more felony for violations of the Iowa Sexual Offender Registry.  (Scott County Case 07821 FECR417597; Aug. 31, 2021 Preliminary Parole Violation Information, Scott County Case 0781 AMCR417857).  On August 31, it was thus requested that a parole violation warrant be issued (*Id.*), and this Court did so.  (Aug. 31, 2021 Order to Issue Arrest Warrant, Scott County Case 0781 AMCR417857).  Although the Parole Officer initially requested that Klum by released on his own recognizance because he agreed to cooperate, the Parole Officer changed that recommendation on October 11 because Klum had failed to respond to telephone calls or letters.  Specifically, the Parole Officer recommended that Klum be held without bond pending his parole revocation hearing.  (Oct. 11, 2021 Preliminary Parole Violation Information, Scott County Case 0781 AMCR417857).

On October 13, a Davenport Police Officer attempted to serve upon Klum the warrant for his arrest.  (Petition ¶ 5).  Klum, according to Plaintiff's Petition "did not want to go to jail and left his home into an alley and ran away" armed with a handgun.  (Petition ¶¶ 6, 7).  Additional officers responded to the call and began searching for Klum.  (Petition ¶ 7).  Klum was then found walking down the street with a handgun in hand and pointed at his head.  (Petition ¶ 7).

---

[1] Klum had multiple felony convictions in Scott County alone.  See Scott County Case 07821 FECR33379 (2011 conviction for sex offender registration violation 2nd or subsequent offense), 0781 FECR356902 (2014 convictions for burglary 3rd, theft 2nd, and conspiracy to commit felony), 07821 FECR377408 (2017 conviction for sex offender registration violation 2nd or subsequent offense).  See also, https://doc.iowa.gov/offender/view/6284710.  The Court may take judicial notice of these convictions.  *In re Marriage of Dowell*, 2014 WL 6977108 (Iowa Ct. App. 2014) (taking judicial notice of conviction of various crimes).

2

Exhibit G

E-FILED  2022 SEP 23 9:06 AM SCOTT - CLERK OF DISTRICT COURT

Officers attempted to subdue Klum with less than lethal rounds (rubber bullets) but were unsuccessful.  (Petition ¶¶ 18-20).  When Klum was close to "several bystanders," handgun still in hand, Officer Roth fired a lethal round.  (Petition ¶ 17).

<h3 align="center">III.   LAW & ARGUMENT</h3>

**A.    MOTION TO DISMISS STANDARDS**

Under Iowa Rule of Civil Procedure 1.421(1)(f), a defendant may move to dismiss a plaintiff's petition where, as here, it fails to state upon which any relief may be granted.  In ruling on that motion, a court may consider the contents of the petition and matters of which the court can take judicial notice.  *Meade v. Christie*, 974 N.W.2d 770, 775 (Iowa 2022).  Where, as here, the petition shows no right of recovery under the facts alleged, the court should dismiss it. *Id*.

**B.    IOWA CODE 670.4(1)(k) MANDATES DISMISSAL OF PLAINTIFF'S CLAIMS BECAUSE THEY ARISE OUT OF OFFICER ROTH'S ACTS IN CONNECTION WITH AN EMERGENCY RESPONSE.**

Iowa Code Chapter 670, the Iowa Municipal Tort Claims Act, governs tort claims against municipalities and their employees.  The Act defines "tort" to mean "every civil wrong which results in wrongful death or injury to person or injury to property or injury to personal or property rights and includes but is not restricted to actions based upon negligence; error or omission; nuisance; breach of duty, whether statutory or other duty or denial or impairment of any right under any constitutional provision, statute or rule of law."  Iowa Code Section 670.1(4).  Sections 670.4 and 670.12 provide various immunities for municipalities and employees.  The Iowa Supreme Court has recognized that the Iowa Legislature "intended a wide scope under the immunity provision."  *Williams v. City of Burlington*, Iowa 516 F. Supp. 3d 851, 874 (S.D. Iowa 2021) (citing *Cubit v. Mahaska Cty.*, 677 N.W.2d 777, 782 (Iowa 2004) (finding

3

E-FILED  2022 SEP 23 9:06 AM SCOTT - CLERK OF DISTRICT COURT

the "statute sweeps broadly") and *Kulish v. Ellsworth*, 566 N.W.2d 885, 890 (Iowa 1997) (noting "in connection with" is a broad term conveying a legislative intent to encompass a wide range of situations)).

Among the immunities provided by Section 670.4 is immunity from liability for any "claim based upon or arising out of an act or omission in connection with an emergency response…"  Iowa Code §§ 670.4(k), 670.12.  The Iowa Supreme Court has held that the phrase "in connection with is a broad term that conveys a legislative intent to cover a wide range of situations." *Adams v. City of Des Moines*, 629 N.W.2d 367, 370 (Iowa 2001) (internal citation omitted).  Thus, the immunity "is not limited to the emergency giving rise to the response, but to the response itself. In other words, it is the occurrence and continuation of an emergency response, rather than just an emergency, that extends…immunity from liability." *Id*.  The question of whether emergency response immunity applies in a given set of circumstances— including whether an emergency existed and whether the contested actions were taken in connection therewith—is one of law, not fact.  *Id.*  Courts have recognized that an officer's pursuit of a fleeing suspect constitutes an emergency response for purposes of section 670.4(1)(k).  *Sero v. City of Waterloo*, No. C08-2028, 2009 WL 2475066, at *17 (N.D. Iowa Aug. 11, 2009); *Williams v. City of Burlington, Iowa*, 516 F. Supp. 3d 851, 874-75 (S.D. Iowa 2021).

The court's decision in *Williams* is instructive.  In that case, Burlington police officers initiated a traffic stop on a car being driven by Marquis Jones.  Immediately after pulling over, Jones fled on foot.  *Williams*, 516 F. Supp. 3d at 858.  One of the officers chased after Jones and eventually tackled him.  *Id.*  Jones subsequently escaped the officer and fled again.  *Id.* at 858-59.

E-FILED  2022 SEP 23 9:06 AM SCOTT - CLERK OF DISTRICT COURT

The officers pursued Jones, and eventually shot and killed him.  *Id.* at 859-60.  Jones' estate

subsequently filed a variety of state and federal claims against the city and the officer.

The city and the officer moved for summary judgment on a variety of grounds, one of

which being emergency response immunity under Iowa Code Section 670.4(1)(k).  The city and

the officer argued they were entitled to summary judgment because the shooting occurred in

connection with an emergency response, *i.e.*, the pursuit of a fleeing suspect.  The court agreed,

citing *Sero* for the proposition that "the emergency response immunity applied to claims

involving police actions in connection with an unarmed individual fleeing officers on foot."  516

F. Supp. 3d at 875.  The court explained:

> The events giving rise to Plaintiffs' wrongful death claim is "based upon" an act—the use
> of deadly force against Jones by Officer Chiprez—committed in connection with an
> emergency response. Officer Chiprez was responding to an emergency when Jones fled
> from a traffic stop. Jones ran from police officers through a residential neighborhood
> while armed with a gun. He resisted verbal commands to stop and continued to flee after
> escaping a physical altercation with Officer Riffel. Officer Chiprez's use of deadly force
> "arose out of and was related to" that emergency.  This conclusion is consonant with the
> Iowa Supreme Court's guidance that courts should distinguish between an emergency
> and the emergency response: "the real issue ... is whether the [employee's] action was
> done 'in connection with an emergency response.'"

*Id.* (internal citations omitted).

Here, the facts pled in Plaintiff's Petition demonstrate the City and Officer Roth are

entitled to immunity as a matter of law under Iowa Code Section 670.4(1)(k).  Klum undeniably

fled from officers, with a handgun, through a residential neighborhood when an officer attempted

to serve a felony warrant.  The courts' decisions in *Williams* and *Sero* hold that pursuing a

fleeing suspect is an emergency response.  *See also Cubit v. Mahaska County,* 677 N.W.2d 777,

781-82 (Iowa 2004) (high speed chase of fleeing suspect is emergency response).  These cases

can leave no doubt that pursuit of Klum—an armed felon who ran in a residential neighborhood

to avoid going back to jail—was an emergency response.  Likewise, it is beyond dispute that

E-FILED  2022 SEP 23 9:06 AM SCOTT - CLERK OF DISTRICT COURT

Officer Roth's decision to use lethal force on Klum, who was armed with a handgun in the vicinity of innocent bystanders, arose out of the emergency response.  Accordingly, Section 670.4(1)(k), by its very terms, bars all of Plaintiff's claims, and Plaintiff's Petition must be dismissed.

## C.   ALTERNATIVELY, COUNT II OF PLAINTIFF'S PETITION SHOULD BE DISMISSED BECAUSE ARTICLE I SECTION 9 OF THE IOWA CONSTITUTION DOES NOT PROVIDE A DIRECT CAUSE OF ACTION IN A CASE ALLEGING EXCESSIVE FORCE.

Count II of Plaintiff's Petition alleges a violation of substantive due process in violation of Article I Section 9 of the Iowa Constitution.  Courts, including this Court, have recognized that Article I Section 9 does not provide a direct cause of action for damages in an excessive force case.  For instance, in *Williams*, the defendant police officers moved for summary judgment on plaintiff's Article I Section 9 claim, asserting that excessive force claims under a substantive due process theory are barred under *Graham v. Connor*, 490 U.S. 386, 396 (1989). The court in *Williams* recognized that in *Graham*, the Supreme Court held "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  516 F. Supp. 3d at 870 (quoting *Graham*, 490 U.S. at 395) (emphasis in original). The Court held in *Graham* that because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, and not the more generalized notion of "substantive due process," applies. *Graham*, 490 U.S. at 395.  Relying on *Graham*, the *Williams* court granted defendants summary judgment on the Iowa substantive due process claim, stating:

E-FILED 2022 SEP 23 9:06 AM SCOTT - CLERK OF DISTRICT COURT

The Court has already recognized the Iowa Supreme Court's interpretation of article I, section 8 generally track[s] with federal interpretations of the Fourth Amendment. The Court has also determined that the Iowa Supreme Court's interpretation of a seizure under the Iowa Constitution would not deviate from the federal standard with regard to an 'attempted seizure.' Accordingly, the Court sees no reason why Iowa courts would depart from federal interpretation to allow an unreasonable seizure to be pursued under article I, section 9, particularly when article I, section 8 is available.

516 F. Supp. 3d at 870 (internal citations and quotations removed).

More recently, in *Young v. City of Council Bluffs*, No. 1:20-CV-30-JAJ, 2021 WL 6144745, at *10 (S.D. Iowa Oct. 27, 2021), the plaintiff alleged violations of excessive force under both Article I Section 9 and Article 1 Section 8 of the Iowa Constitution. The *Young* court, following the holding in *Williams*, concluded the defendants "are entitled to summary judgment on this claim because Young's excessive force and unreasonable seizure claims are more properly brought under article I, § 8 of the Iowa Constitution" and the court found no reason why Iowa courts would depart from federal interpretation to allow an excessive force claim to be pursued under Article I Section 9, when Article I Section 8 is available. *Id.* This Court followed this rationale in *Thorington v. Scott County, Iowa*, LACE133201, holding that the plaintiff's claims of excessive force were more properly analyzed under Article I Section 8 of the Iowa Constitution and, therefore, entered summary judgment against plaintiff on the Article I Section 9 claim. *Thorington v. Scott County, Iowa*, LACE133201, June 16, 2022 Ruling on Defendants' Motion for Summary Judgment. This Court should follow the analysis set forth in *Graham, Williams, Young* and *Thorington* and dismiss Count III of Plaintiff's Petition.

## IV.    CONCLUSION

This case arises out of an emergency solely of Bobby Klum's own making. He decided to flee, armed with a handgun, in a residential neighborhood, to avoid going back to jail. His death, while unfortunate, arose out of Officer Roth's response to that emergency and to Klum's

Exhibit G

E-FILED 2022 SEP 23 9:06 AM SCOTT - CLERK OF DISTRICT COURT

decisions.  The Iowa Legislature has expressly provided immunity for municipalities and their

employees for acts arising out of or in connection with an emergency response such as this.

Accordingly, Plaintiff's Petition must be dismissed in its entirety.

LANE & WATERMAN LLP

*/s/Jason J. O'Rourke*
Jason J. O'Rourke AT0005963
Alex C. Barnett AT0012641
220 North Main Street, Suite 600
Davenport, IA 52801
Telephone: (563) 324-3246
Fax: (563) 324-1616
Email: jorourke@l-wlaw.com
Email: abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2022, I electronically filed the foregoing with the Scott County Clerk of Court using the Iowa Courts E-Filing system which will provide notification of such filing to all counsel of record.

By */s/Jason J. O'Rourke*

8

E-FILED  2022 SEP 27 11:26 AM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | | |
|---|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, | ) ) ) | Case No.: LACE135302 |
| | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **NOTICE OF APPEARANCE OF BARRIE DUCHESNEAU** |
| | ) | |
| CITY OF DAVENPORT and MASON ROTH, | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

COMES NOW Barrie Duchesneau, of the law firm Trial Lawyers for Justice, PC, and hereby enters her Appearance for Trial Lawyers for Justice, PC, for and on behalf of the Plaintiff in the above-referenced matter.

Respectfully submitted,

*/s/ Barrie Duchesneau*

_____

Barrie Duchesneau AT0015198
TRIAL LAWYERS FOR JUSTICE, P.C.
421 W. Water Street, Floor 3
Decorah, IA 52101
Phone: (563) 382-5071
Fax: (563) 204-4205
Email: barrie@tl4j.com
**ATTORNEY FOR PLAINTIFF**

CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2022, I electronically filed the foregoing with the Clerk of Court using EDMS which will send notification of such filing.

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR DUBUQUE COUNTY

| | | |
|---|---|---|
| **NICOLE KLUM, Individually and as** | ) | |
| **Administrator of the Estate of BOBBY** | ) | |
| **JO KLUM,** | ) | **CASE NO. LACE 135302** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **PLAINTIFF'S RESISTANCE TO** |
| **vs.** | ) | **DEFENDANTS' MOTION TO DISMISS** |
| | ) | |
| **CITY OF DAVENPORT and MASON** | ) | |
| **ROTH,** | ) | |
| | ) | |
| **Defendants.** | | |

Comes now Plaintiff to submit this Resistance to the Defendants' Motion to Dismiss, as follows:

## <u>TABLE OF CONTENTS</u>

Introduction...................................................................................................................2

Statement of Facts..........................................................................................................2

Argument .......................................................................................................................4

    I.       Motion to Dismiss Standard...............................................................4

    II.     Improper Factual Allegations in Defendants' Brief Should Be
          Ignored by the Court ....................................................................16

    III.    Under the Iowa Constitution Qualified Immunity is an Affirmative
          Defense that Must Be Pled and Proved............................................8

    IV.    The Due Process Provision of Article I, Section 9 of the Iowa
          Constitution May Be Applied Anywhere Governmental Conduct
          "Shocks the Conscience" ……………………………………………11

    V.      Defendants Waived Any Claims of Qualified Immunity by Purchasing
          Insurance Coverage for the Claims Asserted by the Petition .....................12

Conclusion………………………………………………………………………………..12

Exhibit I

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

## INTRODUCTION

The notion that the Defendants may prevail on a motion to dismiss based upon a claimed affirmative defense that has yet to be pled, much less proven, is nothing short of ridiculous. The Defendants' Motion to Dismiss is based upon a claim of qualified immunity. Def. Br. p. 3. Qualified immunity is an affirmative defense.  The Iowa Supreme Court held in *Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018), as follows:

> Because the question is one of immunity, the burden of proof should be on the defendant. See *Anderson v. State*, 692 N.W.2d 360, 364 (Iowa 2005) …. Accordingly, to be entitled to qualified immunity a defendant must plead and prove as an affirmative defense that she or he exercised all due care to comply with the law.

At 280.  The court really needs to read no further and should summarily deny the motion.

## STATEMENT OF FACTS

Bobby was 37 years old at the time he was killed by Defendant Roth on or about October 13, 2021. Pet. ¶ 4. A police officer attempted to execute a warrant for Bobby's arrest on October 13, 2021. Pet. ¶ 5.  Bobby did not want to go to jail and left his home into an alley and ran away. Pet. ¶ 6. Additional police arrived and set up a perimeter while they searched for and monitored Bobby who was holding a gun to his own head. Pet. ¶ 7. The gun in Bobby's possession was a BB gun. Pet. ¶ 8.

Bobby was surrounded by police officers as he walked through the neighborhood. Pet. ¶ 9. All of the officers present had adequate distance and cover from Bobby and were never in danger of being shot by Bobby. Pet. ¶ 10.  Bobby never pointed the gun at anyone other than himself. Pet. ¶ 11. Bobby was completely surrounded by police, inside the secure perimeter, as he walked through the neighborhood.  Pet. ¶ 13. Bobby never threatened anyone. Pet. ¶ 14. Bobby never approached another person. Pet. ¶ 15. Bobby remained calm while surrounded by law enforcement officers. Pet. ¶ 16. Bobby was walking slowly past several bystanders only

Exhibit I

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

pointing the gun at his own head just moments before Defendant Roth shot him.  See screen grab from video. Pet. ¶ 17.



An attempt was made to subdue Bobby using a non-lethal weapon and two rubber bullets or bean bag rounds were fired at Bobby.  Pet. ¶ 18. The attempt to subdue Bobby using less than lethal means was confirmation by all other law enforcement officers present that Bobby was not engaging in any conduct that justified the use of deadly force. Pet. ¶ 19. Then, within a short period of time after firing the non-lethal rounds and without any change in circumstances regarding the level of threat Bobby posed, Defendant Roth shot and killed Bobby. Pet. ¶ 20. Bobby was walking away from the officers and all others present at the time Roth shot him thru the back and killed him.  Pet. ¶ 21. None of the other numerous law enforcement officers in the area at the time assessed the threat Bobby posed as sufficient to respond with the use of deadly force.  Pet. ¶ 22.    Bobby took no actions that justified the use of deadly force. Pet. ¶ 24.

Exhibit I

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

Defendant Roth failed to use less lethal force as suggested by surrounding police officers. Pet. ¶ 25. Defendant Roth failed to take into account that a perimeter had been set up to protect the surrounding public. Pet. ¶ 26. Defendant Roth failed to follow protocol by using lethal force when only less than lethal force was justified in order to apprehend Bobby. Pet. ¶ 27. Defendant Roth failed to follow protocol by shooting and killing Bobby even though Bobby engaged in no conduct that justified the use of deadly force. Pet. ¶ 28. Defendant Roth did not act as an objectively reasonable officer would have acted under the circumstances given that he was the only one of the numerous armed law enforcement officers present who believed Bobby's conduct warranted the use of deadly force. Pet. ¶ 29.

The prohibition against using lethal force against an individual who posed no immediate threat of serious injury or death to anyone else was clearly established at the time Defendant Roth violated that rule in shooting and killing Bobby through the back while he was walking away from officers holding a BB gun to his own head.  See I.C.A. 804.8 and *Tennessee v. Garner*, 471 U.S. 1 (1985).   Pet. ¶ 30. Defendant Roth was aware that all law enforcement officers were attempting to subdue Bobby with less than lethal means. Pet. ¶ 31. Defendant Roth took it entirely upon himself, despite the clear intent of all other officers to use less than lethal force, to murder Bobby. Pet. ¶ 33. Defendant Roth murdered a vulnerable emotionally distraught man holding a BB gun to his own head while all other reasonable officers in the area took measures to deescalate the situation. Pet. ¶ 34.

The State's own investigation indicates that the BB gun Bobby held was never pointed at anyone other than himself.  Pet. ¶ 35. Defendant Roth was trained regarding how to handle armed and mentally unstable individuals with the axiom that distance + cover = time and time is on the side of law enforcement officers in such situations.  Pet. ¶37.  All Officers present,

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

including Defendant Roth, were trained to set up at a sufficient distance, and behind sufficient cover, so that they are not in danger while one officer calmly attempts to establish a rapport and negotiate with the distraught individual.  Pet. ¶ 38. Defendant Roth had adequate distance and adequate cover, but panicked and killed Bobby anyway. Pet. ¶ 39.

The Iowa Office of the State Medical Examiner deemed Bobby's death a homicide. Pet. ¶ 42. The bullet from Defendant Roth's rifle entered Bobby's back and tore through his spinal cord, adrenal gland, liver, diaphragm and right lung before exiting through his chest and causing his entirely avoidable death. Pet. ¶ 43.

## ARGUMENT

### I. Motion to Dismiss Standard

As the Iowa Supreme Court held in *Rees v. City of Shenandoah,* 682 N.W.2d 77, 79 (Iowa 2004), "[a]lmost every case will survive a motion to dismiss under notice pleading. The application does not have to allege ultimate facts supporting each element of the cause of action, but it must contain factual allegations that give the [defense] 'fair notice' of the claim asserted so the [defense] can adequately respond to the application."  The application meets the "fair notice" requirement "if it informs the [defense] of the [events] giving rise to the claim and of the claim's general nature." *Id.* The applicable standard of review for a motion to dismiss is to "view the applicant's allegations in the light most favorable to the [applicant] with doubts resolved in that party's favor." *Geisler v. City Council of Cedar Falls*, 769 N.W.2d 162, 165 (Iowa 2009) (quoting *Haupt v. Miller*, 514 N.W.2d 905, 911 (Iowa 1994)).   See also, *Belk v. State*, 905 N.W.2d 185, 188 (Iowa 2017).

In *Bowen v. Kaplan*, 237 N.W.2d 799, 801 (Iowa 1976), the Iowa Supreme Court noted that "[w]e explained the guidelines by which we determine whether a petition states a cause of action in *Murphy v. First Nat. Bank of Chicago*, 228 N.W.2d 372, 375 (Iowa 1975).  Under those guidelines

Exhibit I

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

a motion to dismiss is sustainable only where it appears to a certainty the pleader has failed to state a claim upon which any relief may be granted under any state of facts which could be shown in support of the claim asserted."

**II.      Improper Factual Allegations in Defendants' Brief Should Be Ignored by the Court**

The defense attempts to use improper allegations, not before the court, to frame Bobby Klum as "bad guy" to somehow justify his summary execution contrary to law.  These allegations are not subject to judicial notice and therefore, improperly raised by the motion.  Def. Brief, p. 2. While criminal felony convictions may be subject to judicial notice, the entire first factual paragraph of Defendants brief contains allegations from criminal case files that go way beyond the bounds of what may be judicially noticed. Def. Br. p. 2.  Those allegations should be ignored by the court because they are not subject to judicial notice and are completely irrelevant.

Judicial notice of adjudicative facts is covered by Iowa R. Evid. 5.201. An adjudicative fact is "[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties." *Rhoades v. State*, 848 N.W.2d 22, 31, 2014 Iowa Sup. LEXIS 71, *16-18, 2014 WL 2619406, citing *Black's Law Dictionary* 669 (9th ed. 2009). A court may take judicial notice of two kinds of adjudicative facts. First, the court may take judicial notice of a fact "generally known within the territorial jurisdiction of the trial court." Iowa R. Evid. 5.201(b). None of the Defendants' allegations regarding Bobby's alleged history can be identified as generally known within the territory of the court.  Second, the court may take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.*   The facts alleged by the Defendants outside the petition are no more than

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

allegations made by police, prosecutors and parole agents contained in case files that can and should be reasonably questioned.

Iowa Rule of Evidence 5.201 is nearly identical to the Federal Rule of Evidence 201. See Fed. R. Evid. 201. The advisory committee notes to the Federal Rule state that a "high degree of indisputability is the essential prerequisite" to taking judicial notice of an adjudicative facts. Fed. R. Evid. 201 advisory committee's note to subdivision (a). **Evidence must support adjudicative facts**. *Rhoades* at 31 (Emphasis added).  Criminal charges, as opposed to convictions, and the allegations of a parole officer are far from the "accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" required to be judicially noticed.

In addition to not being subject to judicial notice, the facts contained in Defendants' brief, other than those citing directly to the filed petition, are all irrelevant because Defendant Roth was unaware of any of those allegations at the time he killed Bobby Klum. The Iowa Supreme Court has yet to rule specifically on this issue in the context of excessive force claims under the Iowa Constitution, but Plaintiff anticipates that Iowa will follow the federal lead on this issue.  "The issue of reasonableness must be examined from the perspective of the facts known to the officer at the time of the incident." *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995); and *Nelson v. County of Wright*, 162 F.3d 986, 990, 1998 U.S. App. LEXIS 30988, *8-9.    In *Banks v. Hawkins*, 999 F.3d 521, 2021, U.S. App. LEXIS 15860, *4-5, the Eighth summarized the applicable standard, as follows:

> We evaluate what is objectively reasonable "from the perspective of a reasonable officer on the scene," which "turns on those facts known to the officer at the precise moment he effectuated the seizure." *Id.* ("A police officer's use of deadly force against a suspect is a 'seizure' under the Fourth Amendment.") …Though we generally consider the totality of the circumstances, it is well-established that 'absent probable cause' for an officer to believe the suspect poses 'an immediate threat of death or serious bodily injury' to others, 'use of deadly force is not objectively reasonable.'" *Id.* (quoting *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002)). Where the record does not conclusively establish the lawfulness

> of an officer's use of force, summary judgment on the basis of qualified immunity is inappropriate. *Nance v. Sammis*, 586 F.3d 604, 612-13 (8th Cir. 2009).

At 525.  Since summary judgment would not be appropriate on the facts presented in this case certainly a motion to dismiss should be denied.

### III.      Under the Iowa Constitution Qualified Immunity is an Affirmative Defense that Must Be Pled and Proved

There simply is no legitimate grounds for a motion to dismiss to be granted based upon an unpled and unproven affirmative defense. *Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018).  "What is clear from *Baldwin* is that constitutional torts are not strict liability offenses, qualified immunity in constitutional tort cases is an affirmative defense, and a constitutional tort defendant must plead and carry the burden of proof in order to be entitled to the affirmative defense. *Lennette v. State*, 2018 Iowa App. LEXIS 1040, *8, 924 N.W.2d 878, 2018 WL 6120049. In *Lennette* the Iowa Supreme Court reasoned that as "noted, qualified immunity is available as an affirmative defense to constitutional tort claims. It therefore cannot be submitted through a motion to dismiss unless the facts alleged in the petition give rise to the affirmative defense."  At *9-10.

While the petition in this case alludes to the existence of qualified immunity in the context of waiver when insurance coverage is purchased, ¶76, the petition does not allege a factual basis for any claim of qualified immunity. *Id.* Nowhere does the petition alleged that Defendant Roth acted with "all due care."  Just as in *Lennette*, the Defendants here "moved to dismiss the constitutional causes of action… based on defendants' own factual assertion in their motion to dismiss that they 'were reasonably acting pursuant to [emergency response immunity].' Lennette's petition at law did not include this factual allegation." *Id.*  Therefore, it is

Exhibit I

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

improper to raise the qualified immunity affirmative defense in a motion to dismiss. See *Lennette*.

The Defendants' reliance on *Williams v. City of Burlington*, 516 F. Supp. 3d 851, is misplaced. The quote cited in the Defendants' brief applies only to the common law wrongful death claim and note that the common law death claim was only dismissed in *Williams* because counsel in that case neglected to raise the insurance coverage waiver issue. Def. Br. p. 5. Before addressing the common law wrongful death claim, the *Williams* District Court already denied the defendants summary judgment motion on qualified immunity grounds regarding a constitutional excessive force claim.  *Williams* at 869 ("In light of its conclusion that genuine disputes of material fact preclude an analysis of the objective reasonableness of [defendant's] actions, the Court cannot find that [defendant] 'exercised all due care' to conform to the objective reasonableness standard under the Iowa Constitution. Defendants are not entitled to immunity under the Iowa Constitution on summary judgment. In sum, Defendants' Motion for Summary Judgment on Counts I and III is DENIED.").

The holding by the District Court in *Williams*, as affirmed by the Eighth Circuit, supports the denial of Defendants' Motion to Dismiss. *Williams* at 868-869 and *Williams v. City of Burlington*, 27 F.4th 1346, 1353, 2022 U.S. App. LEXIS 6051, *9 (8th Cir. 2022)("The order denying qualified immunity is affirmed."). The Eighth Circuit's reasoning in denying qualified immunity in *Williams* is instructive, as follows:

> [Defendant] alleges he mistakenly believed Jones was still armed when he shot and killed him, and reasonably believed he was in a "firing position." In support, he cites the Iowa Attorney General's investigation into this use of deadly force. But the estate presented competing evidence to the district court—autopsy results, body-camera footage, and inconsistent police reports of the incident—to support the claim that Chiprez saw Jones drop the gun, and that he could not reasonably have believed Jones was in a shooting position. That evidence is more than speculation or conjecture. In one frame of the body-camera footage, Chiprez appears to look directly at the items dropped by

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

Jones—including the gun—while running after him. The autopsy results and re-creations of the scene support that Jones was nearly prone on the ground when he was fatally shot, rather than in the upright "firing position" Chiprez describes. These facts and evidence presented by the estate would support a determination that a constitutional violation occurred.

*Williams v. City of Burlington*, 27 F.4th 1346, 1351-1352, 2022 U.S. App. LEXIS 6051, *5-7.

Further, while emergency responders are protected against common law negligence claims within the scope of the statutory immunity, that immunity cannot be interpreted to deprive a citizen protection afforded under the Iowa Constitution. See *Godfrey v. State*, 898 N.W.2d 844, 872 (Iowa 2017), and its progeny, including *Baldwin v. City of Estherville*, 915 N.W.2d 259, 280 (Iowa 2018)*, Venckus v. City of Iowa City*, 930 N.W.2d 792 (Iowa 2019) and *Wagner v. State*, 952 N.W.2d 843, 847 (Iowa 2020). Each of those cases clearly hold that the legislature cannot strip Iowans of their constitutional rights via legislation. The Iowa Supreme Court has recognized that the "problem with [the tort claim] acts, though, is that they contain a grab bag of immunities reflecting certain *legislative* priorities. Some of these are unsuitable for *constitutional* torts." (Emphasis in original).

The Iowa Supreme Court acknowledged the legislature's right to regulate claims against government officials, but cautioned that the legislature "must not deny an adequate remedy to the plaintiff for constitutional violations." *Wagner v. State,* 952 N.W.2d 843, 847 (Iowa 2020).  The only immunity that has been expressly applied to constitutional tort claims by the Iowa Supreme Court is "all due care" immunity. *Baldwin II,* 915 N.W.2d at 279.  No other immunity spelled out in Iowa Code §670.4 has been deemed applicable to constitutional torts. The Defendants' attempt to apply the emergency response immunity at the motion to dismiss stage of this case must fail.

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

The emergency response immunity was established by the legislature and is one of those immunities "reflecting certain *legislative* priorities" which are "unsuitable for *constitutional* torts." *Baldwin II,* 915 N.W.2d at 280. The Iowa Supreme Court has only extended statutory immunity to constitutional torts where it is not inconsistent with the *Baldwin* standard of due care. No statutory immunity can be used as a defense to a claimed violation of Iowa Constitutional rights. If the legislature does not like the interpretation of the Iowa Constitution, as determined by the Iowa Supreme Court, the only way to change that interpretation is through the constitutional amendment process set out in Article X of the Iowa Constitution.

IV.     **The Due Process Provision of Article I, Section 9 of the Iowa Constitution May Be Applied Anywhere Governmental Conduct "Shocks the Conscience"**

The Iowa Supreme Court has not yet considered whether an unreasonable seizure claim can be properly brought under article I, § 9 of the Iowa Constitution. See *Williams v. City of Burlington*, 516 F. Supp. 3d 851, 870 (S.D. Iowa 2021) and *Young v. City of Council Bluffs*, 569 F. Supp. 3d 885, 902, 2021 U.S. Dist. LEXIS 248586, *30-31. Plaintiff asserts the due process claim and excessive force claims are a "belt and suspenders" approach to this litigation. At the summary judgment stage, or the jury instruction stage, it may well be appropriate to sustain the unreasonable seizure claim as more directly applicable and dismiss the due process claim. Until that point, the Plaintiff has sufficiently pled a violation of the Iowa Constitution that "shocks the conscience" and therefore, survives Defendants' Motion to Dismiss.

The Iowa Supreme Court has recognized private rights of action for violations of the due process protection afforded by the Iowa Constitution resulting from the wrongful conduct of government agents. *Lennette v. State*, 975 N.W.2d 380, 393-394 (Iowa 2022)("When specific government conduct (as opposed to legislation) is alleged to have violated substantive due

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

process, we typically apply the 'shocks the conscience' standard to assess the claim."). The *Lennette* court noted that the "claim is reserved for the most egregious governmental abuses against liberty or property rights, abuses that shock the conscience or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity." *Id*. Certainly, a plausible factual basis has been established by the petition to conclude that one officer out of many present, alone deciding to shoot a mentally unstable and non-threatening individual through the back could "shock the conscience" of fact finders.

### V.       Defendants Waived Any Claims of Qualified Immunity by Purchasing Insurance Coverage for the Claims Asserted by the Petition

Plaintiff presumes that when initial disclosures are exchanged the Defendants will disclose insurance coverage for the claims made in this case.   I.R.C.P 1.500(a)(4)("The declarations page of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment…").  Insurance coverage will negate any immunity claims asserted by the Defendants under I.C.A. 670.4.  *See* Iowa Code § 670.7 ("The procurement of this insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4.").  *See also, Merchs. White Line Warehousing v. City of Des Moines*, 2003 Iowa App. LEXIS 188, *11-12, where the court held, that the "emergency response doctrine provided in section 670.4(11) does not provide municipalities with categorical immunity. Section 670.7 enables municipalities to purchase liability insurance to cover liability related to the torts specified in section 670.4. The consequences of purchasing such a policy of liability insurance are also addressed in section 670.7."

### CONCLUSION

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

For all the reasons set out above, the Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:     _/s/ David A. O'Brien_
        DAVID A. O'BRIEN, AT0005870

By:     _/s/ Nicholas C. Rowley_
        NICHOLAS C. ROWLEY AT0022407
        Trial Lawyers for Justice
        421. W. Water Street
        Decorah, IA 52101
        (563)382-5071

By:     _/s/ Barrie Duchesneau_
        BARRIE DUCHESNEAU AT0015198
        Trial Lawyers for Justice
        421 W. Water Street
        Decorah, IA 52101
        (563)382-5071

**COPY TO:**

Jason J. O'Rourke
Alex C. Barnett
Lane & Waterman LLP
220 North Main Street, Suite 600
Davenport, IA 52801

**ATTORNEYS FOR DEFENDANTS**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the _____ day of _____, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

E-FILED  2022 SEP 28 2:40 PM SCOTT - CLERK OF DISTRICT COURT

/s/ _____

14

Exhibit I

E-FILED          LACE135302 - 2022 OCT 05 08:58 AM          SCOTT
                        CLERK OF DISTRICT COURT                    Page 1 of 3

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE SUE KLUM<br>ESTATE OF BOBBY JO KLUM<br><br>Plaintiff/Petitioner,<br><br>vs.<br><br>MASON ROTH<br>CITY OF DAVENPORT<br><br>Defendant/Respondent. | Case No: 07821  LACE135302<br><br>**NOTICE OF CIVIL<br>TRIAL-SETTING CONFERENCE** |

To the parties or their attorneys of record:

In accordance with Iowa Rule of Civil Procedure 1.906, notice is hereby given that a **Trial Scheduling Conference is scheduled on 11/07/2022 at 2:30 PM  at the Scott County Courthouse 400 W 4th St, Davenport, IA 52801.**  *This date shall be no earlier than 35 days after and not later than 50 days after any Defendant/Respondent has answered or appeared unless set sooner by special order on application of one or more parties.*

Attorneys for all parties appearing in the case shall participate in this conference telephonically. Any party not represented by an attorney shall also participate telephonically**. The trial-setting conference will be held by telephone with the conference call to be initiated by counsel for the Plaintiff/Petitioner.** If the Plaintiff/Petitioner is not represented by counsel or after all parties have been connected to the call, Court Administration shall be contacted by calling (563) 326-8742.

At this trial-setting conference, every case will be set for trial within the time periods provided by Iowa Court Rules Chapter 23, Time Standards for Case Processing.

Prior to the trial-setting conference, the parties <u>must</u> file a Trial Scheduling and Discovery Plan, Iowa Court Rule 23.5-Form 2 (Form 3 for Expedited Civil Actions) unless exempt under Iowa Rule of Civil Procedure 1.507(1). ***FAMILY LAW CASES ARE EXEMPT FROM FILING THE TRIAL SCHEDULING AND DISCOVERY PLAN.***

The trial date that is agreed upon at this conference shall be a firm date. Continuances will not be granted, even if all parties agree, unless for a crucial cause that could not have been foreseen.

Dated this 5th day of October, 2022.

The Clerk of Court shall notify all counsel of record and parties not represented by counsel.

E-FILED          LACE135302 - 2022 OCT 05 08:58 AM          SCOTT
                       CLERK OF DISTRICT COURT                       Page 2 of 3

***NOTICE: When visiting the Scott County Courthouse, no weapons, cell phones, cameras, or any electronic devices that are capable of recording or taking pictures are permitted.***

If you need assistance to participate in court due to a disability, call the disability coordinator at (563) 328-4145 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

7NCTSC

Exhibit J

E-FILED                    LACE135302 - 2022 OCT 05 08:58 AM          SCOTT
                          CLERK OF DISTRICT COURT                     Page 3 of 3



State of Iowa Courts

**Case Number**       **Case Title**
LACE135302           KLUM NICOLE VS CITY OF DAVENPORT
**Type:**            ORDER FOR TRIAL SCHEDULING CONFERENCE

So Ordered

Henry W. Latham II, District Court Judge,
Seventh Judicial District of Iowa

Electronically signed on 2022-10-05 08:58:26

**Rule 23.5—Form 3:** *Trial Scheduling and Discovery Plan for Expedited Civil Action*

**Use of this form is mandatory** in Expedited Civil Actions under Iowa Rule of Civil Procedure 1.281.

- This form is to be filed within 7 days after the parties' discovery conference and before the trial-setting conference with the court.

- The parties should complete the entire form except as otherwise indicated.

| **In the Iowa District Court for** _____SCOTT_____ **County** | |
|---|---|
| Nicole Klum | No. LACE 135302 |
| **Plaintiff(s) / Petitioner(s)** *Full name: first, middle, last* | **Trial Scheduling and Discovery Plan for Expedited Civil Action** |
| vs. | Date Petition filed: 8 / 24 / 2022 <br> *mm* / *dd* / *yyyy* |
| City of Davenport and Mason Roth | Case type: ☒ Law  ☐ Equity  ☐ Other <br> ☐ PCR  ☐ Judicial Review <br> Trial type: ☒ Jury  ☐ Nonjury |
| **Defendant(s) / Respondent(s)** *Full name: first, middle, last* | Expected trial length: 5 days <br> The amount in controversy exceeds $10,000.  ☒ Yes  ☐ No |

**Appearances:**
**Plaintiff(s) / Petitioner(s)**

David A. O'Brien, Dave O'Brien Law, 1500 Center St. NE, Cedar Rapids, IA 52402
319-861-3001/dave@daveobrienlaw.com

**Defendant(s) / Respondent(s)**

Jason O'Rourke, Lane & Waterman, 220 N. Main St., Davenport, IA 52801
(563) 324-3246/jorourke@l-wlaw.com

1. **Trial** *Note to parties: Unless you have obtained a date from court administration, leave this date blank; the court will enter the date after the trial-setting conference.*

   Trial of this case is set for _____ , _____ , 20___ , at ____:____ ☐ a.m.
                                    *Month*      *Day*    *Year*      *Time*   ☐ p.m.

   in the district court in the courthouse of the above-named county.

2. **Pretrial conference** *Check one. Note to parties: If box A is checked, leave the date blank unless you have obtained a pretrial conference date from court administration. If you do not have a pretrial conference date and check box A, the court will enter the date, by order, after the trial-setting conference.*

   A. ☒ A pretrial conference will be held on _____ , _____ , 20___ , at ____:____ ☐ a.m.
                                              *Month*        *Day*   *Year*     *Time*  ☐ p.m.

   The conference may be held telephonically with prior approval of the court.

   B. ☐ A pretrial conference will be held upon request.

3. **New parties** *List the time period or date when no new parties may be added.*

   No new parties may be added later than 180 days before trial or by _____ .

---

If you need assistance to participate in court due to a disability, contact the disability coordinator at: (_____) _____ Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). Disability coordinators cannot provide legal advice. Disability coordinator contact information available at: http://www.iowacourts.gov/Administration/Directories/ADA_Access/

E-FILED  2022 OCT 06 11:11 AM SCOTT - CLERK OF DISTRICT COURT

Rule 23.5—Form 3: *Trial Scheduling and Discovery Plan for Expedited Civil Action*, continued

**4.   Pleadings** *List the time period or date pleadings will be closed.*

Pleadings will be closed 60 days before trial or by February 15, 2023 _____.

**5.   Initial disclosures.** *Check all that apply*

A. ☐  The parties have exchanged initial disclosures.

B. ☒  The parties will provide initial disclosures no later than November 30, 2022 _____.

C. ☐  The parties have stipulated that the following will not be included in initial disclosures:
   *List items not included*

D. ☐  The parties have stipulated not to provide any initial disclosures.

E. ☐  The following party objects to providing initial disclosures on the following grounds:
   *Identify the party and state all applicable grounds*

**6.   Discovery**

The parties have held a discovery conference as required by Iowa Rule of Civil Procedure 1.507.

All written discovery will be served no later than 90 days before trial. All depositions will be completed no later than 60 days before trial.  Or, all discovery will be completed by

June 16, 2023 _____.

*Check all that apply and attach any appropriate exhibits*

A. ☐  No discovery of electronically stored information is expected in this case.

B. ☒  The parties have conferred about discovery of electronically stored information and reached agreement as set out in Attachment ___.

C. ☐  The parties have conferred about discovery of electronically stored information and have been unable to reach an agreement. *Note to parties: If box C is checked, leave the following information blank unless the parties have obtained a hearing date, time, and location from court administration.*

   A hearing is set for _____/_____/_____, at: _____:_____ ☐ a.m.
                         *mm      dd       yyyy*      *Time*        ☐ p.m.

   ☐ at the _____ County Courthouse, courtroom _____, or
            *County*                                          *Courtroom number*

   ☐ at the following location: _____

D. ☐  The parties have agreed to a discovery plan, and their agreement is set forth in Attachment ___.

E. ☐  The parties have agreed to deviate from the limits on discovery otherwise applicable to this action, and their agreement is set forth in Attachment ___.

F. ☐  The parties have agreed to conduct discovery in phases, and their agreement is set forth in Attachment ___.

G. ☐  The parties have reached an agreement under Iowa Rule of Evidence 5.502 as set forth in Attachment ___.

E-FILED  2022 OCT 06 11:11 AM SCOTT - CLERK OF DISTRICT COURT

Rule 23.5—Form 3: *Trial Scheduling and Discovery Plan for Expedited Civil Action*, continued

H. ☐ The parties have reached an agreement under Iowa Rule of Civil Procedure 1.504 as set forth in Attachment _____.

I. ☐ The parties have conferred about a discovery plan and have been unable to reach agreement on the issues set forth in Attachment _____. *Note to parties: If box* I *is checked, leave the following information blank unless the parties have obtained a hearing date, time, and location from court administration.*

    ☐ a.m.

    ☐ p.m.

A hearing is set for _____/_____/_____, at: _____:_____
            *mm*   *dd*   *yyyy*     *Time*

    ☐ at the _____ County Courthouse, courtroom _____, or
             *County*                                   *Courtroom number*

    ☐ at the following location: _____.

## 7. Health care provider statement

Unless otherwise stipulated or ordered by the court, a copy of any completed Health Care Provider Statement in Lieu of Testimony, Iowa R. Civ. P. 1.281(4)(*g*)(3), must be served on all parties at least 150 days before trial. Any objection to the Health Care Provider Statement must be filed with the court, together with a copy of the statement, within 30 days after receipt of the statement.

## 8. Expert witnesses

A. A party who intends to call an expert witness, including rebuttal expert witnesses, must certify to the court and all other parties the expert's name, subject matter of expertise, and qualifications, within the following time period, unless the Iowa Code requires an earlier designation date (*see, e.g.,* Iowa Code section 668.11):

  (1) Plaintiff: 210 days before trial or by August 10, 2023 _____.

  (2) Defendant/Third Party Plaintiff: 150 days before trial or by October 10, 2023 _____.

  (3) Third Party Defendant/Others/Rebuttal: 90 days before trial or by November 10, 2023 ___.

B. Any disclosures required by Iowa Rule of Civil Procedure 1.500(2)(*b*) will be provided: *Check each that applies*

  (1) ☒ At the same time the expert is certified.

  (2) ☐ According to the following schedule:

    a. Plaintiff:_____ days before trial or by _____.

    b. Defendant/Third Party Plaintiff:_____ days before trial or by_____.

    c. Third Party Defendant/Others/Rebuttal:_____ days before trial or by

    _____.

C. This section does not apply to court-appointed experts.

*The deadlines listed in paragraphs* 4, 5, 6, 7, *and* 8 *may be amended, without further leave of court, by filing a Stipulated Amendment to this Plan listing the dates agreed upon and signed by all counsel and self-represented litigants. Such Stipulated Amendment may not override any requirement of the Iowa Court Rules and cannot serve as a basis for a continuance of the trial date or affect the date for pretrial submissions.*

E-FILED  2022 OCT 06 11:11 AM SCOTT - CLERK OF DISTRICT COURT

Rule 23.5—Form 3: *Trial Scheduling and Discovery Plan for Expedited Civil Action*, continued

9. **Pretrial submissions**

At least **14 or** <u>30</u> (the parties may enter another number but not less than **7**) **days before trial**, counsel for the parties and self-represented litigants must:

A. File a **witness and exhibit** list with the clerk of court, serve a copy on opposing counsel and self-represented litigants, and exchange exhibits. In electronic cases, witness and exhibit lists must be electronically filed, and the EDMS system will serve copies on all registered parties. Exhibits must be electronically submitted in lieu of exchanging them. These disclosures must include the following information about the evidence that the disclosing party may present at trial other than solely for impeachment:

  (1) The name and, if not previously provided, the address, telephone numbers, and electronic mail address of each witness, separately identifying those the party expects to present and those the party may call if the need arises.

  (2) The page and line designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition.

  (3) An identification of each document or other exhibit, including summaries of other evidence, separately identifying those items the party expects to offer and those it may offer if the need arises.  The following rules govern exhibits and exhibit lists:

    a. Plaintiff will use numbers and Defendant will use letters.  Pretrial exhibit lists will identify each exhibit by letter or number and description.  Exhibits must be marked before trial.

    b. Immediately before commencement of trial, the court must be provided with a bench copy, and the court reporter with a second copy, of the final exhibit list for use in recording the admission of evidence.

    c. In nonjury cases, immediately before commencement of trial, parties must provide the court with a bench copy of all exhibits identified on the exhibit lists.

    d. Within 7 days after the filing of an exhibit list, or within 4 days if the deadline for filing of the list is less than 10 days before trial, counsel and self-represented litigants must file with the clerk of court, and serve on each party, any identification, authentication, and foundation objections to the exhibits listed; otherwise such objections are deemed **waived** for trial purposes.  In electronic cases, any identification, authentication, and foundation objections must be electronically filed, and the EDMS system will serve copies on all registered parties.  Electronic filing of these objections must be done within 7 days of the filing of an exhibit list, or within 4 days if the deadline for filing of the list is less than 10 days before trial; otherwise, such objections are deemed **waived** for trial purposes.

B. File and serve **motions in limine**, with supporting legal authority.

C. File and serve a complete set of **joint jury instructions and verdict forms**, in a form to be presented to the jury or judge, including a statement of the case and any stock jury instruction numbers.  If there is any disagreement about an instruction or verdict form, each side must include its specific objections, supporting authority, and a proposed alternative instruction or verdict form for the court's approval.  The court must be provided the instructions in written form and electronically.

D. Deliver to the judge and serve a concise **trial brief** addressing factual, legal, and evidentiary issues, with citation to legal authorities.

E-FILED  2022 OCT 06 11:11 AM SCOTT - CLERK OF DISTRICT COURT

Rule 23.5—Form 3: *Trial Scheduling and Discovery Plan for Expedited Civil Action*, continued

### 10. Motions

All motions including motions for summary judgment and except motions in limine, must be filed with the clerk of court's office or electronically filed at https://www.iowacourts.state.ia.us/EFile/ at least 90 days before trial, with copies to the assigned judge.

### 11. Settlements

The parties are responsible for immediately notifying the court administrator of settlement.

### 12. Late settlement fees

Late settlement fees under Iowa Rule of Civil Procedure 1.909 are applicable.

### 13. Continuances

Continuances are discouraged and will only be granted for good cause. Motions to continue are governed by Iowa Rule of Civil Procedure 1.910. In the event the trial date is continued, all time deadlines in this Plan and any Stipulated Amendments remain in effect relative to the new trial date unless the court approves new deadlines.

### 14. Notice

Failure to comply with any of the provisions of this Plan or Stipulated Amendments to this Plan may result in the court imposing sanctions pursuant to Iowa Rule of Civil Procedure 1.602(5), including limitation and exclusion of evidence and witnesses and payment of costs or attorney fees. The court will resolve disputes regarding oral agreements on scheduling by reference to this Plan or any Stipulated Amendments to this Plan.

### 15. Other *List additional agreements of the parties for the Trial Scheduling and Discovery Plan*

*At least one signature to the Trial Scheduling and Discovery Plan is required. The signer certifies that all listed parties have joined in this Trial Scheduling and Discovery Plan, subject to any objections noted.*

I certify that all parties and attorneys to this action have agreed to this Trial Scheduling and Discovery Plan and have been served with a copy.

| | | | | |
|---|---|---|---|---|
| October | 6 | , 20 22 | /s | |
| *Signed:* *Month* | *Day* | *Year* | *Party's or attorney's signature* | |

David A. O'Brien

*Printed name*

Dave O'Brien Law

*Attorney's law firm, if applicable*

1500 Center Street NE

*Mailing address*

Cedar Rapids | IA | 52402

*City* | *State* | *ZIP code*

( 319 ) 861-3001

*Phone number*

dave@daveobrienlaw.com

*Email address*

*Additional email address, if available*

E-FILED  2022 OCT 06 11:11 AM SCOTT - CLERK OF DISTRICT COURT

Rule 23.5—Form 3: *Trial Scheduling and Discovery Plan for Expedited Civil Action*, continued

Original filed with the clerk of court or electronically filed at https://www.iowacourts.state.ia.us/EFile/.

Copies to: counsel of record, self-represented litigants, and court administration.

For questions regarding documents filed with the court in this case, please see
https://www.iowacourts.state.ia.us/ESAWebApp//SelectFrame or call the clerk of court.

E-FILED  2022 OCT 06 11:11 AM SCOTT - CLERK OF DISTRICT COURT

## Attachment A

Parties agree that electronic discovery will be disclosed as appropriate through the standard discovery process. If either party disputes the electronic discovery the parties will meet to resolve the issues.

Exhibit K

E-FILED  2022 OCT 06 11:11 AM SCOTT - CLERK OF DISTRICT COURT

## JUDGE'S REVISIONS

The deadline in Paragraph _____ is changed to _____.

The deadline in Paragraph _____ is changed to _____.

The deadline in Paragraph _____ is changed to _____.

**IT IS ORDERED** that this proposed Scheduling Order and Discovery Plan
_____ **is** _____ **is not** approved and adopted by this court.

**IT IS FURTHER ORDERED** that a scheduling and planning conference:

    ____     will not be scheduled at this time.

    ____     will be held in the chambers of Judge _____ at the U.S. Courthouse in _____, Iowa, on the _____ day of _____, at _____ o'clock, ____.m.

    ____     will be held by telephone conference, initiated by  the court, on the _____ day of _____, at _____ o'clock, ____.m.

**DATED** this _____ day of _____.


_____

MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT


## ORDER OF REFERENCE

    **IT IS HEREBY ORDERED** that this case is referred to a U.S. Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and the consent of the parties.

    **DATED** this _____ day of _____.


_____

UNITED STATES DISTRICT JUDG

Exhibit K

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | | |
|---|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, | ) ) ) ) | Case No.  LACE135302 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | **DEFENDANTS' REPLY TO PLAINTIFF'S RESISTANCE TO DEFENDANTS' MOTION TO DISMISS** |
| CITY OF DAVENPORT and MASON ROTH, | ) ) ) | |
| Defendants. | ) ) | |

Defendants City of Davenport and Mason Roth, through their attorneys Lane & Waterman LLP, submit the following Reply to Plaintiff's Resistance to Defendants' Motion to Dismiss.

## I.   INTRODUCTION

Plaintiff's Resistance to Defendants' Motion to Dismiss confuses the issues raised in Defendants' Motion.  Contrary to what Plaintiff asks this Court to believe, Defendants' Motion is not about qualified immunity.  Rather, Defendants' Motion concerns two separate issues: (1) whether, based solely on the facts alleged by Plaintiff in her Petition, Defendants are entitled to emergency response immunity under Iowa Code § 670.4(1)(k); and (2) whether Plaintiff can bring an Article I, Section 9 substantive due process claim that is based on the same facts as her Article I, Section 8 excessive force claim.  These are precisely the types of issues that the Court can and should address at the motion to dismiss stage.  Defendants are accepting as true the facts alleged in Plaintiff's Petition[1] (and those facts the Court may take judicial notice of) and asking the Court to determine whether they are entitled to emergency response immunity on all of Plaintiff's claims

---

[1] Defendants do not admit the facts alleged in Plaintiff's Petition as true.  If Defendants' Motion is denied in whole or in part, Defendants' Answer will deny many of the facts Plaintiff alleges. Defendants accept as true Plaintiff's allegations merely for purposes of this Motion.

1

Exhibit L

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

and to decide the purely legal issue of whether an Article I, Section 9 substantive due process claim can brought on the same facts as an Article I, Section 8 excessive force claim.  The facts alleged in Plaintiff's Petition demonstrate that Defendants are entitled to emergency response immunity because Officer Roth's actions were in response to an emergency Bobby Klum created by fleeing police custody armed with a gun, not surrendering when confronted with non-lethal force, and then approaching bystanders with his weapon.  Even if the Court does not find Defendants are entitled to dismissal of all of Plaintiff's claims, Plaintiff's substantive due process claim under Article I, Section 9 of the Iowa Constitution must be dismissed because the appropriate vehicle for alleged constitutional violations arising from excessive force is Article I, Section 8.

## II.      LAW & ARGUMENT

**A.     Defendants are entitled to emergency response immunity under Iowa Code § 670.4(1)(k) on Plaintiff's claims because they arise out of Officer Roth's actions in response to an emergency created by Bobby Klum.**

Plaintiff seeks to muddy the issues for the Court by confusing qualified immunity with emergency response immunity, misquoting Iowa Supreme Court precedent, and bizarrely claiming that immunity cannot be raised in a motion to dismiss.  Defendants assert emergency response immunity based only on the facts alleged in Plaintiff's Petition and those facts of which the Court can take judicial notice.  Based on those facts and the unmistakable language in Iowa Code chapter 670 (the Iowa Municipal Tort Claims Act or "IMTCA"), Defendants are entitled to emergency response immunity on all of Plaintiff's claims.

**i.      Defendant's Motion to Dismiss is proper because Defendants only ask the Court to consider the facts alleged in Plaintiff's Petition and those facts the Court can take judicial notice of.**

Plaintiff claims it is improper to raise qualified immunity in a motion to dismiss.  Not only is this untrue, but Defendants did not even raise qualified immunity in their Motion.  The immunity

2

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

Defendants raise in their Motion is statutory immunity, specifically the emergency response immunity found in Iowa Code § 670.4(1)(k).  A motion to dismiss is proper if it admits the "well-pleaded facts in the petition for the purpose of testing their legal sufficiency."  *Hawkeye Foodservice Distribution, Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 608–09 (Iowa 2012).  That is precisely the purpose of Defendants' Motion—to test the legal sufficiency of Plaintiff's claims when the emergency response immunity is applied.

Plaintiff herself cites to Iowa precedent contrary to her claim that "it is improper to raise the qualified immunity affirmative defense in a motion to dismiss."  (*See* Plaintiff's Resistance to Defendants' Motion for Summary Judgment, pg. 9).  In *Lennette v. State*, the Iowa Court of Appeals instructed that qualified immunity "cannot be submitted through a motion to dismiss unless the facts alleged in the petition give rise to the affirmative defense."  924 N.W.2d 878 (Table), 2018 WL 6120049, at *3 (Iowa Ct. App. Nov. 21, 2018).  While this Motion is about emergency response immunity, not qualified immunity, the same principle applies.  Plaintiff's Petition alleges the factual basis for Defendants' claim of emergency response immunity—Bobby Klum was fleeing police custody (Petition ¶¶ 5–6), he was armed with a gun (Petition ¶ 7), he did not surrender when confronted with non-lethal force (Petition ¶ 18), and he was walking past several bystanders when Officer Roth shot him (Petition ¶ 17).

Plaintiff also complains about Defendants providing the Court Bobby Klum's criminal background in their Motion.  Plaintiff agrees that Bobby Klum's felony convictions can be subject to judicial notice, but contends that Defendants provide too much background on Bobby Klum's convictions at the motion to dismiss stage.  *See* Iowa R. Evid. 5.201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  While the

3

Exhibit L

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

Court can take judicial notice of Bobby Klum's criminal convictions, even if the Court ignores the convictions and the backgrounds, Defendants are still entitled to emergency response immunity based on Plaintiff's own pleadings.  As further explained below, Defendants rely only on the facts alleged in the Petition in arguing the immunity.

> ### ii. The facts alleged in Plaintiff's Petition demonstrate that Officer Roth acted in response to an emergency Bobby Klum created by fleeing police custody armed with a gun, not surrendering when confronted with non-lethal force, and then approaching bystanders armed with his weapon.

Plaintiff's Resistance does not dispute that the emergency response immunity under Iowa Code § 670.4(1)(k) sweeps broadly, that Klum created an emergency, or that Officer Roth's actions occurred in connection with an emergency response—which importantly, is all that is required to meet the elements necessary to cloak Defendants with emergency response immunity.  Iowa case law is clear that actions in response to person fleeing police custody are emergency responses that are protected by the emergency response immunity.  *See Cubit v. Mahaska County,* 677 N.W.2d 777, 781–82 (Iowa 2004) (high speed chase of fleeing suspect is emergency response); *Sero v. City of Waterloo*, No. C08-2028, 2009 WL 2475066, at *17 (N.D. Iowa Aug. 11, 2009) (police officers chased and arrested a suspect who merely stared at them upon leaving a liquor store); *Williams v. City of Burlington, Iowa*, 516 F. Supp. 3d 851, 874-75 (S.D. Iowa 2021) (police officer's use of deadly force "arose out of and was related to" am emergency created by an individual fleeing from police through a residential neighborhood while armed with a gun).  These cases leave no doubt that Officer Roth acted in response to an emergency created by Bobby Klum.  Bobby Klum fled from police when a police officer attempted to execute a warrant for his arrest (Petition ¶¶ 5–6), he had a gun (Petition ¶ 7), he did not stop when confronted with non-lethal force (Petition ¶ 18), and he was walking nearby "several bystanders" with his weapon "just moments before" Officer Roth fired (Petition ¶ 17).

4

Exhibit L

Plaintiff also does not dispute that Iowa Code § 670.4(1)(k) immunizes police officers against common law negligence claims.  Rather, Plaintiff's Resistance rests on the faulty premise that emergency response immunity does not apply to her Iowa constitutional causes of action.  No Iowa court has ever held that the emergency response immunity (or any IMTCA substantive immunity) does not apply to Iowa constitutional claims, and Plaintiff distorts Iowa precedent by suggesting otherwise.  Moreover, Plaintiff's position contravenes the plain language of the IMTCA, which applies its substantive immunities to any and all tort claims brought "under any constitutional provision, statute or rule of law."  Iowa Code § 670.1.  When faced with the clear and unmistakable language in § 670.1 and the undeniable fact that the Iowa Supreme Court has never held the language in § 670.1 applying the IMTCA's immunities to constitutional claims is unconstitutional, Plaintiff is in effect asking the Court to find § 670.1 unconstitutional without providing the Court a basis to do so other than a misrepresentation that the Iowa Supreme Court has already found § 670.1 unconstitutional.

Plaintiff's argument relies on a half-quote from *Baldwin II* that provides in full "Iowa's tort claims acts already protect government officials in some instances when they exercise due care. . . . The problem with these acts, though is that they contain a grab bag of immunities reflecting certain *legislative* priorities.  Some of those are unsuitable for *constitutional* claims." *Baldwin v. City of Estherville*, 915 N.W.2d 259, 280 (Iowa 2018) ("*Baldwin II*") (emphasis in original).  Mere dicta that "some" of the IMTCA's immunities are unsuitable for constitutional claims is far from finding the IMTCA's immunities, including § 670.4(1)(k), are unconstitutional; especially when *Baldwin II* cites the due care immunity in § 670.4(1)(c) with approval.  *Baldwin II*, 915 N.W.2d at 266, 279–80. *Baldwin II* also expressly left open the issue of whether other provisions of the Iowa Tort Claims Act ("ITCA") and IMTCA—aside from § 699.14(1) and §

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

670.4(1)(c) (the provisions the Court analyzed)—would apply to constitutional tort claims against public officials and public agencies.  *Baldwin II*, 915 N.W.2d at 266, 281.

Further, in *Baldwin IV*, the Iowa Supreme Court found that the immunities in the IMTCA apply to *Godfrey* actions.  *Baldwin v. City of Estherville*, 929 N.W.2d 691, 696–98 (Iowa 2019) ("*Baldwin IV*").  Following *Baldwin IV*, in *Venckus v. City of Iowa City*, the Iowa Supreme Court explained, "[c]laims arising under the state constitutional are subject to the IMTCA."  930 N.W.2d 792, 808 (Iowa 2019).  Next, in *Wagner*, the Iowa Supreme Court found that the ITCA's procedures applied to constitutional claims, without defining what is and what is not in ITCA's procedures and without addressing the IMTCA statutory immunities at issue here.  *Wagner v. State*, 952 N.W.2d 843, 858–59 (Iowa 2020).

Simply put, the plain language of the IMTCA states that it applies to constitutional claims and there is no Iowa Supreme Court opinion holding otherwise.  Without supporting case law, Plaintiff's Resistance crumbles.  Defendants are entitled to emergency response immunity under § 670.4(1)(k) based on the facts alleged in Plaintiff's Petition on all of Plaintiff's claims—including her constitutional claims.

### iii.   Defendants' insurance coverage does not waive Defendants' ability to assert immunities contained in Iowa Code § 670.4.

Plaintiff seeks to avoid application of the emergency response immunity by pointing out that her Petition alleges on information and belief that the City of Davenport has purchased insurance coverage for claims including the subject matter of this lawsuit.  Plaintiff then tells the Court a half-truth that insurance coverage will negate any immunity claim asserted by Defendants under Iowa Code § 670.4 (which includes the emergency response immunity).  What Iowa Code § 670.7(2) actually provides in relevant part is

6

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

> The procurement of this insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4 *to the extent stated in the policy* but shall have no further effect on the liability of the municipality beyond the scope of this chapter, but if a municipality adopts a self-insurance program or joins and pays funds into a local government risk pool the action does not constitute a waiver of the defense of governmental immunity as to the exceptions listed in section 670.4.

(emphasis added).   The Iowa Supreme Court has explained that § 670.7(2) means that if a municipal defendant's insurance policy covers a claim that is subject to an immunity listed in § 670.4, then the immunity is waived.  *City of West Branch v. Miller*, 546 N.W.2d 598, 602–03 (Iowa 1996).  Thus, the key for waiver of § 670.4(1)(k)'s emergency response immunity is that the insurance policy must cover the claim subject to the emergency response immunity.  If an insurance policy does not cover the municipality for the claim subject to § 670.4(1)(k)'s emergency response immunity, then the policy does not waive § 670.4(1)(k) immunity.  *See Van Orsdall v. City of Des Moines*, 711 N.W.2d 732 (Table), 2006 WL 126436, at *3 (Iowa Ct. App. Jan. 19, 2006) ("The insurance policy obtained by Flynn insures the City for any tortious action that is not subject to an immunity defense under section 670.4, while preserving to the City its right to rely on the statutorily created categories of immunity under section 670.4.  Thus, by its own terms the insurance policy did not waive the City's section 670.4 immunities.").

   As mentioned above, Plaintiff's Petition references the City of Davenport's insurance policy (the "Policy").  Defendants attach the Policy hereto, which the Court is allowed to consider in ruling on Defendants' Motion to Dismiss.  *Martin v. Espinoza*, 978 N.W.2d 94 (Table), 2022 WL 1100219, at *1 (Iowa Ct. App. Apr. 13, 2022) ("when a petition references a document, the document can be considered in ruling on a motion to dismiss even when the document is not attached to the petition.") (citing *Karon v. Elliott Aviation*, 937 N.W.2d 334, 347–48 (Iowa 2020)).  The Policy provides coverage for certain law enforcement activities.  (Pg. 37 of Insurance Policy).

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

The Policy adopts a self-insurance program for law enforcement activities up to $500,000, which does not waive immunities in § 670.4 according to § 670.7(2).  Importantly, the Policy specifically does not insure against "knowing and intentional deprivation of any rights" protected by the Iowa Constitution.  (Pg. 39 of Insurance Policy).

Because at the motion to dismiss stage we accept as true the allegations in the Petition, the Policy's stated exclusion that it does not insure against "knowing and intentional deprivation of any rights" protected by the Iowa Constitution applies.  Plaintiff claims Officer Roth acted knowingly and intentionally in firing his weapon at Bobby Klum (Petition ¶¶ 33, 61) and in doing so Officer Roth deprived Bobby Klum of his constitutional rights (Petition ¶¶ 51, 66).  Thus, the Policy does not insure against the claims alleged in the Petition.  Because the Policy does not insure against Plaintiff's claims alleged in the Petition and pursuant to § 670.7(2), the Policy does not waive Defendants' immunities in § 670.4, including the emergency response immunity.

**B.    Plaintiff cannot bring a substantive due process claim under Article I, Section 9 of the Iowa Constitution that is based on the same facts as her excessive force claim under Article I, Section 8 of the Iowa Constitution.**

Plaintiff is correct that the Iowa Supreme Court has not yet considered whether a substantive due process claim may be brought under Article I, Section 9 of the Iowa Constitution when a plaintiff brings an identical excessive force claim under Article I, Section 8 as well. However, Plaintiff overlooks that every court that has considered the issue thus far, including this Court, has found that an Article I, Section 9 claim cannot be brought in this scenario.  *Williams v. City of Burlington*, 516 F. Supp. 3d 851, 874–75 (S.D. Iowa 2021) (finding the plaintiff could not bring a substantive due process claim under Article I, Section 9 of the Iowa Constitution when plaintiff also brough an excessive force claim under Article I, Section 8 based on identical facts); *Young v. City of Council Bluffs*, No. 1:20-CV-30-JAJ, 2021 WL 6144745, at *10 (S.D. Iowa Oct.

8

27, 2021) (same); *Thorington v. Scott County*, No. LACE133201 (Iowa Dist. Ct. Scott County June 16, 2022) (the plaintiff's "claims of excessive force are more properly analyzed under Fourth Amendment and Article I §8 metrics than under the amorphous standard of 'shocks the conscience.' The claims are based upon the same event. If a jury concluded Hill's conduct 'shocked the conscience,' it would be because Hill used excessive force. Any damages awarded would be duplicative. [The plaintiff] has an adequate remedy under Article I §8.").

Plaintiff seeks to avoid the case law weighing against her favor by claiming this is an issue that should be decided at the summary judgment stage or jury instruction stage. However, Plaintiff fails to explain why the Court cannot decide this purely legal issue now and must wait until later in the case. Whether Plaintiff may bring her Article I, Section 9 claim is a purely legal issue that only requires consideration of Plaintiff's Petition and case law to decide. Plaintiff's Article I, Section 8 and Article I, Section 9 claims are based on the same set of facts, namely, Officer Roth's decision to use lethal force against Bobby Klum. Thus, Plaintiff's Article I, Section 9 claim fails as a matter of law because it is duplicative of her Article I, Section 8 claim, which provides the proper framework for consideration of Plaintiff's excessive force claim.

## III.    CONCLUSION

Defendants respectfully request that the Court find Defendants are entitled to emergency response immunity on all of Plaintiff's claims. Even if the Court finds that Defendants are not entitled to emergency response immunity on all of Plaintiff's claims at this stage of the litigation, Plaintiff's substantive due process claim under Article I, Section 9 of the Iowa Constitution must be dismissed because the claim cannot be brought with Plaintiff's Article I, Section 8 excessive force claim based on identical facts.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

Dated:  October 10, 2022            LANE & WATERMAN LLP

By: */s/ Jason J. O'Rourke*_____
Jason J. O'Rourke, AT0005963
Alex C. Barnett, AT0012641
220 North Main Street, Suite 600
Davenport, IA 52801
Telephone: (563) 324-3246
Fax: (563) 324-1616
Email: jorourke@l-wlaw.com
Email: abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2022, I electronically filed the foregoing with the Scott County Clerk of Court using the Iowa Courts E-Filing system which will provide notification of such filing to all counsel of record.

By */s/ Jason J. O'Rourke*_____

10

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

# THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

Administration Office:
555 College Road East, Princeton NJ 08543-5241
800.305.4975

Statutory Office:
2711 Centerville Road, Suite 400, Wilmington, DE 19805
(a stock insurance company)

## COMMON POLICY DECLARATIONS

This policy is issued, pursuant to Iowa Code chapter 515I, by a nonadmitted company an eligible surplus lines insurer in Iowa and as such is not covered by the Iowa Insurance Guaranty Association.

**POLICY NUMBER:**  64-A3-EX-0000060-00                        Date Issued:    7/15/2021

**THIS POLICY MAY INCLUDE CLAIMS-MADE COVERAGE PART(S).  PLEASE READ THE ENTIRE POLICY CAREFULLY**

Item 1. Named Insured and Mailing Address:

City of Davenport
226 W. 4th Street
Davenport, IA 52801

Program Administrator Name and Address:

PSI Program Managers
A division of Risk Placement Services, Inc.
2850 Golf Road
Rolling Meadows, IL 60008-4050

Licensed Surplus Lines Producer:
Joel Cavaness – License #939923

Item 2. Policy Period:   From:   7/1/2021   To:   7/1/2022      At 12:01 A.M. Standard Time at your mailing address shown above.

Item 3. Retroactive Date: See **DECLARATIONS, PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE, COVERAGE SECTION V ERRORS AND OMISSIONS** and **COVERAGE SECTION VII EMPLOYEE BENEFITS LIABILITY**

Item 4. Third Party Claims Administrator:    Self Administration

Item 5. Business Description:    Municipality                    Form of Business:    Government

Item 6. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**This policy consists of the following coverage parts for which a premium is indicated.
Where no premium is shown, there is no coverage.  This premium may be subject to adjustment.**

| PROTECTED SELF INSURANCE PACKAGE POLICY COVERAGE PARTS | | Premium |
|---|---|---|
| **COVERAGE SECTION PART I PROPERTY** | $ | ■■■■■ |
| **COVERAGE SECTION PART II GENERAL LIABILITY** | $ | Included |
| **COVERAGE SECTION PART III LAW ENFORCEMENT ACTIVITIES** | $ | Included |
| **COVERAGE SECTION PART IV AUTOMOBILE LIABILITY** | $ | Included |
| **COVERAGE SECTION PART V ERRORS AND OMISSIONS** | $ | Included |
| **COVERAGE SECTION PART VI WORKERS' COMPENSATION & EMPLOYERS' LIABILITY FOR A QUALIFIED SELF INSURER** | $ | Not Covered |
| **COVERAGE SECTION PART VII EMPLOYEE BENEFITS LIABILITY** | $ | Included |
| **COVERAGE SECTION PART VIII CRIME** | $ | Not Covered |
| **Terrorism Premium (TRIPRA):** | $ | REJECTED |
| *Premium is minimum and deposit*                    Total Policy Premium: | $ | ■■■■■ |

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

| Authorization: | In Witness Whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the Company. |
|---|---|

**The Princeton Excess and Surplus Lines Insurance Company**
Hereinafter Referred to as The Company

_____     _____
**Secretary**                                                                  **President**


Date: _____     _____
                                                        Authorized Representative


Date: _____     _____
                                                        Licensed Producer Signature, if required by law


**THIS COMMON POLICY DECLARATIONS AND OTHER APPLICABLE DECLARATION(S), TOGETHER WITH THE GENERAL POLICY CONDITIONS, GENERAL POLICY DEFINITIONS, GENERAL POLICY EXCLUSIONS, COVERAGE FORM(S), AND OTHER FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.**

Princeton Excess & Surplus Lines Insurance is not responsible for the determination of or the collection of or the remittance of statutorily required Excess and Surplus Lines Taxes or Excess and Surplus Lines Stamping Fees nor are such statutorily required taxes and fees included in our quoted premium.

## Schedule of Forms and Endorsements

Effective date of this Schedule: __7/1/2021__   Issue date: __7/15/2021__   Attached to and forming part of
Policy Number:   __64-A3-EX-0000060-00__

Issued to: __City of Davenport__

The following is a schedule of Forms and Endorsements issued with the policy at inception:

| Form Number: | Edition Date: | Form Name: |
|---|---|---|
| AO 2502 | 01-19 | Common Declarations Page |
| AE 2502 | 01-19 | Declarations Page |
| AE 0003 | 12-14 | PSI Package Policy Form |
| AE 2206 | 02-13 | Statutory Requirement Endorsement |
| SLSOP | 02-13 | Service of Process Endorsement |
| AE 2118 | 04-14 | Terrorist Activity Exclusion – State Exception |
| AE 2209 | 01-20 | Violation of Economic or Trade Sanctions |
| AE 2210 | 08-20 | General Liability Communicable Disease Exclusion |
| AE 2401 | 01-19 | Exclusion – Access or Distribution of Confidential or Personal Information and Data Related Liability |
| AE 1200 | 01-21 | Endorsement 1 - Automobile Physical Damage Only |
| AE 1200 | 01-21 | Endorsement 2 - Replacement Cost – Emergency Vehicles |
| AE 1200 | 01-21 | Endorsement 3 – Excess Liquor Liability Coverage |

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY**

**ALL LINES AGGREGATE INSURANCE**

**Date Issued:** 6/28/2021

| | |
|---|---|
| **INSURED** | **City of Davenport** |

| | | | |
|---|---|---|---|
| **Policy No.** | 64-A3-EX-0000060-00 | **Effective:** | 7/1/2021 |
| | | | (12:01 A.M.) |

## DECLARATIONS

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered. Titles are used within this policy for convenience only and shall not control or affect the meaning or construction of any provision of this policy.

Throughout this policy the words *you* and *your* refer to the **NAMED INSURED** shown in the **COMMON POLICY DECLARATIONS**. The words *we*, *us*, and *our* refer to the Company providing this insurance. Words and phrases that appear in **bold** have special meaning. Refer to **DEFINITIONS**.

We have no duty to pay for direct physical loss or damage or to indemnify any insured for sums paid to which this insurance does not apply.

## PART I A.  SPECIFIC INSURANCE

1. This policy may contain various **MAINTENANCE DEDUCTIBLES** as listed in the **SCHEDULE OF SELF INSURED RETENTIONS**. The **INSURED** is responsible for payment of each applicable **MAINTENANCE DEDUCTIBLE**. The **MAINTENANCE DEDUCTIBLE** is paid for each loss prior to the application of the applicable **SELF INSURED RETENTION**, and does not reduce the applicable **SELF INSURED RETENTION**. Maintenance deductibles do not apply to the erosion of the **INSURED'S LOSS FUND**.

2. This policy contains various **SELF INSURED RETENTIONS** as listed in the **SCHEDULE OF SELF INSURED RETENTIONS**. The **INSURED** is responsible for payment of each applicable **SELF INSURED RETENTION** except as otherwise stated in **PART I B. MULTIPLE LINES LOSS PROTECTION** and **PART II EXCESS LOSS FUND PROTECTION**.

3. This policy contains various **LIMITS OF INSURANCE** which are inclusive of, and not in excess of, the **SELF INSURED RETENTIONS** as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

4. This policy contains various Annual Aggregate **LIMITS OF INSURANCE** as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**. Our liability ends when the applicable Annual Aggregate **LIMIT OF INSURANCE** has been exhausted by payments to the **INSURED**.

5. This policy may contain various sublimits as listed in **PART I A. SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** which are less than the applicable **LIMIT OF INSURANCE.** Sublimits are part of, not in addition to the **LIMIT OF INSURANCE** shown for the applicable **COVERAGE SECTION**.

6. This policy provides coverage in accordance with all of the terms of each **COVERAGE SECTION** attached to and forming part of this policy. For **SECTION V ERRORS AND OMISSIONS** and **SECTION VII EMPLOYEE BENEFITS LIABILITY**, coverage is provided on a Claims Made basis. Claims Made coverage applies only to claims made against the **INSURED** during the **PERIOD OF INSURANCE** or Extended Reporting Periods, if applicable.  **Please read carefully**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## PART I A.  SCHEDULE OF SPECIFIC LIMITS OF INSURANCE

**COVERAGE SECTION I PROPERTY**:  Applies only to vehicles classified as Fire Trucks

**LIMIT OF INSURANCE** for each **OCCURRENCE**:

All coverages under **SECTION I PROPERTY** combined:

Subject to the following sublimits and aggregates:

| | | |
|---|---|---|
| **FLOOD AND SURFACE WATER:** | $1,075,000 | $1,075,000   Annual Aggregate |
| **EARTHQUAKE:** | $1,075,000 | $1,075,000   Annual Aggregate |
| **AUTOMOBILE PHYSICAL DAMAGE:** | $1,075,000 | |
| **GARAGEKEEPERS LEGAL LIABILITY:** | $Not Covered | |
| **EXTRA EXPENSE:** | $Not Covered | |
| **BUSINESS INCOME:** | $Not Covered | |
| **TUITION AND FEES:** | $Not Covered | |
| **RENTAL AND FEES:** | $Not Covered | |

(Rental Value & Tuition and Fees sublimits are part of and not in addition to the Business Income limit stated above)

| | | |
|---|---|---|
| **PERSONAL PROPERTY IN TRANSIT:** | $Not Covered | |
| **DEBRIS REMOVAL:** | $Not Covered | |
| **ASBESTOS AND LEAD CLEANUP AND REMOVAL:** | $Not Covered | $ Not Covered   Annual Aggregate |
| **ARCHITECTS' AND ENGINEERS' FEES:** | $Not Covered | |
| **ORDINANCE OR LAW:** | $Not Covered | |
| **UNINTENTIONAL ERRORS AND OMISSIONS:** | $Not Covered | |
| **AUTOMATIC ACQUISITION:** | $1,075,000 | |

**COVERAGE SECTION II GENERAL LIABILITY**:

**LIMIT OF INSURANCE** for each **OCCURRENCE**:

All coverages under **SECTION II GENERAL LIABILITY** combined:

$ 10,000,000   Any one **OCCURRENCE**

$ 10,000,000   Annual Aggregate

Subject to the following sublimit:

**PREMISES MEDICAL PAYMENTS:**   $ Not Covered   Any one person

$ Not Covered   Any one **OCCURRENCE**

**COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES**:

**LIMIT OF INSURANCE** for each **OCCURRENCE**:

All coverages under **SECTION III LAW ENFORCEMENT ACTIVITIES** combined:

$ 10,000,000   Any one **OCCURRENCE**

$ 10,000,000   Annual Aggregate

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**PART I A.  SCHEDULE OF SPECIFIC LIMITS OF INSURANCE (continued)**

**COVERAGE SECTION IV AUTOMOBILE LIABILITY**:

    **LIMIT OF INSURANCE** for each **OCCURRENCE**:

All coverages under **SECTION IV AUTOMOBILE LIABILITY** combined:

                        $ 10,000,000      Any one **OCCURRENCE**

Subject to the following sublimit:

**AUTOMOBILE MEDICAL PAYMENTS:**      $ Not Covered   Any one person

                        $ Not Covered   Any one **OCCURRENCE**


**COVERAGE SECTION V ERRORS AND OMISSIONS**:

    **LIMIT OF INSURANCE** for each **CLAIM**:

All coverages under **SECTION V ERRORS AND OMISSIONS** combined:

                        $ 10,000,000   Any one CLAIM

                        $ 10,000,000   Annual Aggregate

**Retroactive Date:** 7/1/2021

Subject to the following sublimits and aggregates:

**EMPLOYMENT PRACTICES LIABILITY:**    $ 10,000,000   Any one **CLAIM**

                        $ 10,000,000   Annual Aggregate

**Retroactive Date:** 7/1/2021

**SEXUAL HARASSMENT:**          $ 10,000,000   Any one **CLAIM**

                        $ 10,000,000   Annual Aggregate

**Retroactive Date:** 7/1/2021

**SEXUAL ABUSE:**               $ 10,000,000   Any one **CLAIM**

                        $ 10,000,000   Annual Aggregate

**Retroactive Date:** 7/1/2021


**COVERAGE SECTION VI WORKERS' COMPENSATION & EMPLOYER'S LIABILITY FOR A QUALIFIED SELF-INSURER**:

    **LIMIT OF INSURANCE** for each accident or disease:

All coverages under **SECTION VI WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY FOR A QUALIFIED SELF-INSURER** combined:

                        $ Not Covered


**COVERAGE SECTION VII EMPLOYEE BENEFITS LIABILITY**:

    **LIMIT OF INSURANCE** for each **CLAIM**:

All coverages under **SECTION VII EMPLOYEE BENEFITS LIABILITY** combined:

                        $ 10,000,000   Any one **CLAIM**

                        $ 10,000,000   Annual Aggregate

**Retroactive Date:** 7/1/2021

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**COVERAGE SECTION VIII CRIME:**

    **LIMIT OF INSURANCE** for each **OCCURRENCE**:

**MONEY AND SECURITIES**:        $ <u>Not Covered</u>

**FORGERY OR ALTERATION**:        $ <u>Not Covered</u>

**EMPLOYEE DISHONESTY**:        $ <u>Not Covered</u>

**SCHEDULE OF SELF INSURED RETENTIONS**

This policy has the following **SELF INSURED RETENTIONS** which apply to a covered loss for each **OCCURRENCE**, accident or **CLAIM** under:

**(1)**    **SPECIFIC INSURANCE** coverage provided under **PART I**;

**(2)**    **EXCESS LOSS FUND PROTECTION** provided under **PART II**.

**MAINTENANCE DEDUCTIBLES** are payable by the **INSURED** and only apply when an amount is filled in below. **MAINTENANCE DEDUCTIBLES** do not apply to the erosion of the **INSURED'S LOSS FUND**.

| COVERAGE SECTION | SELF-INSURED RETENTION | MAINTENANCE DEDUCTIBLE |
|---|---|---|
| **I**   **PROPERTY** unless listed below: | $ 75,000 | $Not Applicable |
|     **FLOOD AND SURFACE WATER**: | $ 75,000 | $Not Applicable |
|     **EARTHQUAKE** (greater of): | $ 75,000 | $Not Applicable |
|     | OR | |
|     % of Total Insured Values Subject to Loss | Not Applicable % | $Not Applicable |
|     **WINDSTORM** (greater of): | $Not Applicable | $Not Applicable |
|     | OR | |
|     % of Total Insured Values Subject to Loss | Not Applicable % | $Not Applicable |
|     **AUTOMOBILE PHYSICAL DAMAGE**: | $ 75,000 | $Not Applicable |

For **COVERAGE SECTION I PROPERTY**, if more than one peril covered hereunder is involved in an **OCCURRENCE**, then the highest **SELF INSURED RETENTION** with respect to **COVERAGE SECTION I PROPERTY** shall apply.

| | | |
|---|---|---|
| **II**   **GENERAL LIABILITY**: | $ 500,000 | |
| **III**   **LAW ENFORCEMENT ACTIVITIES**: | $ 500,000 | |
| **IV**   **AUTOMOBILE LIABILITY**: | $ 500,000 | |
| **V**   **ERRORS AND OMISSIONS**: | $ 500,000 | |
|     **EMPLOYMENT PRACTICES LIABILITY**: | $ 500,000 | |
|     **SEXUAL HARASSMENT**: | $ 500,000 | |
|     **SEXUAL ABUSE**: | $ 500,000 | |
| **VI**   **WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY FOR A QUALIFIED SELF-INSURER**: | $ Not Applicable | |
| **VII**   **EMPLOYEE BENEFITS LIABILITY**: | $ 500,000 | |

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**VIII  CRIME**

| | | |
|---|---|---|
| **MONEY AND SECURITIES**: | $ <u>Not Applicable</u> | $<u>                    NA</u> |
| **FORGERY OR ALTERATION**: | $ <u>Not Applicable</u> | $<u>                    NA</u> |
| **EMPLOYEE DISHONESTY**: | $ <u>Not Applicable</u> | $<u>                    NA</u> |

## PART I B.  MULTIPLE LINES LOSS PROTECTION

Subject to the policy limitations, terms and conditions, the following applies in the event of a covered loss involving more than one **COVERAGE SECTION** under **PART I A.**:

1.  We will indemnify the **INSURED** for all of those sums of **SELF INSURED RETENTIONS** described in the **SCHEDULE OF SELF INSURED RETENTIONS** for which the **INSURED** is responsible for all of the **COVERAGE SECTIONS** involved in a covered loss, less the amount of the **INSURED'S SELF INSURED RETENTION** for **PART I B. MULTIPLE LINES LOSS PROTECTION** described in Paragraph **3.** below.

2.  The maximum **LIMIT OF INSURANCE** we will pay in excess of the **INSURED'S SELF INSURED RETENTION** for **PART I B. MULTIPLE LINES LOSS PROTECTION** will be: $1,000,000.

3.  The amount of the **INSURED'S SELF INSURED RETENTION** for **PART I B. MULTIPLE LINES LOSS PROTECTION** that the **INSURED** is responsible for will be calculated by us as follows:

    a.  For each applicable **COVERAGE SECTION** involved in the covered loss (including all applicable coverage options under such **COVERAGE SECTION**), identify (i) the applicable **SELF INSURED RETENTION**, and (ii) payments for the covered loss made by the **INSURED**;

    b.  From the amounts identified in **a.** above, for each **COVERAGE SECTION** identify the amount that is the lesser of the applicable **SELF INSURED RETENTION** or the payments for the covered loss made by the **INSURED**;

    c.  Add together all amounts identified in **b.** above;

    d.  The **INSURED'S SELF INSURED RETENTION** for **PART I B. MULTIPLE LINES LOSS PROTECTION** will be the lesser of:

        i.   The total sum identified in **c.** above; or

        ii.  The largest **SELF INSURED RETENTION** from all of the **COVERAGE SECTIONS** involved in the covered loss, identified in **a.** above.

## PART II EXCESS LOSS FUND PROTECTION

**INSURED'S LOSS FUND**:                                 $<u>   Not Covered   </u> Annual Aggregate

**INSURED'S LOSS FUND** is fully earned at inception of this policy.

**EXCESS LOSS FUND PROTECTION LIMIT**:       $<u>   Not Covered   </u> Annual Aggregate

1.  This policy contains various **SELF INSURED RETENTIONS** as listed in the **SCHEDULE OF SELF INSURED RETENTIONS** of this policy. The **INSURED** is responsible for the payment of applicable **SELF INSURED RETENTIONS** in accordance with the terms and conditions of this policy.

2.  The **INSURED'S LOSS FUND** is the Annual Aggregate amount stated above to be paid by the **INSURED** for covered losses incurred during the **PERIOD OF INSURANCE** to satisfy the **INSURED'S SELF INSURED RETENTION** obligation, before our obligation to indemnify the **INSURED** for **SELF INSURED RETENTIONS** begins.

    If the **PERIOD OF INSURANCE** consists of multiple terms, this provision shall apply separately to each term in accordance with the amounts specified in this policy.

3.  If there is an applicable **MAINTENANCE DEDUCTIBLE** underlying the **SELF INSURED RETENTION**, this **MAINTENANCE DEDUCTIBLE** is not considered part of the **SELF INSURED RETENTION**, and does not apply to the erosion of the **INSURED'S LOSS FUND**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**4.** Each payment made by the **INSURED** within such applicable **SELF INSURED RETENTION** shall reduce the outstanding **INSURED'S LOSS FUND** by the amount of such payment until such **INSURED'S LOSS FUND** is exhausted. Upon exhaustion of the **INSURED'S LOSS FUND** stated above, our obligation to indemnify the **INSURED** begins under the **EXCESS LOSS FUND PROTECTION** for covered losses incurred during the **PERIOD OF INSURANCE**.

## PART II EXCESS LOSS FUND PROTECTION (continued)

**5.** The amount of **EXCESS LOSS FUND PROTECTION** payment(s) made by  us to the **INSURED**:

    **a.** Shall not be for more than the applicable **SELF INSURED RETENTION**;

    **b.** Shall be excess of any **MAINTENANCE DEDUCTIBLES**; and

    **c.** Shall not be greater than the **EXCESS LOSS FUND PROTECTION LIMIT**, as stated above.

**6.** Each **EXCESS LOSS FUND PROTECTION** payment made reduces our **EXCESS LOSS FUND PROTECTION LIMIT** by the amount of such payment.

**7.** Our liability under the **EXCESS LOSS FUND PROTECTION** ends when the **EXCESS LOSS FUND PROTECTION LIMIT** has been exhausted by payments to the **INSURED**.

**8.** Upon exhaustion of the **EXCESS LOSS FUND PROTECTION LIMIT**, the **INSURED** is once again responsible for the applicable **SELF INSURED RETENTION**.

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

# TABLE OF CONTENTS

1.  Introduction ...................................................................................................................2

2.  General Policy Definitions ..............................................................................................2

3.  General Policy Conditions...............................................................................................7

4.  General Policy Exclusions .............................................................................................13

5.  Coverage Section I Property..........................................................................................20

6.  Coverage Section II General Liability ............................................................................34

7.  Coverage Section III Law Enforcement Activities .........................................................37

8.  Coverage Section IV Auto Liability................................................................................40

9.  Coverage Section V Errors and Omissions ...................................................................42

10. Coverage Section VI Workers' Compensation and Employers' Liability for a Qualified Self-Insurer ....48

11. Coverage Section VII Employee Benefits Liability.........................................................53

12. Coverage Section VIII Crime .........................................................................................56

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## INTRODUCTION

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered. Exclusion titles are used within this policy for convenience only and shall not control or affect the meaning or construction of any provision of this policy.

Throughout this policy the words *you* and *your* refer to the **NAMED INSURED** shown in the Declarations. The words *we*, *us*, and *our* refer to the Company providing this insurance. The word **INSURED** means any person or organization qualifying as such under the terms of this policy. Words and phrases that appear bolded and in capitals have special meaning. Refer to **GENERAL POLICY DEFINITIONS** or **DEFINITIONS** under each coverage.

We have no duty to pay for direct physical loss or damage or to indemnify any **INSURED** for sums paid to which this insurance does not apply.

## GENERAL POLICY DEFINITIONS

The following definitions apply to all **COVERAGE SECTIONS** of this policy, except as otherwise indicated.

1. **ADMINISTRATION** means:

   (a) Providing information, other than legal advice, to employees including their dependents and beneficiaries with respect to **EMPLOYEE BENEFIT PROGRAMS**;

   (b) Interpreting **EMPLOYEE BENEFIT PROGRAMS**;

   (c) Handling of records in connection with **EMPLOYEE BENEFIT PROGRAMS**; and

   (d) Effecting enrollment, termination, or cancellation of employees' participation under **EMPLOYEE BENEFIT PROGRAMS**;

   provided all such acts are authorized by the **NAMED INSURED**.

2. **AUTOMOBILE** means a land motor vehicle, trailer or semi-trailer intended or designed for travel on public roads; or any other land vehicle that is subject to compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   **AUTOMOBILE** does not include **MOBILE EQUIPMENT**. However, self propelled vehicles with the following types of permanently attached equipment are considered an **AUTOMOBILE**:

   Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning.

3. **BODILY INJURY** means physical injury to any person, and any mental anguish or shock, sickness, disease, disability or death associated with or arising from such physical injury, sickness, disease or disability.

4. **CLAIM** means:

   (a) A written demand for damages or a notice advising an **INSURED** of an intent to sue;

   (b) A notice of a charge or violation from any government agency;

   (c) An arbitration notice; or

   (d) A civil proceeding commenced by the service of a summons, complaint or similar pleading received by an **INSURED** alleging a **WRONGFUL ACT**.

   **CLAIM** shall not include any criminal action.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

5. **DESIGNATED INSURED** means the **NAMED INSURED**, an executive officer or director; or other persons in a supervisory capacity; risk management position; or the department or person the **NAMED INSURED** has delegated the responsibility of giving or receiving notice of an **OCCURRENCE** or **CLAIM**.

6. **EARTHQUAKE** means seismic geologic activity, including, but not limited to, volcanic eruptions, subterranean fire, landslide, subsidence, earth sinking and earth rising or shifting or any such convulsion of nature, which causes movement in the earth's surface including loss or damage from any other cause or event that contributes concurrently or in any sequence to the loss, except direct loss of or damage to **PROPERTY OF THE INSURED** caused by ensuing fire and/or explosion. If more than one **EARTHQUAKE** shock occurs within any period of one hundred and sixty-eight (168) hours during the **PERIOD OF INSURANCE**, such **EARTHQUAKE** shock is deemed to be a single **EARTHQUAKE OCCURRENCE**.

7. **ELECTRONIC DATA** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. **EMPLOYEE BENEFIT PROGRAMS** means group life insurance, group accident or health insurance, pension plans, profit sharing plans, employee savings and investment plans, 401K or deferred compensation plans, retirement plans, employee stock subscription plans, travel, holiday or vacation plans, workers' compensation, unemployment insurance, social security, disability benefits insurance, expense reimbursement plan, employee welfare benefit plans, welfare plans, leave of absence programs, including military, maternity, family, civil leave, tuition assistance plans, transportation and health club subsidies, and any other similar **EMPLOYEE BENEFIT PROGRAMS** provided for the **NAMED INSUREDS** employees.

9. **EMPLOYEE BENEFITS WRONGFUL ACT** means the failure to execute required actions, or mistaken actions committed in the **ADMINISTRATION** of the **INSURED'S EMPLOYEE BENEFIT PROGRAMS**.

All **CLAIMS** based on or arising out of the same **EMPLOYEE BENEFITS WRONGFUL ACT** or a series of related **EMPLOYEE BENEFITS WRONGFUL ACTS** by one or more **INSUREDS** shall be deemed one **EMPLOYEE BENEFITS WRONGFUL ACT**. Only one policy, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **EMPLOYEE BENEFITS WRONGFUL ACT**.

10. **EMPLOYMENT PRACTICE VIOLATION** means any of the following actual or alleged acts which are employment related:

(a) Wrongful reassignment, dismissal, discharge, termination or constructive termination of employment;

(b) Harassment of any type;

(c) Discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(d) Retaliation;

(e) Misrepresentation to an employee or applicant for employment;

(f) Libel, slander, humiliation, defamation or invasion of privacy;

(g) Wrongful failure to employ or promote;

(h) Wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(i) Wrongful discipline, coercion or criticism;

(j) Failure to grant tenure or practice privileges;

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

(k)  Failure to provide or enforce adequate or consistent organizational policies or procedures;

(l)  Violation of an individual's civil rights.

**11. FIRST NAMED INSURED** means the person or organization first named in Item 1. of the **COMMON POLICY DECLARATIONS**. The **FIRST NAMED INSURED** is primarily responsible for the payment of all premiums. In addition, the **FIRST NAMED INSURED** will act on behalf of all other **INSUREDS** for the giving and receiving of notice of cancellation or non-renewal and the receiving of any return premiums that become payable under this policy.

**12. FLOOD AND SURFACE WATER** means:

(a)  Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(b)  Mudslide or mudflow;

(c)  Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(d)  Water under the ground surface pressing on, or flowing or seeping through:

    (1)  Foundations, walls, floors or paved surfaces;

    (2)  Basements, whether paved or not; or

    (3)  Doors, windows or other openings; or

(e)  Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (a), (c) or (d), or material carried or otherwise moved by mudslide or mudflow.

**13. FUNGAL PATHOGENS** means any fungus or mycota or any byproduct or type of infestation produced by such fungus or mycota, including but not limited to, mold, mildew, mycotoxins, spores or any biogenic aerosols.

**14. INSURED** means not only the **NAMED INSURED** as stated on the **COMMON POLICY DECLARATIONS**, but also includes any past, present or future officials, members of boards or commissions, trustees, directors, officers, partners, volunteers, or employees of the **NAMED INSURED** while acting within the scope of their duties as such; and any person, organization, trustee or estate, to be known as additional **INSUREDS**, to whom the **NAMED INSURED** is obligated by virtue of a written contract or agreement to provide insurance such as is offered by this policy. The coverage provided such additional **INSUREDS** does not apply to liability arising out of the sole negligence of such additional **INSUREDS**.

**15. LAW ENFORCEMENT ACTIVITIES** means the activities of any **INSURED** while acting as a law enforcement official, officer, officer, reserve officer, officer of a jail, auxiliary officer, employee, official representing a law enforcement agency or volunteer of a law enforcement agency or department of the **NAMED INSURED**. **LAW ENFORCEMENT ACTIVITIES** do not include **EMPLOYMENT PRACTICE VIOLATIONS**.

**16. MEDICAL PAYMENTS** means reasonable expenses for first aid, necessary medical, surgical, X-ray and dental services, including prosthetic devices, ambulance, hospital, professional nursing and funeral services as are necessary as a result of an **OCCURRENCE** not otherwise excluded on account of **BODILY INJURY** provided the **MEDICAL PAYMENTS** are incurred within 1 (one) year of the **OCCURRENCE**.

**17. MOBILE EQUIPMENT** means any of the following types of land vehicles, including any attached machinery or equipment:

(a)  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

(b)  Vehicles maintained for use solely on or next to premises the **INSURED** owns or rents;

(c)  Vehicles that travel on crawler treads;

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

    (d)  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1)  Power cranes, shovels, loaders, diggers or drills; or

        (2)  Road construction or resurfacing equipment such a graders, scrapers or rollers;

    (e)  Vehicles not described in (a), (b), (c), or (d) above, that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1)  Air compressors, pumps and generators including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment;  or

        (2)  Cherry pickers and similar devices used to raise or lower workers;

    (f)  Vehicles not described in (a), (b), (c), or (d) above, maintained primarily for purposes other than the transportation of persons or cargo.

    However, **MOBILE EQUIPMENT** does not include land vehicles that are subject to compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **AUTOMOBILES**.

18. **MONEY** means:

    (a)  Currency, coins, and bank notes in current use and having a face value; and

    (b)  Traveler's checks, register checks and money orders held for sale to the public.

    But **MONEY** does not include **SECURITIES**.

19. **NAMED INSURED** means a person or organization named in Item 1. of the **COMMON POLICY DECLARATIONS**.

20. **PERIOD OF INSURANCE** means the period of time stated in Item 2. Policy Period in the **COMMON POLICY DECLARATIONS**.

21. **PERSONAL INJURY** means any injury (other than **BODILY INJURY** or **PROPERTY DAMAGE**) arising out of one or more of the following:

Wrongful entry; wrongful eviction; malicious prosecution; humiliation; piracy; infringement or misappropriation of any intellectual property rights (including: copyrights; patents; trademarks; servicemarks; and advertising, broadcasting, and publishing ideas); invasion of rights of privacy; libel; slander; defamation of character; disparagement of property; erroneous service of civil papers; false arrest; false imprisonment; and detention.

Injury includes: Mental anguish, shock, sickness, disease, disability or death, which do not arise from **BODILY INJURY** or **PROPERTY DAMAGE**.

In addition, as respects **LAW ENFORCEMENT ACTIVITIES** only, **PERSONAL INJURY** also includes any injury (other than **BODILY INJURY** or **PROPERTY DAMAGE**) arising out of discrimination or violation of civil rights.

22. **POLLUTANTS** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

23. **PROPERTY DAMAGE** means physical injury to tangible property, including all resulting loss of use of property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. **PROPERTY DAMAGE** also means loss of use of property that is not physically injured. **PROPERTY DAMAGE** does not include damage to the **PROPERTY OF THE INSURED**.

For the purposes of this insurance, **ELECTRONIC DATA** is not tangible property.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

24. **PROPERTY OF THE INSURED** or **INSURED'S PROPERTY** means all Real and Personal Property which the **INSURED** owns or is in the **INSURED'S** care, custody or control or agrees to insure by any contractual agreement normal to its operation, including: leasehold improvements and betterments; Personal Property in transit; property in the course of construction, installation, repair, renovation and the like: **AUTOMOBILES**; **ACCOUNTS RECEIVABLE**; **COMPUTER SYSTEMS**; **ELECTRONIC DATA**; **FINE ARTS**; **MOBILE EQUIPMENT**; and **VALUABLE PAPERS**.

25. **SECURITIES** means negotiable and non-negotiable **INSTRUMENTS** or contracts representing either **MONEY** or other property and includes:

(a) Tokens, ticket revenues and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

(b) Food stamps or other evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include **MONEY** or lottery tickets held for sale.

26. **SELF INSURED RETENTION** means that dollar amount specified in the **SCHEDULE OF SELF INSURED RETENTIONS** which the **INSURED** is obligated to pay because of loss or damage covered under any **COVERAGE SECTIONS** of this policy, before this policy indemnifies the **INSURED** for the same loss.

27. **SEXUAL ABUSE** means any actual, attempted or alleged criminal sexual conduct of a person by another person, or persons acting in concert, regardless if criminal charges or proceedings are brought, which causes physical and/or mental injuries. **SEXUAL ABUSE** also includes actual, attempted or alleged criminal: sexual molestation, sexual assault, sexual exploitation or sexual injury.

But **SEXUAL ABUSE** does not include **SEXUAL HARASSMENT**.

All **CLAIMS** based on or arising out of the same **SEXUAL ABUSE** or a series of related **SEXUAL ABUSE** by one or more employees or volunteer workers shall be deemed one **SEXUAL ABUSE**. Only one policy issued by us, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **SEXUAL ABUSE**.

28. **SEXUAL HARASSMENT** means any actual, attempted or alleged unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature of a person by another person, or persons acting in concert, which causes mental injuries. **SEXUAL HARASSMENT** also includes the above conduct when:

(a) Submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person;

(b) Such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile or offensive work environment.

But **SEXUAL HARASSMENT** does not include **SEXUAL ABUSE**.

All **CLAIMS** based on or arising out of the same **SEXUAL HARASSMENT** or a series of related **SEXUAL HARASSMENT** by one or more employees or volunteer workers shall be deemed one **SEXUAL HARASSMENT**. Only one policy issued by us, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **SEXUAL HARASSMENT**.

29. **SUIT** means a civil proceeding in which injuries or damages to which this policy applies are alleged. **SUIT** includes:

(a) An arbitration proceeding in which such damages are claimed and to which the **INSURED** must submit or does submit to with or without our consent; or

(b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **INSURED** submits to with or without our consent.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**30.** **ULTIMATE NET LOSS** means:

(a) With respect to the **COVERAGE SECTIONS II**, **III**, **IV**, **V** and **VII** of this policy:

The total sum which the **INSURED** is obligated to pay because of loss or damage covered under any **COVERAGE SECTION** of this policy, either through adjudication or compromise, after making proper deductions for all recoveries and salvages.

**ULTIMATE NET LOSS** includes: hospital, medical and funeral charges and all sums paid as salaries; wages; compensation; fees; expenses for doctors, nurses, and legal; premium on attachment, appeal or similar bonds (but without any obligation to us to apply for or furnish such bonds); expenses of lawyers and investigators and other persons and for litigation, settlement, adjustment and investigation of claims and **SUITS** which are paid as a consequence of any loss or damage covered hereunder.

(b) With respect to **COVERAGE VI** of this policy:

(1) **ULTIMATE NET LOSS**, as respects **COVERAGE A WORKERS' COMPENSATION**, means the total sum which the **NAMED INSURED** is legally obligated to pay as benefits required of the **NAMED INSURED** by the applicable **WORKERS' COMPENSATION LAW** and related **CLAIMS EXPENSES**.

(2) **ULTIMATE NET LOSS**, as respects **COVERAGE B EMPLOYERS' LIABILITY** means the total sum which the **NAMED INSURED** is legally obligated to pay as **DAMAGES** (as defined in **COVERAGE SECTION VI**) because of bodily injury to the employees of the **NAMED INSURED** and **CLAIMS EXPENSES** related to such **DAMAGES** (as defined in **COVERAGE SECTION VI**).

(c) With respects to **COVERAGE SECTIONS I** and **VIII**, **ULTIMATE NET LOSS** means all losses, damages or expenses arising out of any one **OCCURRENCE**, reduced by any recoveries or salvages which have been paid or will be collected.

The salaries, expense and administrative costs of the **INSURED** or the **INSURED'S** Third Party Claims Administrator are not included within the meaning of **ULTIMATE NET LOSS** and are to be paid by the **INSURED.**

**31.** **WRONGFUL ACT** means any actual or alleged tortious: error, act, omission, misstatement, misleading statement, neglect or replace the duty committed by an **INSURED**, misfeasance, malfeasance, or nonfeasance in the discharge of duties, individually or collectively that results directly but unexpectedly and unintentionally in damages to others.

All **CLAIMS** involving the same **WRONGFUL ACT** or a series of continuous or interrelated **WRONGFUL ACTS**, by one or more **INSUREDS**, will be considered as arising out of one **WRONGFUL ACT**. Only one policy issued by us, one **SELF INSURED RETENTION** and one **LIMIT OF INSURANCE** is applicable to any one **WRONGFUL ACT**.

## GENERAL POLICY CONDITIONS

The following conditions apply to all **COVERAGE SECTIONS** of this policy, except as otherwise indicated.

**1.** **ARBITRATION**:  In the event the **INSURED** and we are unable to agree as to the amount necessary to rebuild, repair or replace the damaged or destroyed property or the actual amount of indemnity to be paid, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire.

The award in writing, duly verified by any two, shall determine the points in question.  Both parties shall pay the cost of their arbitrator and equally pro rate the cost of the umpire. The **INSURED'S** portion of such fee does not accrue to the **INSURED'S LOSS FUND**.

The decision by the arbitrators shall be binding on us and the **INSURED**, and that judgment may be entered in any court of competent jurisdiction.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

2. **ASSIGNMENT**:  Assignment of interest under this policy does not bind us until our consent is endorsed hereon.

3. **AUDITS / VERIFICATION OF VALUES**:  We or our duly authorized representatives may audit the **INSURED'S** books or records at any time during the **PERIOD OF INSURANCE** or within three years after its expiration or termination. There is no time limit on auditing the **INSURED'S** books and records with respects to **CLAIMS** under this policy.

4. **BANKRUPTCY AND INSOLVENCY**:  Bankruptcy, insolvency, rehabilitation, receivership, liquidation, any equivalent proceeding in a foreign jurisdiction or other financial impairment or unwillingness to pay of any **INSURED** or any insurer providing Underlying Insurance, if applicable, shall neither relieve nor increase any of our obligations under this policy.

   In the event there is a diminished recovery or no recovery available to any **INSURED** as a result of such financial impairment or unwillingness of any insurer providing Underlying Insurance, if any, the coverage under this policy shall apply only in excess of the **SELF INSURED RETENTIONS** in the **SCHEDULE OF SELF INSURED RETENTIONS** or the **LIMITS OF INSURANCE** stated in the **SCHEDULE OF UNDERLYING INSURANCE**, if any. Under no circumstances shall we be required to drop down and replace any **SELF INSURED RETENTION** or underlying **LIMITS OF INSURANCE**, or assume any other obligations of a financially impaired insurer or **INSURED** or increase any of our obligations under this policy.

5. **CANCELLATION/NON-RENEWAL**:  In the event of non-payment of premium by the **INSURED**, we will give ten (10) days notice of cancellation in writing to the **FIRST NAMED INSURED** and all coverage will terminate ten (10) days after the mailing of such notice.  If we cancel, the earned premium is calculated pro rata, and the **INSURED** is responsible for the full annual amount of the **INSURED'S LOSS FUND** as stipulated in **PART II EXCESS LOSS FUND PROTECTION**.

   We may elect to non-renew or cancel this policy at the anniversary or expiration date, upon written notice to the **FIRST NAMED INSURED**, provided said notice is issued at least ninety (90) days prior to the anniversary or expiration date.

   If the period of limitation relating to the giving of notice is prohibited or made void by any law, such period is amended to provide the minimum period of limitation permitted by such law.

   We will mail or deliver our cancellation notice to the **FIRST NAMED INSURED'S** last mailing address known to us, and shown on the **COMMON POLICY DECLARATIONS**. Notice of cancellation will state the effective date of cancellation.  If notice is mailed, proof of mailing will be sufficient proof of notice.

   The **FIRST NAMED INSURED** shown on the **COMMON POLICY DECLARATIONS** may cancel this policy by giving thirty (30) days notice of cancellation in writing. If the **FIRST NAMED INSURED** cancels during the **PERIOD OF INSURANCE**, the earned premium is equal to 100% of the premium shown on the **COMMON POLICY DECLARATIONS** and on any endorsements, and the **FIRST NAMED INSURED** is responsible for the full annual amount of the **INSURED'S LOSS FUND** as stipulated in **PART II EXCESS LOSS FUND PROTECTION**.

6. **CHANGES**:  By acceptance of this policy, the **FIRST NAMED INSURED** agrees that it embodies all agreements existing between the **INSURED** and us or any of its agents relating to this policy.  The **FIRST NAMED INSURED** is authorized to make changes in the terms of the policy with our consent. None of the provisions, conditions or other terms of this policy shall be waived or altered except by endorsement issued by us and attached to this policy; nor shall notice to any agent or knowledge possessed by any agent or by any other person be held in effect a waiver or change to any part of this policy.

7. **CLAIMS**, **OCCURRENCES, WRONGFUL ACTS** or **SUITS**:  The **INSURED** shall as soon as practical notify us through the **INSURED'S** Third Party Claims Administrator of any **OCCURRENCE**, **WRONGFUL ACT**, **CLAIM** or **SUIT** meeting the following criteria:

   (a)  The cost of which is likely to result in payment by us under this policy;

   (b)  All **CLAIMS** reserved at 25% of **SELF INSURED RETENTION** for any loss covered under **COVERAGE SECTION VI WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY FOR**

---

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**A QUALIFIED SELF-INSURER** or 50% of **SELF INSURED RETENTION** for all other **COVERAGE SECTIONS**;

(c) Catastrophic losses:

    (1) Fatality;

    (2) Amputation;

    (3) Serious burns;

    (4) Paralysis;

    (5) Head injuries involving brain damage;

    (6) Spinal injury;

    (7) Multiple fractures;

    (8) Loss of sight;

    (9) Use of any impact weapon by a law enforcement officer which results in **BODILY INJURY**;

    (10) **EMPLOYMENT PRACTICES VIOLATION**;

    (11) Actual or alleged criminal conduct by any **INSURED**;

    (12) Land use;

    (13) Any **SUIT** filed as a class action;

(d) **SEXUAL ABUSE** or physical abuse;

(e) Discrimination or Violation of Civil Rights;

(f) Third party claims, other than **AUTOMOBILE LIABILITY**, involving **LAW ENFORCEMENT ACTIVITIES**; or

(g) All **CLAIMS**, **OCCURRENCES**, **WRONGFUL ACTS** or **SUITS** under any **COVERAGE SECTION** where the reporting of a **CLAIM**, **OCCURRENCE**, **WRONGFUL ACT or SUIT** to us is required or is a condition of coverage.

8. **CONFLICTING STATUTES**: If any terms of this policy conflict with the statutes of the state in which this policy is issued, those terms are amended to conform to such statutes.

9. **DUTIES, DEFENSE AND INDEMNIFICATION**:

(a) We have no duty to investigate, handle, settle or defend a **CLAIM**, **OCCURRENCE**, **WRONGFUL ACT**, proceeding or **SUIT** against an **INSURED** or against any person or organization for whom the **NAMED INSURED** is or may be found to be legally liable.

(b) We have no obligation to pay or indemnify an **INSURED** for any amount under **COVERAGE SECTIONS II, III, IV, V, VI** and **VII** of this policy, if an **INSURED'S** obligation to pay **ULTIMATE NET LOSS** is within or equal to the applicable **SELF INSURED RETENTION**.

(c) The **INSURED** has the duty to defend any **CLAIM** to which this insurance applies under **COVERAGE SECTIONS II, III, IV, V, VI** and **VII** of this policy and shall be responsible for the **ULTIMATE NET LOSS** up to the applicable **SELF INSURED RETENTION**.

(d) When the **ULTIMATE NET LOSS** exceeds the **SELF INSURED RETENTION**, for which the **INSURED** becomes legally obligated to pay because of an **OCCURRENCE**, **WRONGFUL ACT** or **CLAIM**, the **INSURED** will be entitled to indemnification from us under the applicable **COVERAGE SECTION** of this policy. The **INSURED** shall apply for indemnification as soon as practicable after the **ULTIMATE NET LOSS** has been determined to exceed the applicable **SELF INSURED RETENTION**. We will promptly indemnify the **INSURED** subject to the **LIMIT OF INSURANCE** less the **SELF INSURED RETENTION** for the applicable **COVERAGE SECTION** of this policy shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

(e) The **INSURED** must obtain our prior written approval before assuming any obligation, incurring any expenses or offering or agreeing to pay an amount which is in excess of the applicable **SELF INSURED RETENTION**.

(f) We have the right, at our discretion, and the **INSURED** will avail us the opportunity, to associate with the **INSURED** in the defense of any **CLAIM** that in our opinion may create indemnification obligations for us under this policy.

(g) If we determine that the cost to investigate, settle or defend a **CLAIM** or **SUIT** covered by **SPECIFIC INSURANCE** in the **DECLARATIONS** will be more than the applicable **SELF INSURED RETENTION(s)** or for any **CLAIM** or **SUIT** covered by **PART II EXCESS LOSS FUND PROTECTION** in the **DECLARATIONS**, then at our sole discretion, we may assume control and direction of the investigation, settlement or defense of that **CLAIM** or **SUIT**.

Amounts we pay, or authorize **INSUREDS** to pay, to investigate, settle or defend any **CLAIM** or **SUIT** are considered part of a loss or **CLAIM**.

However, if we incur costs that are not otherwise covered by this policy, then we will pay those costs at our own expense.

This condition shall survive the termination of this policy without regard to whether said termination is due to cancellation or natural expiration of this policy.

**10. INSPECTIONS/ RISK CONTROL SERVICES**:

(a) We have the right to:

    (1) Make inspections and surveys at any time;

    (2) Give the **NAMED INSURED** reports on the conditions we find; and

    (3) Recommend changes.

(b) We are not obligated to make any inspections, surveys, reports or recommendations; and any such actions we undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

    (1) Are safe or healthful; or

    (2) Comply with laws, regulations, codes or standards.

(c) We assume no liability for, nor will we be made liable by any person or organization for risk control or consulting services, including the results or failure of results, findings or failure of findings, or performance or failure of performance of said services. This condition shall survive the termination of this policy without regard to whether said termination is due to cancellation or natural expiration of this policy.

**11. LEGAL ACTION AGAINST US**:  No person or organization has a right under this policy:

(a) To join us as a party or otherwise bring us into a **SUIT** asking for damages from an **INSURED**; or

(b) To sue us under this policy unless all of its terms and conditions have been fully complied with.

A person or organization may sue us to recover on an agreed settlement as defined below, or on a final judgment against an **INSURED** obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the **LIMITS OF INSURANCE**. An agreed settlement means a settlement and release of liability signed by us, an **INSURED** and the claimant or the claimant's legal representative.

**12. MORTGAGE**:  The interest of any mortgagor, lienholder or creditor on property covered by this policy is included as if a separate endorsement were attached hereto to the extent of the amount of mortgage, lien or credit as of the date of loss subject to the limits of insurance set forth in this policy.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**13. NOTIFICATION**:  If the **INSURED** has an event, **CLAIM** or **SUIT**:

(a) The **INSURED** must use the Third Party Claims Administrator listed in the **COMMON POLICY DECLARATIONS** for the purpose of providing **CLAIMS** services. If the agreement between the **INSURED** and the Third Party Claims Administrator is terminated for any reason without our prior written approval, no insurance will be provided by this policy for any **CLAIM** reported to us after the termination date of the **INSURED'S** agreement with the Third Party Claims Administrator.

(b) The **INSURED**, or the Third Party Claims Administrator the **INSURED** has hired to act on the **INSURED'S** behalf, must:

(1) Investigate any event;

(2) Immediately record the specifics of the **CLAIM** or **SUIT** and the date received;

(3) Settle or defend all **CLAIMS** or **SUITS** that are within the applicable **SELF INSURED RETENTION**;

(4) Afford us the right to associate (at our own expense) in the defense of any **CLAIM** or **SUIT**;

(5) Cooperate with our investigation, settlement or defense of any **CLAIM** or **SUIT**;

(6) Maintain accurate records of all details regarding payments made by **INSUREDS** for **CLAIMS** and estimated damages, including all expenses;

(7) Furnish quarterly **CLAIMS** records to us, on an approved form.

(c) The following are not payments for a covered **CLAIM**:

(1) Fees paid by the **INSURED** to the Third Party Claims Administrator and any expenses incurred by the **INSURED** or the Third Party Claims Administrator in the **ADMINISTRATION**, investigation or settlement of any covered **CLAIM,** including costs to hire independent adjusters;

(2) Payments, including salaries and expenses, to any employee or official of an insured for services rendered in administering any **CLAIM**;

(3) Costs, fees and other expenses incurred by the **INSURED** or the Third Party Claims Administrator in establishing the existence of or the amount of any covered loss.

(d) Notice from the **INSURED** or from the Third Party Claims Administrator should include:

(1) How, when and where the event took place.

(2) The names and addresses of any injured persons and witnesses.

(3) The nature and location of any injury or damage arising out of the event.

For any event reported to us, any involved **INSURED**, or the Third Party Claims Administrator must:

(4) Immediately send us copies of any demands, notices, summons or legal papers received in connection with the **CLAIM** or **SUIT**.

(5) Authorize us to obtain records and other information.

(6) Cooperate in the investigation, settlement or defense of the **CLAIM** or **SUIT**.

(7) Assist, upon our request, in the enforcement of any right against any person or organization, which may be liable to any **INSURED** for any loss to which this insurance may also apply.

**14. OTHER INSURANCE**:  If the **INSURED** has other insurance against loss or damage covered under this policy, we are liable, under the terms of this policy, only as excess of coverage provided by such other insurance. No monies payable or collectible from such other insurance shall accrue to the **INSURED'S LOSS FUND**. However, this clause does not apply to the purchase of excess insurance above the **LIMITS OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** of this policy.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

15. **REPRESENTATIONS**:  By accepting this policy and as a precedent to coverage, the **INSURED** agrees that:

(a) The information contained within the **COMMON POLICY DECLARATIONS** and the **DECLARATIONS** is complete and accurate and is based upon representations made by the **INSURED** to us in the submission and/or application(s) for this policy;

(b) We have issued this policy in reliance upon the **INSURED'S** representations in the submission and/or application(s);

(c) Except as otherwise provided in this policy or by law, this policy is void in any case of fraud; or, if the **INSURED** conceals or misrepresents any material facts in the **INSURED'S** submission and/or application(s) for this policy. If the policy is wholly voidable due to fraud, misrepresentation or concealment by the **INSURED** as aforementioned, we, at our sole discretion, may elect to void coverage only for the particular loss or **CLAIM** which is affected by such concealment and/or misrepresentation and/or fraud.

16. **SEPARATION OF INSUREDS**:  With the exception of the **LIMITS OF INSURANCE**, **SELF INSURED RETENTIONS** and any rights or duties specifically assigned in this Policy to the **NAMED INSURED**, this insurance applies:

(a) As if each **INSURED** were the only **INSURED**; and

(b) Separately to each **INSURED** against whom a **CLAIM** is made or a **SUIT** is brought.

17. **STATUTORY REQUIREMENTS IMPOSED ON YOU**:

You, as a **NAMED INSURED** or a **QUALIFIED SELF-INSURER**, may be subject to specific requirements (such as reporting certain claims data), by State or Federal law (including but not limited to the Medicare, Medicaid and State Children's Health Insurance Program Extension Act of 2007).

Even if you contract with a Third Party Claims Administrator to handle the **ADMINISTRATION**, investigation or settlement of any loss or **CLAIM** covered under this policy, you are still ultimately responsible for compliance with such laws.

When by law you are designated as the responsible reporting entity for compliance with such State or Federal law, we will not:

(a) Advise you of such laws, unless we are legally required to do so;

(b) Assume any of the obligations imposed on you by such law;

(c) Pay any expenses incurred by you to comply with such law;

(d) Pay any penalty or fine for which you are held liable for failing to comply with such State or Federal law.

**ULTIMATE NET LOSS** does not include the expenses or payments described in Paragraphs (c) and (d) above.

18. **SUBROGATION, SALVAGE, AND RECOVERY**:  We shall be subrogated to all rights which the **INSURED** may have against any person or other entity in respect to any **CLAIM** or payment made under this policy; including any person or organization hired to investigate, handle, settle or defend any **OCCURRENCE**, **WRONGFUL ACT**, **CLAIM**, proceeding or **SUIT** resulting in the aforementioned payment. The **INSURED** shall execute all papers required by us and shall cooperate with us to secure our rights. If any reimbursement is obtained, or salvage or recovery made by the **INSURED** or us on account of any loss covered by this policy, the net amount of such reimbursement, salvage or recovery, after deducting the actual cost of obtaining or making the same, shall be first applied in the following order:

(a) Amount of loss, which exceeds the applicable **LIMITS OF INSURANCE**;

(b) To reduce our loss until we are fully reimbursed;

(c) To reduce the **INSURED'S** loss because of the application of the **SELF INSURED RETENTION**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

In the event we decline to be subrogated to all rights, which the **INSURED** may have against any person, or other entity in respect to any **CLAIM** or payment made under this policy, the **INSURED** shall regain its rights and may pursue recovery against said parties. If any reimbursement is obtained, or salvage or recovery made by the **INSURED** on account of any loss covered by this policy, the net amount of such reimbursement, salvage or recovery, after deducting the actual cost of obtaining or making the same, shall first be applied in the following order:

(d) Amount of loss that exceeds the applicable **LIMITS OF INSURANCE**;

(e) To reduce the **INSURED'S** loss because of the application of the **SELF INSURED RETENTION**;

(f) To reduce our loss until we are fully reimbursed.

19. **TERRITORY**:  This policy applies worldwide; however, indemnity by us shall be made only if the original **SUIT** and any related legal actions are brought in the United States of America, its territories or possessions, or transferred to the United States of America, its territories or possessions from a foreign jurisdiction.

20. **THIRD PARTY CLAIMS ADMINISTRATOR**:  This policy of insurance is issued by us on the express condition that the **NAMED INSURED** undertakes, through a written Third Party Claims Administrator's agreement, to utilize at all times the services of a Third Party Claims Administrator which has been approved by us prior to binding.  In the event of cancellation, expiration or revision of the agreement between the **NAMED INSURED** and the designated Third Party Claims Administrator, the **NAMED INSURED** must notify us 90 days prior to the effective date of such cancellation, expiration or revision, and the **NAMED INSURED** and we must agree upon the specifications for the new Third Party Claims Administrator.

These conditions shall survive the termination of this policy without regard to whether said termination is due to cancellation or natural expiration of this policy.

21. **WAIVER OF SUBROGATION**:  This policy shall not be invalidated if the **INSURED**, by written agreement, has waived or shall waive its right of recovery from any party for loss or damage covered hereunder; provided any such waiver is made prior to the **OCCURRENCE** of said loss or damage.

## GENERAL POLICY EXCLUSIONS

The following exclusions apply to all **COVERAGE SECTIONS** of this policy, except **COVERAGE SECTION VI** or as otherwise indicated.

**THIS INSURANCE DOES NOT APPLY TO:**

1. Any loss or **CLAIM** arising out of any criminal, fraudulent, dishonest act or act of bad faith of an **INSURED**, whether working alone or with others, or arising from the deliberate violation of any Federal, State, or local statute, ordinance, rule or regulation committed by or with the knowledge of an **INSURED** except to the extent coverage is provided in **COVERAGE SECTION VIII**.

2. (a) Any costs, civil fines, penalties or expenses levied or imposed against an **INSURED** arising from any complaint or enforcement action from any Federal, State, or local government regulatory agency;

(b) Punitive damages, exemplary damages or the multiplied portion of any damage award; or

(c) Relief or redress in any form other than monetary damages, or for any fees, costs or expenses, which an **INSURED** may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief.

With respect only to paragraph (a) above, this exclusion does not apply to the extent coverage is provided under **COVERAGE SECTION I ADDITIONAL COVERAGE D. ORDINANCE OR LAW**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**3.** Any liability arising out of the operation of the principles of eminent domain, condemnation proceedings, adverse possession or inverse condemnation proceedings by whatever name called, whether such liability accrues directly against the **INSURED** or by virtue of any agreement entered into by or on behalf of the **INSURED**.

**4.** **BODILY INJURY**, **PERSONAL INJURY**, **PROPERTY DAMAGE** or loss or damage to the **PROPERTY OF THE INSURED**, either directly or indirectly occasioned by, happening through, or in consequence of:

(a) War, including undeclared or civil war;

(b) Warlike action by a military force including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

(c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(d) Confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**5.** (a) Any liability, loss, cost, expense or damage, including loss of use, caused by the release, discharge or dispersal of **POLLUTANTS** anywhere, anytime, in any way, whether accidental or intentional, sudden or intermittent or continuous:

(1) At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any **INSURED**;

(2) At or from any premises, site or location which is or was at any time used by or for any **INSURED** or others for the handling, storage, disposal, processing or treatment of waste;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **INSURED** or any person or organization for whom any **INSURED** may be legally responsible;

(4) At or from any premises, site or location on which any **INSURED** or any contractor or subcontractor working directly or indirectly on any **INSURED'S** behalf are performing operations:

(i) If the **POLLUTANTS** are brought on or to the premises, site or location in connection with such operations by such **INSURED**, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**;

(5) That are, or that are contained in any property that is:

(i) Being transported or towed by, handled, or handled for movement into, onto or from, an **AUTOMOBILE** covered under **COVERAGE SECTION IV**;

(ii) Otherwise in the course of transit by or on behalf of the **INSURED**; or

(iii) Being stored, disposed of, treated or processed in or upon an **AUTOMOBILE** covered under **COVERAGE SECTION IV**;

(6) Before the **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are moved from the place where they are accepted by the **INSURED** for movement into or onto an **AUTOMOBILE** covered under **COVERAGE SECTION IV**; or

(7) After the **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are moved from an **AUTOMOBILE** covered under **COVERAGE SECTION IV** to the place where they are finally delivered, disposed of or abandoned by the **INSURED**.

However:

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

(i) With respect to **COVERAGE SECTION II GENERAL LIABILITY**, Paragraph 5.(a)(1) does not apply to:

    (aa) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke or fumes from a **HOSTILE FIRE** as defined in **COVERAGE SECTION II**;

    (bb) **BODILY INJURY** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

    However, in no event do the exceptions in (1) (aa) and (bb) above apply to or at any building or premises, site or location which is or was used by or for any **INSURED** or others for the handling, storage, disposal, processing or treatment of waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

(ii) With respect to **COVERAGE SECTION II GENERAL LIABILITY**, Paragraph 5.(a) does not apply to:

    (aa) The purifying or treatment of drinking water and the day-to-day operations and/or maintenance of swimming pools;

    (bb) Herbicide or pesticide spraying, if the operations meet all standards of and comply with any statute, ordinance, regulations or license requirement of any Federal, State or local government;

    (cc) The reverse flow of sewage into any building from a sewage facility, fixed conduit or sanitary sewer that the **INSURED** owns, operates or maintains;

    (dd) The use of chemicals in a **NAMED INSURED'S** classroom for educational purposes; or

    (ee) Chemicals used in janitorial duties.

    Paragraph (2) inclusive of subparagraphs (aa) through (ee) only applies with respect to a Short-Term Pollution Event, and the **NAMED INSURED** must notify us of the Short-Term Pollution Event as soon as practicable but no more than fourteen (14) days after its ending.

    As used in this exclusion, Short-Term Pollution Event means a release, discharge, dispersal, seepage, migration or escape of **POLLUTANTS** which:

    [i]   Begins during the **PERIOD OF INSURANCE**;

    [ii]   Begins at an identified time and place;

    [iii]   Ends in its entirety, at an identified time within 48 hours of the beginning of the release, discharge, dispersal, seepage, migration or escape of **POLLUTANTS**; and

    [iv]   Does not originate from an underground storage tank. Underground storage tank means any storage tank, including any attached pumps, valves or piping, buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground or water.

(iii) With respect to **COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES**, Paragraph 5.(a) does not apply to the use of teargas, mace or similar substances by any public safety officer within the scope of employment for the **NAMED INSURED** only if the **NAMED INSURED'S** operations meet all the standards of any statute, ordinance, regulation or license requirement of any Federal, State or local government which apply to those operations.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

(iv) With respect to **COVERAGE SECTION IV AUTOMOBILE LIABILITY**:

    (aa) Paragraph 5.(a) does not apply to **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the collision, upset or overturn of any **AUTOMOBILE**.

    (bb) Paragraph 5.(a)(5) does not apply to fuels, lubricants, fluids, exhaust gases or other similar **POLLUTANTS** that are needed for, or result from the normal electrical, hydraulic or mechanical functioning of an **AUTOMOBILE** covered under **COVERAGE SECTION IV** or its parts, if:

        [i] The **POLLUTANTS** escape, seep, migrate, or are discharged, dispersed or released directly from an **AUTOMOBILE** part designed by its manufacturer to hold, store, receive or dispose of such **POLLUTANTS**; and

        [ii] The **BODILY INJURY** or **PROPERTY DAMAGE** does not arise out of the operation of any equipment defined as **MOBILE EQUIPMENT**.

    (cc) Paragraphs 5.(a)(6) and 5.(a)(7) do not apply to **OCCURRENCES** that occur away from premises owned by or rented to an **INSURED** with respect to **POLLUTANTS** not in or upon an **AUTOMOBILE** covered under **COVERAGE SECTION IV** if:

        [i] The **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are upset, overturned or damaged as a result of the maintenance or use of an **AUTOMOBILE** covered under **COVERAGE SECTION IV**; and

        [ii] The discharge, dispersal, seepage, migration, release or escape of the **POLLUTANTS** is caused directly by such upset, overturn or damage.

(b) Any loss, cost or expense arising out of any:

    (1) Request, demand, order  or statutory or regulatory requirement that an **INSURED** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**; or

    (2) **CLAIM** or **SUIT** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **POLLUTANTS**.

6. Any **CLAIM** based upon any fiduciary obligation or fiduciary duty or the **INSURED'S** failure to comply with the Federal Employee Retirement Income Security Act of 1974 (ERISA), the Pension Benefit Act, the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA) and Section 89 of Internal Revenue Code, including subsequent amendments or any similar federal, state or local law or regulations.

7. Any **CLAIM** arising out of any **INSURED'S** activities in an investing or fiduciary capacity including but not limited to, any **EMPLOYEE BENEFIT PROGRAMS**, or the administration of any self-insurance fund.

8. (a) Any liability:

    (1) With respect to which an **INSURED** under the policy is also an **INSURED** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an **INSURED** under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and with respect to which:

        (i) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

        (ii) An **INSURED** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

(b) Any liability for any expenses incurred with respect to **BODILY INJURY** resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and arising out of the operation of a **NUCLEAR FACILITY** by any person or organization.

(c) Any liability resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL**, if:

   (1) The **NUCLEAR MATERIAL**:

   (i) Is at any **NUCLEAR FACILITY** owned by, or operated by or on behalf of, an **INSURED**; or

   (ii) Has been discharged or dispersed therefrom;

   (2) The **NUCLEAR MATERIAL** is contained in **SPENT FUEL** or **WASTE** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **INSURED**; or

   (3) Arising out of the furnishing by an **INSURED** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **NUCLEAR FACILITY**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to **PROPERTY DAMAGE** to such **NUCLEAR FACILITY** and any property thereat.

(d) As used in this exclusion:

   **HAZARDOUS PROPERTIES** means radioactive, toxic or explosive properties.

   **NUCLEAR FACILITY** means:

   (1) Any **NUCLEAR REACTOR**;

   (2) Any equipment or device designed or used for:

   (i) Separating the isotopes of uranium or plutonium,

   (ii) Processing or utilizing **SPENT FUEL**, or

   (iii) Handling, processing or packaging **WASTE**;

   (3) Any equipment or device used for the processing, fabricating or alloying of **SPECIAL NUCLEAR MATERIAL** if at any time the total amount of such material in the custody of an **INSURED** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **WASTE**;

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

   **NUCLEAR MATERIAL** means **SOURCE MATERIAL**, **SPECIAL NUCLEAR MATERIAL** or **BY-PRODUCT MATERIAL**.

   **NUCLEAR REACTOR** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

   **PROPERTY DAMAGE**, as defined in this exclusion, only means physical injury to tangible property, including all resulting loss of use of such property; and includes all forms of radioactive contamination of property.

   **SOURCE MATERIAL**, **SPECIAL NUCLEAR MATERIAL** or **BY-PRODUCT MATERIAL** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   **SPENT FUEL** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **NUCLEAR REACTOR**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**WASTE** means any **WASTE** material:

(1) Containing **BY-PRODUCT MATERIAL** other than the tailings or **WASTES** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **SOURCE MATERIAL** content; and

(2) Resulting from the operation by any person or organization of any **NUCLEAR FACILITY**.

9. Any loss, cost or expense directly or indirectly arising out of, resulting from, caused by or contributed to by:

(a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

(b) The use of asbestos in constructing or manufacturing of any good, product or structure;

(c) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

(d) The abatement, mitigation, removal, or disposal of asbestos or goods or products containing asbestos; or

(e) Payment for the investigation or defense of any loss, fine or penalty; or for any expense or claim; related to (a), (b), (c) or (d) above.

10. Any loss, cost or expense directly or indirectly arising out of, resulting from, caused by or contributed to by:

(a) Inhaling, ingesting or prolonged physical exposure to lead, lead compounds or lead contained in any materials;

(b) The abatement, mitigation, removal, or disposal of lead, lead compounds or lead contained in any materials;

(c) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with (a) or (b) above; or

(d) Any obligation to share damages with or repay someone else who must pay damages in connection with (a), (b) or (c) above.

11. Any **CLAIM**, including defense of same, arising directly or indirectly from any actual or alleged **SEXUAL ABUSE** of any person by any **NAMED INSURED**; official, member of board or commission, trustee, director, officer, partner, volunteer, student teacher or employee of the **NAMED INSURED**; or anyone to whom the **NAMED INSURED** is obligated by virtue of a written contract or agreement.

This exclusion does not apply to **COVERAGE SECTION V** but only to the extent that coverage is provided under such section for **SEXUAL ABUSE**.

12. Any **CLAIM**, including defense of same, arising directly or indirectly from any actual or alleged **SEXUAL HARASSMENT** of any person by any **NAMED INSURED**; official, member of board or commission, trustee, director, officer, partner, volunteer, student teacher or employee of the **NAMED INSURED**; or anyone to whom the **NAMED INSURED** is obligated by virtue of a written contract or agreement.

This exclusion does not apply to **COVERAGE SECTION V** but only to the extent that coverage is provided under such section for **SEXUAL HARASSMENT**.

13. Any **CLAIM** arising out of estimates of probable costs or cost estimates being exceeded or for faulty preparation of bid specifications or plans or failure to award contracts in accordance with statutes or ordinance, which under law must be submitted for bids.

14. Any **CLAIM** arising out of:

(a) The rendering or failure to render:

(1) Medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

(2)  Any service or treatment conducive to health or of a professional nature;

(b)  The furnishing or dispensing of drugs, medical, dental, or surgical supplies or appliances;

(c)  Any service by any person as a member of a formal accreditation or similar professional board or committee**,** or as a person charged with the duty of executing directives of any such board or committee; or

(d)  Any blood product handled or distributed by an **INSURED** or the reliance upon any representation or warranty made at any time with respect to blood products.

With respect to **COVERAGE SECTION II** and **COVERAGE SECTION III**, this exclusion does not apply to the extent that coverage is provided under these sections for **INCIDENTAL MEDICAL MALPRACTICE**.

15.  Any premium, assessment, penalty, fine, benefit or other obligation imposed by or granted pursuant to any Workers' Compensation Law, unemployment compensation or disability benefits law, the Jones Act, General Maritime Law, the Federal Employers' Liability Act, Federal Employee Compensation Act, the Defense Base Act, U.S. Longshoremen's and Harbor Workers' Compensation Act, Federal Coal Mine Health and Safety Act, Non-appropriated Fund Instrumentalities Act, Outer Continental Shelf Lands Act, Migrant and Seasonal Agricultural Worker Protection Act, any federal occupational disease law; any amendments to such laws or under any similar law for which the **NAMED INSURED**, or any carrier as your insurer, may be held liable; or for which the **NAMED INSURED** is a qualified self insurer.

This exclusion does not apply to **COVERAGE SECTION VI** but only to the extent that coverage is provided under such section for **COVERAGE A WORKERS' COMPENSATION**.

16.  Liability arising out of the **ADMINISTRATION** of any **EMPLOYEE BENEFIT PROGRAM**.

This exclusion does not apply to the extent coverage is provided under **COVERAGE SECTION VII**.

17.  Liability arising out of the ownership, maintenance, loading or unloading, control, use or operations of any aircraft, airfields, runways, hangars, buildings or other properties in connection with aviation activities.

This exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **INSURED**. However, this exclusion does not apply with respect to any coverage provided for **EMPLOYMENT PRACTICES LIABILITY** in **COVERAGE SECTION V**.

With respect to **COVERAGE SECTION II**, this exclusion does not apply to liability for the premises of buildings or other properties to which the general public is admitted.

18.  Liability arising out of the ownership, maintenance, operation, use, loading or unloading or entrustment to others of any watercraft owned or operated by an **INSURED** or rented, loaned, or chartered by or on behalf of an **INSURED**.

This exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **INSURED**. However, this exclusion does not apply with respect to any coverage provided for **EMPLOYMENT PRACTICES LIABILITY** in **COVERAGE SECTION V**.

With respect to **COVERAGE SECTION II**, this exclusion does not apply to:

(a)  Watercraft while ashore on premises the **NAMED INSURED** owns or rents; or

(b)  Watercraft less than 51 ft. long and not being used to carry persons or property for a charge.

19.  (a)  Any **CLAIM** by an **INSURED** against any other **INSURED**; and

(b)  Any injury or damage to the spouse, child, parent, brother or sister of the **INSURED** as a consequence of (a) above.

This exclusion does not apply to the extent coverage is provided for **EMPLOYMENT PRACTICE VIOLATIONS** or **EMPLOYEE BENEFITS WRONGFUL ACT** for a **CLAIM** by an employee.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**20.** The cost of any investigation, disciplinary or criminal proceedings against an individual **INSURED** except that we may, at our option and expense, associate counsel in the defense of any such investigation, criminal or disciplinary proceeding. We do not have the duty to defend; however, should we elect to associate counsel, such elections shall not constitute a waiver or estoppel of any rights we may have pursuant to the terms, conditions, exclusions and limitations of this policy.

This exclusion does not apply to the extent coverage is provided for **EMPLOYMENT PRACTICE VIOLATIONS** for a **CLAIM** by an employee.

**21.** Any loss, damage, cost, **CLAIM**, expense, or liability of whatsoever nature directly or indirectly caused by, resulting from or in any way involving **FUNGAL PATHOGENS**. This exclusion shall apply regardless of any other cause or event that contributes concurrently or in sequence to the loss, damage, cost, **CLAIM**, expense, or liability.

This exclusion shall not apply to **COVERAGE SECTION I**; but only when such loss arises directly from a **NAMED PERIL** not otherwise excluded under **COVERAGE SECTION I**.

**22.** Any **CLAIM** arising out of the rendering or failure to render any **PROFESSIONAL SERVICE**, in whatever form, by:

(a) An **INSURED**;

(b) Any other person performing services for or on behalf of any **INSURED**;

(c) Any client, participant, service recipient, student or patient of an **INSURED**; or

(d) Any person relating to or in any way interacting, directly or indirectly, with an **INSURED**.

As used in this exclusion, **PROFESSIONAL SERVICES** mean services that may be legally performed only by a person holding a professional license. **PROFESSIONAL SERVICES** do not include services by teachers, educators, school guidance counsellors, school nurses and those services described under **INCIDENTAL MEDICAL MALPRACTICE**.


## COVERAGE SECTION I PROPERTY

## COVERAGE SECTION I INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

**A. BLANKET PROPERTY OF THE INSURED** (except **AUTOMOBILES** and Personal Property in Transit): We agree, subject to the policy limitations, terms and conditions to pay the **INSURED** for direct physical loss or damage to **PROPERTY OF THE INSURED** (except **AUTOMOBILES** and Personal Property in Transit) at the premises described in the **SCHEDULE OF LOCATIONS**, caused by or resulting from a **COVERED PERIL**.

**B. AUTOMOBILE PHYSICAL DAMAGE**: We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for direct physical loss or damage to **AUTOMOBILES**, wherever located, owned by the **INSURED** or on which the **INSURED** has an obligation to provide insurance, caused by or resulting from a **COVERED PERIL**.

**C. GARAGEKEEPERS LEGAL LIABILITY**: We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for direct physical loss or damage to **AUTOMOBILES** left in the **INSURED'S** care for which the **INSURED** is legally obligated, caused by or resulting from a **COVERED PERIL**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## COVERAGE SECTION I EXTENSIONS

The following **COVERAGE EXTENSIONS** do not increase our **LIMITS OF INSURANCE**, nor are we liable for a greater percentage of the amount of the limit, shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

These Extensions apply only if a sublimit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

### A.  EXTRA EXPENSE

We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for **EXTRA EXPENSE** incurred when **PROPERTY OF THE INSURED** at the premises described in the **SCHEDULE OF LOCATIONS** is damaged or destroyed by a **COVERED PERIL** causing a **SUSPENSION** of **OPERATIONS**. We will be liable for such **EXTRA EXPENSE**, not exceeding the actual and necessary expenses incurred, and not exceeding such length of time, hereinafter referred to as the **PERIOD OF RESTORATION**.

This Extension also includes **EXTRA EXPENSE** for **DATA PROCESSING** at premises described in the **SCHEDULE OF LOCATIONS** when: (1) the premises in which the property is located is so damaged as to prevent access to such property; or (2) as a direct result of a **COVERED PERIL**, the air conditioning system or electrical system necessary for the operation of the **COMPUTER SYSTEMS** is so damaged as to reduce or suspend the **INSURED'S** ability to actually perform the **NORMAL OPERATIONS** performed by the **COMPUTER SYSTEMS**. **EXTRA EXPENSE** for **DATA PROCESSING** includes the expense of using other property or facilities of other concerns or other necessary emergency expenses.

**INTERRUPTION BY CIVIL AUTHORITY**:  Coverage is extended to include the actual and necessary **EXTRA EXPENSE** incurred when a civil authority prohibits access to premises described in the **SCHEDULE OF LOCATIONS** due to loss or damage by a **COVERED PERIL** to real property located at other than the described premises. **INTERRUPTION BY CIVIL AUTHORITY** coverage will begin immediately after the first action of civil authority that prohibits access to the described premises and will end four consecutive weeks after the date of that action.

**EXTRA EXPENSE CONDITIONS -** In addition to the **GENERAL POLICY CONDITIONS** and the **COVERAGE SECTION I CONDITIONS**, the following condition also applies to this **EXTRA EXPENSE EXTENSION**:

**RESUMPTION OF OPERATIONS**:  It is a condition of this policy that as soon as practical, the **INSURED** will resume **NORMAL** business **OPERATIONS** and discontinue **EXTRA EXPENSE**.

### B.  BUSINESS INCOME

We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for the actual loss of **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUE** the **INSURED** sustained due to the necessary **SUSPENSION** of **OPERATIONS** during the **PERIOD OF RESTORATION**. The **SUSPENSION** must be caused by direct physical loss or damage to **PROPERTY OF THE INSURED** at the premises described in the **SCHEDULE OF LOCATIONS.**  The loss or damage must be caused by or result from a **COVERED PERIL**.

**INTERRUPTION BY CIVIL AUTHORITY**:  Coverage for **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUE** is extended to include the actual loss sustained when a civil authority prohibits access to premises described in the **SCHEDULE OF LOCATIONS** due to loss or damage by a **COVERED PERI**L to real property located at other than the described premises. **INTERRUPTION BY CIVIL AUTHORITY** coverage will begin immediately after the first action of civil authority that prohibits access to the described premises and will end four consecutive weeks after the date of that action.

**EXPENSES TO REDUCE LOSS**:  If there is a **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUES** loss, we will pay the **INSURED** for expenses necessarily incurred to reduce further loss of **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUES**. The total loss payment for **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUES** loss, and expense to

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

reduce loss will not be more than the **BUSINESS INCOME, TUITION AND FEES** and/or **RENTAL VALUES** loss that would have been payable if the expenses to reduce loss had not been incurred.

**EXTENDED BUSINESS INCOME**:   If the necessary **SUSPENSION** of the **INSURED'S OPERATIONS** produces a **BUSINESS INCOME** loss payable under this policy, we will pay the **INSURED** for the actual loss of **BUSINESS INCOME** incurred during the **PERIOD OF RESTORATION** and up to ninety (90) days thereafter, that would have existed if no direct physical loss or damage had occurred. However, extended **BUSINESS INCOME** does not apply to loss of **BUSINESS INCOME** incurred as a result of the lack of building materials or contractors being available because of widespread damage, caused by the impact of the **COVERED PERIL** in the area where the premises described in the **SCHEDULE OF LOCATIONS** are located.

**EXTENDED RENTAL VALUES**:  If the necessary **SUSPENSION** of the **INSURED'S OPERATIONS** produces a **RENTAL VALUES** loss payable under this policy, we will pay the **INSURED** the actual loss of **RENTAL VALUES** incurred during the **PERIOD OF RESTORATION** and up to ninety (90) days thereafter, that would have existed if no direct physical loss or damage had occurred. However, extended **RENTAL VALUES** does not apply to loss of **RENTAL VALUES** incurred as a result of the lack of building materials or contractors being available because of widespread damage caused by the impact of the **COVERED PERIL** in the area where the premises described in the **SCHEDULE OF LOCATIONS** are located.

**EXTENDED TUITION AND FEES**:  If the necessary **SUSPENSION** of the **INSURED'S OPERATIONS** produces a **TUITION AND FEES** loss payable under this policy, we will pay the **INSURED** the actual loss of **TUITION AND FEES** incurred during the **PERIOD OF RESTORATION** and up to ninety (90) days thereafter, that would have existed if no direct physical loss or damage had occurred. However, extended **TUITION AND FEES** does not apply to loss of **TUITION AND FEES** incurred as a result of the lack of building materials or contractors being available because of widespread damage caused by the impact of the **COVERED PERIL** in the area where the premises described in the **SCHEDULE OF LOCATIONS** are located.

C. **PERSONAL PROPERTY IN TRANSIT**

We agree, subject to the policy limitations, terms and conditions, to pay the **INSURED** for direct physical loss or damage (including general average and salvage charges on shipments covered while waterborne) to personal property of the **INSURED** or property held by the **INSURED** in their care, custody or control, in trust or on commission or on consignment while in due course of transit, caused by or resulting from a **COVERED PERIL**.

The **INSURED** may accept ordinary bills of lading or receipts insured by carriers including those containing released and/or partially released value provisions, but the **INSURED** shall not agree to release carriers from their common law or statutory liability.

**COVERAGE SECTION I ADDITIONAL COVERAGES**

The following **ADDITIONAL COVERAGES** do not increase our **LIMITS OF INSURANCE** shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**. **ADDITIONAL COVERAGES** apply only when a sublimit for such coverage is shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

A. **DEBRIS REMOVAL**:  In the event of a direct physical loss or damage caused by a **COVERED PERIL** to the property covered under this policy at the premises described in the **SCHEDULE OF LOCATIONS**, we will pay the **INSURED** for expenses incurred in removal of debris, and the cost of clean up (other than **POLLUTANTS**) of the insured property destroyed or damaged, from the premises described in the **SCHEDULE OF LOCATIONS**.

B. **ASBESTOS AND LEAD CLEAN UP AND REMOVAL**:   Notwithstanding the **POLLUTANTS** Exclusion in this policy, we agree to extend **COVERAGE SECTION I PROPERTY** coverage to the **INSURED** to cover expense to remove damaged asbestos or lead from any structure on the premises described in the **SCHEDULE OF LOCATIONS** due to the enforcement of any law or ordinance regulating asbestos or lead that is in force at the time of loss, when the asbestos or lead is itself damaged by a  **COVERED PERIL** during the **PERIOD OF INSURANCE**, and then only to the extent of such damage.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**C. ARCHITECTS' AND ENGINEERS' FEES**:  This insurance covers the additional assessment involving architects' and engineers' fees for consultations arising from direct physical loss or damage resulting from a **COVERED PERIL**.

**D. ORDINANCE OR LAW**:

1. If a **COVERED PERIL** occurs to a Building that is **PROPERTY OF THE INSURED** described in the **SCHEDULE OF LOCATIONS**, we will pay for:

   a. Loss to the undamaged portion of such building caused by the enforcement of any ordinance or law that:

      (1) Requires the demolition of parts of the same property not damaged by a **COVERED PERIL**;

      (2) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the premises described in the **SCHEDULE OF LOCATIONS**; and

      (3) Is in force at the time of loss.

   b. The increased cost to repair, rebuild, or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law or we agree to a change of occupancy.

   c. The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning, or land use ordinance or law.

2. Under this **ADDITIONAL COVERAGE** we will not pay for:

   a. The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodelling or remediation of property due to contamination by asbestos or lead (except to the extent covered under **COVERAGE SECTION I ADDITIONAL COVERAGE B.**), **POLLUTANTS** or due to the presence, growth, proliferation, spread or any activity of **FUNGAL PATHOGENS**, Virus or Bacteria; or

   b. Any costs associated with the enforcement of any ordinance or law which requires any **INSURED** or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of asbestos or lead, **POLLUTANTS** or **FUNGAL PATHOGENS**, Virus or Bacteria.

3. Under this **ADDITIONAL COVERAGE** we will not pay any costs due to any ordinance or law that:

   a. The **INSURED** was required to comply with before the loss, even if the building was undamaged; and

   b. The **INSURED** failed to comply with.

**E. UNINTENTIONAL ERRORS AND OMISSIONS**:  The property insured under this policy is based on property as per the **SCHEDULE OF LOCATIONS**, as submitted by the **INSURED** prior to the inception of this policy.

However, if any **PROPERTY OF THE INSURED** is omitted or undervalued because of negligence, error or oversight of the **INSURED**, we will accept that property provided it is usual or incidental to the **INSURED'S OPERATIONS**. Such omission or undervaluation will not prejudice the **INSURED'S** right of recovery under this policy. The **INSURED** agrees to report to us any omission or undervaluation of property as soon as practicable after it is discovered.

**F. AUTOMATIC ACQUISITION**:  This insurance is automatically extended to cover additional property and/or interests of the **INSURED**, usual and/or incidental to the **OPERATIONS** of the **INSURED**, which do not exceed the **AUTOMATIC ACQUISITION LIMIT** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**, and which are acquired, or for which the **INSURED** becomes legally liable, during the **PERIOD OF INSURANCE** under this policy.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

This policy is further extended to cover additional property and/or interests of the **INSURED** when newly acquired property values exceed the **AUTOMATIC ACQUISITION LIMIT** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**, provided the **INSURED** reports details of said property and/or interests to us for premium consideration within ninety (90) days from the date the **INSURED** acquires or becomes legally liable for the property provided that the property is acquired or interests secured during the **PERIOD OF INSURANCE** under this policy.

## COVERAGE SECTION I LIMITS OF INSURANCE

The most we will pay under **COVERAGE SECTION I PROPERTY** is the amount shown for all coverages under **COVERAGE SECTION I** combined under the **LIMIT OF INSURANCE** for each **OCCURRENCE** as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** and any applicable **MAINTENANCE DEDUCTIBLE** as stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** for each **OCCURRENCE** under **COVERAGE SECTION I PROPERTY** limit for all coverages under **COVERAGE SECTION I** combined.

If an Annual Aggregate Limit applies to any coverage under **COVERAGE SECTION I**, the total Aggregate **LIMIT OF INSURANCE** for such coverage under **COVERAGE SECTION I** shall not exceed the applicable limit as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

## COVERAGE SECTION I CONDITIONS

The following conditions apply in addition to the **GENERAL POLICY CONDITIONS**:

**A.  ABANDONMENT**:  There can be no abandonment of any property to us.

**B.  CONCEALMENT, MISREPRESENTATION OR FRAUD**:  We will not pay for any loss or damage in any case of:

   1.  Concealment or misrepresentation of a material fact; or

   2.  Fraud;

committed by an **INSURED** at any time and relating to an insurance application, rating, claim or coverage under this policy.

**C.  NO BENEFIT TO BAILEE**:  No person or organization, other than the **NAMED INSURED**, having custody of **PROPERTY OF THE INSURED** will benefit from this insurance.

**D.  PAIR OR SETS**:  In case of loss or damage to any part of a pair or set we may:

   1.  Repair or replace any part to restore the pair or set to its value before the loss or damage; or

   2.  Pay the difference between the value of the pair or set before and after the loss or damage.

**E.  PERIOD OF INSURANCE**: Under **COVERAGE SECTION I PROPERTY**, we cover loss or damage or expense that occurs during the **PERIOD OF INSURANCE** shown in the **COMMON POLICY DECLARATIONS**.

**F.  DUE DILIGENCE**: The **INSURED** shall use due diligence and concur in doing all things reasonably practical to avoid or diminish any loss of or damage to the property insured.

**G.  MORTGAGE**:  The interest of any mortgagor on property covered by this policy is included as if a separate endorsement were attached hereto to the extent of the amount of mortgage as of the date of loss subject to the applicable limits as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**H.  VALUATION**:

   1.  **REAL AND PERSONAL PROPERTY (except ACCOUNTS RECEIVABLE, AUTOMOBILES, DATA PROCESSING, FINE ARTS, MOBILE EQUIPMENT AND VALUABLE PAPERS)**:

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

We will pay the **INSURED** for the lesser of the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to, but not superior to, or more extensive, than its condition when new. If the **INSURED** decides to replace destroyed or damaged property on another site, cost of such site is not included.

It is not a condition that the **INSURED** repair, rebuild or replace the destroyed or damaged property in order to collect for loss or damage covered by this insurance. However, in the event the property is not repaired, rebuilt or replaced, we are not liable for loss covered under **COVERAGE SECTION I ADDITIONAL COVERAGE D**.

2.  **ACCOUNTS RECEIVABLE**:  We will pay the **INSURED** for actual loss sustained for sums due the **INSURED**, including the expenses reasonably incurred in re-establishing the records of **ACCOUNTS RECEIVABLE**:

    a.  When there is proof that a covered loss has occurred but the **INSURED** cannot accurately establish the total amount of **ACCOUNTS RECEIVABLE** outstanding as of the date of such loss, such amount shall be based on the **INSURED'S** monthly statements and shall be computed as follows:

        (1) Determine the total of the average monthly amounts of **ACCOUNTS RECEIVABLE** at the end of the twelve (12) months immediately preceding the month in which the loss or damage occurs; and

        (2) Adjust that total for any normal fluctuations in the amount of **ACCOUNTS RECEIVABLE** for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

    b.  There shall be deducted from the total amount of **ACCOUNTS RECEIVABLE**, however established:

        (1) The amount of accounts not lost or damaged;

        (2) The amount of the accounts the **INSURED** is able to collect or re-establish;

        (3) An amount to allow for probable bad debts that the **INSURED** is normally unable to collect; and

        (4) All unearned interest and services charges.

3.  **AUTOMOBILES**:  We will pay the **INSURED** the lesser of the cost to repair the **AUTOMOBILE**, or the actual cash value of the **AUTOMOBILE** at the time of loss; including the cost to rent a vehicle of like kind for no more than thirty days.

4.  **DATA PROCESSING**:  We will pay the **INSURED** for:

    a.  **COMPUTER SYSTEMS** for the lesser of the actual cost to replace or repair the property. If the property is replaced, the actual cost should be based upon the most closely equivalent property available similar in kind and function to that insured hereunder.

    b.  **ELECTRONIC DATA** for the lesser of the actual cost to replace, repair or reproduce the property, research the lost information when duplicates do not exist or if not replaced, repaired or reproduced, the blank value of the **ELECTRONIC DATA**. If the property is replaced, the actual cost should be based upon the most closely equivalent property available similar in kind and function to that insured hereunder.

5.  **FINE ARTS**:  We will pay the **INSURED** for the lesser of the cost to repair the property, or if not repairable the replacement cost, or if not replaceable the appraised or market value at the time of loss.

6.  **MOBILE EQUIPMENT**:  We will pay the **INSURED** for the lesser of the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to, but not superior to, or more extensive, than its condition when new.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

7. **VALUABLE PAPERS**:  We will pay the **INSURED** for the lesser of the cost to replace, repair or reproduce the property with other of like kind, including the cost of labor to transcribe or copy the records when there is a duplicate, research the lost information when duplicates do not exist or if not replaced, repaired or reproduced the blank value of the **VALUABLE PAPERS**.

8. **PERSONAL PROPERTY IN THE DUE COURSE OF TRANSIT**:  We will pay the **INSURED** the amount on the shipping invoice, including any prepaid or advanced freight, as well as any costs or charges which have been accrued or become legally due since the shipment commenced. In the absence of a shipping invoice, the property will be valued at its actual cash value at the point of destination on the date of loss, less any charges saved which would have been due and payable upon delivery at the destination.

9. **BUSINESS INCOME, TUITION AND FEES, RENTAL VALUE AND EXTRA EXPENSE**:

   a. The amount of **BUSINESS INCOME**, **TUITION AND FEES** and/or **RENTAL VALUE** loss will be determined based on:

      (1) The net income of the business before the direct physical loss or damage occurred;

      (2) The likely net income of the business if no direct physical loss or damage had occurred;

      (3) The operating expenses, including payroll expenses, necessary to resume the business **OPERATIONS** with similar quality of service that existed just before the direct physical loss or damage; and

      (4) Other relevant sources of information, including:

         (a) Financial records and accounting procedures of the **INSURED**;

         (b) Bills, invoices and other vouchers; and

         (c) Deeds, liens or contracts.

   b. The amount of **EXTRA EXPENSE** will be determined based on:

      (1) All expenses that exceed the **NORMAL** operating expenses that would have been incurred by the **INSURED'S** business **OPERATIONS** during the **PERIOD OF RESTORATION** if no direct physical loss or damage had occurred.  We will deduct from the total of such expenses:

         (a) The salvage value that remains of any property bought for temporary use during the **PERIOD OF RESTORATION**, once **OPERATIONS** are resumed; and

         (b) Any **EXTRA EXPENSE** that is paid for by other insurance, except for insurance that is written subject to the same terms, conditions and provisions as this insurance; and

      (2) All necessary expenses that reduce the **BUSINESS INCOME**, **TUITION AND FEES**, **RENTAL VALUE** or **EXTRA EXPENSE** loss that otherwise would have been incurred.

   c. **RESUMPTION OF OPERATIONS**:  We will reduce the amount of the **INSURED'S BUSINESS INCOME**, **TUITION AND FEES** and/or **RENTAL VALUES** loss to the extent the **INSURED** can resume **OPERATIONS**, with reasonable speed, in whole or in part, by using damaged or undamaged property at the premises described in the **SCHEDULE OF LOCATIONS** or elsewhere.

      If the **INSURED** does not resume **OPERATIONS** with reasonable speed, or does not resume **OPERATIONS** in whole or in part, we will pay the **INSURED** the **BUSINESS INCOME**, **TUITION AND FEES** and/or **RENTAL VALUES** loss based on the length of time it would have taken to resume **OPERATIONS** with reasonable speed, or to resume **OPERATIONS** in whole or in part.

I. **JOINT LOSS CLAUSE**:  In the event of damage to or destruction of **PROPERTY OF THE INSURED** at the premises described in the **SCHEDULE OF LOCATIONS** in this policy and also designated in a boiler and machinery insurance policy, and there is a disagreement between the two insurers with respect to:

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

1. Whether such damage or destruction was caused by a **COVERED PERIL** under this policy or by an accident insured against by such boiler and machinery insurance policy; or

2. The extent of participation of this policy and of such boiler and machinery insurance policy in a loss which is insured against, partially or wholly, by any or all policies;

we shall, upon written request of the **NAMED INSURED**, pay to the **NAMED INSURED,** one-half of the amount of loss which is in disagreement, but in no event more than we would have paid if there had been no boiler and machinery insurance policy in effect, subject to the following conditions:

3. The amount of the loss which is in disagreement after making provisions for any undisputed claims payable under the said policies and after the amount of loss is agreed upon by the **INSURED** and the two insurers, is limited to the minimum amount remaining payable by any or all policies;

4. The boiler and machinery insurer shall simultaneously pay to the **INSURED** one-half of said amount which is in disagreement;

5. The payments by the two insurers hereunder and acceptance of the same by the **INSURED** signify the agreement of the two insurers to submit to and proceed with arbitration within ninety (90) days of such payments. The arbitrators shall be three in number, one of whom shall be appointed by the boiler and machinery insurer and one of whom shall be appointed by us and the third appointed by consent of the other two, the decision by the arbitrators shall be binding on the two insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

6. The **INSURED** agrees to cooperate in connection with such arbitration but not to intervene within;

7. The provisions of this clause shall not apply unless such other policy issued by the boiler and machinery insurer contains a similar clause or is similarly endorsed;

8. Acceptance by the **INSURED** of sums paid pursuant to the provisions of this clause including an arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the **INSURED** against any of the two insurers.

**J.   LEGAL ACTION AGAINST US**:   No one may bring a legal action against us under **COVERAGE SECTION I** unless:

1. There has been full compliance with all of the terms of this **COVERAGE SECTION I**; and

2. The action is brought within two years after the date on which the direct physical loss or damage occurred.

**COVERAGE SECTION I EXCLUSIONS**

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any loss, damage or expense, whether direct or consequential, which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any loss, damage, expense, or loss of use of property, whether direct or consequential, caused by or resulting from the presence of asbestos or lead in any form, except as covered in **COVERAGE SECTION I ADDITIONAL COVERAGE D**.

**C.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from the enforcement of any ordinance or law:

1. Regulating the construction, use or repair of any property; or

2. Requiring the tearing down of any property, including the cost of removing its debris.

This ordinance or law exclusion applies whether the loss, damage or expense is caused by or results from:

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

    a.  An ordinance or law that is enforced even if the property has not been damaged; or

    b.  The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

This exclusion does not apply to the extent coverage is provided under **COVERAGE SECTION I ADDITIONAL COVERAGE D**.

**D.**  Any loss, damage or expense whether direct or consequential, caused by or resulting from **FLOOD AND SURFACE WATER** to any property located in a Special Flood Hazard Area (SFHA), generally meaning a High Risk Area or a High Risk Coastal Area. These properties are typically assigned to:

    1.  Zone A, AO, AH, A1 through 30, AE, A99, AR, AR/A1 through 30, AR/AE, AR/AO, AR/AH, AR/A, VO, V1 through 30, VE, or V; or

    2.  A similar high risk rating;

by or through cooperation or contract with the Federal Emergency Management Agency (FEMA) or a successor or equivalent organization.

This exclusion applies regardless of whether **FLOOD AND SURFACE WATER** is caused by or results from an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water**.**

**E.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from nuclear reaction or radiation, or radioactive contamination.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire, but only in those jurisdictions where it is required by law and then only to the extent of the minimum requirements of such law.

**F.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under **COVERAGE SECTION I**.

**G.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from nesting, infestation or discharge or release of waste products or secretion by birds, moth, vermin, termite, insects, or other animals; by wear, rust, tear, lack of proper maintenance; or by gradual deterioration, wet rot or dry rot.

**H.**  Any loss, damage or expense, whether direct or consequential, caused by, resulting from or in any manner related to **FUNGAL PATHOGENS**, Virus or Bacteria whether or not there is another peril which may have contributed concurrently or in any sequence to a loss. But if **FUNGAL PATHOGENS** or Bacteria results in a **COVERED PERIL**, we will pay for the loss or damage caused by that **COVERED PERIL**.

This exclusion does not apply when **FUNGAL PATHOGENS** or Bacteria directly results from a **NAMED PERIL**.

**I.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of **POLLUTANTS**, except to the extent coverage is provided under **COVERAGE SECTION I ADDITIONAL COVERAGE B**.

**J.**  Any loss, damage or expense, whether direct or consequential, caused by or resulting from loss of use (except as covered under the **EXTRA EXPENSE** and/or the **BUSINESS INCOME** EXTENSIONS), delay or loss of markets.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**K.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from mechanical breakdown, including rupture or bursting caused by or resulting from centrifugal force, but not excluding any loss arising from a **COVERED PERIL** directly resulting from the mechanical breakdown.

**L.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from the explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the **INSURED**, or operated under the **INSURED'S** control.

But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**M.** Any loss, damage, expense or loss of use, whether direct or consequential, of electrical appliances or devices of any kind, including wiring, arising from electrical injury or disturbance to the said electrical appliances or devices or wiring from artificially generated electrical current unless fire ensues, and then only for direct loss or damage caused by such ensuing fire, except as may be covered under **DATA PROCESSING**.

**N.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from variation of humidity or temperature, shrinkage, evaporation, loss of weight or leakage; unless a loss from a **COVERED PERIL** ensues, and then only for direct physical loss or damage arising from the **COVERED PERIL**.

**O.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from normal settling, cracking, normal shrinkage, or expansion of foundations, floors or ceilings.

**P.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from inventory shortage, mysterious disappearance or loss resulting from any kind of infidelity or dishonesty on the part of the **INSURED** or any employees; whether alone or in collusion with others.

**Q.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from penalties for non-completion or delay as respects property in course of construction or undergoing renovation.

**R.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from inherent or latent defect, except collapse of a building or any part of a building. Collapse as used in this exclusion does not include normal settling, shrinkage, or expansion.

**S.** Any loss, damage or expense, whether direct or consequential, caused by or resulting from faulty, inadequate or defective:

1. Planning, zoning, development, surveying, siting;

2. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

3. Materials used in repair, construction, renovation or remodeling; or

4. Maintenance;

to part of, or all of, any property on or off premises described in the **SCHEDULE OF LOCATIONS**.

But if an excluded peril that is listed in 1. to 4. above results in a  **COVERED PERIL**, we will pay for the loss or damage caused by that **COVERED PERIL**.

**T.** Any loss, damage or expense, whether direct or consequential, to animals.

**U.** Any loss, damage or expense, whether direct or consequential, to aircraft.

**V.** Any loss, damage or expense, whether direct or consequential, to watercraft over 50 feet in length.

**W.** Any loss, damage or expense, whether direct or consequential, to roadways or other paved surfaces, tunnels, bridges, dams, dikes, levees, reservoirs, bulkheads, pilings, piers, wharves or docks.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**X.** Any loss, damage or expense, whether direct or consequential, to standing timber, growing crops, land and land value, or landscaping, unless such property is clearly described and specific values to replace the property are shown in the **SCHEDULE OF LOCATIONS**.

**Y.** Any loss, damage or expense, whether direct or consequential, to accounts, bills, currency, **MONEY**, food stamps, notes, **SECURITIES**, deeds, evidences of debt, (lottery tickets held for sale are not **SECURITIES**) except as otherwise covered under **ACCOUNTS RECEIVABLE** or **DATA PROCESSING**.

**Z.** Any loss, damage or expense, whether direct or consequential, to underground pipes, sewers, flues and drains outside of the covered building, unless as otherwise listed in the **SCHEDULE OF LOCATIONS**.

**AA.** Any loss, damage or expense, whether direct or consequential, to **ACCOUNTS RECEIVABLE** due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning, or as covered under **DATA PROCESSING**.

**BB.** Any loss, damage or expense, whether direct or consequential, or loss of access, loss of use, or loss of functionality to:

1. **ELECTRONIC DATA** due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning;

2. **ELECTRONIC DATA** caused by or resulting from a Computer Virus or by Computer Hacking;

3. **COMPUTER SYSTEMS** and/or **ELECTRONIC DATA** due to dryness or dampness of atmosphere, extremes of temperature, corrosion or rust, unless directly resulting from physical damage to the **COMPUTER SYSTEM'S** air conditioning facilities and directly caused by a **COVERED PERIL**;

4. **COMPUTER SYSTEMS** and/or **ELECTRONIC DATA** due to loss of or damage to **ELECTRONIC DATA** for accounts, bills, evidences of debt, **VALUABLE PAPERS**, records, abstracts, deeds, manuscripts or other documents, except as they may be converted to data processing media form, and then only in that form;

5. **COMPUTER SYSTEMS** and/or **ELECTRONIC DATA** due to loss or damage caused by or resulting from error in machine programming or instructions to machine.

As used in this exclusion:

Computer Hacking means an unauthorized intrusion by an individual or group of individuals, whether employed by the **INSURED** or not, into a **COMPUTER SYSTEM**.

Computer Virus means the introduction into a computer, **COMPUTER SYSTEM** or Web site of any malicious, self-replicating **ELECTRONIC DATA** processing code or other code.

Computer Hacking and Computer Virus are intended to result in, but are not limited to:

6. Deletion, destruction, generation, or modification of **ELECTRONIC DATA**;

7. Alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of **ELECTRONIC DATA**;

8. Observation, scanning, or copying of **ELECTRONIC DATA**;

9. Damage, destruction, inadequacy, malfunction, degradation, or corruption of any **COMPUTER SYSTEMS**; or

10. Denial of access to or denial of services from **COMPUTER SYSTEMS** or **ELECTRONIC DATA.**

**CC.** Any loss, damage or expense, whether direct or consequential, to, or loss of use of, power or communication transmission and distribution lines outside of a covered building, unless as otherwise listed on the **SCHEDULE OF LOCATIONS**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**DD.** Any loss, damage or expense, whether direct or consequential, to:

1. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

2. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**EE.** With respect to **BUSINESS INCOME**, **TUITION AND FEES**, **RENTAL VALUE** and **EXTRA EXPENSE**, the following exclusions also apply:

1. Any increase of loss, damage or expense caused by or resulting from:

   a. The **SUSPENSION**, lapse or cancellation of any lease, license, contract or order beyond the **PERIOD OF RESTORATION**;

   b. Interference at premises by strikers or other persons with the rebuilding, repairing or replacing of the property damaged or destroyed, or with the resumption or continuation of business;

2. Any other consequential loss.

**FF.** With respect only to **EXTRA EXPENSE**, the following exclusions apply:

1. The cost of repairing or replacing any of the Real or Personal Property covered hereunder, or the cost of research or other expense necessary to replace or restore damaged or destroyed books of account, abstracts, drawings, card index systems or other records (including film, tape, disc, drum, cell or other magnetic recordings or **ELECTRONIC DATA**), that have been damaged or destroyed by a **COVERED PERIL**, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing loss under this policy. In no event shall such excess cost exceed the amount by which the total **EXTRA EXPENSE** loss otherwise payable under this policy is thereby reduced.

2. Caused by or resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a **COVERED PERIL** under this policy ensues from theft or attempted theft, and then we are liable for only such ensuing loss.

**GG.** With respect to **PERSONAL PROPERTY IN TRANSIT**, the following exclusions also apply:

1. Any loss, damage or expense, whether direct or consequential, caused by or resulting from shrinkage, evaporation, loss of weight, leakage, breakage of glass or other fragile articles, marring, scratching, exposure to light, or change in color, texture or flavor, unless such loss is caused by a **COVERED PERIL**;

2. Any loss, damage or expense, whether direct or consequential, caused by or resulting from misappropriation, conversion, infidelity or any dishonest act on the part of the **INSURED** or other party of interest, or employees or agents or others to whom the property may be delivered or entrusted (carriers for hire excepted);

3. Any loss, damage or expense, whether direct or consequential, caused by or resulting from breakdown or malfunction of refrigerating units;

4. Any loss, damage or expense, whether direct or consequential, to shipments by mail after delivery into the custody of any governmental postal service.

## COVERAGE SECTION I DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.** **ACCOUNTS RECEIVABLE** means the sums due the **INSURED** from customers, interest charges on any loan to offset impaired collections pending repayment of such sums, and collection expense in excess of normal collection cost.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**ACCOUNTS RECEIVABLE** does not include **ELECTRONIC DATA,** programs or instructions used in the **INSURED'S ELECTRONIC DATA** processing **OPERATIONS**, including the materials on which **ELECTRONIC DATA** is recorded.

B. **BUSINESS INCOME** means the:

   1. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

   2. Continuing normal operating expenses incurred, including payroll.

C. **COMPUTER SYSTEM** means

   1. Computers and related peripheral components;

   2. Systems and applications software;

   3. Terminal devices; and

   4. Related communications networks;

by which **ELECTRONIC DATA** is collected, transmitted, processed, stored and retrieved.

**COMPUTER SYSTEMS** do not include security systems.

D. **COVERED PERIL** means risks of direct physical loss or damage, unless the loss or damage is excluded in **GENERAL POLICY EXCLUSIONS**, **COVERAGE SECTION I EXCLUSIONS** or elsewhere in **COVERAGE SECTION I**, or in an endorsement attached to this policy.

E. **DATA PROCESSING** means the **COMPUTER SYSTEMS** and **ELECTRONIC DATA**  owned, leased or rented, or under the control of the **INSURED** or for which the **INSURED** is liable.

F. **EXTRA EXPENSE** means the excess (if any) of the total cost incurred during the **PERIOD OF RESTORATION** chargeable to the continuance of the **INSURED'S OPERATIONS**, over and above the total cost that would normally have been incurred to conduct those **OPERATIONS** during the same period had there been no direct physical loss or damage to the **PROPERTY OF THE INSURED**.

Any salvage value of property obtained for temporary use during the **PERIOD OF RESTORATION** which remains after resumption of **NORMAL OPERATIONS**, will be taken into consideration in the adjustment of any loss incurred.

G. **FINE ARTS** means paintings, etchings, pictures, tapestries, and other bona fide works of art including but not limited to statuary, marbles, bronzes, antique furniture, rare books, antique silver, rare manuscripts, porcelains, rare glass, and bric-a-brac of rarity, historical value or artistic merit.

H. **NAMED PERIL** means the following:  Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

   1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.  This peril does not include:

      a. The cost of filling sinkholes; or

      b. Sinking or collapse of land into manmade underground cavities.

   2. Falling objects does not include loss or damage to:

      a. Personal property in the open; or

      b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance, that is located on a premises described in the **SCHEDULE OF LOCATIONS** and contains water or steam.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**I.** **NAMED WINDSTORM** means an atmospheric disturbance marked by high winds, with or without precipitation that has been declared by the National Weather Service to have wind speeds in excess of 39 miles an hour.

**J.** **NORMAL** with respect to **EXTRA EXPENSE** means the condition that would have existed had no loss occurred.

**K.** **OCCURRENCE**, except with respect to the perils of **FLOOD AND SURFACE WATER** and **EARTHQUAKE**, means an accident, incident, or a series of accidents or incidents, arising immediately out of one single event or originating cause and includes all resultant or concomitant losses wherever located.

With respect to **FLOOD AND SURFACE WATER** and **EARTHQUAKE**, **OCCURRENCE** is further defined in the definitions of **FLOOD AND SURFACE WATER** and **EARTHQUAKE**.

**L.** **OPERATIONS** means:

1. The **INSURED'S** business activities occurring at the premises described in the **SCHEDULE OF LOCATIONS**;

2. The **INSURED'S** school activities at the described premises (only if a limit is shown for **TUITION AND FEES** in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**); and

3. The tenantability of the premises described in the **SCHEDULE OF LOCATIONS** (only if a limit is shown for **RENTAL VALUE** in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**).

**M.** **PERIOD OF RESTORATION**:

1. Except with respect to **TUITION AND FEES,** means the period of time that:

   a. Begins after direct physical loss or damage to the **PROPERTY OF THE INSURED** caused by any **COVERED PERIL** at the premises described in the **SCHEDULE OF LOCATIONS**; and

   b. Ends the earlier of the following dates, subject to a maximum period of 365 days:

      (1) The date when the property at the premises described in the **SCHEDULE OF LOCATIONS** is repaired, rebuilt or replaced with reasonable speed or similar quality; or

      (2) The date when the **INSURED'S OPERATIONS** are resumed at a new permanent location.

   If damage involved was to a building being built or altered, the **INSURED** can choose to have the **PERIOD OF RESTORATION** start on the date the **INSURED** would have begun **OPERATIONS** in the building instead of on the date of damage. The time limitations described in Paragraphs 1.a. and b. above will apply no matter when the **PERIOD OF RESTORATION** begins.

2. With respect to **TUITION AND FEES** means the period of time that:

   a. Begins after direct physical loss or damage to the **PROPERTY OF THE INSURED** caused by any **COVERED PERIL** at the premises described in the **SCHEDULE OF LOCATIONS**; and

   b. Ends on the earlier of:

      (1) The day before the opening of the next school term following the date when, with reasonable speed and similar quality, the property at the described premises is repaired, rebuilt or replaced; or

      (2) The date when the school term is resumed at a new permanent location.

3. With respect to Paragraphs 1. and 2. above:

   **PERIOD OF RESTORATION** does not include any increased period required due to the enforcement of any ordinance or law that:

   a. Regulates the construction, use or repair, or requires the tearing down of any property; or

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

    b.  Requires any **INSURED** or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**, asbestos, lead, **FUNGAL PATHOGENS**, virus or bacteria.

    The **PERIOD OF RESTORATION** is not limited by the expiration date of this policy.

**N.**  **RENTAL VALUES** means the:

1.  Total anticipated rental income from tenant occupancy at the premises described in the **SCHEDULE OF LOCATIONS** as furnished and equipped by the **INSURED**;

2.  Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be the **INSURED'S** obligations; and

3.  Fair **RENTAL VALUES** of any portion of the premises described in the **SCHEDULE OF LOCATIONS** which is occupied by the **INSURED**.

**O.**  **SCHEDULE OF LOCATIONS** means the most recent Statement of Values, **SCHEDULE OF LOCATIONS** or any similar Schedule describing covered premises and values on file with us or the Program Administrator.

**P.**  **SUSPENSION** means:

1.  The slowdown or cessation of your business or school activities; or

2.  That part or all of the premises described in the **SCHEDULE OF LOCATIONS** that is rendered untenantable if, coverage for **BUSINESS INCOME** including **RENTAL VALUE**, or coverage for **RENTAL VALUE**, applies.

**Q.**  **TUITION AND FEES** means the total anticipated income from tuition and related fees from students, including fees from room, board, laboratories, and other similar sources.

    **TUITION AND FEES** do not include research grants.

**R.**  **VALUABLE PAPERS** means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts.

    **VALUABLE PAPERS** do not include: **MONEY**, **SECURITIES**, **ELECTRONIC DATA**, programs or instructions used in the **INSURED'S ELECTRONIC DATA** processing **OPERATIONS**, including the materials on which **ELECTRONIC DATA** is recorded.

**COVERAGE SECTION II GENERAL LIABILITY**

**COVERAGE SECTION II INSURING AGREEMENTS**

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

**A.**  **GENERAL LIABILITY**:  We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally obligated to pay by reason of the liability imposed upon the **INSURED** by law or assumed by the **INSURED** under contract or agreement, for damages, direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY**, **BODILY INJURY** or **PROPERTY DAMAGE**, suffered or alleged to have been suffered by any person(s) or organization(s) arising out of any **OCCURRENCE** from any cause including **LIQUOR LIABILITY** or **INCIDENTAL MEDICAL MALPRACTICE**, happening during the **PERIOD OF INSURANCE**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

This insurance covers **PERSONAL INJURY** arising out of an offense committed during the course of the **NAMED INSURED'S** business, which takes place in the policy territory, and during the **PERIOD OF INSURANCE**.

This insurance covers **BODILY INJURY** and **PROPERTY DAMAGE**:

1.  Arising out of an **OCCURRENCE** which takes place in the policy territory and which occurs during the **PERIOD OF INSURANCE**; and

2.  Which is not a continuation of, resumption of, or change in any **BODILY INJURY** or **PROPERTY DAMAGE** that was known to have occurred in whole or in part by a **DESIGNATED INSURED** prior to the inception date of the **PERIOD OF INSURANCE**.

**B.  PREMISES MEDICAL PAYMENTS**:  We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all reasonable **MEDICAL PAYMENTS** incurred by the **INSURED** for others (except employees of the **INSURED** injured in the course of their employment), as are necessary at the time of an **OCCURRENCE** on account of **BODILY INJURY**. **BODILY INJURY** must occur on premises owned or rented by the **INSURED**, on ways next to premises owned or rented by the **INSURED** or because of operations of the **INSURED**. This coverage applies only if a **PREMISES MEDICAL PAYMENTS** limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

## COVERAGE SECTION II LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **OCCURRENCE** for **COVERAGE SECTION II GENERAL LIABILITY** for the **LIMIT OF INSURANCE** as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** for each **OCCURRENCE** under **COVERAGE SECTION II GENERAL LIABILITY LIMIT** for all coverages under **COVERAGE SECTION II** combined. If an Annual Aggregate applies to any coverage under this **COVERAGE SECTION**, the total Aggregate **LIMIT OF INSURANCE** for such coverage under this **COVERAGE SECTION** shall not exceed the limit as stated in the applicable of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, locations, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

## COVERAGE SECTION II CONDITIONS

The following condition applies in addition to the **GENERAL POLICY CONDITIONS**:

**KNOWLEDGE OF BODILY INJURY OR PROPERTY DAMAGE**: Knowledge of **BODILY INJURY** or **PROPERTY DAMAGE** will be deemed to have occurred at the earliest of the following times:

1.  When a **CLAIM**, **SUIT**, or demand for damages alleging **BODILY INJURY** or **PROPERTY DAMAGE** is received by any **DESIGNATED INSURED**;

2.  When any **DESIGNATED INSURED** reports the **BODILY INJURY** or **PROPERTY DAMAGE** to us or any other insurer; or

3.  When any **DESIGNATED INSURED** becomes aware of anything that indicates that **BODILY INJURY** or **PROPERTY DAMAGE** may have occurred or is occurring.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## COVERAGE SECTION II EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** **BODILY INJURY** or **PROPERTY DAMAGE**, which the **INSURED** intended or expected; unless resulting from:

    1.  An act alleged to be assault and battery for the purpose of preventing injury to persons or damage to property;

    2.  Corporal punishment (unless providing coverage for corporal punishment is prohibited by law).

**C.** **PROPERTY DAMAGE** to:

    1.  **PROPERTY OF THE INSURED**; or personal property in the care, custody or control of an **INSURED**; or

    2.  Premises the **NAMED INSURED** sells, gives away or abandons, if the **PROPERTY DAMAGE** arises out of any part of those premises.

**D.** **BODILY INJURY** to:

    1.  An employee of an **INSURED** arising out of and in the course of:

        (a)  Employment by an **INSURED**; or

        (b)  Performing duties related to the conduct of an **INSURED'S** business; or

    2.  The spouse, child, parent, brother or sister of that employee as a consequence of paragraph 1. above.

This exclusion applies:

    3.  Whether an **INSURED** may be liable as an employer or in any other capacity; or

    4.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**E.** Any **CLAIM** arising from **WRONGFUL ACTS**.

**F.** Any **CLAIM** arising from **LAW ENFORCEMENT ACTIVITIES**.

**G.** Any **CLAIM** arising out of an **EMPLOYMENT PRACTICES VIOLATION**.

**H.** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

    1.  The ownership, entrustment, maintenance, operation, use, loading or unloading of **AUTOMOBILES**; or while **AUTOMOBILES** are being transported; or

    2.  The transportation of **MOBILE EQUIPMENT** by an **AUTOMOBILE** owned or operated by or rented or loaned to any **INSURED**.

This exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **INSURED**.

**I.** **PERSONAL INJURY** arising out of:

    1.  Oral or written publication, if done by or at the direction of the **INSURED** with knowledge of its falsity;

    2.  Oral or written publication of material whose first publication of material took place before the beginning of the **PERIOD OF INSURANCE**.

**J.** Any liability arising out of the complete or partial failure to adequately supply fuel or power.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## COVERAGE SECTION II DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.  LIQUOR LIABILITY** means indemnification for the **INSURED'S** liability for the sale, distribution or furnishing of alcoholic beverage by reason of any local, State or Federal liquor control laws in force at the time of the **OCCURRENCE**.

**B.  INCIDENTAL MEDICAL MALPRACTICE** means **BODILY INJURY** or **PERSONAL INJURY** arising out of the rendering of or failure to render emergency and/or first aid medical services by an **INSURED** which includes, but is not limited to, the dispensing of medication, the administering of inoculations, the administering of blood tests, and/or other similar services for medicines and/or tests normally administered by a Healthcare Department that are preventative in nature, do not require or involve advanced medical diagnosis, and do not require or result in overnight stays in a medical facility.

However, **INCIDENTAL MEDICAL MALPRACTICE** does not include services provided by:

1.  A hospital, clinic, or emergency room facility;

2.  A physician, medical doctor, osteopath, chiropractor, resident, extern, or intern;

3.  A psychiatrist;

4.  A pharmacist;

5.  A dentist, orthodontist, or periodontist.

**C.  OCCURRENCE** with respect to **BODILY INJURY** and **PROPERTY DAMAGE** means an accident or a happening or event including continuous or repeated exposure to substantially the same general harmful conditions which results in **BODILY INJURY** or **PROPERTY DAMAGE**.

All **BODILY INJURY** to one or more persons and/or **PROPERTY DAMAGE** arising out of an accident or a happening or event including continuous or repeated exposure to substantially the same general harmful conditions shall be deemed one **OCCURRENCE**.

**OCCURRENCE** with respect to **PERSONAL INJURY** means the offenses specified in the **PERSONAL INJURY** definition. All injuries and damages arising out of substantially the same **PERSONAL INJURY** regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one **OCCURRENCE**.

Only one policy, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **OCCURRENCE**.

## COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES

## COVERAGE SECTION III INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

**LAW ENFORCEMENT ACTIVITIES**:  We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally obligated to pay by reason of the liability imposed upon the **INSURED** by law for damage, direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY**, **BODILY INJURY** or **PROPERTY DAMAGE** suffered or alleged to have been suffered by any person(s) or organization(s) arising out of **LAW ENFORCEMENT ACTIVITIES**, including **INCIDENTAL MEDICAL MALPRACTICE** arising out of **LAW ENFORCEMENT ACTIVITIES**, happening during the **PERIOD OF INSURANCE**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

This insurance covers **PERSONAL INJURY** arising out of an offense committed during the course of the **NAMED INSURED'S LAW ENFORCEMENT ACTIVITIES**, if the offense was committed: within the policy territory; and during the **PERIOD OF INSURANCE**.

This insurance covers **BODILY INJURY** and **PROPERTY DAMAGE**:

1. Arising out of an **OCCURRENCE** which takes place in the policy territory and which occurs during the **PERIOD OF INSURANCE**;

2. Which is not a continuation of, resumption of, or change in any **BODILY INJURY** or **PROPERTY DAMAGE** that was known to have occurred in whole or in part by a **DESIGNATED INSURED** prior to the inception date of the **PERIOD OF INSURANCE**.

## COVERAGE SECTION III LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **OCCURRENCE** for **COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES** for the **LIMIT OF INSURANCE** as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** for each **OCCURRENCE** under **COVERAGE SECTION III LAW ENFORCEMENT ACTIVITIES** for all coverages under **COVERAGE SECTION III** combined. If an Annual Aggregate applies to any coverage under this **COVERAGE SECTION**, the total Aggregate **LIMIT OF INSURANCE** for such coverage under this **COVERAGE SECTION** shall not exceed the limit as stated in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, locations, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

## COVERAGE SECTION III CONDITIONS

The following condition applies in addition to the **GENERAL POLICY CONDITIONS**:

**KNOWLEDGE OF BODILY INJURY OR PROPERTY DAMAGE**: Knowledge of **BODILY INJURY** or **PROPERTY DAMAGE** will be deemed to have occurred at the earliest of the following times:

1. When a **CLAIM**, **SUIT**, or demand for damages alleging **BODILY INJURY** or **PROPERTY DAMAGE** is received by any **DESIGNATED INSURED**;

2. When any **DESIGNATED INSURED** reports the **BODILY INJURY** or **PROPERTY DAMAGE** to us or any other insurer; or

3. When any **DESIGNATED INSURED** becomes aware of anything that indicates that **BODILY INJURY** or **PROPERTY DAMAGE** may have occurred or is occurring.

## COVERAGE SECTION III EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy, whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any **CLAIM** or **SUIT** for **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL INJURY**, including any award of attorneys fees and costs, resulting from:

1. Any knowing and intentional violation of any subsection of Title 42 of the U.S. Code, including but not limited to 42 U.S.C § 1981 thru 42 U.S.C. §1989 and 42 U.S.C. §1997, and any amendments thereto or any similar Federal, State or local statute;

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

2. Any knowing and intentional deprivation of any rights protected under the United States Constitution or the Constitution of any State, Territory, or Protectorate of the United States;

3. Any act which is not reasonably related to the execution and/or enforcement of the law; or

4. Any act committed with the knowledge and intent to cause **BODILY INJURY or PROPERTY DAMAGE**, or which could reasonably be expected to cause **BODILY INJURY** or **PROPERTY DAMAGE**, unless the act of the **INSURED** was reasonably necessary to lawfully prevent injury to persons or damage to property.

However, Exclusion **B.** shall not apply to any vicarious liability on the part of the **NAMED INSURED** arising solely out of an act by any other **INSURED** resulting from **LAW ENFORCEMENT ACTIVITIES** and excluded herein, but this provision applies only to the liability of the **NAMED INSURED** to pay any settlement, verdict or judgment; providing that the sole liability imposed on the **NAMED INSURED** does not arise from any contractual duty to indemnify an **INSURED**.

**C.** Damage to or destruction of **PROPERTY OF THE INSURED**.

**D.** The cost of any investigation, disciplinary or criminal proceedings against an individual **INSURED** except we may, at our own option and expense, associate counsel in the defense of any such investigation, criminal or disciplinary proceeding. Should we elect to associate counsel, such elections shall not constitute a waiver or estoppel of any rights we may have pursuant to the terms, conditions, exclusions and limitations of this policy.

**E.** Any **CLAIM** arising from **WRONGFUL ACTS**.

**F.** Any **CLAIM** arising out of a breach of contract.

**G.** Any **CLAIM** arising from an **EMPLOYMENT PRACTICE VIOLATION**.

**H. PERSONAL INJURY** arising out of:

1. Oral or written publication, if done by or at the direction of the **INSURED** with knowledge of its falsity;

2. Oral or written publication of material whose first publication of material took place before the beginning of the **PERIOD OF INSURANCE**.

**I. BODILY INJURY** to:

1. An employee of an **INSURED** arising out of and in the course of:

    (a) Employment by an **INSURED**; or

    (b) Performing duties related to the conduct of an **INSURED'S** business; or

2. The spouse, child, parent, brother or sister of that employee as a consequence of 1. above.

This exclusion applies:

3. Whether an **INSURED** may be liable as an employer or in any other capacity; or

4. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**J. BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

1. The ownership, entrustment, maintenance, operation, use, loading or unloading of **AUTOMOBILES**, or while **AUTOMOBILES** are being transported; or

2. The transportation of **MOBILE EQUIPMENT** by an **AUTOMOBILE** owned or operated by or rented or loaned to any **INSURED**.

This exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **INSURED**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## COVERAGE SECTION III DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.  CLAIM** means all notices or **SUITS** demanding payment of money based on, or arising out of the same **OCCURRENCE** or a series of related **OCCURRENCES** by one or more **INSUREDS**.

**B.  INCIDENTAL MEDICAL MALPRACTICE** means **BODILY INJURY** or **PERSONAL INJURY** arising out of the rendering of or failure to render emergency and/or first aid medical services by an **INSURED** which includes, but is not limited to, the dispensing of medication, the administering of inoculations, the administering of blood tests, and/or other similar services for medicines and/or tests normally administered by a Healthcare Department that are preventative in nature, do not require or involve advanced medical diagnosis, and do not require or result in overnight stays in a medical facility.

However, **INCIDENTAL MEDICAL MALPRACTICE** does not include services provided by:

1.  A hospital, clinic, or emergency room facility;

2.  A physician, medical doctor, osteopath, chiropractor, resident, extern, or intern;

3.  A psychiatrist;

4.  A pharmacist;

5.  A dentist, orthodontist, or periodontist.

**C.  OCCURRENCE** with respect to **BODILY INJURY** and **PROPERTY DAMAGE** means an accident or a happening or event including continuous or repeated exposure to substantially the same general harmful conditions which results in **BODILY INJURY** or **PROPERTY DAMAGE**.

All **BODILY INJURY** to one or more persons and/or **PROPERTY DAMAGE** arising out of an accident or a happening or event including continuous or repeated exposure to substantially the same general harmful conditions shall be deemed one **OCCURRENCE**.

**OCCURRENCE** with respect to **PERSONAL INJURY** means the offenses specified in the **PERSONAL INJURY** definition.  All injuries and damages arising out of substantially the same **PERSONAL INJURY** regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one **OCCURRENCE**.

Only one policy, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **OCCURRENCE**.

## COVERAGE SECTION IV AUTOMOBILE LIABILITY

## COVERAGE SECTION IV INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

**A.  AUTOMOBILE LIABILITY**:  We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is obligated to pay by reason of the liability imposed upon the **INSURED** by law or assumed by the **INSURED** under contract or agreement, for damages, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, arising out of any **OCCURRENCE** on account of **BODILY INJURY**  and/or **PROPERTY DAMAGE** to which this insurance applies, arising out of the ownership, maintenance or use of any **AUTOMOBILE** including non-owned and hired **AUTOMOBILES** used in conjunction with your business, occurring during the **PERIOD OF INSURANCE**.

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**B. AUTOMOBILE MEDICAL PAYMENTS**: We agree, subject to the policy limitations, terms and conditions, to indemnify the **INSURED** for all reasonable **MEDICAL PAYMENTS** incurred by the **INSURED** for others (except employees of the **INSURED** injured in the course of their employment) as are necessary at the time of an **OCCURRENCE** on account of **BODILY INJURY** arising out of the use of any **AUTOMOBILE**. This coverage applies only if a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

## COVERAGE SECTION IV LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **OCCURRENCE** for **COVERAGE SECTION IV AUTOMOBILE LIABILITY** for the **LIMIT OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** per **OCCURRENCE** under **COVERAGE SECTION IV AUTOMOBILE LIABILITY LIMIT** for all coverage under **COVERAGE SECTION IV** combined.

The most we will indemnify the **INSURED** will not change regardless of the number of covered **AUTOMOBILES,** persons or organizations who are **INSUREDS**, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

## COVERAGE SECTION IV EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIMS** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B. BODILY INJURY** to:

    1. An employee of an **INSURED** arising out of and in the course of:

        (a) Employment by an **INSURED**; or

        (b) Performing duties related to the conduct of an **INSURED'S** business; or

    2. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph 1. above.

    This exclusion applies:

    3. Whether an **INSURED** may be liable as an employer or in any other capacity; or

    4. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**C. AUTOMOBILES** covered under this **COVERAGE SECTION IV** used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity.

**D.** Any obligation or liability imposed on an **INSURED**, or any loss, cost or expense arising directly or indirectly out of any: first party physical damage coverage; uninsured and/or underinsured motorist law; no fault law; or personal injury protection law.

## COVERAGE SECTION IV DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A. OCCURRENCE** means an accident or a happening or event, including continuous or repeated exposure to the same conditions which results in unexpected and unintended **BODILY INJURY** or **PROPERTY DAMAGE** during the **PERIOD OF INSURANCE**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

All **BODILY INJURY** to one or more persons and/or **PROPERTY DAMAGE** arising out of an accident or a happening or event including continuous or repeated exposure to the same conditions shall be deemed one **OCCURRENCE**. Only one policy, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **OCCURRENCE**.

B. **INSURED** means not only the **INSURED** as defined in the **GENERAL POLICY DEFINITIONS**, but under this **COVERAGE SECTION IV** also includes any person while using any covered **AUTOMOBILE** used in conjunction with your business with the permission of the **INSURED**.

## COVERAGE SECTION V ERRORS AND OMISSIONS

### THIS IS A CLAIMS MADE COVERAGE SECTION

**THIS COVERAGE SECTION PROVIDES COVERAGE ON A CLAIMS MADE BASIS.  IT APPLIES ONLY TO CLAIMS MADE AGAINST THE INSURED DURING THE PERIOD OF INSURANCE OR EXTENDED REPORTING PERIOD, IF APPLICABLE.  PLEASE READ CAREFULLY.**

### COVERAGE SECTION V INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

A. **ERRORS & OMISSIONS**:  We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of a **WRONGFUL ACT**, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of a **WRONGFUL ACT**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the Extended Reporting Period of this coverage, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION V**.

A **CLAIM** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of a **WRONGFUL ACT**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received or recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of one **WRONGFUL ACT** shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**. A **CLAIM** should not be prejudiced if the **INSURED** through clerical oversight or clerical mistake fails to notify us or the **INSURED'S** Third Party Claims Administrator.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**B. EMPLOYMENT PRACTICES LIABILITY**:  We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of an **EMPLOYMENT PRACTICE VIOLATION**, including mental anguish resulting from an **EMPLOYMENT PRACTICE VIOLATION**, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of an **EMPLOYMENT PRACTICE VIOLATION**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the Extended Reporting Period of this coverage, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION V**.

A **CLAIM** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of an **EMPLOYMENT PRACTICE VIOLATION**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received or recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of one **EMPLOYMENT PRACTICE VIOLATION** shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**. A **CLAIM** should not be prejudiced if the **INSURED** through clerical oversight or clerical mistake fails to notify us or the **INSURED'S** Third Party Claims Administrator.

We may, prior to any **CLAIM** or **SUIT** and at our sole discretion and expense, assist you with an Equal Employment Opportunity Commission investigation, or an equivalent State or local agency investigation. If we choose to help you with an investigation, our help will be strictly voluntary, and we may discontinue it at any time. You agree that our help does not admit, confirm, waive, estop, or in any way represent a determination of coverage of any alleged **EMPLOYMENT PRACTICE VIOLATION**.

**C. SEXUAL HARASSMENT**:  We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of a **WRONGFUL ACT** arising out of **SEXUAL HARASSMENT** by an employee or volunteer or more than one employee or volunteer acting in concert, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of **SEXUAL HARASSMENT**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the applicable Extended Reporting Period, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION V**.

A **CLAIM** because of **SEXUAL HARASSMENT** will be deemed to have been "first made" at the earlier of the following times:

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of **SEXUAL HARASSMENT**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received or recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of **SEXUAL HARASSMENT** by an employee or volunteer or more than one employee or volunteer acting in concert, shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**, regardless of:

5. The number of persons **SEXUALLY HARASSED**;

6. The number of locations where the **SEXUAL HARASSMENT** occurred;

7. The number of acts of **SEXUAL HARASSMENT** prior to or after the first **CLAIM** is made; or

8. The period of time over which the **SEXUAL HARASSMENT** took place, whether the **SEXUAL HARASSMENT** is during, before or after the **PERIOD OF INSURANCE**. However, only acts of **SEXUAL HARASSMENT** that take place after the applicable Retroactive Date and before the end of the **PERIOD OF INSURANCE** are covered.

The insurance under this **SEXUAL HARASSMENT** coverage does not apply to **SEXUAL ABUSE**, or to any **CLAIMS** arising from actual or alleged physical abuse arising out of **SEXUAL ABUSE** of any kind or to any **CLAIM** seeking damages, including defense of same, arising directly or indirectly from any actual or alleged participation in any act of **SEXUAL ABUSE** of any person, by any **INSURED**.

The insurance under this **SEXUAL HARASSMENT** coverage does not apply to either defense or indemnification of any employee or volunteer for **SEXUAL HARASSMENT**, with respect to any **CLAIM** based on or arising out of such **SEXUAL HARASSMENT**.  Such employee or volunteer is not covered under this coverage as respects such **CLAIM**.

All **CLAIMS** based on or arising out of the same **SEXUAL HARASSMENT** or a series of related **SEXUAL HARASSMENT** by one or more employees or volunteer workers shall be deemed one **SEXUAL HARASSMENT**. Only one policy issued by us, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **SEXUAL HARASSMENT**.

D.  **SEXUAL ABUSE**:  We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of a **WRONGFUL ACT** arising out of **SEXUAL ABUSE** by an employee or volunteer or more than one employee or volunteer acting in concert, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of **SEXUAL ABUSE**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the applicable Extended Reporting Period, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION V**.

A **CLAIM** because of **SEXUAL ABUSE** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of  **SEXUAL ABUSE**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

4. When notice of such **CLAIM** is received or recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

All **CLAIMS** based on or arising out of **SEXUAL ABUSE** by an employee or volunteer or more than one employee or volunteer acting in concert, shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**, regardless of:

5.   The number of persons **SEXUALLY ABUSED**;

6.   The number of locations where the **SEXUAL ABUSE** occurred;

7.   The number of acts of **SEXUAL ABUSE** prior to or after the first **CLAIM** is made; or

8.   The period of time over which the **SEXUAL ABUSE** took place, whether the **SEXUAL ABUSE** is during, before or after the **PERIOD OF INSURANCE**. However, only acts of **SEXUAL ABUSE** that take place after the applicable Retroactive Date and before the end of the **PERIOD OF INSURANCE** are covered.

The insurance under this **SEXUAL ABUSE** coverage does not apply to **SEXUAL HARASSMENT**, or to any **CLAIMS** arising from actual or alleged physical abuse arising out of **SEXUAL HARASSMENT** of any kind, or to any **CLAIM** seeking damages, including defense of same, arising directly or indirectly from any actual or alleged participation in any act of **SEXUAL HARASSMENT** of any person, by any **INSURED**.

The insurance under this **SEXUAL ABUSE** coverage does not apply to either defense or indemnification of any employee or volunteer for **SEXUAL ABUSE**, with respect to any **CLAIM** based on or arising out of such **SEXUAL ABUSE**. Such employee or volunteer is not covered under this coverage as respects such **CLAIM**.

All **CLAIMS** based on or arising out of the same **SEXUAL ABUSE** or a series of related **SEXUAL ABUSE** by one or more employees or volunteer workers' shall be deemed one **SEXUAL ABUSE**. Only one policy issued by us, one **SELF INSURED RETENTION**, and one **LIMIT OF INSURANCE** is applicable to any one **SEXUAL ABUSE**.

## COVERAGE SECTION V LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **CLAIM** for **COVERAGE SECTION V ERRORS AND OMISSIONS** for the **LIMIT OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** per **CLAIM** under **COVERAGE SECTION V** for all coverages under **COVERAGE SECTION V** combined. If an Annual Aggregate applies to any coverage under this **COVERAGE SECTION**, the total Aggregate **LIMIT OF INSURANCE** for such coverage and all corresponding **CLAIMS** under this **COVERAGE SECTION** shall not exceed the limit as stated in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, locations, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

## COVERAGE SECTION V CONDITIONS

The following conditions apply in addition to the **GENERAL POLICY CONDITIONS**:

**A.   BASIC EXTENDED REPORTING PERIOD**:

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the **PERIOD OF INSURANCE**, and lasts for sixty (60) days.

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

If, however, this policy and this **COVERAGE SECTION** are succeeded by similar Claims Made insurance coverage, with any insurer, on which the Retroactive Date is the same as or earlier than the Retroactive Date shown in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** of this policy, the succeeding insurance coverage shall be deemed to be a renewal of this policy, and the **INSURED** shall have no right to a Basic Extended Reporting Period from us.

The Basic Extended Reporting Period does not apply to **CLAIMS** [that are covered under any subsequent insurance applicable to this **COVERAGE SECTION** which the **INSURED** purchases, or that would have been covered under this **COVERAGE SECTION** but for exhaustion of the amount of insurance applicable to such **CLAIMS**.

**B.  SUPPLEMENTAL EXTENDED REPORTING PERIOD:**

We will provide a Supplemental Extended Reporting Period, as described below, if:

1.  This policy or this **COVERAGE SECTION** of this policy is cancelled or non-renewed; or

2.  We renew or replace this policy, or this **COVERAGE SECTION** of this policy, with insurance that does not apply to a **WRONGFUL ACT**, **EMPLOYMENT PRACTICE VIOLATION**, **SEXUAL HARASSMENT** or **SEXUAL ABUSE** on a Claims Made basis.

A Supplemental Extended Reporting Period of one year duration is available but only by endorsement to this policy and for an additional premium not to exceed 100% of the annual premium for this **COVERAGE SECTION**. This supplemental period starts when the Basic Extended Reporting Period ends.

The **INSURED** must give us a written request for the endorsement within thirty (30) days after the end of the **PERIOD OF INSURANCE**. The Supplemental Extended Reporting Period will not go into effect unless the **INSURED** pays the additional premium within thirty (30) days. This endorsement will set forth the terms consistent with the **COVERAGE SECTION**.

We shall determine the additional premium in accordance with its applicable rules, rates and underwriting practices. Coverage for **CLAIMS** received during such Supplemental Extended Reporting Period is excess over any other valid and collectible insurance available under any other policies.

The Extended Reporting Periods described in Paragraphs **A.** and **B.** above do not reinstate or increase the applicable **SELF INSURED RETENTION**, the **INSURED'S LOSS FUND**, the applicable **LIMIT OF INSURANCE**, or the **EXCESS LOSS FUND PROTECTION**.

The Extended Reporting Periods described in Paragraphs **A.** and **B.** above do not extend the **PERIOD OF INSURANCE** or change the scope of coverage provided within this **COVERAGE SECTION**. They apply to **CLAIMS** arising out of a **WRONGFUL ACT**, **EMPLOYMENT PRACTICE VIOLATION**, **SEXUAL HARASSMENT** or **SEXUAL ABUSE** that takes place before the end of the period that this policy and this **COVERAGE SECTION** are in force. Once in effect, Extended Reporting Periods may not be cancelled.

**COVERAGE SECTION V EXCLUSIONS**

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.**  Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.**  Any **CLAIM** for damages, whether direct or consequential, for **BODILY INJURY**, **PERSONAL INJURY**, or **PROPERTY DAMAGE** except to the extent that coverage is provided for **EMPLOYMENT PRACTICES VIOLATIONS**, **SEXUAL ABUSE** or **SEXUAL HARASSMENT** under this **COVERAGE SECTION V**.

**C.**  Any **CLAIM** based upon or attributable to any **INSURED** gaining any personal profit or advantage to which they were not legally entitled, including remuneration paid in violation of law as determined by the courts.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**D.** Any **CLAIM** based upon or attributable to the rendering or failure to render any professional opinion, treatment, consultation or service, unless acting within the scope of their duties as an **INSURED**.

**E.** Any **CLAIM** for which an **INSURED** is entitled to indemnity under any policy or policies the term of which has expired prior to the Effective Date of this policy, or for which an **INSURED** would be entitled to indemnity except for the exhaustion of the limit of such prior insurance.

**F.** Any **CLAIM** arising out of any pending or prior litigation or hearing, as well as future **CLAIMS** arising out of any pending or prior litigation or hearing. If this policy is a renewal of a policy issued by us, this exclusion shall only apply with respect to **CLAIMS** arising out of any pending or prior litigation or hearing, prior to the effective date of the first policy issued and continuously renewed by us.

**G.** Any **CLAIM** based upon or attributable to any failure or omission of the **INSURED** to effect, maintain or administer any insurance, bond or self-insurance fund.

**H.** Any **CLAIM** alleging, based upon, arising out of or attributable to breach of any express, implied, actual or constructive contract, agreement, warranty, guarantee or promise, unless liability would have attached to the **INSURED** even in the absence of such contract, agreement, warranty, guarantee or promise.

**I.** Any **CLAIM** arising out of **LAW ENFORCEMENT ACTIVITIES** of any of your law enforcement departments or agencies.

**J.** Any **CLAIM** for bonuses, fringe benefits, educational expenses, overtime, non-wage future benefits, severance obligations or similar damages, even if designated as liquidated damages, under any Federal, State or local statute, rule, ordinance, or regulation.

**K.** Any **CLAIM** arising out of collective bargaining agreements or benefits bargaining agreements.

**L.** Any **CLAIM** arising out of: any tax assessments or adjustments; the collection, refund, disbursement or application of any taxes; or failure to anticipate tax revenue shortfalls.

**M.** Any **CLAIM** arising out of the destruction or disappearance of money, securities or the loss of use thereof.

**N.** Any **CLAIM** arising out of the ownership, entrustment, maintenance, operation, use, loading or unloading of **AUTOMOBILES**; or the transport of any person.

**O.** Any **CLAIM** resulting from actions taken as a participant, member, partner, director or shareholder of any Board, Commission, partnership, association or corporation, not operated by the **NAMED INSURED** or under the jurisdiction of the **NAMED INSURED**.

**P.** Any **CLAIM**  arising out of **SEXUAL ABUSE** by any employee or volunteer worker committed after first discovery by any of the **NAMED INSURED'S** officials, trustees, directors, officers, or partners, of **SEXUAL ABUSE** by such employee or volunteer worker, whether **SEXUAL ABUSE** was before or after such employee or volunteer worker was hired by the **NAMED INSURED**. However, discovery does NOT include discovery by an official, trustee, director, officer, or partner who committed such **SEXUAL ABUSE**.

**Q.** Any **CLAIM** arising out of or in any way involving any employee benefit plan, except as covered under this **COVERAGE SECTION V INSURING AGREEMENT B.** for discrimination.

**R.** Any cost, civil fine, penalty or expense against any **INSURED** arising from any complaint or enforcement action from any Federal, State or local governmental regulatory agency.

This exclusion does not apply to the extent coverage is provided for **EMPLOYMENT PRACTICE VIOLATIONS** for a **CLAIM** by an employee.

**S.** Any **CLAIM**, regardless of the cause of action or legal theory alleged, related to or arising out of the failure to provide an appropriate individualized education program, related facilities or services. This includes but is not limited to, any cause of action under Individuals With Disabilities Education Improvement Act of 2004 (IDEA), Section 504 of the Rehabilitation Act of 1973, Americans With Disabilities Act of 1990, any amendments to such laws or under any similar State or Federal statute or other law, administrative rule or regulation.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## COVERAGE SECTION V DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.** With respect to **COVERAGE SECTION V**, **CLAIM** means:

1. All notices or **SUITS** demanding payment of money based on, or arising out of the same **WRONGFUL ACT** or a series of related **WRONGFUL ACTS** by one or more **INSUREDS**;

2. As respects **EMPLOYMENT PRACTICE VIOLATIONS**, all notices or **SUITS** demanding payment of money, or charges filed with the Equal Employment Opportunity Commission or comparable State agency based on, or arising out of the same **EMPLOYMENT PRACTICE VIOLATION** or a series of related **EMPLOYMENT PRACTICE VIOLATIONS** by one or more **INSUREDS**; or

3. All notices or **SUITS** demanding payment of money based on or arising out of the same **SEXUAL ABUSE** or **SEXUAL HARASSMENT** or series of **SEXUAL ABUSE** or **SEXUAL HARASSMENT** by one or more employees or volunteer workers of the **NAMED INSURED**.

## COVERAGE SECTION VI WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY FOR A QUALIFIED SELF-INSURER

### GENERAL

Coverage is provided for one or more of the coverages in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

### COVERAGE SECTION VI GENERAL

The following provisions apply to **COVERAGE SECTION VI**:

**WHO IS INSURED**:  The **NAMED INSURED** is insured if the **NAMED INSURED** is an employer named in the Declarations. If that employer is a partnership, joint venture or limited liability corporation and if the **NAMED INSURED** is a partner in the partnership or a member of the joint venture or limited liability corporation, such **NAMED INSURED** is insured, but only in the capacity as an employer of employees of the partnership, joint venture or limited liability corporation. If that employer is an association, pooling arrangement, or other organization that incorporates separate entities as participants, then the individual participants are also insured.

**QUALIFIED SELF-INSURER**:  The **NAMED INSURED** represents that the **NAMED INSURED** is a duly **QUALIFIED SELF-INSURER** under the **WORKERS' COMPENSATION LAW** of each **STATE** of hire and will maintain such qualifications while this policy is in effect. If the **NAMED INSURED** should terminate such qualifications or if the **NAMED INSURED'S** qualification as a self-insurer is cancelled or revoked while this policy is in effect, neither the amounts we will indemnify under this policy nor the **NAMED INSURED'S** responsibility for the **SELF-INSURED RETENTION** will be affected. We will not indemnify the **NAMED INSURED** or make any other payments for any amounts in excess of the amount that we would have been responsible for under this insurance if the **NAMED INSURED** had maintained their qualification as a self-insurer under the applicable **WORKERS' COMPENSATION LAW**.

### COVERAGE SECTION VI COVERAGE A WORKERS' COMPENSATION

### COVERAGE SECTION VI COVERAGE A INSURING AGREEMENT

We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **NAMED INSURED** when due for those sums that the **NAMED INSURED** shall become legally obligated to pay as a **QUALIFIED SELF-INSURER** under **WORKERS' COMPENSATION LAW**, subject to the terms of this policy, this **COVERAGE SECTION** and the **EXCLUSIONS** that follow. In addition, we will pay legal expenses, premiums to release attachments or appeal bonds, and expenses for lawyers and investigators and other persons for defense, settlement or investigation of **CLAIMS** or **SUITS**, that are directly related to

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

benefits to which this insurance applies. These expenses do not include: salaries and expenses of you, your employees, or us; service company fees; or Third Party Claims Administrator fees.

This insurance only applies to **BODILY INJURY** by accident or **BODILY INJURY** by disease including resulting death, provided:

1. The **BODILY INJURY** by accident occurs during the **PERIOD OF INSURANCE** of this policy and this coverage is in force;

2. The **BODILY INJURY** by disease is caused by or aggravated by the conditions of employment by the **NAMED INSURED** and the employee's last day of last exposure to the conditions causing or aggravating such **BODILY INJURY** by disease occurs during the **PERIOD OF INSURANCE** of this policy and this coverage is in force.

## COVERAGE SECTION VI COVERAGE A EXCLUSIONS

This **COVERAGE SECTION COVERAGE A** does not insure against:

**A.** Any **CLAIMS**, whether direct or consequential, or any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Punitive or exemplary **CLAIMS** because of:

    1. **BODILY INJURY** to any employee;

    2. The **NAMED INSURED'S** conduct or the conduct of anyone acting for the **NAMED INSURED** in investigation, trial or settlement, or failure to pay, or delay in payment of any Workers' Compensation **CLAIM**;

    3. The **NAMED INSURED'S** failure to comply with any health or safety law or regulation or any **WORKERS' COMPENSATION LAW**.

**C.** Any assessment made upon self-insurers, whether imposed by statute, regulation or otherwise.

**D.** Any payments in excess of benefits regularly provided by the **WORKERS' COMPENSATION LAW** and any related **CLAIM EXPENSES**, including, but not limited to, any excess payments and related **CLAIM EXPENSES** required because:

    1. The **NAMED INSURED** commits serious and willful misconduct;

    2. The **NAMED INSURED** knowingly employs an employee in violation of law;

    3. The **NAMED INSURED** fails to comply with a health or safety law or regulation;

    4. The **NAMED INSURED** discharges, coerces, or otherwise discriminates against an employee in violation of the **WORKERS' COMPENSATION LAW**; or

    5. The **NAMED INSURED** violates or fails to comply with any **WORKERS' COMPENSATION LAW**.

**E.** Any **CLAIM** or loss arising out of operations or workplaces regarding which any **WORKERS' COMPENSATION LAW** has been rejected, which are covered by primary workers' compensation or employers' liability insurance, or which are subject to a self-insurance program for workers' compensation or employers' liability other than the program for which this insurance was issued.

**F.** Any **CLAIM** or loss arising out of **BODILY INJURY**:

    1. Sustained while in, upon, entering, exiting or alighting from; or

    2. Resulting from being in or upon or exiting or alighting from;

    any aircraft owned, leased, rented, chartered, borrowed or operated by any **NAMED INSURED** or any **NAMED INSURED'S** employee.

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## COVERAGE SECTION VI COVERAGE B EMPLOYERS' LIABILITY

## COVERAGE SECTION VI COVERAGE B INSURING AGREEMENT

We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **NAMED INSURED** for **CLAIM EXPENSES** and **DAMAGES** that the **INSURED** is legally obligated to pay as a **QUALIFIED SELF-INSURER** of employers' liability, subject to the terms of this policy, this **COVERAGE SECTION** and the **EXCLUSIONS** that follow.

This insurance applies to **BODILY INJURY** by accident or **BODILY INJURY** by disease. This insurance applies only if:

**A.** The **BODILY INJURY** arises out of and in the course of the injured employee's employment by the **NAMED INSURED**;

**B.** The employment is necessary or incidental to the **NAMED INSURED'S** work;

**C.** The **BODILY INJURY** by accident occurs during the **PERIOD OF INSURANCE**;

**D.** The **BODILY INJURY** by disease is caused by or aggravated by the conditions of employment by the **NAMED INSURED** and the employee's last day of last exposure to the conditions causing or aggravating such **BODILY INJURY** by disease occurs during the **PERIOD OF INSURANCE**; and

**E.** The original **SUIT** and any related legal actions for **DAMAGES** for **BODILY INJURY** by accident or by disease are brought in the United States of America (including its territories or possessions) or Canada.

**BODILY INJURY** includes resulting death. A disease is not **BODILY INJURY** by accident unless it results directly from **BODILY INJURY** by accident. **BODILY INJURY** by disease does not include disease that results directly from a **BODILY INJURY** by accident.

## COVERAGE SECTION VI COVERAGE B EXCLUSIONS

This **COVERAGE SECTION COVERAGE B** does not insure against:

**A.** Any **CLAIMS**, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any **INSURED'S** obligation for **ULTIMATE NET LOSS** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to obligations for **ULTIMATE NET LOSS** that an **INSURED** would have in the absence of the contract or agreement.

**C.** Punitive, exemplary or multiplied **DAMAGES**.

**D.** Any **CLAIMS** arising out of **BODILY INJURY** to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers.

**E.** Any **CLAIMS** arising out of **BODILY INJURY** intentionally caused or aggravated by the **NAMED INSURED** or at the direction of the **NAMED INSURED**.

**F.** Any **CLAIMS** arising out of **BODILY INJURY** occurring outside the United States of America or its territories. This exclusion does not apply to **BODILY INJURY** to a citizen or resident of the United States of America who is temporarily outside the United States of America or its territories.

**G.** Any **CLAIMS** arising out of an **EMPLOYMENT PRACTICES VIOLATION**.

**H.** Any obligation imposed by:

    1. The Longshoremen's and Harbor Workers' Compensation Act (33 USC Sections 901-950);

    2. The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

    3. The Outer Continental Shelf Lands Act (43 USC Sections 1331-1356);

    4. The Defense Base Act (42 USC Sections 1651-1654);

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

    5.  The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942); or

    6.  Any other federal workers' or workmen's compensation law or other federal occupational disease law;

or any amendments to these laws.

**I.**  Any obligation imposed by:

    1.  The Federal Employers' Liability Act (45 USC Sections51-60); or

    2.  Any other Federal laws obligating an employer to pay **DAMAGES** to an employee due to **BODILY INJURY** arising out of or in the course of employment;

or any amendments to these laws.

**J.**  **DAMAGES** payable under:

    1.  The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872); or

    2.  Any other Federal law awarding **DAMAGES** for violation of the laws or regulations issued under the Act in 1. above;

or any amendments to these laws.

**K.**  **BODILY INJURY** to a master or member of the crew of any vessel.

**L.**  Fines or penalties imposed for violation of Federal or State law.

**M.**  **DAMAGES** arising out of operations for which the **NAMED INSURED** has violated or failed to comply with any **WORKERS' COMPENSATION LAW** or any Federal workers' compensation, occupational disease or similar laws.

**N.**  **DAMAGES** arising out of operations or workplaces regarding which any **WORKERS' COMPENSATION LAW** has been rejected, which are covered by primary workers' compensation or employers' liability Insurance, or which are subject to a self-insurance program for workers' compensation or employers' liability other than the program for which this insurance was issued.

**O.**  Any increase in **ULTIMATE NET LOSS** because of:

    1.  Increased or aggravated injury; or

    2.  A **SUIT** that is allowed;

due to conduct by the **NAMED INSURED** or on the **NAMED INSURED'S** behalf in the:

    3.  The investigation, handling, settlement, defense or appeal of any **CLAIM**; or

    4.  Payment or failure to pay any **CLAIM**.

**P.**  **BODILY INJURY**:

    1.  Sustained while in, upon, entering, exiting or alighting from; or

    2.  Resulting from being in or upon or exiting or alighting from;

any aircraft owned, leased, rented, chartered, borrowed or operated by any **NAMED INSURED** or any **NAMED INSURED'S** employee.

 

**COVERAGE SECTION VI SELF INSURED RETENTION AND LIMITS OF INSURANCE**

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one accident or disease for **COVERAGE SECTION VI WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY** for the **LIMIT OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

The **SELF INSURED RETENTION** and **LIMITS OF INSURANCE** apply to sums paid by the **NAMED INSURED** as a **QUALIFIED SELF-INSURER** of Workers' Compensation and Employers' Liability as follows:

1.  To one or more employees because of **BODILY INJURY** or death in any one accident.

2.  To any one employee for **BODILY INJURY** or death by disease.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

## COVERAGE SECTION VI DEFINITIONS

The following definitions are applicable as follows:

Definitions **A.** and **E.** replace any definitions to the contrary with the **GENERAL POLICY DEFINITIONS**; and

All other definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.  CLAIM**, as used in this **COVERAGE SECTION VI**, means an oral or written notice, including a **SUIT**, demanding Workers' Compensation benefits or payment of **DAMAGES**.

**B.  CLAIM EXPENSES** means allocated loss adjustment expenses actually paid by the **NAMED INSURED**, or incurred by us if we choose to defend the **NAMED INSURED**, that are directly related to benefits or **DAMAGES** to which this insurance applies. Allocated loss adjustment expenses are:

1.  Costs to investigate **CLAIMS** or arrange or negotiate settlement of **CLAIMS**;

2.  Costs to defend a **CLAIM**, including attorney fees and other litigation costs;

3.  Court costs taxed against the **NAMED INSURED** in a **SUIT**, but not including attorney fees or attorney expenses;

4.  The cost of bonds to appeal a judgment or award, but only for bond amounts within the applicable **LIMIT OF INSURANCE** less the **SELF-INSURED RETENTION**;

5.  The cost of bonds to release attachments, but only for bond amounts within the applicable **LIMIT OF INSURANCE** less the **SELF-INSURED RETENTION**; and

6.  Prejudgment or post-judgment interest as required by law on awards and judgments, but   only for award or judgment amounts that are within the applicable **LIMIT OF INSURANCE** less the **SELF-INSURED RETENTION**.

**CLAIM EXPENSES** does not include:

7.  Salaries and expenses of the **NAMED INSURED**, the **NAMED INSURED'S** employees, or us;

8.  Service company fees; or

9.  Third Party Claims Administrator fees.

**C.  DAMAGES** means those amounts which the **NAMED INSURED** is obligated to pay due to **BODILY INJURY** by accident or **BODILY INJURY** by disease for:

1.  Which the **NAMED INSURED** is liable to a third party by reason of a **CLAIM**, **SUIT**, or proceeding against the **NAMED INSURED** to recover **DAMAGES** claimed against such  third party as a result of injury to the **NAMED INSURED'S** employee;

2.  Care and loss of services of an injured employee of the **NAMED INSURED**;

3.  Consequential **BODILY INJURY** to a spouse, child, parent, brother or sister of the injured employee of the **NAMED INSURED**;

provided such damages in 1., 2., and 3. above are the direct consequence of **BODILY INJURY** that arises out of and in the course of the injured employee's employment by the **NAMED INSURED**;

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

4. **BODILY INJURY** to an employee of the **NAMED INSURED** arising out of and in the course of employment, claimed against the **NAMED INSURED** in a capacity other than as employer.

D. **STATE** means any State of the United States of America, and the District of Columbia.

E. **SUIT** means a civil proceeding in which **BODILY INJURY** is alleged. **SUIT** includes:

1. An arbitration proceeding in which such **BODILY INJURY** is claimed and to which the **NAMED INSURED** must submit, or

2. Any other alternative dispute resolution proceeding in which such **BODILY INJURY** is claimed and to which the **NAMED INSURED** submits to with our consent.

F. **WORKERS' COMPENSATION LAW** means the workers' or workmen's compensation law and occupational disease law of the **STATE** of hire and of **STATES** other than the **STATE** of hire if an employee of the **NAMED INSURED** is injured in such a **STATE** and if the work of such injured employee of the **NAMED INSURED** was within the scope of employment, at the direction of the **NAMED INSURED**, and was temporary and transitory in such other **STATE** provided the **NAMED INSURED** is not **INSURED** or a **QUALIFIED SELF-INSURER** in such other **STATE**. It includes any amendments to that law which are in effect during the **PERIOD OF INSURANCE**. It does not include any Federal workers' or workmens' compensation law, any Federal occupational disease law or the provisions of any law that provide non-occupational disability benefits.

## COVERAGE SECTION VII EMPLOYEE BENEFITS LIABILITY

## THIS IS A CLAIMS MADE COVERAGE SECTION

**THIS COVERAGE SECTION PROVIDES COVERAGE ON A CLAIMS MADE BASIS.  IT APPLIES ONLY TO CLAIMS MADE AGAINST THE INSURED DURING THE PERIOD OF INSURANCE OR EXTENDED REPORTING PERIOD, IF APPLICABLE.  PLEASE READ CAREFULLY.**

## COVERAGE SECTION VII INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen.

We agree, subject to the policy limitations, exclusions, terms and conditions, to indemnify the **INSURED** for all sums which the **INSURED** is legally liable by reason of an **EMPLOYEE BENEFITS WRONGFUL ACT**, that first takes place after the applicable Retroactive Date shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** and before the end of the **PERIOD OF INSURANCE**.

Subject to the above, this coverage only applies provided that:

1. A **CLAIM** for damages, because of an **EMPLOYEE BENEFITS WRONGFUL ACT**, is "first made" against the **INSURED** during the **PERIOD OF INSURANCE** or during the Extended Reporting Period of this coverage, if any; and

2. We or the **INSURED'S** Third Party Claims Administrator receives written notice in accordance with the reporting requirements in Paragraph 13. Notification of the **GENERAL POLICY CONDITIONS**, no later than the end of the **PERIOD OF INSURANCE** or the end of any applicable Extended Reporting Period provided under this **COVERAGE SECTION VII**.

A **CLAIM** will be deemed to have been "first made" at the earlier of the following times:

3. When the **INSURED** has given written notice to us or the **INSURED'S** Third Party Claims Administrator of an **EMPLOYEE BENEFITS WRONGFUL ACT**, of which the **INSURED** has become aware which may reasonably and subsequently give rise to a **CLAIM** being made against an **INSURED**; or

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

4.   When notice of such **CLAIM** is received and recorded by the **INSURED**, the **INSURED'S** Third Party Claims Administrator or us, whichever comes first.

All **CLAIMS** based on or arising out of one **EMPLOYEE BENEFITS WRONGFUL ACT** shall be considered "first made" when the first of such **CLAIMS** is made to the **INSURED**. A **CLAIM** should not be prejudiced if the **INSURED** through clerical oversight or clerical mistake fails to notify us or the **INSURED'S** Third Party Claims Administrator.

## COVERAGE SECTION VII LIMITS OF INSURANCE

We will indemnify the **NAMED INSURED** for **ULTIMATE NET LOSS** resulting from any one **CLAIM** for **COVERAGE SECTION VII EMPLOYEE BENEFITS LIABILITY** for the **LIMIT OF INSURANCE** stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**. Any sublimits stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** are part of and not in addition to the **LIMIT OF INSURANCE** per **CLAIM** under **COVERAGE SECTION VII** for all coverage under **COVERAGE SECTION VII** combined. If an Annual Aggregate applies to any coverage under this **COVERAGE SECTION**, the total Aggregate **LIMIT OF INSURANCE** for such coverage and all **EMPLOYEE BENEFITS WRONGFUL ACTS** under this **COVERAGE SECTION** shall not exceed the limit as stated in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

The most we will indemnify the **INSURED** will not change regardless of the number of persons or organizations who are **INSUREDS**, locations, **CLAIMS** made or **SUITS** brought against any or all persons or organizations who are **INSUREDS**, or persons or organizations making a **CLAIM** or bringing a **SUIT**.

## COVERAGE SECTION VII CONDITIONS

The following conditions apply in addition to the **GENERAL POLICY CONDITIONS**:

A.   **BASIC EXTENDED REPORTING PERIOD**:

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the **PERIOD OF INSURANCE**, and lasts for sixty (60) days.

If, however, this policy and this **COVERAGE SECTION** are succeeded by similar Claims Made insurance coverage, with any insurer, on which the Retroactive Date is the same as or earlier than the Retroactive Date shown in the applicable **COVERAGE SECTION** of the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** of this policy, the succeeding insurance coverage shall be deemed to be a renewal of this policy, and the **INSURED** shall have no right to a Basic Extended Reporting Period from us.

The Basic Extended Reporting Period does not apply to **CLAIMS** that are covered under any subsequent insurance applicable to this **COVERAGE SECTION** which the **INSURED** purchases, or that would have been covered under this **COVERAGE SECTION** but for exhaustion of the amount of insurance applicable to such **CLAIMS**.

B.   **SUPPLEMENTAL EXTENDED REPORTING PERIOD**:

We will provide a Supplemental Extended Reporting Period, as described below, if:

1.   This policy or this **COVERAGE SECTION** of this policy is cancelled or non-renewed; or

2.   We renew or replace this policy, or this **COVERAGE SECTION** of this policy, with insurance that does not apply to an **EMPLOYEE BENEFITS WRONGFUL ACT** on a Claims Made basis.

A Supplemental Extended Reporting Period of one year duration is available but only by endorsement to this policy and for an additional premium not to exceed 100% of the annual premium for this **COVERAGE SECTION**. This supplemental period starts when the Basic Extended Reporting Period ends.

The **INSURED** must give us a written request for the endorsement within thirty (30) days after the end of the **PERIOD OF INSURANCE**. The Supplemental Extended Reporting Period will not go into effect

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

unless the **INSURED** pays the additional premium within thirty (30) days. This endorsement will set forth the terms consistent with the **COVERAGE SECTION**.

We shall determine the additional premium in accordance with its applicable rules, rates and underwriting practices. Coverage for **CLAIMS** received during such Supplemental Extended Reporting Period is excess over any other valid and collectible insurance available under any other policies.

The Extended Reporting Periods described in Paragraphs **A.** and **B.** above do not reinstate or increase the applicable **SELF INSURED RETENTION**, the **INSURED'S LOSS FUND**, the applicable **LIMIT OF INSURANCE**, or the **EXCESS LOSS FUND PROTECTION**.

The Extended Reporting Periods described in Paragraphs **A.** and **B.** above do not extend the **PERIOD OF INSURANCE** or change the scope of coverage provided within this **COVERAGE SECTION**. They apply to **CLAIMS** arising out of an **EMPLOYEE BENEFITS WRONGFUL ACT** that takes place before the end of the period that this policy and this **COVERAGE SECTION** are in force. Once in effect, Extended Reporting Periods may not be cancelled.

## COVERAGE SECTION VII EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, this **COVERAGE SECTION** does not insure against:

**A.** Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of the policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Any **CLAIM** for which an **INSURED** is entitled to indemnity under any policy or policies the term of which has expired prior to the inception date of this policy, or for which an **INSURED** would be entitled to indemnity except for the exhaustion of the limit of such prior insurance.

**C.** Any **CLAIM** arising out of any pending or prior litigation or hearing, as well as future **CLAIMS** arising out of any pending or prior litigation or hearing. If this policy is a renewal of a policy issued by us, this exclusion shall only apply with respect to **CLAIMS** arising out of any pending or prior litigation or hearing, prior to the **EFFECTIVE DATE** of the first policy issued and continuously renewed by us.

**D.** Any **EMPLOYEE BENEFITS WRONGFUL ACT** by, or at, the direction of the **INSURED** that is dishonest, fraudulent, criminal or malicious.

**E.** **BODILY INJURY**, **PERSONAL INJURY**, or **PROPERTY DAMAGE**.

**F.** Any **CLAIM** for failure of performance of a contract by any Insurer or Self Insurer.

**G.** Any **CLAIM** based upon the **INSURED'S** failure to comply with any law concerning workers' compensation, unemployment insurance, social security, disability benefits, Employees' Retirement Income Security Act (ERISA) of 1974 or any amendments thereto or similar subsequent federal acts or any similar provisions of statutory or common law.

**H.** Any **CLAIM** based upon failure of investments, including but not limited to, stocks, bonds, funds, to perform as represented by an **INSURED**.

**I.** Any **CLAIM** based upon advice given by an **INSURED** to participate or not participate in any investment plans including but not limited to stock, bond and fund subscription plans.

**J.** Any **CLAIM** arising out of actual or alleged discrimination including but not limited to discrimination based on race or national origin, religion or creed, age, sex, physical disability, military status, or employment practices whether or not any of the foregoing violated any Federal, State or local government or regulation prohibiting such discrimination.

**K.** Any **CLAIM** resulting from an activity, act or omission of a Third Party Claims Administrator, a firm or person, other than an **INSURED'S** employee, who administers the **INSURED'S EMPLOYEE BENEFIT PROGRAMS**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## COVERAGE SECTION VII DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A.** With respect to **COVERAGE SECTION VII**, **CLAIM** means all notices or **SUITS** demanding payment of money based on, or arising out of the same **EMPLOYEE BENEFITS WRONGFUL ACT** or a series of related **EMPLOYEE BENEFITS WRONGFUL ACTS** by one or more **INSUREDS**.

## COVERAGE SECTION VIII CRIME

## COVERAGE SECTION VIII INSURING AGREEMENTS

Coverage is provided for one or more of the coverage options in this **COVERAGE SECTION** only if a **LIMIT OF INSURANCE** is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**, and a **SELF INSURED RETENTION** is stated in the **SCHEDULE OF SELF INSURED RETENTIONS** for each Coverage chosen. The loss sustained by the **INSURED** must result directly from an **OCCURRENCE** taking place during the **PERIOD OF INSURANCE**, which is **DISCOVERED** by the **INSURED** during the **PERIOD OF INSURANCE** (unless otherwise stated in the applicable coverage).

### MONEY AND SECURITIES

**A.** **COVERAGE**:  We agree, subject to the policy limitations, terms and conditions, to pay the **NAMED INSURED** for loss of **MONEY** or **SECURITIES** inside the **PREMISES**, outside the **PREMISES**, or in the **FINANCIAL INSTITUTIONS PREMISES**, if the **NAMED INSURED** is the owner of the **PREMISES** or is liable for damage to it as a direct result of loss or damage caused by disappearance, destruction **THEFT** or **COMPUTER THEFT**.

**COVERAGE EXTENSION**:  We will pay the **NAMED INSURED** under this Section for:

1. Damage to a safe, vault, cash register, cash box or cash drawer located inside the **PREMISES** resulting directly from an actual or attempted **THEFT** of, or unlawful entry into such containers.

2. Loss of **MONEY** or **SECURITIES** outside the **PREMISES** in the care and custody of a **MESSENGER**.

3. Loss of **MONEY** or **SECURITIES** outside the **PREMISES** in the care and custody of an armored vehicle company.  However, the **NAMED INSURED** will be paid only the amount of loss that the **NAMED INSURED** cannot recover:

   (a) Under the **NAMED INSURED'S** contract with the armored motor vehicle company; and

   (b) From any insurance or indemnity carried by, or for the benefit of, customers of the armored motor vehicles company.

**B.** **EXCLUSIONS**:  In addition to **COVERAGE SECTION VIII EXCLUSIONS**, there is no coverage under **MONEY AND SECURITIES** for:

1. Loss of **MONEY** or **SECURITIES** after they have been transferred or surrendered to a person or place outside the **PREMISES** based upon unauthorized instructions or as a result of a threat to do bodily harm or damage to any property.

   But, this exclusion does not apply to loss of **MONEY** or **SECURITIES** while outside the **PREMISES** or in **FINANCIAL INSTITUTIONS PREMISES** or in the care and custody of a **MESSENGER** if the **INSURED**:

   (a) Had no knowledge of any threat at the time the conveyance began; or

   (b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

2. Loss resulting from the giving or surrendering of property in any exchange or purchase.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

3. Loss of property in any **MONEY** operated device unless the amount of **MONEY** deposited in it is recorded by a continuous recording instrument in the device.

4. Loss resulting from **DISHONEST ACTS** of any of **NAMED INSURED'S EMPLOYEES**:

    (a)  Whether acting alone or in collusion with other persons; or

    (b)  While performing services for the **NAMED INSURED** or otherwise.

**C.  DUTIES IN THE EVENT OF LOSS**:  If the **INSURED** has reason to believe that any loss of, or loss from damage to, **MONEY** or **SECURITIES** involves a violation of law, the **INSURED** must notify the police.

## FORGERY OR ALTERATION

**A.  COVERAGE**:  We agree, subject to the policy limitations, terms and conditions, to pay the **NAMED INSURED** for loss involving **INSTRUMENTS** resulting directly from forgery or alteration of, on, or in any **INSTRUMENT**.

**COVERAGE EXTENSION**:  We will pay the **NAMED INSURED** under this Section for loss due to the **INSURED'S** good faith acceptance of:

1. Any United States or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer;  or

2. Counterfeit United States or Canadian paper currency;

    in exchange for merchandise, **MONEY** or services or as part of a normal business transaction.

**B.  EXCLUSIONS**:  In addition to the **COVERAGE SECTION VIII EXCLUSIONS**, there is no coverage under **FORGERY OR ALTERATION** for:

Loss resulting from **DISHONEST ACTS** of any of the **NAMED INSURED'S EMPLOYEES**:

1. Whether acting alone or in collusion with other persons; or

2. While performing services for the **NAMED INSURED** or otherwise.

**C.  FACSIMILE SIGNATURES**:   Mechanically or electronically produced or reproduced facsimile signatures will be treated the same as handwritten signatures.

**D.  PROOF OF LOSS**:  The **NAMED INSURED** must include with proof of loss any **INSTRUMENT** involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

## EMPLOYEE DISHONESTY

**A.  COVERAGE**:  We agree, subject to the policy limitations, terms and conditions, to pay the **NAMED INSURED** for the direct loss of or damage to **OTHER PROPERTY**, including **MONEY**, **SECURITIES** and **INSTRUMENTS** owned or held by the **NAMED INSURED** or for which the **NAMED INSURED** is liable, resulting from **DISHONEST ACTS** committed by an **EMPLOYEE**, whether identified or not, acting alone or in collusion with other persons, that occur within the **PERIOD OF INSURANCE**.

**COVERAGE EXTENSION**:  We will pay the **NAMED INSURED** under this Section for loss caused to the **NAMED INSURED** through failure of any of the **NAMED INSURED'S EMPLOYEES**, acting alone or in collusion with others, to perform faithfully his duties or to account properly for all monies and property received by virtue of his position of employment.

**B.  EXCLUSIONS**:  In addition to **COVERAGE SECTION VIII EXCLUSIONS**, there is no coverage under **EMPLOYEE DISHONESTY** for:

1. Damage where the only proof of the loss or amount of the loss is dependent upon an inventory or a profit and loss computation.

2. Any part of a loss involving any **EMPLOYEE** occurring after **DISCOVERY** of any fraudulent or **DISHONEST ACTS** committed by the **EMPLOYEE** whether before or after being employed by the

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**INSURED**.   This only includes **DISCOVERY** by an **INSURED** not in collusion with the **EMPLOYEE**.

3.  Loss that is not **DISCOVERED** within one year after the end of the **PERIOD OF INSURANCE**.

4.  Legal expenses or any indirect loss.

**C.  EMPLOYEE DISHONESTY SUPPLEMENTAL COVERAGE**:  This Supplemental Coverage applies only if this **EMPLOYEE DISHONESTY COVERAGE** renews prior dishonesty coverage and is effective on the expiration or termination date of the prior coverage.

We will pay the **INSURED** for loss that would have been covered by the prior insurance, except that the time to discover the loss had expired, and which would be covered by this policy had it been in effect when the acts or events causing the loss or damage occurred.  This coverage is limited to the lesser of the limits applicable to the prior insurance or the **LIMITS OF INSURANCE** of this coverage. This Supplemental Coverage is part of, and not in addition to the **LIMITS OF INSURANCE** for **EMPLOYEE DISHONESTY** Coverage.

**D.  LOSS PAYMENT**:   The **LIMIT OF INSURANCE** shown is the most that will be paid for an **OCCURRENCE** even though it may occur over more than one **PERIOD OF INSURANCE**.

## COVERAGE SECTION VIII LIMITS OF INSURANCE

The most we will pay under **COVERAGE SECTION VIII CRIME** is the **LIMIT OF INSURANCE** for each **OCCURRENCE** as stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE** less the **SELF INSURED RETENTION** stated in the **SCHEDULE OF SELF INSURED RETENTIONS**.

In the event more than one **SELF INSURED RETENTION** could apply to a loss for which coverage is provided in this **COVERAGE SECTION**, only the highest **SELF INSURED RETENTION** will be applied.

## COVERAGE SECTION VIII CONDITIONS

In addition to the **GENERAL POLICY CONDITIONS**, and any conditions applicable to a particular section, the following conditions also apply:

**A.  EXTENSIONS IN COVERAGE** do not increase our **LIMITS OF INSURANCE**, nor are we liable for a greater percentage of the amount of the limit shown in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.  NO BENEFIT TO BAILEE**:  The Insurance afforded herein shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire.

**C.  VALUATION**:

1.  **MONEY**: Face value.

2.  **SECURITIES**: Actual cash value at the close of business on the day the loss was **DISCOVERED**.

3.  **PROPERTY OTHER THAN MONEY AND SECURITIES**: Actual cash value at the time of loss with deduction for depreciation.  The valuation is limited to the cost to repair or replace with property of equivalent kind and quality, to the extent practicable.

**D.  CONCEALMENT, MISREPRESENTATION OR FRAUD**:  This insurance is void in any case of fraud by the **NAMED INSURED** as it relates to this insurance at any time. It is also void if the **NAMED INSURED** or any other **INSURED**, at any time, intentionally conceals or misrepresents a material fact concerning:

1.  This insurance;

2.  The property covered under this insurance;

3.  The **NAMED INSURED'S** interest in the property covered under this insurance; or

4.  A claim under this insurance.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**E. COOPERATION**: The **NAMED INSURED** must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**F. LEGAL ACTION AGAINST US**:  The **NAMED INSURED** may not bring any legal action against us involving loss:

1. Unless all the terms of this **COVERAGE SECTION** have been complied with;

2. Until 90 days after the **NAMED INSURED** has filed proof of loss; and

3. Unless brought within 2 years from the date the **NAMED INSURED DISCOVERED** the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**G. RECORDS**:  The **NAMED INSURED** must keep records of all property covered under this insurance so we can verify the amount of any loss.

## COVERAGE SECTION VIII EXCLUSIONS

In addition to the **GENERAL POLICY EXCLUSIONS**, and any exclusions applicable to a particular section, the following exclusions also apply:

This **COVERAGE SECTION** does not insure against:

**A.** Any claims for damages, whether direct or consequential, or for any cause of action which is covered under any other **COVERAGE SECTION** of this policy whether or not a limit is stated in the **SCHEDULE OF SPECIFIC LIMITS OF INSURANCE**.

**B.** Loss resulting from accounting or arithmetical errors or omissions.

**C.** Loss resulting from an **INSURED'S**, or anyone acting on an **INSURED'S** express or implied authority, being induced by any **DISHONEST ACT** to voluntarily part with title to or possession of any property.

**D.** Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**E.** Fees, costs and expenses incurred by the **NAMED INSURED** which are related to any legal action.

**F.** Loss that is an indirect result of an **OCCURRENCE** covered by this **COVERAGE SECTION** including, but not limited to, loss resulting from:

1. The **INSURED'S** inability to realize income that would have been realized had there been no loss of or damage to **MONEY**, **SECURITIES** or property other than **MONEY** and **SECURITIES**.

2. Payment of damages of any type for which the **INSURED** is legally liable.  But, we will pay compensatory damages arising directly from a loss covered under this **COVERAGE SECTION**.

3. Payment of costs, fees or other expenses the **INSURED** incurs in establishing either the existence or the amount of loss under this **COVERAGE SECTION**.

## COVERAGE SECTION VIII DEFINITIONS

The following definitions apply in addition to the **GENERAL POLICY DEFINITIONS**:

**A. FINANCIAL INSTITUTIONS PREMISES** means the interior of that portion of any building occupied by a financial institution including but not limited to a bank, similar safe depository, automatic teller machine (ATM), or similar banking or financial device.

**B. BURGLARY** means the taking of **MONEY** or **SECURITIES** from inside the **PREMISES** by a person unlawfully entering or leaving the **PREMISES** as evidenced by marks of forcible entry or exit.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

C.   **COMPUTER THEFT** means **THEFT** of **MONEY** or **SECURITIES** directly related to and resulting from the use of any computers, including Personal Digital Assistants (PDAs) and other transportable or handheld devices, electronic storage devices and related peripheral components, to fraudulently cause a transfer of such **MONEY** or **SECURITIES** from inside the **PREMISES** or **FINANCIAL INSTITUTIONS PREMISES** to a person (other than a **MESSENGER**) outside those **PREMISES** or to a place outside those **PREMISES**.

D.   **DISCOVER** or **DISCOVERED** means the time when the **NAMED INSURED** first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

**DISCOVER** or **DISCOVERED** also means the time when the **NAMED INSURED** first receives notice of an actual or potential claim in which it is alleged that the **NAMED INSURED** is liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

E.   **DISHONEST ACTS** means dishonest or fraudulent acts committed with the intent to cause the **NAMED INSURED** to sustain loss or damage and to obtain financial benefit for the **EMPLOYEE** or for any other **EMPLOYEE**, person or organization. The financial benefit does not include salaries, commissions, bonuses, fees, profit sharing or other **EMPLOYEE** benefits.

F.   **EMPLOYEE(S)** means any person:

1.   While in the service of the **NAMED INSURED** (and for thirty (30) days after termination of service); and

2.   Whom the **NAMED INSURED** has the right to direct and control while performing services for the **NAMED INSURED**.

G.   **INSTRUMENTS** means checks, drafts, promissory notes, or similar written promises, orders or directions to pay a certain sum in **MONEY** that are:

1.   Made or drawn by or drawn upon the **NAMED INSURED**;

2.   Made or drawn by one acting as the **NAMED INSURED'S** agent; or that are purported to have been so made or drawn.

With respect to **FORGERY OR ALTERATION** coverage and **EMPLOYEE DISHONESTY** coverage, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

H.   **MESSENGER** means an **INSURED** individual under this **COVERAGE SECTION** while having care and custody of the **MONEY** or **SECURITIES** outside the **PREMISES**.

I.   **OCCURRENCE** with respect to **MONEY AND SECURITIES** coverage means:

1.   An individual act or event;

2.   The combined total of all separate acts or events whether or not related; or

3.   A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the **PERIOD OF INSURANCE**.

**OCCURRENCE** with respect to **FORGERY OR ALTERATION** coverage means:

4.   An individual act;

5.   The combined total of all separate acts whether or not related; or

6.   A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more **INSTRUMENTS**, during the **PERIOD OF INSURANCE**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**OCCURRENCE** with respect to **EMPLOYEE DISHONESTY** coverage means:

7.  An individual act;

8.  The combined total of all separate acts whether or not related; or

9.  A series of acts whether or not related;

committed by an **EMPLOYEE** acting alone or in collusion with other persons, during the **PERIOD OF INSURANCE**, except as provided under the **EMPLOYEE DISHONESTY SUPPLEMENTAL COVERAGE**.

**J.  OTHER PROPERTY**: Any tangible property other than **MONEY** and **SECURITIES** that has intrinsic value. **OTHER PROPERTY** does not include computer programs, **ELECTRONIC DATA** or any property if specifically excluded under this insurance.

**K.  PREMISES** means the interior of that portion of any building that the **INSURED** occupies in conducting the **INSURED'S** business.

**L.  ROBBERY** means the taking of **MONEY** or **SECURITIES** from the care and custody of a person by one who has:

1.  Caused or threatened to cause that person bodily harm; or

2.  Committed an obviously unlawful act witnessed by that person.

**M.  THEFT**, including **BURGLARY** or **ROBBERY,** means any act of stealing **MONEY** or **SECURITIES**.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

# THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

Date Issued:  7/15/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED        **City of Davenport**

Policy No.        64-A3-EX-0000060-00                    Endorsement Effective:        7/1/2021
                                                                                                        (12:01 A.M.)

Countersignature        *Mary Greene*
                                                                (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**ENDORSEMENT – STATUTORY REQUIREMENTS IMPOSED ON YOU**

This endorsement modifies insurance under the following:

The following is added to the **GENERAL CONDITIONS** section of the policy:

**Statutory Requirements Imposed on You**

You, as a Named Insured or a qualified self-insurer, may be subject to specific requirements (such as reporting certain claims data), by State or Federal law (including but not limited to the Medicare, Medicaid and State Children's Health Insurance Program Extension Act of 2007).  Even if you contract with a Service Organization (Third Party Claims Administrator) to handle the administration, investigation or settlement of any loss or "claim" covered under this policy, you are still ultimately responsible for compliance with such laws.

When by law you are designated as the responsible reporting entity for compliance with such State or Federal law, we will not:
1.    Advise you of such laws, unless we are legally required to do so;
2.    Assume any of the obligations imposed on you by such law;
3.    Pay any expenses incurred by you to comply with such law;
4.    Pay any penalty or fine for which you are held liable for failing to comply with such State or Federal law.
"Ultimate net loss" does not include the expenses or payments described in Paragraphs 3. and 4. above.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AE 2206 (02-13)                                                                                                        Page 1 of 1
                                                                                                                            Exhibit L

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

# THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

Date Issued:  7/15/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED         City of Davenport

Policy No.         64-A3-EX-0000060-00          Endorsement Effective:         7/1/2021
                                                                                              (12:01 A.M.)

Countersignature         *Mary Greene*
                                              (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**SERVICE OF PROCESS ENDORSEMENT**

This endorsement specifies that:

We designate the Superintendent of Insurance, Insurance Commissioner, Director of Insurance, or other officer specified by law, pursuant to the laws of the State where this policy is delivered, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in the State in which this policy is delivered, by, or on behalf of, the Named Insured or any beneficiary hereunder arising out of this Policy.  We designate the General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543 as the person to whom the said officer is authorized to mail such process or true copy thereof.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:   7/15/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED        **City of Davenport**

Policy No.        64-A3-EX-0000060-00                    Endorsement Effective:        7/1/2021
                                                                                                                            (12:01 A.M.)

                                        Countersignature _____ *Mary Greene* _____
                                                                                    (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**


**ENDORSEMENT – TERRORIST ACTIVITY EXCLUSION – SFP EXCEPTION**


This endorsement modifies insurance under the following:

ALL LINES AGGREGATE COVERAGE FORM – GENERAL POLICY EXCLUSIONS

 With respect to the Excess Workers Compensation and Employers Liability Coverage Part, this exclusion only applies to the insurance provided for Employers Liability Insurance.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated above.

With respect to this policy and any endorsements thereto, the following exclusion is added and supersedes any provision to the contrary.

This insurance does not apply to:

All injury, damage, loss, cost or expense, caused by, resulting from, arising out of or related to, either directly or indirectly, any "Terrorist Activity," as defined herein, and any action taken to hinder, defend against or respond to any such activity.  This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in any sequence to the injury, damage, loss, cost or expense.

But, if the "Terrorist Activity" occurs in an "Exception State" and results in fire, we will pay for the loss or damage in such "Exception State" caused by that fire, but only to the extent, if any, required by the applicable Standard Fire Policy statute(s) in such state.  However, this exception applies only to direct loss or damage by fire to covered property and not to any insurance provided for time element coverages, including but not limited to business interruption and extra expense.  In no event shall this policy be construed to give coverage beyond the minimum requirements of the applicable Standard Fire Policy

AE 2118 (04-14)                                                                                                    Page 1 of 3

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

statute (and amendments thereto) in existence as of the effective date of the policy and governing such requirements with respect to any acts of terrorism.  If the applicable law or regulation in any state permits the Commissioner or Director of Insurance or anyone in a similar position to grant the insurer approval to vary the terms and conditions of the Standard Fire Policy, and such approval has been granted in that state as of the effective date of this policy, this policy shall not provide coverage beyond the minimum requirements of the terms and conditions approved by the Commissioner or Director of Insurance or person in a similar position.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and the Company has met their insurer deductible under the Terrorism Risk Insurance Act, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

For the purposes of this exclusion,

A.   "Terrorist Activity" shall mean any deliberate, unlawful act that:

  1.   is declared by any authorized governmental official to be or to involve terrorism, terrorist activity or acts of terrorism; or

  2.   includes, involves, or is associated with the use or threatened use of force, violence or harm against any person, tangible or intangible property, the environment, or any natural resources, where the act or threatened act is intended, in whole or in part, to

    a.   promote, further or express opposition to any political, ideological, philosophical, racial, ethnic, social or religious cause or objective; or
    b.   influence, disrupt or interfere with any government related operations, activities or policies; or
    c.   intimidate, coerce or frighten the general public or any segment of the general public; or
    d.   disrupt or interfere with a national economy or any segment of a national economy; or

  3.   includes, involves, or is associated with, in whole or in part, any of the following activities, or the threat thereof:

    a.   hijacking or sabotage of any form of transportation or conveyance, including but not limited to spacecraft, satellite, aircraft, train, vessel, or motor vehicle;
    b.   hostage taking or kidnapping;
    c.   the use or threatened use of or release or threatened release of any nuclear, biological, chemical, or radioactive agent, material, device or weapon;
    d.   the use of any bomb, incendiary device, explosive or firearm;
    e.   the interference with or disruption of basic public or commercial services and systems, including but not limited to the following services or systems: electricity, natural gas, power, postal, communications, telecommunications, information, public transportation, water, fuel, sewer or waste disposal;
    f.   the injuring or assassination of any elected or appointed government official or any government employee;
    g.   the seizure, blockage, interference with, disruption of, or damage to any government buildings, institutions, functions, events, tangible or intangible property or other assets; or
    h.   the seizure, blockage, interference with, disruption of, or damage to tunnels, roads, streets, highways, or other places of public transportation or conveyance.

B.   Any of the activities listed in section A.3. above shall be considered "Terrorist Activity" except where the Insured can demonstrate to the Company, that the foregoing activities or threats thereof were

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

motivated solely by personal objectives of the perpetrator that are unrelated, in whole or in part, to any intention to

1.   promote, further or express any opposition to any political, ideological, philosophical, racial, ethnic, social or religious cause or objective; or

2.   influence, disrupt or interfere with any government related operations, activities or policies; or

3.   intimidate, coerce or frighten the general public or any segment of the general public; or

4.   disrupt or interfere with a national economy or any segment of a national economy.

C.   "Exception State" means a state which at the time of policy effective date, requires that the coverage provided under this policy be not more restrictive than that provided under a Standard Fire Policy.

D.   Application of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorist exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by a Nuclear Hazard Exclusion or a War Exclusion.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:  7/15/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED      **City of Davenport**

Policy No.        64-A3-EX-0000060-00                    Endorsement Effective:   7/1/2021
                                                                                                      (12:01 A.M.)

Countersignature     *Mary Greene*
                                                            (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**VIOLATION OF ECONOMIC OR TRADE SANCTIONS**

We (the Insurer or the Company) shall not provide any coverage, pay any claim, or provide any benefit under this Policy, to the extent that the provision of such coverage, payment of such claim, or provision of such benefit is a violation of any applicable trade or economic sanctions, embargo, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AE 2209 (01-20)                                                                        Page 1 of 1
                                                                                                Exhibit L

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

Date Issued:   7/1/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED        **City of Davenport**

Policy No.        64-A3-EX-0000060-00                         Endorsement Effective:    7/1/2021
                                                                                       (12:01 A.M.)

Countersignature        *Harry Greene*
                                                              (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMUNICABLE DISEASE EXCLUSION - SPECIFIED OPERATION OR LOCATION**

This endorsement modifies insurance under the following:

**COVERAGE SECTION  II. GENERAL LIABILITY**

SCHEDULE

Specified Operation(s) or "Location(s)": All Municipal Government Operations and Locations.

The following exclusion is added to **COVERAGE SECTION II GENERAL LIABILITY EXCLUSIONS:**

**Communicable Disease Exclusion**

a.  Any actual or alleged loss, liability, damage, compensation, injury, sickness, disease, death, medical payment, defense cost, cost, expense or any other amount, that, directly or indirectly and regardless of any other cause contributing concurrently or in any sequence;

   1)  Originates from;
   2)  Is caused by,
   3)  Arises out of;
   4)  Is contributed to by;
   5)  Results from; or
   6)  Is otherwise in connection with;

   A "communicable disease" or the fear or threat (whether actual or perceived) of a "communicable disease".

b.  Any cost or expense to clean-up, detoxify, remove, monitor or test for a "communicable disease".

AE 2210 (08-20)                                                                   Page 1 of 2
                                                                                  Exhibit L

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

This exclusion applies even if the "claim" against any insured alleges negligence, civil rights violations or other wrongdoing in the:

1)  Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a "communicable disease";
2)  Testing for a "communicable disease";
3)  Failure to prevent the spread of the "communicable disease"; or
4)  Failure to report the "communicable disease" to authorities.

This exclusion applies only to the Operation(s) or "Location(s)" shown in the Schedule above, including any operations, maintenance, ownership, supervision, management, control or "locations" that are necessary or incidental to the Operation(s) or "Location(s)" shown in the Schedule above.

If a Specified Operation is designated in the Schedule above, this exclusion applies regardless of where the Specified Operation in the Schedule above is conducted, whether such Operation is conducted by you or on your behalf, or whether the Operation is conducted for yourself or for others.

If a Specified "Location" is designated in the Schedule above, this exclusion applies to all liability and all operations only at such "Location". For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

As used in this exclusion, "communicable disease" means any infection or contagious disease which can be transmitted by means of any substance or agent from any organism to another organism where:

5)  The substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not;
6)  Regardless of the  method  of  transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between humans, animals, or from any animal to any human or from any human to any animal; and
7)  The disease, substance or agent can cause or threaten "bodily injury", illness, emotional distress, damage to human health, human welfare or tangible or intangible "property damage".


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

E-FILED 2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

## THE PRINCETON EXCESS AND SURPLUS LINES
## INSURANCE COMPANY

Date Issued:  7/15/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED          **City of Davenport**

Policy No.          64-A3-EX-0000060-00                    Endorsement Effective:   7/1/2021

                                                                                                        (12:01 A.M.)

Countersignature          *Harry Greene*

                                                                                (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR
PERSONAL INFORMATION AND DATA RELATED LIABILITY**

The following exclusions are added to **GENERAL POLICY EXCLUSIONS** of the **GENERAL POLICY CONDITIONS** section of the form:

Any loss, injury or expense related to a **CLAIM** for **WRONGFUL ACT** or damages, with respect to **COVERAGE SECTIONS II, III, IV, V** and **VII**, as applicable, arising out of**:**

(a)  Any access to, failure to protect from access of, theft of, unauthorized viewing or copying of, disclosure of or loss of control over any information;

(b)  Failure to report an unauthorized disclosure of information, or failure to comply with Payment Card Industry Data Security Standards, breach notification laws, data security or privacy laws, or statutory requirements to manage an identity theft prevention program;

(c)  The loss of, loss of use of, damage to, corruption of, alteration of, destruction of, inability to access or inability to manipulate any electronic data;

(d)  The loss of, loss of use of, damage to, corruption of, destruction of, failure of, slowdown or malfunction of, inability to access or inability to manipulate any computer or electronically controlled equipment, or any internet controlled equipment, including but not limited to, software, components, hardware and any peripheral equipment, stationary or mobile devices, repositories and storage devices, processing equipment, and any other media or devices which are used with or for any electronically or internet controlled equipment or electronic data dissemination;

(e)  The loss of, loss of use of, damage to, corruption of, alteration of, destruction of, failure of, slowdown of, malfunction of, overload of, disablement or shutdown of, inability to access, inability to manipulate or inability to conduct transactions over any computer or electronic network, data network, communication network, satellite, systems or website;

(f)  Any acts of electronic, e-commerce or cyber vandalism, cyber or internet crime, cyber terrorism, or any failure to prevent or detect such acts, including but not limited to:

AE 2401 (01-19)                                                                                            Page 1 of 2
                                                                                                              Exhibit L

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

(1) Hacking, phishing, or unauthorized access, modification or use, of a computer or electronic network, data network, communication network, satellite, systems, computer or electronically controlled equipment, internet controlled equipment or website;

(2) Unauthorized use of another's name, product or intellectual property;

(3) The transmission of a computer virus or malicious software or code;

(4) A computer security breach, network security or content breach, or data breach;

(5) A denial of service attack, or any network service interruption, disruption or failure;

(6) Any fraudulent electronic acts, including any fraudulent electronic transfer of funds or charges; and

(7) Any acts of cyber espionage or cyber extortion.

This exclusion applies even if damages are claimed for:

(i) Business interruption costs, loss of revenue, continuing expenses, extra expenses, increase in costs, repair costs, replacement costs, upgrading or improvement costs, remediation or restoration expenses including any redesign of infrastructure;

(ii) Post breach expenses, including but not limited to, notification costs, credit monitoring expenses, identity or fraud monitoring expenses, forensic expenses, investigation costs, legal expenses, public relations expenses and crisis management expenses;

(iii) Reputational or brand damage;

(iv) Punitive damages, assessments, fines or penalties;

(v) Ransom payments or extortion demands;

Or any other loss, costs, expenses or fees incurred by you or others arising out of that which is described in Paragraph (a) through (f) above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

A **CLAIM** for **WRONGFUL ACT** or damages with respect to **COVERAGE SECTIONS II, III IV, V** and **VII,** arising out of:

**PERSONAL INJURY** arising out of any access to or disclosure of any person's or organization's confidential or personal information, including any intellectual property rights, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:  7/15/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED    **City of Davenport**

Policy No.    64-A3-EX-0000060-00        Endorsement Effective:    7/1/2021
                                                                                    (12:01 A.M.)

Countersignature    *Mary Greene*
                                        (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

Endorsement 1

**ENDORSEMENT – AUTO PHYSICAL DAMAGE**

This endorsement modifies insurance under the following:

**COVERAGE PART I**

It is agreed **COVERAGE PART I PROPERTY** only applies to Insuring Agreement B. Automobile Physical Damage for vehicles classified as **EMERGENCY VEHICLES**.

**DEFINITIONS:**

**EMERGENCY VEHICLES** means Fire Engines and Fire Rescue Vehicles, with permanently attached emergency equipment and emergency markings.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AE 1200 (01-21)

Page 1 of 1
Exhibit L

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:  7/15/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED       **City of Davenport**

Policy No.       64-A3-EX-0000060-00                           Endorsement Effective:   7/1/2021
                                                                                        (12:01 A.M.)

Countersignature   *Harry Greene*
                                                        (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

Endorsement 2

**ENDORSEMENT – AUTOMOBILE PHYSICAL DAMAGE
REPLACEMENT COST – EMERGENCY VEHICELS**

This endorsement modifies insurance under the following:

**COVERAGE PART I**

It is understood and agreed that with respect to **EMERGENCY VEHICLES**, as per the Schedule of Values on file with PSI Program Managers, a division of Risk Placement Services, Inc., the basis of valuation shall be as follows:

The Company's **SPECIFIC LIMITS OF INSURANCE** hereunder for loss or damage shall not exceed the least of the following amounts:

  (a)  the cost of repair of such covered **EMERGENCY VEHICLE** or part thereof; or

  (b)  the cost to replace a part or parts of such covered **EMERGENCY VEHICLE** with a part or parts of like kind and quality, without deduction for depreciation; or

  (c)  the cost to replace such covered **EMERGENCY VEHICLE** with a new **EMERGENCY VEHICLE** of like kind and quality, without deduction for depreciation.

**DEFINITIONS:**

**EMERGENCY VEHICLES** means Fire Engines and Fire Rescue Vehicles, with permanently attached emergency equipment and emergency markings.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AE 1200 (01-21)

Page 1 of 1
Exhibit L

E-FILED  2022 OCT 10 2:33 PM SCOTT - CLERK OF DISTRICT COURT

**THE PRINCETON EXCESS AND SURPLUS LINES
INSURANCE COMPANY**

Date Issued:  7/15/2021

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED        **City of Davenport**

Policy No.       64-A3-EX-0000060-00                    Endorsement Effective:    7/1/2021
                                                                                                    (12:01 A.M.)

Countersignature    _Mary Greene_
                                               (Authorized Representative)

by THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

---

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

Endorsement 3

### ENDORSEMENT – EXCESS LIQUOR LIABILITY

This endorsement modifies insurance under the following:

### COVERAGE PART II GENERAL LIABILITY

It is understood and agreed that **COVERAGE PART II GENERAL LIABILITY LIQUOR LIABILITY** coverage sub-limit is:

Limit of Insurance – Any one **OCCURRENCE** $ 1,000,000
Limit of Insurance – Annual Aggregate         $ 1,000,000

Excess the following Schedule of Underlying Insurance:

**Schedule of Underlying Insurance:**
**Type of Coverage:**       Liquor Liability
**Underlying Insurer:**     Illinois Casualty Company
**Limit of Insurance:**     $1,000,000
**Policy Number:**          LL106634
**Term:**                   7/1/2021 to 7/1/2022

In the event of the underlying aggregate limit of insurance schedule above being exhausted by more than one loss, or in the event that the scheduled underlying policy does not respond solely due to the operation of any exclusion or condition contained within such underlying policy, coverage as afforded hereunder will revert to the terms, conditions and exclusions contained in the applicable **COVERAGE PART** of this policy.  Under no circumstances shall we be required to drop down and replace the underlying limits of insurance, or assume any other obligations of the underlying insurer or insured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AE 1200 (01-21)

Page 1 of 1
Exhibit L

E-FILED          LACE135302 - 2022 OCT 16 06:17 PM          SCOTT
CLERK OF DISTRICT COURT          Page 1 of 2

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, ) ) ) ) | Case No.  LACE135302 |
| Plaintiff, ) ) | |
| vs. ) | **ORDER SETTING HEARING ON DEFENDANTS' MOTION TO DISMISS** |
| CITY OF DAVENPORT and MASON ROTH, ) ) ) | |
| Defendants. ) | |

On September 23, 2022 Defendants' Motion to Dismiss came before the Court.  Parties have received an available date from Court Administration that is agreeable to all parties.

IT IS SO ORDERED that a hearing on Defendants' Motion to Dismiss is set for October 31, 2022 at 10:00 a.m. before the Administrative Law Judge in the Scott County Courthouse.

Clerk to notify.

Exhibit M

E-FILED          LACE135302 - 2022 OCT 16 06:17 PM          SCOTT
CLERK OF DISTRICT COURT          Page 2 of 2



State of Iowa Courts

**Case Number**          **Case Title**
LACE135302               KLUM NICOLE VS CITY OF DAVENPORT
**Type:**                ORDER SETTING HEARING

So Ordered



Marlita A. Greve, Chief District Judge,
Seventh Judicial District of Iowa

Electronically signed on 2022-10-16 18:17:41

E-FILED  2022 OCT 19 1:50 PM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | | |
|---|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, | ) ) ) ) | Case No.  LACE135302 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | **PLAINTIFF'S REQUEST TO HOLD HEARING ON MOTION TO DISMISS BY ZOOM OR OTHER ELECTRONIC VIDEO OR BY TELEPHONE [UNRESISTED]** |
| CITY OF DAVENPORT and MASON ROTH, | ) ) ) | |
| Defendants. | ) ) | |

COMES NOW, the Plaintiff through the undersigned attorney, and for her request that the hearing on Defendants' Motion to Dismiss be held by Zoom or other electronic video, or by telephone, states the following:

1.  On September 23, 2022, Defendants filed a Motion to Dismiss.

2.  On September 28, 2022, Plaintiff filed her Resistance to Defendants' Motion to Dismiss.

3.  The Court entered an Order on October 16, 2022, setting the Motion to Dismiss for hearing on October 31, 2022, at 10:00 am.

4.  Plaintiff's counsel will be in northwest Iowa on that date and would prefer to avoid driving to Davenport for a hearing lasting only approximately one-half hour.

5.  The undersigned has conferred with counsel for Defendants and there is no objection to the Hearing on Defendants' Motion to Dismiss being held via Zoom or other electronic means or by telephone.

WHEREFORE, Plaintiff prays that the hearing on Defendants' Motion to Dismiss scheduled for October 31, 2022, be conducted via Zoom or other electronic video, or by telephone.

Exhibit N

E-FILED  2022 OCT 19 1:50 PM SCOTT - CLERK OF DISTRICT COURT

DAVE O'BRIEN LAW

By:    /s/ David A. O'Brien
         DAVID A. O'BRIEN, AT0005870
         1500 Center Street NE
         Cedar Rapids, Iowa 52402
         Telephone: (319) 861-3001
         Facsimile: (319) 861-3007
         E-mail: dave@daveobrienlaw.com


CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 19, 2022, I filed the foregoing with the Clerk of Court using EDMS.  Notice of Electronic Filing will be sent by operation of EDMS to all counsel of record registered with EDMS.


         /s/ Julia Daugherty
         Julia Daugherty

Exhibit N

E-FILED                     LACE135302 - 2022 OCT 19 03:55 PM          SCOTT
                              CLERK OF DISTRICT COURT                  Page 1 of 2

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, ) ) ) ) | Case No.  LACE135302 |
| Plaintiff, ) ) | |
| vs. ) ) | **ORDER** |
| CITY OF DAVENPORT and MASON ROTH, ) ) ) | |
| Defendants. ) | |

The Court has before it Plaintiff's Request for Hearing on Defendants' Motion to Dismiss to be held via Zoom or other electronic video means or by telephone.  Plaintiff's request is granted. The hearing on Defendants' Motion to Dismiss set for October 31, 2022 at 10:00 AM will be held via Zoom.

Exhibit O

E-FILED                    LACE135302 - 2022 OCT 19 03:55 PM          SCOTT
                           CLERK OF DISTRICT COURT                    Page 2 of 2



State of Iowa Courts

| Case Number | Case Title |
|---|---|
| LACE135302 | KLUM NICOLE VS CITY OF DAVENPORT |
| Type: | ORDER SETTING HEARING |

So Ordered

Mark J. Smith, District Court Judge,
Seventh Judicial District of Iowa

Electronically signed on 2022-10-19 15:55:51

E-FILED  2022 OCT 24 11:15 AM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | | |
|---|---|---|
| NICOLE KLUM, Individually and as Administrator of the Estate of BOBBY JO KLUM, | ) ) ) ) | **CASE NO. LACE 135302** |
| Plaintiff, | ) ) | |
| vs. | ) ) | **PLAINTIFF'S MOTION TO STRIKE** |
| CITY OF DAVENPORT and MASON ROTH, | ) ) ) | |
| Defendants. | | |

Comes now Plaintiff to submit this Motion to Strike portions of the Defendants' Motion to Dismiss and the Defendants' Reply to Plaintiff's Resistance to the Motion to Dismiss, as follows:

The Defendants cite the correct standard for assessing a motion to dismiss, "[i]n ruling on that motion a court may consider the contents of the petition and matters of which the court can take judicial notice [citing] *Meade V. Christie*, 974 N.W.2d 770, 775 (Iowa 2022)." Def. Mot. to Dismiss p. 3.  Unfortunately, the Defendants go on to repeatedly violate that standard by submitting numerous factual allegations, one extensive document and detailed arguments based upon that material, which absolutely cannot be considered by the court in ruling on the Motion to Dismiss. See Def. Mot. to Dismiss, p. 2 and Def. Reply to Pls. Resist. to Mot. to Dismiss, pp. 11-92.

The extraneous material submitted by the Defendants should be struck from the record pursuant to Iowa Rule Civil Procedure 1.434. ("Improper or unnecessary matter in a pleading may be stricken out on motion of the adverse party."). Iowa. R. Civ. P. 1.434 "is a procedural tool to strike 'improper or unnecessary matter in a pleading.' Iowa R. Civ. P. 1.434; *Krausnick v. Haegg Roofing Co*., 236 Iowa 985, 20 N.W.2d 432, 434 (Iowa 1945) (finding "immaterial and irrelevant"

E-FILED  2022 OCT 24 11:15 AM SCOTT - CLERK OF DISTRICT COURT

allegations of the pleading were properly struck where the theory of liability was not supported by allegations). See also *Rixner v. James W. Boyd Revocable Trust*, 940 N.W.2d 450 (IA App. 2019).

In their initial motion the Defendants set out a paragraph of factual allegations not contained in the petition and not subject to judicial notice.   See the Defendants first paragraph under the Factual Background heading.   Motion to Dismiss, p. 2.   For arguments regarding why that paragraph contains allegations that are not subject to judicial notice see pages 6-8 of Plaintiff's Resistance to the Motion to Dismiss.  In resisting the motion, the Plaintiff initially asked only for the court to "ignore" these improper allegations, not wanting to waste judicial resources filing a separate motion to strike.  However, since the Defendants went on to submit an 82-page document in support of their motion as part of their reply, this Motion to Strike became necessary. All improper material contained in the Defendants' pleadings should be struck from the record.

As the Iowa Supreme Court held in reviewing a motion to dismiss, a "court cannot consider factual allegations contained in the motion or the documents attached to the motion. [Citing] *Berger v. Gen. United Group, Inc*., 268 N.W.2d 630, 634 (Iowa 1978). The court must ignore these facts, except those of which the court may take judicial notice. [Citing] *Winneshiek Mut. Ins. Ass'n v. Roach*, 257 Iowa 354, 365, 132 N.W.2d 436, 443 (1965)." *Geisler v. City Council*, 769 N.W.2d 162, 165 (Iowa 2009).

The precise reason why asserted immunities, whether claimed to be under the guise of qualified immunity or not, are affirmative defenses that must be pled and proved, is established by the Defendants out of bounds attempts to get the court to consider improper material in ruling on their Motion to Dismiss.  These arguments, on which the defense has the burden of production and proof, just are not appropriate in the context of a motion to dismiss.  As the Iowa Supreme Court held in *Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018), as follows:

Exhibit P

E-FILED  2022 OCT 24 11:15 AM SCOTT - CLERK OF DISTRICT COURT

Because the question is one of immunity, the burden of proof should be on the defendant. See *Anderson v. State*, 692 N.W.2d 360, 364 (Iowa 2005) …. Accordingly, to be entitled to qualified immunity a defendant must plead and prove as an affirmative defense that she or he exercised all due care to comply with the law.

At 280.   "Immunity is the exception while liability is the rule. When a party invokes an affirmative defense to avoid liability, that party should be forthcoming about why the defense applies rather than expecting the opposing party to seek out evidence to rebut that affirmative defense." *Breese v. City of Burlington*, 945 N.W.2d 12, 23 (Iowa 2020).

There simply is no legitimate grounds for a motion to dismiss to be granted based upon an unpled and unproven affirmative defense. See *Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018).  "What is clear from *Baldwin* is that constitutional torts are not strict liability offenses, qualified immunity in constitutional tort cases is an affirmative defense, and a constitutional tort defendant must plead and carry the burden of proof in order to be entitled to the affirmative defense. *Lennette v. State*, 2018 Iowa App. LEXIS 1040, *8, 924 N.W.2d 878, 2018 WL 6120049. In *Lennette* the Iowa Supreme Court reasoned that as "noted, qualified immunity is available as an affirmative defense to constitutional tort claims. It therefore cannot be submitted through a motion to dismiss unless the facts alleged in the petition give rise to the affirmative defense."  At *9-10. All the material contained in the Defendants' motion outside of the petition should be struck from the record.

## CONCLUSION

For all the reasons set out above, the Defendants' Motion to Strike should be granted.  The first paragraph of factual allegations in Defendants' Motion to Dismiss and the 82-page attachment to the Defendants' Reply to Plaintiff's Resistance to the Motion to Dismiss should be struck from the record.

Exhibit P

E-FILED  2022 OCT 24 11:15 AM SCOTT - CLERK OF DISTRICT COURT

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:   */s/ David A. O'Brien*
      DAVID A. O'BRIEN, AT0005870

By:   */s/ Nicholas C. Rowley*
      NICHOLAS C. ROWLEY AT0022407
      Trial Lawyers for Justice
      421. W. Water Street
      Decorah, IA 52101
      (563)382-5071

By:   */s/ Barrie Duchesneau*
      BARRIE DUCHESNEAU AT0015198
      Trial Lawyers for Justice
      421 W. Water Street
      Decorah, IA 52101
      (563)382-5071

**COPY TO:**

Jason J. O'Rourke
Alex C. Barnett
Lane & Waterman LLP
220 North Main Street, Suite 600
Davenport, IA 52801

**ATTORNEYS FOR DEFENDANTS**

CERTIFICATE OF SERVICE

I hereby certify that on the 24st day of October, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

*/s/ Julia Daugherty*

4

Exhibit P

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | |
|---|---|
| **NICOLE KLUM, Individually and as Administrator of the Estate of BOBBY JO KLUM,** ) ) ) | **CASE NO. LACE 135302** |
| ) | |
| **Plaintiff,** ) | |
| ) | **PLAINTIFF'S RESISTANCE TO** |
| **vs.** ) | **DEFENDANTS' MOTION TO DISMISS** |
| ) | |
| **CITY OF DAVENPORT and MASON ROTH,** ) ) | |
| ) | |
| **Defendants.** | |

Comes now Plaintiff to submit this Resistance to the Defendants' Motion to Dismiss, as follows:

## **TABLE OF CONTENTS**

Introduction.................................................................................................................2

Statement of Facts.......................................................................................................2

Argument ....................................................................................................................4

    I.      Motion to Dismiss Standard.............................................................4

    II.    Improper Factual Allegations in Defendants' Brief Should Be Ignored by the Court ...................................................................16

    III.   Under the Iowa Constitution Qualified Immunity is an Affirmative Defense that Must Be Pled and Proved...........................................8

    IV.   The Due Process Provision of Article I, Section 9 of the Iowa Constitution May Be Applied Anywhere Governmental Conduct "Shocks the Conscience" ……………………………………………11

    V.    Defendants Waived Any Claims of Qualified Immunity by Purchasing Insurance Coverage for the Claims Asserted by the Petition ......................12

Conclusion………………………………………………………………………..12

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

## INTRODUCTION

The notion that the Defendants may prevail on a motion to dismiss based upon a claimed affirmative defense that has yet to be pled, much less proven, is nothing short of ridiculous. The Defendants' Motion to Dismiss is based upon a claim of qualified immunity. Def. Br. p. 3. Qualified immunity is an affirmative defense.  The Iowa Supreme Court held in *Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018), as follows:

> Because the question is one of immunity, the burden of proof should be on the defendant. See *Anderson v. State*, 692 N.W.2d 360, 364 (Iowa 2005) …. Accordingly, to be entitled to qualified immunity a defendant must plead and prove as an affirmative defense that she or he exercised all due care to comply with the law.

At 280.  The court really needs to read no further and should summarily deny the motion.

## STATEMENT OF FACTS

Bobby was 37 years old at the time he was killed by Defendant Roth on or about October 13, 2021. Pet. ¶ 4. A police officer attempted to execute a warrant for Bobby's arrest on October 13, 2021. Pet. ¶ 5.  Bobby did not want to go to jail and left his home into an alley and ran away. Pet. ¶ 6. Additional police arrived and set up a perimeter while they searched for and monitored Bobby who was holding a gun to his own head. Pet. ¶ 7. The gun in Bobby's possession was a BB gun. Pet. ¶ 8.

Bobby was surrounded by police officers as he walked through the neighborhood. Pet. ¶ 9. All of the officers present had adequate distance and cover from Bobby and were never in danger of being shot by Bobby. Pet. ¶ 10.  Bobby never pointed the gun at anyone other than himself. Pet. ¶ 11. Bobby was completely surrounded by police, inside the secure perimeter, as he walked through the neighborhood.  Pet. ¶ 13. Bobby never threatened anyone. Pet. ¶ 14. Bobby never approached another person. Pet. ¶ 15. Bobby remained calm while surrounded by law enforcement officers. Pet. ¶ 16. Bobby was walking slowly past several bystanders only

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

pointing the gun at his own head just moments before Defendant Roth shot him.  See screen grab from video. Pet. ¶ 17.



An attempt was made to subdue Bobby using a non-lethal weapon and two rubber bullets or bean bag rounds were fired at Bobby.  Pet. ¶ 18. The attempt to subdue Bobby using less than lethal means was confirmation by all other law enforcement officers present that Bobby was not engaging in any conduct that justified the use of deadly force. Pet. ¶ 19. Then, within a short period of time after firing the non-lethal rounds and without any change in circumstances regarding the level of threat Bobby posed, Defendant Roth shot and killed Bobby. Pet. ¶ 20. Bobby was walking away from the officers and all others present at the time Roth shot him thru the back and killed him.  Pet. ¶ 21. None of the other numerous law enforcement officers in the area at the time assessed the threat Bobby posed as sufficient to respond with the use of deadly force.  Pet. ¶ 22.    Bobby took no actions that justified the use of deadly force. Pet. ¶ 24.

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

Defendant Roth failed to use less lethal force as suggested by surrounding police officers. Pet. ¶ 25. Defendant Roth failed to take into account that a perimeter had been set up to protect the surrounding public. Pet. ¶ 26. Defendant Roth failed to follow protocol by using lethal force when only less than lethal force was justified in order to apprehend Bobby. Pet. ¶ 27. Defendant Roth failed to follow protocol by shooting and killing Bobby even though Bobby engaged in no conduct that justified the use of deadly force. Pet. ¶ 28. Defendant Roth did not act as an objectively reasonable officer would have acted under the circumstances given that he was the only one of the numerous armed law enforcement officers present who believed Bobby's conduct warranted the use of deadly force. Pet. ¶ 29.

The prohibition against using lethal force against an individual who posed no immediate threat of serious injury or death to anyone else was clearly established at the time Defendant Roth violated that rule in shooting and killing Bobby through the back while he was walking away from officers holding a BB gun to his own head.  See I.C.A. 804.8 and *Tennessee v. Garner*, 471 U.S. 1 (1985).   Pet. ¶ 30. Defendant Roth was aware that all law enforcement officers were attempting to subdue Bobby with less than lethal means. Pet. ¶ 31. Defendant Roth took it entirely upon himself, despite the clear intent of all other officers to use less than lethal force, to murder Bobby. Pet. ¶ 33. Defendant Roth murdered a vulnerable emotionally distraught man holding a BB gun to his own head while all other reasonable officers in the area took measures to deescalate the situation. Pet. ¶ 34.

The State's own investigation indicates that the BB gun Bobby held was never pointed at anyone other than himself.  Pet. ¶ 35. Defendant Roth was trained regarding how to handle armed and mentally unstable individuals with the axiom that distance + cover = time and time is on the side of law enforcement officers in such situations.  Pet. ¶37.  All Officers present,

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

including Defendant Roth, were trained to set up at a sufficient distance, and behind sufficient cover, so that they are not in danger while one officer calmly attempts to establish a rapport and negotiate with the distraught individual.  Pet. ¶ 38. Defendant Roth had adequate distance and adequate cover, but panicked and killed Bobby anyway. Pet. ¶ 39.

The Iowa Office of the State Medical Examiner deemed Bobby's death a homicide. Pet. ¶ 42. The bullet from Defendant Roth's rifle entered Bobby's back and tore through his spinal cord, adrenal gland, liver, diaphragm and right lung before exiting through his chest and causing his entirely avoidable death. Pet. ¶ 43.

## ARGUMENT

### I.      Motion to Dismiss Standard

As the Iowa Supreme Court held in *Rees v. City of Shenandoah,* 682 N.W.2d 77, 79 (Iowa 2004), "[a]lmost every case will survive a motion to dismiss under notice pleading. The application does not have to allege ultimate facts supporting each element of the cause of action, but it must contain factual allegations that give the [defense] 'fair notice' of the claim asserted so the [defense] can adequately respond to the application."  The application meets the "fair notice" requirement "if it informs the [defense] of the [events] giving rise to the claim and of the claim's general nature." *Id.* The applicable standard of review for a motion to dismiss is to "view the applicant's allegations in the light most favorable to the [applicant] with doubts resolved in that party's favor." *Geisler v. City Council of Cedar Falls*, 769 N.W.2d 162, 165 (Iowa 2009) (quoting *Haupt v. Miller*, 514 N.W.2d 905, 911 (Iowa 1994)).   See also, *Belk v. State*, 905 N.W.2d 185, 188 (Iowa 2017).

In *Bowen v. Kaplan*, 237 N.W.2d 799, 801 (Iowa 1976), the Iowa Supreme Court noted that "[w]e explained the guidelines by which we determine whether a petition states a cause of action in *Murphy v. First Nat. Bank of Chicago*, 228 N.W.2d 372, 375 (Iowa 1975).  Under those guidelines

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

a motion to dismiss is sustainable only where it appears to a certainty the pleader has failed to state a claim upon which any relief may be granted under any state of facts which could be shown in support of the claim asserted."

**II.    Improper Factual Allegations in Defendants' Brief
Should Be Ignored by the Court**

The defense attempts to use improper allegations, not before the court, to frame Bobby Klum as "bad guy" to somehow justify his summary execution contrary to law.  These allegations are not subject to judicial notice and therefore, improperly raised by the motion.  Def. Brief, p. 2. While criminal felony convictions may be subject to judicial notice, the entire first factual paragraph of Defendants brief contains allegations from criminal case files that go way beyond the bounds of what may be judicially noticed. Def. Br. p. 2.  Those allegations should be ignored by the court because they are not subject to judicial notice and are completely irrelevant.

Judicial notice of adjudicative facts is covered by Iowa R. Evid. 5.201. An adjudicative fact is "[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties." *Rhoades v. State*, 848 N.W.2d 22, 31, 2014 Iowa Sup. LEXIS 71, *16-18, 2014 WL 2619406, citing *Black's Law Dictionary* 669 (9th ed. 2009). A court may take judicial notice of two kinds of adjudicative facts. First, the court may take judicial notice of a fact "generally known within the territorial jurisdiction of the trial court." Iowa R. Evid. 5.201(b). None of the Defendants' allegations regarding Bobby's alleged history can be identified as generally known within the territory of the court.  Second, the court may take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.*   The facts alleged by the Defendants outside the petition are no more than

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

allegations made by police, prosecutors and parole agents contained in case files that can and should be reasonably questioned.

Iowa Rule of Evidence 5.201 is nearly identical to the Federal Rule of Evidence 201. See Fed. R. Evid. 201. The advisory committee notes to the Federal Rule state that a "high degree of indisputability is the essential prerequisite" to taking judicial notice of an adjudicative facts. Fed. R. Evid. 201 advisory committee's note to subdivision (a). **Evidence must support adjudicative facts**. *Rhoades* at 31 (Emphasis added).  Criminal charges, as opposed to convictions, and the allegations of a parole officer are far from the "accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" required to be judicially noticed.

In addition to not being subject to judicial notice, the facts contained in Defendants' brief, other than those citing directly to the filed petition, are all irrelevant because Defendant Roth was unaware of any of those allegations at the time he killed Bobby Klum. The Iowa Supreme Court has yet to rule specifically on this issue in the context of excessive force claims under the Iowa Constitution, but Plaintiff anticipates that Iowa will follow the federal lead on this issue.  "The issue of reasonableness must be examined from the perspective of the facts known to the officer at the time of the incident." *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995); and *Nelson v. County of Wright*, 162 F.3d 986, 990, 1998 U.S. App. LEXIS 30988, *8-9.    In *Banks v. Hawkins*, 999 F.3d 521, 2021, U.S. App. LEXIS 15860, *4-5, the Eighth summarized the applicable standard, as follows:

> We evaluate what is objectively reasonable "from the perspective of a reasonable officer on the scene," which "turns on those facts known to the officer at the precise moment he effectuated the seizure." *Id.* ("A police officer's use of deadly force against a suspect is a 'seizure' under the Fourth Amendment.") …Though we generally consider the totality of the circumstances, it is well-established that 'absent probable cause' for an officer to believe the suspect poses 'an immediate threat of death or serious bodily injury' to others, 'use of deadly force is not objectively reasonable.'" *Id.* (quoting *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002)). Where the record does not conclusively establish the lawfulness

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

of an officer's use of force, summary judgment on the basis of qualified immunity is inappropriate. *Nance v. Sammis*, 586 F.3d 604, 612-13 (8th Cir. 2009).

At 525.  Since summary judgment would not be appropriate on the facts presented in this case certainly a motion to dismiss should be denied.

### III.     Under the Iowa Constitution Qualified Immunity is an Affirmative Defense that Must Be Pled and Proved

There simply is no legitimate grounds for a motion to dismiss to be granted based upon an unpled and unproven affirmative defense. *Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018).  "What is clear from *Baldwin* is that constitutional torts are not strict liability offenses, qualified immunity in constitutional tort cases is an affirmative defense, and a constitutional tort defendant must plead and carry the burden of proof in order to be entitled to the affirmative defense. *Lennette v. State*, 2018 Iowa App. LEXIS 1040, *8, 924 N.W.2d 878, 2018 WL 6120049. In *Lennette* the Iowa Supreme Court reasoned that as "noted, qualified immunity is available as an affirmative defense to constitutional tort claims. It therefore cannot be submitted through a motion to dismiss unless the facts alleged in the petition give rise to the affirmative defense."  At *9-10.

While the petition in this case alludes to the existence of qualified immunity in the context of waiver when insurance coverage is purchased, ¶76, the petition does not allege a factual basis for any claim of qualified immunity. *Id.* Nowhere does the petition alleged that Defendant Roth acted with "all due care."  Just as in *Lennette*, the Defendants here "moved to dismiss the constitutional causes of action… based on defendants' own factual assertion in their motion to dismiss that they 'were reasonably acting pursuant to [emergency response immunity].' Lennette's petition at law did not include this factual allegation." *Id.*  Therefore, it is

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

improper to raise the qualified immunity affirmative defense in a motion to dismiss. See *Lennette*.

The Defendants' reliance on *Williams v. City of Burlington*, 516 F. Supp. 3d 851, is misplaced. The quote cited in the Defendants' brief applies only to the common law wrongful death claim and note that the common law death claim was only dismissed in *Williams* because counsel in that case neglected to raise the insurance coverage waiver issue. Def. Br. p. 5. Before addressing the common law wrongful death claim, the *Williams* District Court already denied the defendants summary judgment motion on qualified immunity grounds regarding a constitutional excessive force claim. *Williams* at 869 ("In light of its conclusion that genuine disputes of material fact preclude an analysis of the objective reasonableness of [defendant's] actions, the Court cannot find that [defendant] 'exercised all due care' to conform to the objective reasonableness standard under the Iowa Constitution. Defendants are not entitled to immunity under the Iowa Constitution on summary judgment. In sum, Defendants' Motion for Summary Judgment on Counts I and III is DENIED.").

The holding by the District Court in *Williams*, as affirmed by the Eighth Circuit, supports the denial of Defendants' Motion to Dismiss. *Williams* at 868-869 and *Williams v. City of Burlington*, 27 F.4th 1346, 1353, 2022 U.S. App. LEXIS 6051, *9 (8th Cir. 2022)("The order denying qualified immunity is affirmed."). The Eighth Circuit's reasoning in denying qualified immunity in *Williams* is instructive, as follows:

> [Defendant] alleges he mistakenly believed Jones was still armed when he shot and killed him, and reasonably believed he was in a "firing position." In support, he cites the Iowa Attorney General's investigation into this use of deadly force. But the estate presented competing evidence to the district court—autopsy results, body-camera footage, and inconsistent police reports of the incident—to support the claim that Chiprez saw Jones drop the gun, and that he could not reasonably have believed Jones was in a shooting position. That evidence is more than speculation or conjecture. In one frame of the body-camera footage, Chiprez appears to look directly at the items dropped by

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

Jones—including the gun—while running after him. The autopsy results and re-creations of the scene support that Jones was nearly prone on the ground when he was fatally shot, rather than in the upright "firing position" Chiprez describes. These facts and evidence presented by the estate would support a determination that a constitutional violation occurred.

*Williams v. City of Burlington*, 27 F.4th 1346, 1351-1352, 2022 U.S. App. LEXIS 6051, *5-7.

Further, while emergency responders are protected against common law negligence claims within the scope of the statutory immunity, that immunity cannot be interpreted to deprive a citizen protection afforded under the Iowa Constitution. See *Godfrey v. State*, 898 N.W.2d 844, 872 (Iowa 2017), and its progeny, including *Baldwin v. City of Estherville*, 915 N.W.2d 259, 280 (Iowa 2018*), Venckus v. City of Iowa City*, 930 N.W.2d 792 (Iowa 2019) and *Wagner v. State*, 952 N.W.2d 843, 847 (Iowa 2020). Each of those cases clearly hold that the legislature cannot strip Iowans of their constitutional rights via legislation. The Iowa Supreme Court has recognized that the "problem with [the tort claim] acts, though, is that they contain a grab bag of immunities reflecting certain *legislative* priorities. Some of these are unsuitable for *constitutional* torts." (Emphasis in original).

The Iowa Supreme Court acknowledged the legislature's right to regulate claims against government officials, but cautioned that the legislature "must not deny an adequate remedy to the plaintiff for constitutional violations." *Wagner v. State,* 952 N.W.2d 843, 847 (Iowa 2020).  The only immunity that has been expressly applied to constitutional tort claims by the Iowa Supreme Court is "all due care" immunity. *Baldwin II,* 915 N.W.2d at 279.  No other immunity spelled out in Iowa Code §670.4 has been deemed applicable to constitutional torts. The Defendants' attempt to apply the emergency response immunity at the motion to dismiss stage of this case must fail.

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

The emergency response immunity was established by the legislature and is one of those immunities "reflecting certain *legislative* priorities" which are "unsuitable for *constitutional* torts." *Baldwin II,* 915 N.W.2d at 280. The Iowa Supreme Court has only extended statutory immunity to constitutional torts where it is not inconsistent with the *Baldwin* standard of due care.  No statutory immunity can be used as a defense to a claimed violation of Iowa Constitutional rights.  If the legislature does not like the interpretation of the Iowa Constitution, as determined by the Iowa Supreme Court, the only way to change that interpretation is through the constitutional amendment process set out in Article X of the Iowa Constitution.

## IV.     The Due Process Provision of Article I, Section 9 of the Iowa Constitution May Be Applied Anywhere Governmental Conduct "Shocks the Conscience"

The Iowa Supreme Court has not yet considered whether an unreasonable seizure claim can be properly brought under article I, § 9 of the Iowa Constitution. See *Williams v. City of Burlington*, 516 F. Supp. 3d 851, 870 (S.D. Iowa 2021) and *Young v. City of Council Bluffs*, 569 F. Supp. 3d 885, 902, 2021 U.S. Dist. LEXIS 248586, *30-31.  Plaintiff asserts the due process claim and excessive force claims are a "belt and suspenders" approach to this litigation.  At the summary judgment stage, or the jury instruction stage, it may well be appropriate to sustain the unreasonable seizure claim as more directly applicable and dismiss the due process claim.  Until that point, the Plaintiff has sufficiently pled a violation of the Iowa Constitution that "shocks the conscience" and therefore, survives Defendants' Motion to Dismiss.

The Iowa Supreme Court has recognized private rights of action for violations of the due process protection afforded by the Iowa Constitution resulting from the wrongful conduct of government agents. *Lennette v. State*, 975 N.W.2d 380, 393-394 (Iowa 2022)("When specific government conduct (as opposed to legislation) is alleged to have violated substantive due

Exhibit Q

E-FILED  2022 OCT 24 11:33 AM SCOTT - CLERK OF DISTRICT COURT

process, we typically apply the 'shocks the conscience' standard to assess the claim."). The *Lennette* court noted that the "claim is reserved for the most egregious governmental abuses against liberty or property rights, abuses that shock the conscience or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity." *Id*. Certainly, a plausible factual basis has been established by the petition to conclude that one officer out of many present, alone deciding to shoot a mentally unstable and non-threatening individual through the back could "shock the conscience" of fact finders.

### V. Defendants Waived Any Claims of Qualified Immunity by Purchasing Insurance Coverage for the Claims Asserted by the Petition

Plaintiff presumes that when initial disclosures are exchanged the Defendants will disclose insurance coverage for the claims made in this case. I.R.C.P 1.500(a)(4)("The declarations page of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment…"). Insurance coverage will negate any immunity claims asserted by the Defendants under I.C.A. 670.4. *See* Iowa Code § 670.7 ("The procurement of this insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4."). *See also, Merchs. White Line Warehousing v. City of Des Moines*, 2003 Iowa App. LEXIS 188, *11-12, where the court held, that the "emergency response doctrine provided in section 670.4(11) does not provide municipalities with categorical immunity. Section 670.7 enables municipalities to purchase liability insurance to cover liability related to the torts specified in section 670.4. The consequences of purchasing such a policy of liability insurance are also addressed in section 670.7."

### CONCLUSION

Exhibit Q

For all the reasons set out above, the Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:  _/s/ David A. O'Brien_
     DAVID A. O'BRIEN, AT0005870

By:  _/s/ Nicholas C. Rowley_
     NICHOLAS C. ROWLEY AT0022407
     Trial Lawyers for Justice
     421. W. Water Street
     Decorah, IA 52101
     (563)382-5071

By:  _/s/ Barrie Duchesneau_
     BARRIE DUCHESNEAU AT0015198
     Trial Lawyers for Justice
     421 W. Water Street
     Decorah, IA 52101
     (563)382-5071

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of October, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

Jason J. O'Rourke
Alex C. Barnett
Lane & Waterman LLP
220 North Main Street, Suite 600
Davenport, IA 52801
**ATTORNEYS FOR DEFENDANTS**

_/s/Julia Daugherty_
**_Julia Daugherty_**

13

E-FILED          LACE135302 - 2022 OCT 25 11:22 AM          SCOTT
CLERK OF DISTRICT COURT          Page 1 of 3

## IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

NICOLE SUE KLUM
ESTATE OF BOBBY JO KLUM

         Plaintiff/Petitioner,

  vs.

MASON ROTH
CITY OF DAVENPORT

         Defendant/Respondent.

Case No: 07821  LACE135302

**ORDER SETTING HEARING
BY VIDEO CONFERENCE**

This matter comes before the Court upon the Court's own motion. Due to the Covid-19 pandemic and supervisory orders from the Iowa Supreme Court, the Court finds this matter, or portions thereof, must be conducted remotely via Zoom.

IT IS THEREFORE ORDERED that the hearing scheduled on 10/31/2022 10:00 a.m. shall be conducted by video conference.

IT IS FURTHER ORDERED that parties and witnesses wishing to testify SHALL APPEAR BY VIDEO by doing the following:

1. Click on this link: **https://iowacourts.zoomgov.com/j/1616829550? pwd=M1IncGdhUENzdmFOOE5vMmpzb1Q2dz09** or type the web address into your web browser.

Or

1. Download and start the Zoom application on your computer or smartphone.
2. Enter meeting I.D. 161 682 9550.
3. Click "Join"
4. Enter passcode 068776.

Parties who are unable to participate by video conference shall appear by telephone by doing the following:

1. Dial 1-646-828-7666.
2. Enter meeting I.D. 161 682 9550 and press "#" when prompted.
3. If Zoom asks you to enter a participant I.D., press "#".
4. Enter passcode 068776 and press "#". It is normal to hear automated voice prompts or on-hold music once you connect. Stay on the line until the judge or court attendant gives you further instructions.

IT IS FURTHER ORDERED that:

Exhibit R

E-FILED                    LACE135302 - 2022 OCT 25 11:22 AM          SCOTT
                           CLERK OF DISTRICT COURT                    Page 2 of 3

1. All parties shall be indoors in a quiet place free of background noise or distractions.
2. All parties shall mute themselves except when speaking.
3. No party will use a speakerphone when participating in the hearing.
4. Each person testifying must appear separately. Parties shall not share phones, laptop computers, or other devices.

   Any party having difficulty connecting may call Court Administration at (563) 326-8783.


ALL OF THE ABOVE IS SO ORDERED this  25th day of October, 2022.

The clerk shall notify all self-represented parties and attorneys of record.

**Recording or rebroadcasting of a court proceeding held by video or telephone conference, including pictures, screenshots, or other visual or audio copying, is prohibited absent an expanded news media coverage order. Any violation may result in contempt of court or other sanctions. Please note judicial branch staff may be recording this proceeding.**

If you need assistance to participate in court due to a disability, call the disability coordinator at (563) 328-4145 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

7SUP19

E-FILED                    LACE135302 - 2022 OCT 25 11:22 AM          SCOTT
                           CLERK OF DISTRICT COURT                      Page 3 of 3



State of Iowa Courts

| Case Number | Case Title |
|---|---|
| LACE135302 | KLUM NICOLE VS CITY OF DAVENPORT |
| **Type:** | OTHER ORDER |

So Ordered

Henry W. Latham II, District Court Judge,
Seventh Judicial District of Iowa

Electronically signed on 2022-10-25 11:22:28

E-FILED  2022 OCT 25 2:21 PM SCOTT - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

NICOLE KLUM, individually and as  )
Administrator of the Estate of BOBBY JO  )
KLUM,  )
                                              )
        Plaintiff,  )
                                                )
vs.  )
                                                )
CITY OF DAVENPORT and MASON  )
ROTH,  )
                                                )
        Defendants.  )

Case No.  LACE135302

**DEFENDANTS' RESISTANCE TO PLAINTIFF'S MOTION TO STRIKE**

       Defendants City of Davenport and Mason Roth, through their attorneys Lane & Waterman LLP, submit the following Resistance to Plaintiff's Motion to Strike.

       1.      This case arises out of an officer involved shooting that occurred when Davenport Police Officers attempted to serve an arrest warrant on Bobby Klum.  Plaintiff's Petition acknowledges that Klum: (1) did not want to go back to jail; (2) fled from the police; (3) was armed; and (4) was shot while in the vicinity of a group of innocent bystanders on the street. (Petition, ¶¶ 6-17).

       2.      Defendants moved to dismiss Plaintiff's Petition asserting, among other things, that the claims are barred by Iowa Code Section 670.4(1)(k) and 670.12, commonly referred to as emergency response immunity.

       3.      Plaintiff filed a Resistance to Defendants' Motion in which she argued that: (1) certain factual allegations in Defendants' Motion, specifically those pertaining to Klum's extensive criminal background and the reason for which the warrant was being served upon him, should be ignored; and (2) that the immunities provided by the Iowa Legislature in Iowa Code Section 670.4 have been waived because Plaintiff believes (erroneously) that Defendants have insurance coverage for the same. (Resistance, pp. 6-8, 12).

1

E-FILED  2022 OCT 25 2:21 PM SCOTT - CLERK OF DISTRICT COURT

4.      Defendants filed a Reply to Plaintiff's Resistance.  Because Plaintiff's Petition and Resistance asserted insurance coverage existed without actually attaching the applicable insurance policy, Defendants attached the policy for the Court's review as is specifically allowed by Iowa precedent.  *See Martin v. Espinoza*, 978 N.W.2d 94 (Table), 2022 WL 1100219, at *1 (Iowa Ct. App. Apr. 13, 2022) ("when a petition references a document, the document can be considered in ruling on a motion to dismiss even when the document is not attached to the petition.") (citing *Karon v. Elliott Aviation*, 937 N.W.2d 334, 347–48 (Iowa 2020)).

5.      Apparently, recognizing that the insurance policy is fatal to Plaintiff's position, Plaintiff has now filed a Motion to Strike asking the Court to disregard the very insurance policy that Plaintiff put at issue.  Notably, Plaintiff wholly ignores *Martin v. Espinoza*, 978 N.W.2d 94 (Table), 2022 WL 1100219, at *1 (Iowa Ct. App. Apr. 13, 2022).  In that case the court addressed what information can be considered when ruling on a motion to dismiss.  The court stated:

> We start with the general rule, which is that "[i]n determining whether to grant the motion to dismiss, a court views the well-pled facts of the petition in the light most favorable to the plaintiff, resolving any doubts in the plaintiff's favor." There is a corollary to this rule, which is that, when a petition references a document, the document can be considered in ruling on a motion to dismiss even when the document is not attached to the petition. Because the Martins and Bennett Machine reference the note in the petition, we are permitted to consider the terms of the note—including its forum-selection clause—even though the note was not attached to the petition.

*Id*. (internal citation omitted).

6.      Here, Plaintiff put the insurance policy at issue by asserting in Paragraph 76 of her Petition that "on information and belief the City of Davenport has purchased insurance coverage for claims including the subject matter lawsuit and pursuant to I.C.A. 670.7(2)."  Plaintiff, of course, could have sent a Chapter 22 request to the City to obtain the insurance policy, in which case she would know that her allegation is incorrect.  Whether she chose not to do so as a strategic decision to be able to make the allegation and attempt to avoid dismissal is unknown.  What is

E-FILED  2022 OCT 25 2:21 PM SCOTT - CLERK OF DISTRICT COURT

known, however, is that Plaintiff cannot credibly claim that she did not put the policy at issue by raising it both in her Petition and in her Resistance to Defendants' Motion to Dismiss.  This is the very situation to which the rationale behind *Martin* and the cases it cites applies.  If Plaintiff choses to put a document at issue, then Plaintiff should be prepared to actually have the document considered by the Court.  The Motion to Strike is meritless.

7. Plaintiff's Motion related to Klum's criminal background is equally baseless. Plaintiff's Petition specifically asserts the Davenport Police attempted to serve a warrant on Klum, who fled because he did not want to go back to jail.  The background Plaintiff objects to now is the reason why the warrant was being served, all of which is from public records of which the Court can take judicial notice.  *See* Iowa R. Evid. 5.201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  While the Court can take judicial notice of Klum's criminal convictions, even if the Court ignores the convictions and the backgrounds, Defendants are still entitled to emergency response immunity based on Plaintiff's own pleadings.

8. Plaintiff's final argument in her Motion to Strike is a rehashing of the argument for her Resistance to Defendants' Motion to Dismiss.  Specifically, Plaintiff continues to seek to muddy the issues for the Court by confusing qualified immunity with emergency response immunity, misquoting Iowa Supreme Court precedent, and bizarrely claiming that immunity cannot be raised in a motion to dismiss.  Setting aside the fact that this is not even proper for a Motion to Strike, Plaintiff wholly ignores the fact that Defendants' Motion based on the emergency response immunity is based solely on the facts alleged in Plaintiff's Petition and those facts of which the Court can take judicial notice.

3

E-FILED  2022 OCT 25 2:21 PM SCOTT - CLERK OF DISTRICT COURT

9.      Plaintiff claims it is improper to raise qualified immunity in a motion to dismiss. Not only is this untrue, but Defendants did not even raise qualified immunity in their Motion.  The immunity Defendants raise in their Motion is statutory immunity, specifically the emergency response immunity found in Iowa Code § 670.4(1)(k).  A motion to dismiss is proper if it admits the "well-pleaded facts in the petition for the purpose of testing their legal sufficiency." *Hawkeye Foodservice Distribution, Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 608–09 (Iowa 2012). That is precisely the purpose of Defendants' Motion—to test the legal sufficiency of Plaintiff's claims when the emergency response immunity is applied.

10.      Plaintiff's Resistance to the Motion to Dismiss cites to Iowa precedent contrary to her claim that it is improper to raise the qualified immunity affirmative defense in a motion to dismiss.  In *Lennette v. State*, the Iowa Court of Appeals instructed that qualified immunity "cannot be submitted through a motion to dismiss unless the facts alleged in the petition give rise to the affirmative defense."  924 N.W.2d 878 (Table), 2018 WL 6120049, at *3 (Iowa Ct. App. Nov. 21, 2018).  Plaintiff's Motion to Strike wholly ignores that case, presumably because Plaintiff knows it dooms her argument.

WHEREFORE, Defendants respectfully request that the Court deny Plaintiff's Motion to Strike and for all other relief the Court deems appropriate.


Dated:  October 25, 2022

E-FILED  2022 OCT 25 2:21 PM SCOTT - CLERK OF DISTRICT COURT

LANE & WATERMAN LLP

By: */s/ Jason J. O'Rourke*_____
    Jason J. O'Rourke, AT0005963
    Alex C. Barnett, AT0012641
    220 North Main Street, Suite 600
    Davenport, IA 52801
    Telephone: (563) 324-3246
    Fax: (563) 324-1616
    Email: jorourke@l-wlaw.com
    Email: abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

    I hereby certify that on October 25, 2022, I electronically filed the foregoing with the Scott County Clerk of Court using the Iowa Courts E-Filing system which will provide notification of such filing to all counsel of record.

    By */s/ Jason J. O'Rourke*_____

5

Exhibit S

E-FILED  2022 OCT 26 1:41 PM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, Individually and as Administrator of the Estate of BOBBY JO KLUM,<br><br>          Plaintiff,<br><br>     vs.<br><br>CITY OF DAVENPORT and MASON ROTH,<br><br>          Defendants. | )<br>)<br>)     **CASE NO. LACE 135302**<br>)<br>)<br>) **PLAINTIFF'S REPLY TO DEFENDANTS'**<br>)  **RESISTANCE TO MOTION TO STRIKE**<br>)<br>)<br>) |

Comes now Plaintiff to submit this Reply to Defendants' Resistance to Motion to Strike, as follows:

The Defendants cite two cases in support of their claim that information outside the pleadings may be considered in ruling on a motion to dismiss. *See Geisler v. City Council*, 769 N.W.2d 162, 165 (Iowa 2009), for the general rule prohibiting the consideration of such outside information. Both cases cited by the defense are factually and legally distinguishable from this case because each one incorporates a contract executed between the litigants the validity and application of which was not in dispute. See *Karon v. Elliott Aviation*, 937 N.W.2d 334, 347-348, 2020 Iowa Sup. LEXIS 3, *31-32, 2020 WL 111367 and *Martin v. Espinoza*, 2022 Iowa App. LEXIS 283, *4, 978 N.W.2d 94, 2022 WL 1100219 (Iowa Ct. App. April 13, 2022). The *Karon* court noted that the attached document in that case was a "written Purchase Agreement [that] is properly considered part of the record…. The parties do not dispute its authenticity; they debate only its legal significance." At 347.    The *Martin* court noted that "[b]ased on this corollary, all parties agree that we can consider the terms of the note." At *3-4.

Exhibit T

E-FILED  2022 OCT 26 1:41 PM SCOTT - CLERK OF DISTRICT COURT

Further, the disputes in both *Karon* and *Martin* were based upon allegations of improper venue and the contracts that were considered in ruling on the motions to dismiss included forum selection clauses. *Id*.  "When dismissal is sought for improper venue, the court may consider a written contract that is the basis for the improper venue claim." *Karon* at 347-348.   Venue is not at issue in this dismissal motion and issues of fact may not be resolve in favor of the moving party. *Geisler* at 165.

Further, "[w]hen a moving party attacks a claim by filing a motion to dismiss, that party admits well-pleaded facts and waives ambiguity or uncertainty in the petition." *Schaffer v. Frank Moyer Constr*., 563 N.W.2d 605, 607 (Iowa 1997). "A court must decide the merits of a motion to dismiss based on the facts alleged in the petition, not the facts alleged by the moving party or facts that may be developed in an evidentiary hearing." *Berger v. Gen. United Grp., Inc*., 268 N.W.2d 630, 634 (Iowa 1978); *Riediger v. Marrland Dev. Corp*., 253 N.W.2d 915, 916-17 (Iowa 1977); and *Young v. HealthPort Techs., Inc*., 877 N.W.2d 124, 127, 2016 Iowa Sup. LEXIS 33, *3.

The Plaintiffs did not cite to any particular document, as claimed by the defense, but only made a general reference to anticipated insurance coverage.  See ¶ 76 ("…on information and belief the City of Davenport has purchased insurance coverage for claims including the subject matter lawsuit."). Therefore, for purposes of ruling on the pending motion to dismiss, the court must accept as true the claim that the Defendants have insurance coverage for the claims made in this lawsuit. *Geisler* at 165. Defendants attempt to turn this dispute into an issue of fact that should be resolved in their favor is completely without merit. The Iowa Supreme court has held that "a court views the well-pled facts of the petition in the light most favorable to the plaintiff with doubts resolved in that party's favor." *Id*. P

E-FILED  2022 OCT 26 1:41 PM SCOTT - CLERK OF DISTRICT COURT

Plaintiff was not a party to the insurance contract attached to the Defendants' reply brief. Plaintiff has never seen the document before.  Plaintiff has no way of knowing at this stage of the proceeding if the attached insurance policy is authentic, complete, or accurate, or the proper interpretation to be applied to the cited policy provisions.  Plaintiff disputes any interpretation of the policy that would exclude coverage for law enforcement officers acting within the scope of their duties, as alleged by the subject matter petition.  See ¶ 45.  The claim that the City of Davenport is operating without any insurance coverage for wrongful conduct by its law enforcement officers is very hard to believe.  The Defendants cite to language contained in an umbrella policy that may be interpreted that way is far from sufficient for them to carry their burden of proving this affirmative defense at the motion to dismiss stage of the litigation.

The policy attached by the defense raises more issues than it resolves.  Counsel for Plaintiff has litigated constitutional claims against governmental subdivisions across the state of Iowa - dozens of them. In every single one a basic liability insurance policy was in place that provided coverage that was invariably written by one of three insurance providers – ICAP, EMC or Travelers. Those disputes also typically included additional umbrella or excess coverage. The policy attached to the Defendants' motion is for "Excess and Surplus Lines," otherwise known as umbrella coverage.  Umbrella coverage applies to increase the limits of basic liability insurance coverage. So, is there another applicable liability insurance policy which the Defendants have failed to disclose?[1]  Is the City of Davenport really self-insured for tens of millions of dollars of exposure for police excessive force cases? Why are we dealing with outside defense counsel

---

[1] Note that pursuant to the Initial Disclosure rules the Defendants will have to disclose any such policy. See Iowa R. Civ. P. 1.500(1)(a)(4)(The defense must disclose "the declarations page of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."). The Defendants' effort to dismiss this case before being required to disclose all insurance coverage is not legitimate.

E-FILED  2022 OCT 26 1:41 PM SCOTT - CLERK OF DISTRICT COURT

instead of the city attorney if the city is self-insured? Who is paying defense counsel? Is the Princeton Insurance company providing a defense based upon a reservation of rights?  Is an undisclosed liability insurer for the City of Davenport paying for the defense of this case?  What is the proper interpretation of the language cited by the Defendants in support of their claim that they have no insurance coverage for this case?

Defendants want to skip over all these issues, have the court turn the applicable burden of proof on its head, and pretend that the umbrella policy they attached to their motion to dismiss is "part of Plaintiff's petition." Def. Reply to Pl. Resist. to Mot. to Dismiss, p. 8. The defense then goes one step further and insists that Plaintiff and the court must accept their interpretation of the umbrella policy. *Id*. Defendants' argument constitutes a swirling vortex of circular reasoning, "[b]ecause at the motion to dismiss stage we accept as true the allegations in the Petition, the Policy's stated exclusion that it does not insure against 'knowing and intentional deprivation of any rights' protected by the Iowa Constitution applies." *Id*.

Claims of excessive force by law enforcement officers by their very nature encompass intentional acts.  Law enforcement officers rarely, if ever, mistakenly beat the heck out of anyone, or (thank goodness) mistakenly shoot and kill people. The protections against "unreasonable seizures and searches" contained in Article I, Section 8 of the Iowa Constitution would likely not even apply to unintentional conduct.  Therefore, the Defendants' reasoning regarding the application of the facts of the case to the language of the submitted umbrella insurance policy is suspect. See Def. Resist p.8, as follows:

> Plaintiff claims Officer Roth acted knowingly and intentionally in firing his weapon at Bobby Klum (Petition ¶¶ 33, 61) and in doing so Officer Roth deprived Bobby Klum of his constitutional rights (Petition ¶¶ 51, 66). Thus, the Policy does not insure against the claims alleged in the Petition. Because the Policy does not insure against Plaintiff's claims alleged in the Petition and pursuant to § 670.7(2), the Policy does not waive Defendants' immunities in § 670.4, including the emergency response immunity.

E-FILED  2022 OCT 26 1:41 PM SCOTT - CLERK OF DISTRICT COURT

Note that the City of Davenport is liable for any unconstitutional conduct of its police officers regardless of whether city leaders were responsible enough to procure insurance coverage for that risk, or sufficiently incompetent enough to fail to do so.  See *Baldwin v. City of Estherville*, 915 N.W.2d 259, 280 (Iowa 2018).

The Defendants argument regarding the factual allegations contained in the first paragraph of their statement of facts is equally without merit.  The Defendants' claim that the court may take judicial notice of all "public records" in ruling on a motion to dismiss is simply false. See Def. Resist. Mot. to Strike ¶ 7. ("Plaintiff's Petition specifically asserts the Davenport Police attempted to serve a warrant on Klum, who fled because he did not want to go back to jail. The **background** Plaintiff objects to now is the reason why the warrant was being served, **all of which is from public records** of which the Court can take judicial notice. [Citing] Iowa R. Evid. 5.201.")(Emphasis added).  The cited rule of evidence does not support the defendants' position.  Courts are not allowed to take judicial notice of background facts. See *Rhoades v. State*, 848 N.W.2d 22, 31 (Iowa 2014), "[a]n adjudicative fact is controlling or operative fact, rather than a background fact." Unproven allegations contained in criminal charges and parole officer reports are not facts derived from "sources whose accuracy cannot reasonably be questioned." *Id.*

In essence, what the defense is attempting to do is skip the litigation process, including discovery, submit incomplete additional information and go right to summary judgment where Plaintiff has the burden of proof, all without giving the Plaintiff even an opportunity to contest the factual and legal claims asserted.  That effort should be summarily denied because "[i]mmunity is the exception while liability is the rule."   *Breese v. City of Burlington*, 945 N.W.2d 12, 23 (Iowa 2020).

Exhibit T

E-FILED  2022 OCT 26 1:41 PM SCOTT - CLERK OF DISTRICT COURT

## CONCLUSION

For all the reasons set out above, the Defendants' Motion to Strike should be granted.  The first paragraph of factual allegations in Defendants' Motion to Dismiss and the 82-page attachment to the Defendants' Reply to Plaintiff's Resistance to the Motion to Dismiss should be struck from the record.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:    */s/ David A. O'Brien*
DAVID A. O'BRIEN, AT0005870

By:    */s/ Nicholas C. Rowley*
NICHOLAS C. ROWLEY AT0022407
Trial Lawyers for Justice
421. W. Water Street
Decorah, IA 52101
(563)382-5071

By:    */s/ Barrie Duchesneau*
BARRIE DUCHESNEAU AT0015198
Trial Lawyers for Justice
421 W. Water Street
Decorah, IA 52101
(563)382-5071

## CERTIFICATE OF SERVICE

I hereby certify that on the 26st day of October, 2022, I electronically filed the foregoing document with the Clerk of the Court using the Iowa Courts E-Filing system which will provide notification of said filing to all counsel of record.

*/s/ Julia Daugherty*

E-FILED 2022 NOV 02 9:11 AM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, Individually and as Administrator of the Estate of BOBBY JO KLUM, | ) ) ) ) **CASE NO. LACE 135302** |
| Plaintiff, | ) ) |
| vs. | ) **PLAINTIFF'S NOTICE OF CASE CITE** ) **RE: DEFENDANTS' MOTION TO** ) **DISMISS** |
| CITY OF DAVENPORT and MASON ROTH, | ) ) |
| Defendants. | |

Comes now Plaintiff to submit this case cite as noted during the October 31, 2022, hearing on Defendants' Motion to Dismiss, as follows:

In *McClellan v. Ramirez*, 2019 Iowa App. LEXIS 543, *1, 928 N.W.2d 894, 2019 WL, the Iowa Court of Appeals reversed the holding of a district court finding that the emergency response immunity protected the defendants from liability for a collision between a patrol cruiser that turned left in front of an oncoming passenger vehicle without having either emergency lights or siren engaged. The *McClellan* Court cited § 670.4(1)(k) and noted when a law enforcement officer is engaged in an emergency response, "a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims." At *6.

The *McClellan* court noted that Iowa Code section 321.231 is an express statute dealing with the operation of emergency response vehicles. Therefore, Officer Ramirez and the City can be held liable "only to the extent liability may be imposed by" section 321.231. [Citing *Hoffert v. Luze*, 578 N.W.2d 681, 683 (Iowa 1998)." At *6-7. The *McClellan* court reasoned that "Officer Ramirez was not making use of an audible or visual signaling device at the time he was driving and struck the McClellan car. He therefore, by the plain language of Iowa Code section 321.231(4), was

not privileged to disobey applicable traffic laws." At *8.   The *McClellan* court concluded, "[a]ccordingly, we reverse the order granting summary judgment in favor of the defendants and remand to the district court." At *10.

In this case, Roth and Davenport may be held liable "only to the extent liability may be imposed" by section 804.8.  *Id.*  Section 804.8 of the Iowa Code applies a reasonableness standard to use of force by peace officers. "A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer **reasonably believes to be necessary** to effect the arrest or to defend any person from bodily harm while making the arrest.")(Emphasis added). That code section notes that deadly force "is only justified when a person cannot be captured any other way and… the person has used or threatened to use deadly force in committing a felony… [or] the peace officer reasonably believes the person would use deadly force against any person unless immediately apprehended." Klum's petition specifically alleges that Defendant Roth violated these "rules expressly imposed by statute" for dealing with use of deadly force claims. Therefore, pursuant to the very language of the immunity statute cited by the defense, § 670.4(1), the motion to dismiss must be denied.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:     */s/ David A. O'Brien*
        DAVID A. O'BRIEN, AT0005870

By:     */s/ Nicholas C. Rowley*
        NICHOLAS C. ROWLEY AT0022407
        Trial Lawyers for Justice
        421. W. Water Street

2

Exhibit U

E-FILED 2022 NOV 02 9:11 AM SCOTT - CLERK OF DISTRICT COURT

Decorah, IA 52101
(563)382-5071

By:     */s/ Barrie Duchesneau*
        BARRIE DUCHESNEAU AT0015198
        Trial Lawyers for Justice
        421 W. Water Street
        Decorah, IA 52101
        (563)382-5071


## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2022, I electronically filed the foregoing document with the Clerk of the Court using the Iowa Courts E-Filing system which will provide notification of said filing to all counsel of record.

        */s/ Julia Daugherty*

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

NICOLE KLUM, individually and as )
Administrator of the Estate of BOBBY JO )
KLUM, )     Case No.  LACE135302
 )
     Plaintiff, )
 )
vs. )     **DEFENDANTS' RESPONSE TO**
 )     **PLAINTIFF'S NOTICE OF CASE CITE**
 )     **REGARDING DEFENDANT'S MOTION**
CITY OF DAVENPORT and MASON )     **TO DISMISS**
ROTH, )
 )
     Defendants. )

     Defendants City of Davenport and Mason Roth, through their attorneys Lane & Waterman

LLP, submit the following Response to Plaintiff's Notice of Case Cite regarding Defendants'

Motion to Dismiss.

     *McClellan v. Orlando Ramirez*, 928 N.W.2d 894 (Table), 2019 WL 2375244 (Iowa Ct.

App. June 5, 2019), an unpublished and non-binding opinion, has no applicability to this case.  *See*

Iowa R. App. P. 6.904(2)(c) (2019) ("Unpublished opinions or decisions shall not constitute

controlling legal authority.").  *McClellan* involves negligence claims arising from a collision with

a police vehicle dispatched to the scene of an assault in progress.  *Id.* at *1.  At the time of the

collision, the defendant officer driving the police vehicle did not have his lights and sirens

activated.  *Id.*  In the lawsuit, the defendants raised the emergency response immunity in Iowa

Code § 670.4(1)(k).  *Id.*  Iowa Code § 670.4(1) provides that "As to any of the following claims,

a municipality shall be liable only to the extent liability may be imposed by the *express statute*

*dealing with such claims . . .*"  (emphasis added).  The Iowa Court of Appeals found that section

321.231, a lengthy statute providing specific rules for authorized emergency vehicles when

responding to an emergency, "is an express statute dealing with claims regarding emergency

Exhibit V

E-FILED  2022 NOV 07 11:31 AM SCOTT - CLERK OF DISTRICT COURT

response vehicles.  Therefore, Officer Ramirez and the City can be held liable 'only to the extent liability may be imposed by' section 321.231."  *Id.* at *3.

Section 321.231(4) requires the activation of an emergency vehicle's lights or sirens in order for the exemptions to the rules of the road granted under subsections (2) and (3) to apply to the driver of an emergency vehicle.  *Id.*  The specific issue addressed by the *McClellan* court was whether the recklessness standard in section 321.231(5) applied or a general negligence standard because the defendant officer did not have his lights or sirens activated at the time of the collision.  *Id.* at *3–*4.   The *McClellan* court found that because the defendant officer did not use his emergency lights or siren, he was deprived of his privilege to disobey the rules of the road under section 321.231 and he should be held to a negligence standard.  *Id.* at *4.

Plaintiff's attempt to compare this case to *McClellan* by arguing that Defendants may be held liable "'only to the extent liability may be imposed' by section 804.8" is nonsensical.  *See* Plaintiff's Notice of Case Cite, pg. 2.  Plaintiff brings *constitutional claims* against Defendants— the basis for her claims is the Iowa Constitution, <u>not</u> section 804.8.  Section 804.8 does not impose any liability for alleged violations of the statute.[1]  Section 804.8 provides a general standard for use of deadly force but it is not considered in a vacuum.  There is ample case law addressing when the use of deadly force is appropriate and when it is not.  Other statutes, such as Iowa Code sections 670.4 and 670.4A, address excessive force claims as well and the defenses thereto.

*McClellan*, on the other hand, addressed a very specific statute addressing *emergency response* and stating that an emergency responder does not have to follow certain rules of the road

---

[1] In reality, § 804.8 is largely a repeat of the standard applied to deadly force constitutional cases. *See Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020) (the use of deadly force is subject to the reasonableness requirement and requires probable cause for an officer to believe the suspect poses an immediate threat of death or serious bodily injury to others).

2

Exhibit V

E-FILED  2022 NOV 07 11:31 AM SCOTT - CLERK OF DISTRICT COURT

and is held only to a recklessness standard if vehicle emergency lights and sirens are used.  Thus, the statute in *McClellan*, section 321.231, does expressly address the extent liability may be imposed on an emergency responder driving a vehicle—i.e., a recklessness standard or a negligence standard.  Section 804.8, on the other hand, is in no way comparable to section 321.231.  It does not specifically address emergency responses.  It does not provide specific and lengthy rules that law enforcement officers must follow and does not address when liability may be imposed.  It does not provide a basis for liability for deadly force cases.

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiff's Petition and for all other relief the Court deems appropriate.


Dated:  November 7, 2022

LANE & WATERMAN LLP


By: */s/ Jason J. O'Rourke*
    Jason J. O'Rourke, AT0005963
    Alex C. Barnett, AT0012641
    220 North Main Street, Suite 600
    Davenport, IA 52801
    Telephone: (563) 324-3246
    Fax: (563) 324-1616
    Email: jorourke@l-wlaw.com
    Email: abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**


**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2022, I electronically filed the foregoing with the Scott County Clerk of Court using the Iowa Courts E-Filing system which will provide notification of such filing to all counsel of record.

By */s/ Jason J. O'Rourke*

3

Exhibit V

E-FILED        LACE135302 - 2022 NOV 07 02:40 PM        SCOTT
CLERK OF DISTRICT COURT        Page 1 of 3

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE SUE KLUM<br>ESTATE OF BOBBY JO KLUM<br><br>       Plaintiff,<br><br>vs.<br><br>MASON ROTH<br>CITY OF DAVENPORT<br><br>       Defendant. | Case No: 07821  LACE135302<br><br>**ORDER SETTING TRIAL<br>AND APPROVING PLAN**<br><br>Date Petition Filed : 08/24/22<br><br>Case Type : Law<br><br>Trial Type : Jury<br><br>Expected Length of Trial : 5 Days<br><br>The amount in controversy exceeds $10,000 : Yes |

## 1.  SETTLEMENT / PRETRIAL CONFERENCE

**Settlement Conference is scheduled on 01/11/2024 at 2:00 PM  at the Scott County Courthouse 400 W 4th St, Davenport, IA 52801.**   All parties to the action shall attend the settlement/pretrial conference in person unless otherwise ordered by the Court. If a party is an entity other than an individual, a representative shall be present who has authority to make decisions respecting that party's claim and settlement.

Attorneys shall be prepared to disclose the settlement offer and demand and the extent of their authority. Where that authority is limited, the person having the authority to authorize payment in the amount necessary to effect settlement shall be present.

## 2.  TRIAL

**Jury Trial is scheduled on 02/12/2024 at 9:00 AM  at the Scott County Courthouse 400 W 4th St, Davenport, IA 52801.**

Counsel for all parties shall each file proposed jury instructions for inclusion in the court record and also submit the proposed instructions electronically as a proposed order in a Microsoft Word editable format for use by the Court no later than seven (7) days prior to the scheduled trial date.

Proposed jury instructions shall include: 1) a statement of the case; 2) a list by number of all Iowa Civil Jury Instructions to be requested without modification or addition thereto; 3) any special issue or modified instructions; 4) marshalling instructions containing all necessary elements of all claims or defenses; and 5) verdict forms addressing all issues, including special interrogatories, if any, to be submitted to the jury.

## 3.  DISCOVERY PLAN

Exhibit W

E-FILED          LACE135302 - 2022 NOV 07 02:40 PM          SCOTT
CLERK OF DISTRICT COURT
Page 2 of 3

A Trial Scheduling and Discovery Plan has been filed in this matter in compliance with IRCP 1.507(2). The Trial Scheduling and Discovery Plan has been completed. No additional hearings are required. The Trial Scheduling and Discovery Plan is made a part of this order as if fully set forth herein.

**ALL ABOVE IS SO ORDERED** this 7th day of November, 2022.

The Clerk shall notify all self-represented parties and attorneys of record.

If you need assistance to participate in court due to a disability, call the disability coordinator at (563) 328-4145 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

7NSTAP

Exhibit W

E-FILED          LACE135302 - 2022 NOV 07 02:40 PM          SCOTT
CLERK OF DISTRICT COURT          Page 3 of 3



State of Iowa Courts

| Case Number | Case Title |
|---|---|
| LACE135302 | KLUM NICOLE VS CITY OF DAVENPORT |
| **Type:** | ORDER SETTING TRIAL |

So Ordered

Henry W. Latham II, District Court Judge,
Seventh Judicial District of Iowa

Electronically signed on 2022-11-07 14:40:58

Exhibit W

E-FILED          LACE135302 - 2022 NOV 28 11:21 AM          SCOTT
                 CLERK OF DISTRICT COURT                    Page 1 of 5

## IN THE IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, <br>      Plaintiff, <br><br> vs. <br><br> CITY OF DAVENPORT and MASON ROTH, <br>      Defendants. | Case No. LACE135302 <br><br> **RULING ON DEFENDANT'S MOTION TO DISMISS and PLAINTIFF'S MOTION TO STRIKE** |

On October 31, 2022, Defendant's Motion to Dismiss and Plaintiff's Motion to Strike came before the Court for argument. The Defendant was represented by Attorneys Jason O'Rourke and Alex C. Barnett. The Plaintiff was represented by David O'Brien, Nicholas Rowley, and Barrie Duchesneau. After having considered the pertinent filings, the written and oral arguments of counsel and the applicable law, the Court enters the following ruling on the pending motions.

### FACTUAL BACKGROUND

On October 13, 2021, an officer attempted to execute an arrest warrant on Bobby Klum. When Klum learned of the attempt, he fled his home in an attempt to avoid the warrant. Additional Police officers arrived and began to search for Klum. Klum was seen walking down the street holding a gun to his head. Plaintiff contends that Klum did not point the gun at anybody but himself, and did not threaten anyone.

1

Exhibit X

E-FILED          LACE135302 - 2022 NOV 28 11:21 AM          SCOTT
CLERK OF DISTRICT COURT                    Page 2 of 5

Officers attempted to use rubber bullets to subdue Klum, but they were unsuccessful. Defendants state that Klum was close to several bystanders, with his handgun still in his hand. At this point, Officer Roth filed at Klum, killing him.

Defendants filed a pre-answer Motion to Dismiss, for failure to state a claim upon which relief can be granted. In their reply to the resistance, Defendant's attached a copy of an insurance policy in support of their motion to dismiss. Plaintiff then filed a motion to strike the attachment, alleging the court could not consider the attachments and therefore the attachments should be stricken.

## ANALYSIS

<u>MOTION TO DISMISS</u>

Iowa R. Civ. P. 1.421(1) allows parties to file a pre-answer motion to dismiss. Motions to dismiss are rarely granted and nearly every case will survive a motion to dismiss. *Weizberg v. City of Des Moines*, 923 N.W.2d 200, 217 (Iowa 2018). A court can only grant a motion to dismiss if the petition shows no right of recovery on its face. If a claim is "at all debatable", the court will not grant the motion. *Id*. "A court must decide the merits of a motion to dismiss based on the facts alleged in the petition." *Young v. HealthPort Technologies, Inc.*, 877 N.W.2d 124, 127 (Iowa 2016). It is also not necessary for the petition to "allege ultimate facts that support each element of the cause of action," but the petition must contain enough factual allegations to give the defendant "fair notice." *Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004). Motions to dismiss are reviewed in the light most favorable to the plaintiff and all ambiguities and doubts are resolved in the plaintiff's favor. *Wasker, Dorr, Wimmer & Marcouiller, P.C. v. Bear,* 725 N.W.2d 658 (Iowa Ct. App. 2006).

2

Exhibit X

E-FILED          LACE135302 - 2022 NOV 28 11:21 AM          SCOTT
CLERK OF DISTRICT COURT          Page 3 of 5

On its face, Plaintiff's petition shows a possibility of a right to recovery. In their Motion to Dismiss, Defendant first argues Iowa Code Chapter §670.4(1)(k) grants immunity to Officer Roth because his acts arouse in connection with an emergency response. However, qualified immunity in constitutional tort cases is an affirmative defense. *Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018). A motion to dismiss is not the proper vehicle for the submission of an affirmative defense, and the defendant must plead and carry the burden of proof. *Stearns v. Stearns*, 187 N.W.2d 733, 734 (Iowa 1971). The Court can only decide a motion to dismiss on the facts in the petition. Defendant then argues Count II of Plaintiff's Petition should be dismissed because Article I Section 9 of the Iowa Constitution does not provide a direct cause of action in a case alleging excessive force. The Court cannot consider a conclusion of law or fact when deciding a motion to dismiss. *Bailey v. Iowa Beef Processors, Inc.*, 213 N.W.2d 642 (Iowa 1973). The Court must resolve all doubts in favor of the Plaintiff. To rule on the Defendant's motion at this stage in the proceeding would require the Court to make a conclusion of law.

The Court concludes the Defendant's Motion to Dismiss should be denied.


MOTION TO STRIKE

"Improper or unnecessary matter in a pleading may be stricken out on motion of the adverse party." Iowa R. Civ. P. 1.434. The status of motions to strike in Iowa practice may be regarded as unsettled. Such motions are authorized by Rule 104 (c) and Rule 113. Rule 104(c) permits a motion to strike any insufficient defense and is comparable to that extent to Federal Rule 12(f). Iowa R. Civ. P. 1.434 – Editors' Note.

Plaintiffs argue that Defendant submitted factual allegations, an extensive document, and arguments based on said material. Plaintiffs assert these cannot be considered by the court as a

E-FILED          LACE135302 - 2022 NOV 28 11:21 AM          SCOTT
                 CLERK OF DISTRICT COURT                   Page 4 of 5

Motion to Dismiss must be decided on Petition alone. As the Iowa Supreme Court held in reviewing a motion to dismiss, a "court cannot consider factual allegations contained in the motion or the documents attached to the motion. *Berger v. Gen. United Group, Inc*., 268 N.W.2d 630, 634 (Iowa 1978).

Plaintiff is correct that the Court cannot consider factual allegations contained in a motion to dismiss or outside documents attached to the motion. *Turner v. Iowa State Bank & Tr. Co. of Fairfield*, 743 N.W.2d 1, 3 (Iowa 2007). However, the Court sees no reason to strike the requested facts or documents submitted by Defendants. The Court is able to disregard improper facts and documents when deciding a motion to dismiss, and indeed did disregard said facts and documents when it denied the motion to dismiss above. Further, the facts and documents submitted by Defendant will likely be asserted in their answer and will become part of the record regardless.

The Court further concludes that the Plaintiff's Motion to Strike should be denied.

## RULING

For all of the above-stated reasons, it is the ruling of the Court that the Defendant's Motion to Dismiss is **DENIED.**

For all of the above-stated reasons, it is the ruling of the Court that the Plaintiff's Motion to Strike is **DENIED.**

E-FILED          LACE135302 - 2022 NOV 28 11:21 AM          SCOTT
CLERK OF DISTRICT COURT          Page 5 of 5



State of Iowa Courts

**Case Number**     **Case Title**
LACE135302          KLUM NICOLE VS CITY OF DAVENPORT
**Type:**           OTHER ORDER

So Ordered

Mark D. Cleve, District Court Judge,
Seventh Judicial District of Iowa

Electronically signed on 2022-11-28 11:21:25

Exhibit X

E-FILED  2022 NOV 30 10:19 AM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | |
|---|---|
| **NICOLE KLUM, individually and as** ) | |
| **Administrator of the Estate of BOBBY** ) | |
| **JO KLUM,** ) | **Law No. LACE 135302** |
| ) | |
| **Plaintiffs,** ) | |
| ) | **NOTICE OF SERVING PLAINTIFF'S** |
| **vs.** ) | **INITIAL DISCLOSURES** |
| ) | |
| **CITY OF DAVENPORT, IOWA, and** ) | |
| **MASON ROTH,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

Pursuant to Rule 16.401(2), notice is hereby given that on November 30, 2022, Plaintiffs

served the following discovery upon Defendants' attorneys Jason O'Rourke and Alex Barnett,

Lane and Waterman LLP via email.

1.      Plaintiffs' Initial Disclosures.

Respectfully submitted,

DAVE O'BRIEN LAW
1500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By: /s/ David A. O'Brien
        DAVID A. O'BRIEN, AT0005870

ATTORNEY FOR PLAINTIFFS

Exhibit Y

E-FILED  2022 NOV 30 10:19 AM SCOTT - CLERK OF DISTRICT COURT

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 30, 2022, I filed the foregoing with the Clerk of Court using EDMS.  Notice of Electronic Filing will be sent by operation of EDMS to all counsel of record registered with EDMS.

 */s/ Julia Daugherty*

2

Exhibit Y

E-FILED  2022 DEC 02 3:19 PM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as **Administrator of the Estate of BOBBY JO KLUM,** ) ) ) ) | Law No. LACE 135302 |
| **Plaintiffs,** ) ) | |
| ) | **NOTICE OF SERVING** |
| **vs.** ) ) | **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| **CITY OF DAVENPORT, IOWA, and** ) **MASON ROTH,** ) ) | |
| **Defendants.** ) ) | |

Pursuant to Rule 16.401(2), notice is hereby given that on November 30, 2022, Plaintiffs

served the following discovery upon Defendants' attorneys Jason O'Rourke and Alex Barnett,

Lane and Waterman LLP via email.

1.     Plaintiff's First Set of Requests for Production of Documents.

Respectfully submitted,

DAVE O'BRIEN LAW
1500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:  /s/ David A. O'Brien
      DAVID A. O'BRIEN, AT0005870

ATTORNEY FOR PLAINTIFFS

Exhibit Z

E-FILED  2022 DEC 02 3:19 PM SCOTT - CLERK OF DISTRICT COURT

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 2, 2022, I filed the foregoing with the Clerk of Court using EDMS.  Notice of Electronic Filing will be sent by operation of EDMS to all counsel of record registered with EDMS.

 */s/ Julia Daugherty*

2

Exhibit Z

E-FILED  2022 DEC 22 11:12 AM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,,<br><br>     Plaintiff,<br><br>vs.<br><br>CITY OF DAVENPORT and MASON ROTH,<br><br>     Defendants. | Case No. LACE135302<br><br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S PETITION and JURY DEMAND** |

Defendants City of Davenport and Mason Roth, through their attorneys Lane & Waterman LLP, state as follows for their Answer to Plaintiff's Petition:

### PARTIES

1.     Defendants lack information and knowledge sufficient to form a response to the allegations in Paragraph 1 and, therefore, deny the same.

2.     Defendants admit the City employed Mason Roth as a police officer and deny all other allegations in Paragraph 2 that are not specifically admitted.

3.     Defendants admit the allegations in Paragraph 3.

### FACTUAL BACKGROUND

4.     Defendants admit Mr. Klum was 37 years old on October 13, 2021 when he was shot by Officer Roth, deny the allegation that he was "killed" and deny all other allegations in Paragraph 4 that are not specifically admitted.

5.     Defendants admit the allegations in Paragraph 5.

Exhibit AA

E-FILED  2022 DEC 22 11:12 AM SCOTT - CLERK OF DISTRICT COURT

6.      Defendants admit that Mr. Klum fled when police tried to serve the warrant but lack information and knowledge sufficient for form a response to the remaining allegations in Paragraph 6 and, therefore, deny the same.

7.      Defendants admit that additional officers arrived and searched for Mr. Klum and deny all other allegations in Paragraph 7 that are not specifically admitted.

8.      Defendants admit that it was determined after Mr. Klum was shot that the gun in his possession was a BB gun and deny all other allegations in Paragraph 8 that are not specifically admitted.

9.      Defendants deny the allegations in Paragraph 9.

10.     Defendants deny the allegations in Paragraph 10.

11.     Defendants lack information and knowledge sufficient to form a response to the allegations in Paragraph 11 and, therefore, deny the same.

12.     Defendants deny the allegations in Paragraph 12.

13.     Defendants deny the allegations in Paragraph 13.

14.     Defendants deny the allegation in Paragraph 14.

15.     Defendants deny the allegations in Paragraph 15.

16.     Defendants deny the allegations in Paragraph 16.

17.     Defendants admit Mr. Klum was walking in the vicinity of and towards several bystanders at the time he was shot and deny all other allegations in Paragraph 17 that are not specifically admitted.

18.     Defendants admit the allegations in Paragraph 18.

19.     Defendants deny the allegations in Paragraph 19.

20.     Defendants deny the allegations in Paragraph 20.

2

Exhibit AA

E-FILED  2022 DEC 22 11:12 AM SCOTT - CLERK OF DISTRICT COURT

21.     Defendants deny the allegations in Paragraph 21.

22.     Defendants deny the allegations in Paragraph 22.

23.     Defendants admit the allegations in Paragraph 23.

24.     Defendants deny the allegations in Paragraph 24.

25.     Defendants deny the allegations in Paragraph 25.

26.     Defendants deny the allegations in Paragraph 26.

27.     Defendants deny the allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28.

29.     Defendants deny the allegations in Paragraph 29.

30.     Defendants deny the allegations in Paragraph 30.

31.     Defendants deny the allegations in Paragraph 31.

32.     Defendants deny the allegations in Paragraph 32.

33.     Defendants deny the allegations in Paragraph 33.

34.     Defendants deny the allegations in Paragraph 34.

35.     Defendants lack information and knowledge sufficient to form a response to the allegations in Paragraph 35 and, therefore, deny the same.

36.     Defendants lack information and knowledge sufficient to form a response to the allegations in Paragraph 36 and, therefore, deny the same.

37.     Defendants deny the allegations in Paragraph 37.

38.     Defendants lack information and knowledge sufficient to form a response to the allegations in Paragraph 38 and, therefore, deny the same

39.     Defendants deny the allegations in Paragraph 39.

40.     Defendants deny the allegations in Paragraph 40.

3

E-FILED  2022 DEC 22 11:12 AM SCOTT - CLERK OF DISTRICT COURT

41.     Defendants deny the allegations in Paragraph 41.

42.     Defendants lack information and knowledge sufficient to form a response to the allegations in Paragraph 42 and, therefore, deny the same.  Defendants further deny that the allegation in Paragraph 42 is relevant in any way to this dispute.

43.     Defendants deny the allegations in Paragraph 43.

44.     Defendants admit that the shooting of Mr. Klum and a period of time leading up to it was captured on various cameras and deny all other allegations in Paragraph 44 that are not specifically admitted.

45.     The allegations in Paragraph 45 constitute a legal conclusion to which no response is necessary.

46.     Defendants deny that either Officer Roth or the City is liable and, therefore, deny the allegations in Paragraph 46.

47.     Defendants deny the allegations in Paragraph 47.

48.     The allegations contained in Paragraph 48 are not statements of fact that require a response but, instead, argumentative statements of counsel that do not.

49.     The allegations contained in Paragraph 49 are not statements of fact that require a response but, instead, argumentative assertions of counsel that do not.  Further, the allegations in Paragraph 49 constitute a legal conclusion to which no response is necessary.

## COUNT I

50.     Defendants repeat and reallege their responses to Paragraphs 1-49 as if set forth fully herein.

51.     Defendants deny the allegations in Paragraph 51.

52.     Defendants deny the allegations in Paragraph 52.

4

E-FILED  2022 DEC 22 11:12 AM SCOTT - CLERK OF DISTRICT COURT

53.     Defendants deny the allegations in Paragraph 53.

54.     Defendants deny the allegations in Paragraph 54.

55.     Defendants deny the allegations in Paragraph 55.

56.     Defendants deny the allegations in Paragraph 56.

57.     Defendants deny the allegations in Paragraph 57.

## COUNT II

58.     Defendants repeat and reallege their responses to Paragraphs 1-57 as if set forth fully herein.

59.     Defendants deny the allegations in Paragraph 59.

60.     Defendants deny the allegations in Paragraph 60.

61.     Defendants deny the allegations in Paragraph 61.

62.     Defendants deny the allegations in Paragraph 62.

63.     Defendants deny the allegations in Paragraph 63.

64.     Defendants deny the allegations in Paragraph 64.

65.     Defendants deny the allegations in Paragraph 65.

66.     Defendants deny the allegations in Paragraph 66.

67.     Defendants deny the allegations in Paragraph 67.

## COUNT III

68.     Defendants repeat and reallege their responses to Paragraphs 1-67 as if set forth fully herein.

69.     Defendants admit Iowa law imposed certain duties upon Officer Roth and denies all allegations in Paragraph 69 inconsistent with Iowa law.

70.     Defendants deny the allegations in Paragraph 70.

E-FILED  2022 DEC 22 11:12 AM SCOTT - CLERK OF DISTRICT COURT

71.     Defendants admit Iowa law imposed certain duties upon the City and denies all allegations in Paragraph 71 inconsistent with Iowa law.

72.     Defendants deny the allegations in Paragraph 72.

73.     Defendants deny the allegations in Paragraph 73.

74.     Defendants deny the allegations in Paragraph 74.

75.     Defendants are uncertain what Plaintiff means by alleging the City "ratified the conduct of" Officer Roth.  Defendants state that the City reviewed the facts surrounding the incident and concluded that Officer Roth acted appropriately and deny all other allegations in Paragraph 75 that are not specifically admitted.

76.     Defendants deny the allegations in Paragraph 76.

## COUNT IV

77.     Defendants repeat and reallege their responses to Paragraphs 1-76 as if set forth fully herein.

78.     Defendants admit the allegations in Paragraph 78.

79.     Defendants deny the allegations in Paragraph 79.

80.     Defendants deny the allegations in Paragraph 80.

81.     Defendants deny the allegations in Paragraph 81.

WHEREFORE, Defendants respectfully request that the Court dismiss all Counts of Plaintiff's Petition, with all costs assessed to Plaintiff, and for all other relief the Court deems appropriate.

## AFFIRMATIVE DEFENSES

1.     Defendants are immune from suit pursuant to Iowa Code Chapter 670.

6

E-FILED  2022 DEC 22 11:12 AM SCOTT - CLERK OF DISTRICT COURT

2.      Defendants are immune from suit pursuant to the doctrine of qualified

immunity.

3.      Defendants are immune from suit under Iowa Code Chapter 804.

4.      Officer Roth's actions were justified and objectively reasonable.

5.      Officer Roth's actions were in self-defense or the defense of others and,

therefore, were justified.

6.      Plaintiff's claims are barred by Iowa Code Chapter 668 or, in the alternative,

Plaintiffs' damages claims should be reduced pursuant to such Chapter.

7.      Bobby Klum assumed the risk of a known danger.

8.      Plaintiffs' Petition fails to state a claim upon which relief can be granted.

WHEREFORE, Defendants respectfully request that the Court dismiss all Counts of

Plaintiff's Petition, with all costs assessed to Plaintiff, and for all other relief the Court deems

appropriate.

## **JURY DEMAND**

Defendants demand trial by jury on all claims asserted herein.

LANE & WATERMAN LLP

By: */s/ Jason J. O'Rourke*
        Jason J. O'Rourke, AT0005963
        220 North Main Street, Suite 600
        Davenport, IA 52801
        Telephone:  563-324-3246
        Facsimile:  563-324-1616
        Email:  jorourke@l-wlaw.com
        Email:  gmangieri@l-wlaw.com

**ATTORNEYS FOR DEFENDANT
CITY OF DAVENPORT**

7

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on <u>December 22, 2022</u>, I electronically filed the foregoing with the Scott County Clerk of Court using the Iowa Courts E-Filing system which will provide notification of such filing to all counsel of record.

By:  <u>*/s/ Jason J. O'Rourke*</u>
         Jason J. O'Rourke

8

Exhibit AA

E-FILED  2022 DEC 30 4:04 PM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,, <br><br>      Plaintiff, <br> vs. <br><br> CITY OF DAVENPORT and MASON ROTH, <br><br>      Defendants. | Case No. LACE135302 <br><br><br> **NOTICE OF SERVICE** |

Defendants, City of Davenport and Mason Roth, by their attorneys Lane & Waterman LLP, hereby provides notice of service of Defendants', City of Davenport and Mason Roth, Initial Disclosures upon Plaintiff's counsel via email on December 30, 2022.

LANE & WATERMAN LLP

*/s/Jason J. O'Rourke*
Jason J. O'Rourke, AT0005963
Alex C. Barnett, AT0012641
LANE & WATERMAN LLP
220 North Main Street, Suite 600
Davenport, IA  52801-1987
Telephone: (563) 324-3246
Facsimile:  (563) 324-1616
Email:  jorourke@l-wlaw.com
Email:  abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2022, I electronically filed the foregoing instrument with the Scott County Clerk of Court using the Iowa Courts E-Filing System which will provide notification of such filing to all counsel of record.

*/s/Jason J. O'Rourke*

Exhibit BB

E-FILED  2023 JAN 24 9:46 AM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,, <br><br>   Plaintiff, <br> vs. <br><br> CITY OF DAVENPORT and MASON ROTH, <br><br>   Defendants. | Case No. LACE135302 <br><br><br> **NOTICE OF SERVICE** |

  Defendants, City of Davenport and Mason Roth, by their attorneys Lane & Waterman LLP,

hereby provides notice of service of Defendants', City of Davenport and Mason Roth, Response

to Plaintiff's First Request for Production of Documents upon Plaintiff's counsel via email on

January 24, 2023.

          LANE & WATERMAN LLP

          */s/Alex C. Barnett*
          Jason J. O'Rourke, AT0005963
          Alex C. Barnett, AT0012641
          LANE & WATERMAN LLP
          220 North Main Street, Suite 600
          Davenport, IA  52801-1987
          Telephone: (563) 324-3246
          Facsimile:  (563) 324-1616
          Email:  jorourke@l-wlaw.com
          Email:  abarnett@l-wlaw.com

          **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

  I hereby certify that on January 24, 2023, I electronically filed the foregoing instrument with the Scott County Clerk of Court using the Iowa Courts E-Filing System which will provide notification of such filing to all counsel of record.

     */s/Alex C. Barnett*

              Exhibit CC

E-FILED  2023 FEB 07 4:40 PM SCOTT - CLERK OF DISTRICT COURT

### IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,,<br><br>            Plaintiff,<br>vs.<br><br>CITY OF DAVENPORT and MASON ROTH,<br><br>          Defendants. | Case No. LACE135302<br><br><br>**NOTICE OF SERVICE** |

Defendants, City of Davenport and Mason Roth, by their attorneys Lane & Waterman LLP, hereby provides notice of service of Defendants', City of Davenport and Mason Roth, Supplemental Response to Plaintiff's First Request for Production of Documents upon Plaintiff's counsel via email on February 7, 2023.

LANE & WATERMAN LLP

*/s/Alex C. Barnett*
Jason J. O'Rourke, AT0005963
Alex C. Barnett, AT0012641
LANE & WATERMAN LLP
220 North Main Street, Suite 600
Davenport, IA  52801-1987
Telephone: (563) 324-3246
Facsimile:  (563) 324-1616
Email:  jorourke@l-wlaw.com
Email:  abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**


**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2023, I electronically filed the foregoing instrument with the Scott County Clerk of Court using the Iowa Courts E-Filing System which will provide notification of such filing to all counsel of record.

*/s/Alex C. Barnett*

Exhibit DD

E-FILED  2023 FEB 17 2:06 PM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,, | Case No. LACE135302 |
| Plaintiff, | |
| vs. | **NOTICE OF SERVICE** |
| CITY OF DAVENPORT and MASON ROTH, | |
| Defendants. | |

Defendants, City of Davenport and Mason Roth, by their attorneys Lane & Waterman LLP, hereby provides notice of service of Defendants', City of Davenport and Mason Roth, Interrogatories and Request for Production of Documents upon Plaintiff's counsel via email on February 17, 2023.

LANE & WATERMAN LLP

*/s/Alex C. Barnett*
Jason J. O'Rourke, AT0005963
Alex C. Barnett, AT0012641
LANE & WATERMAN LLP
220 North Main Street, Suite 600
Davenport, IA  52801-1987
Telephone: (563) 324-3246
Facsimile:  (563) 324-1616
Email:  jorourke@l-wlaw.com
Email:  abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2023, I electronically filed the foregoing instrument with the Scott County Clerk of Court using the Iowa Courts E-Filing System which will provide notification of such filing to all counsel of record.

*/s/Alex C. Barnett*

Exhibit EE

E-FILED  2023 MAR 09 10:07 AM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,, <br><br>     Plaintiff, <br> vs. <br><br> CITY OF DAVENPORT and MASON ROTH, <br><br>     Defendants. | Case No. LACE135302 <br><br><br> **NOTICE OF SERVICE** |

Defendants, City of Davenport and Mason Roth, by their attorneys Lane & Waterman LLP, hereby provides notice of service of Defendants', City of Davenport and Mason Roth, Second Supplemental Response to Plaintiff's First Request for Production of Documents upon Plaintiff's counsel via email on March 9, 2023.

LANE & WATERMAN LLP

*/s/Alex C. Barnett*
Jason J. O'Rourke, AT0005963
Alex C. Barnett, AT0012641
LANE & WATERMAN LLP
220 North Main Street, Suite 600
Davenport, IA  52801-1987
Telephone: (563) 324-3246
Facsimile:  (563) 324-1616
Email:  jorourke@l-wlaw.com
Email:  abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I electronically filed the foregoing instrument with the Scott County Clerk of Court using the Iowa Courts E-Filing System which will provide notification of such filing to all counsel of record.

*/s/Alex C. Barnett*

Exhibit FF

E-FILED  2023 MAR 15 1:26 PM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | | |
|---|---|---|
| **NICOLE KLUM, Individually and as Administrator of the Estate of BOBBY JO KLUM,** | ) ) ) ) | **CASE NO. LACE 135302** |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) ) | **PLAINTIFF'S MOTION TO EXTEND DISCOVERY DEADLINES** [*UNRESISTED*] |
| **CITY OF DAVENPORT and MASON ROTH,** | ) ) ) | |
| **Defendants.** | ) | |

Comes now the Plaintiff, by and through her counsel, and in support of her Unresisted Motion to Extend Discovery Deadlines, states as follows:

1.      Pursuant to the Order Setting Trial filed on November 7, 2022, approving the Discovery Plan filed on October 6, 2022, discovery in this litigation is to close June 16, 2023.

2.      The discovery deadline was mistakenly set for June 16, 2023, because it was not revised as the parties worked through agreement on the other deadlines.  Note that a discovery deadline of June 16, 2023, is inconsistent with agreed upon expert designation deadlines in August, October, and November.

3.      The Plaintiff therefore requests that the discovery deadline be extended to December 12, 2023, which is consistent with the general discovery deadline of 60 days before trial, scheduled in this case for February 12, 2024.

4.      Defendants do not object to this Motion.

5.      The new deadlines proposed in this Motion will not change or impact any other deadlines set out in the Scheduling Order and Discovery Plan.

Exhibit GG

E-FILED 2023 MAR 15 1:26 PM SCOTT - CLERK OF DISTRICT COURT

WHEREFORE, for all the reasons set out above, the Plaintiff respectfully requests that the Court grant this Unresisted Motion and enter an order amending the discovery deadline to December 12, 2023.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:     */s/ David A. O'Brien*
         DAVID A. O'BRIEN, AT0005870

By:     */s/ Nicholas C. Rowley*
         NICHOLAS C. ROWLEY AT0022407
         Trial Lawyers for Justice
         421. W. Water Street
         Decorah, IA 52101
         (563)382-5071

By:     */s/ Barrie Duchesneau*
         BARRIE DUCHESNEAU AT0015198
         Trial Lawyers for Justice
         421 W. Water Street
         Decorah, IA 52101
         (563)382-5071

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Iowa Courts E-Filing system which will provide notification of said filing to all counsel of record.

 */s/ Julia Daugherty*

Exhibit GG

E-FILED  2023 MAR 20 3:06 PM SCOTT - CLERK OF DISTRICT COURT

## IN IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | | |
|---|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM, | ) ) ) ) | Law No. LACE 135302 |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **NOTICE OF SERVING PLAINTIFF'S RESPONSES TO DEFENDANTS' DISCOVERY** |
| CITY OF DAVENPORT, IOWA, and MASON ROTH, | ) ) ) | |
| Defendants. | ) ) | |

Pursuant to Rule 16.401(2), notice is hereby given that on March 20, 2023, Plaintiffs served the following discovery upon Defendants' attorneys Jason O'Rourke and Alex Barnett, Lane and Waterman LLP via email.

1.     Plaintiff's Responses to Defendants' Interrogatories and Defendants' Requests for Production.

Respectfully submitted,

DAVE O'BRIEN LAW
1500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:  /s/ David A. O'Brien
      DAVID A. O'BRIEN, AT0005870

ATTORNEY FOR PLAINTIFFS

Exhibit HH

E-FILED  2023 MAR 20 3:06 PM SCOTT - CLERK OF DISTRICT COURT

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 20, 2023, I filed the foregoing with the Clerk of Court using EDMS.  Notice of Electronic Filing will be sent by operation of EDMS to all counsel of record registered with EDMS.


 */s/ Julia Daugherty*

2

Exhibit HH

E-FILED  2023 MAR 30 11:50 AM SCOTT - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,<br><br>     Plaintiff,<br>vs.<br><br>CITY OF DAVENPORT and MASON ROTH,<br><br>    Defendants. | Case No. LACE135302<br><br>**NOTICE OF DEPOSITIONS**<br>**(Videotaped)** |

To:  Defendants City of Davenport, Iowa ("Davenport") and Mason Roth, you are hereby notified that videotaped oral deposition(s) will be taken, as follows:

**May 15, 2023:**

9 am - Officer Mason Roth

11:30 am - Chief Paul Sikorski

2:30 pm - Rule 1.707(5) representative(s) of the City of Davenport. See separate notice attached.

**May 16, 2023:**

| | |
|---|---|
| 9:00 am | Lieutenant James Garrard |
| 10:00 am | Lieutenant Gil Proehl |
| 11:00 am | Lieutenant Gregory Behning |
| 1:00 pm | Captain Jamie Brown |
| 2:00 pm | Officer Dustin Mooty |
| 3:00 pm | Officer Lucas Rusk |
| 4:00 pm | Officer Joshua Wehde |

**May 17, 2023:**

| | |
|---|---|
| 9:00 am | Officer Alicia Mayfield |
| 10:00 am | Officer Michael Catton |
| 11:00 am | Officer Angela Jarrin |
| 1:00 pm | Officer Robert Welch |
| 2:00 pm | Officer Marcus Kelley |

Exhibit II

E-FILED  2023 MAR 30 11:50 AM SCOTT - CLERK OF DISTRICT COURT

| | |
|---|---|
| 3:00 pm | Sergeant Christopher Mahieu |
| 4:00 pm | Sergeant Barry Peiffer |
| 4:30 pm | Corporal Bryant Wayland |

**May 18, 2023:**

| | |
|---|---|
| 9:00 am | Sergeant Jason Ellerbach |
| 10:00 am | Sergeant Brandley Jensen |
| 11:00 am | Sergeant Shorten |
| 1:00 pm | Sergeant James Quick |
| 2:00 pm | Sergeant Noonan |
| 3:00 pm | Detective Brandon Askew |
| 4:00 pm | Detective Leabo |
| 4:30pm | Corporal Jordan Sander |

**May 19, 2023:**

| | |
|---|---|
| 9:00 am | Detective Samantha Deney |
| 10:00 am | Detective Robert Farra |
| 11:00 am | Detective Joseph Dorton |
| 1:00 pm | Detective Joel Griffin |
| 2:00 pm | Detective Alan Poirier, Jr. |
| 3:00 pm | Detective Evan Obert |
| 4:00 pm | Detective Bryan Butt |
| 4:30 pm | Corporal Reeves |

Said deposition will be taken before an officer authorized to administer oaths, to be used in accordance with the Iowa Rules of Civil Procedure relating to depositions.   The location of the depositions is yet to be determined.  Plaintiffs are willing to take the depositions at place that is convenient for the deponents, but will obtain a suitable conference room in Davenport if needed.  You are invited to attend the deposition and cross-examine.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:      */s/ David A. O'Brien*                    
         DAVID A. O'BRIEN, AT0005870

By:     */s/ Nicholas C. Rowley*
        NICHOLAS C. ROWLEY AT0022407
        Trial Lawyers for Justice
        421. W. Water Street
        Decorah, IA 52101
        (563)382-5071

By:     */s/ Barrie Duchesneau*
        BARRIE DUCHESNEAU AT0015198
        Trial Lawyers for Justice
        421 W. Water Street
        Decorah, IA 52101
        (563)382-5071


## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Iowa Courts E-Filing system which will provide notification of said filing to all counsel of record.


Jason J. O'Rourke
Alex C. Barnett
Lane & Waterman LLP
220 North Main Street, Suite 600
Davenport, IA 52801
**ATTORNEYS FOR DEFENDANTS**

**EMAILED MARCH 30, 2023**

Rachel Waterhouse
Westphal Reporting
PO Box 3397
Dubuque, IA 52004-3397
(563) 583-7144
rachel@westphalreporting.com
**COURT REPORTER**

                    */s/ Julia Daugherty*

E-FILED  2023 MAR 30 11:52 AM SCOTT - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,,<br><br>      Plaintiff,<br><br>vs.<br><br>CITY OF DAVENPORT and MASON ROTH,<br><br>      Defendants. | Case No. LACE135302<br><br>**NOTICE OF I.R.C.P. 1.707(5) DEPOSITION,** *DUCES TECUM* *(Videotaped)* |

To: Defendant City of Davenport, Iowa and Mason Roth: *y*ou are hereby notified that the following oral deposition(s) will be taken of a representative(s) of the Davenport Police Department, pursuant to **I.R.C.P. 1.707(5)**. Pursuant to **I.R.C.P. 1.707(5)**, Defendant City of Davenport, Iowa is requested to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf. The City of Davenport is advised of its duty to make such designations pursuant to **I.R.C.P. 1.707(5)**. Also, the designee is asked to provide documents and other information as requested below. The person(s) so designated must testify about information known or reasonably available to the City of Davenport and/or the Davenport Police Department on the following particular subjects:

1. Training of Davenport police officers including Mason Roth, particularly on dealing with:

    a. Individuals with Mental Illness;
    b. Suicidal individuals;
    c. Armed suicidal individuals;
    d. Differences between dealing with armed suicidal individuals versus armed individuals suspected of using the weapon in a crime, *e.g.*, robbery.
    e. Use of deadly force;
    f. Use of handguns;
    g. Use of rifles;
    h. Identification of guns and handguns vs. BB guns and toy guns;
    i. Assessing risk of harm to self and others;
    j. Interaction with individuals exercising 2nd Amendment right to open carry a firearm; and
    k. The total hours spend on training per month, including in each of these identified areas.

2. The evaluation and hiring of Mason Roth, including all background checks conducted, references contacted and prior employers contacted.

Exhibit JJ

E-FILED  2023 MAR 30 11:52 AM SCOTT - CLERK OF DISTRICT COURT

Please provide copies of all documents provided by Roth as part of his hiring process and copies of all documents generated as part of that process, including interview notes, evaluations and testing.

3.    Equipment provided to all, or some, Davenport police officers, including Mason Roth, including:

    a.   handguns;
    b.   rifles;
    c.   Bean Bag Rounds; and
    d.   Any other non-lethal equipment that may be used in responding to armed and non-compliant individuals.

4.    Davenport Police Departmental policy and procedure regarding the following particulars:

    a.   Disciplining personal for the violation of policy;
    b.   Disciplining personal for the violation of Iowa law;
    c.   History of disciplining personal for the past ten years, identifying if any officers that have been disciplined for use of excessive force and the extent of the discipline;
    d.   Engaging emotionally distraught individuals;
    e.   Engaging armed suicidal individuals;
    f.   Differentiating between real weapons and toys or BB guns;
    g.   Application of Distance + Cover = Time when dealing with armed suicidal individuals;
    h.   Use of force and in particular the use of deadly force;
    i.   Assessing risk to self and others, particularly risk of imminent serious physical injury or death;
    j.   Interaction of with individuals exercising 2nd Amendment right to open carry a firearm.

5.    Whether Defendant Roth violated any Iowa law or Davenport Police Departmental policy with regard to the subject matter shooting death of Bobby Jo Klum.

6.    Whether the City of Davenport ratifies and approves the conduct of Defendant Roth in shooting and killing Bobby Jo Klum as being in compliance with applicable laws, rules, training and procedure for the State of Iowa and the City of Davenport Police Department.

7.    Whether Defendant Roth was disciplined in any way for his conduct during the subject matter shooting and killing of Bobby Jo Klum; and if so, the details and extent of the discipline.

8.    Whether any training was conducted before or after the subject matter incident regarding officers following supervisory instructions and recognizing the difference between the use of lethal and non-lethal rounds of ammunition.

    Exhibit JJ

**The deposition is to take place on Monday, May 15, 2023, beginning at 2:30 pm at suitable location in Davenport to be determined.**

Said deposition will be taken before an officer authorized to administer oaths, to be used in accordance with the Iowa Rules of Civil Procedure relating to depositions.   You are invited to attend the deposition and cross-examine.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:   */s/ David A. O'Brien*
DAVID A. O'BRIEN, AT0005870

By:   */s/ Nicholas C. Rowley*
NICHOLAS C. ROWLEY AT0022407
Trial Lawyers for Justice
421. W. Water Street
Decorah, IA 52101
(563)382-5071

By:   */s/ Barrie Duchesneau*
BARRIE DUCHESNEAU AT0015198
Trial Lawyers for Justice
421 W. Water Street
Decorah, IA 52101
(563)382-5071

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Iowa Courts E-Filing system which will provide notification of said filing to all counsel of record.

Jason J. O'Rourke
Alex C. Barnett
Lane & Waterman LLP
220 North Main Street, Suite 600
Davenport, IA 52801

**ATTORNEYS FOR DEFENDANTS**

E-FILED 2023 MAR 30 11:52 AM SCOTT - CLERK OF DISTRICT COURT

**EMAILED March 30, 2023**

Rachel Waterhouse
Westphal Reporting
(563) 583-7144
rachel@westphalreporting.com
PO Box 3397
Dubuque, IA 52004-3397
Home - Westphal Reporting

**COURT REPORTER**

/s/ *Julia Daugherty*

Exhibit JJ

E-FILED  2023 MAY 08 9:06 AM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,, <br><br>     Plaintiff, <br> vs. <br><br> CITY OF DAVENPORT and MASON ROTH, <br><br>     Defendants. | Case No. LACE135302 <br><br><br> **NOTICE OF SERVICE** |

Defendants, City of Davenport and Mason Roth, by their attorneys Lane & Waterman LLP, hereby provide notice of service of the following documents upon Plaintiff's counsel via email on May 5, 2023:

> Defendant Mason Roth's Answers to Plaintiff's First Set of Interrogatories;
> Defendant City of Davenport's Answers to Plaintiff's First Set of Interrogatories;
> Defendants' First Supplement to its Initial Disclosures

LANE & WATERMAN LLP

*/s/Alex C. Barnett*
Jason J. O'Rourke, AT0005963
Alex C. Barnett, AT0012641
LANE & WATERMAN LLP
220 North Main Street, Suite 600
Davenport, IA 52801-1987
Telephone: (563) 324-3246
Facsimile: (563) 324-1616
Email: jorourke@l-wlaw.com
Email: abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

Exhibit KK

E-FILED  2023 MAY 08 9:06 AM SCOTT - CLERK OF DISTRICT COURT

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on May 8, 2023, I electronically filed the foregoing instrument with the Scott County Clerk of Court using the Iowa Courts E-Filing System which will provide notification of such filing to all counsel of record.

               */s/Alex C. Barnett*_____

Exhibit KK

E-FILED  2023 MAY 08 10:05 AM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,<br><br>     Plaintiff,<br><br>vs.<br><br>CITY OF DAVENPORT and MASON ROTH,<br><br>    Defendants. | Case No. LACE135302<br><br>**<u>AMENDED</u>**<br>**NOTICE OF DEPOSITIONS**<br>(*Videotaped*) |

To:  Defendants City of Davenport, Iowa ("Davenport") and Mason Roth, you are hereby notified that videotaped oral deposition(s) will be taken, as follows:

**<u>May 16, 2023</u>:**

    8:30 am - Officer Mason Roth

    1:00 pm - Chief Jeffery Bladel

    3:00 pm - City Designee (see separate notice)


**<u>May 17, 2023</u>:**

    8:30 am – Lt. Gregory Behning

    1:30 pm – reserved for defense to take the deposition of Nicole Klum


Said depositions will be taken before an officer authorized to administer oaths, to be used in accordance with the Iowa Rules of Civil Procedure relating to depositions.   The above depositions will be held at Lane & Waterman located at 220 N. Main Street, Suite 600, Davenport, Iowa.  You are invited to attend the deposition and cross-examine.

                    Respectfully submitted,

                    **Dave O'Brien Law**
                    1500 Center St. NE
                    Cedar Rapids, Iowa 52402
                    Phone: (319) 861-3001
                    Fax: (319) 861-3007
                    E-mail: dave@daveobrienlaw.com

        By:    */s/ David A. O'Brien*
                 DAVID A. O'BRIEN, AT0005870

                                    Exhibit LL

E-FILED  2023 MAY 08 10:05 AM SCOTT - CLERK OF DISTRICT COURT

By:  */s/ Nicholas C. Rowley*
     NICHOLAS C. ROWLEY AT0022407
     Trial Lawyers for Justice
     421. W. Water Street
     Decorah, IA 52101
     (563)382-5071

By:  */s/ Barrie Duchesneau*
     BARRIE DUCHESNEAU AT0015198
     Trial Lawyers for Justice
     421 W. Water Street
     Decorah, IA 52101
     (563)382-5071

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Iowa Courts E-Filing system which will provide notification of said filing to all counsel of record.

Jason J. O'Rourke
Alex C. Barnett
Lane & Waterman LLP
220 North Main Street, Suite 600
Davenport, IA 52801
**ATTORNEYS FOR DEFENDANTS**

**EMAILED May 8, 2023**

Rachel Waterhouse
Westphal Reporting
PO Box 3397
Dubuque, IA 52004-3397
(563) 583-7144
rachel@westphalreporting.com
**COURT REPORTER**

                    */s/ Julia Daugherty*

E-FILED  2023 MAY 08 10:08 AM SCOTT - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually and as Administrator of the Estate of BOBBY JO KLUM,, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF DAVENPORT and MASON ROTH, <br><br> Defendants. | Case No. LACE135302 <br><br> **<u>AMENDED</u>** <br> **NOTICE OF I.R.C.P.  1.707(5)** <br> **DEPOSITION,** ***DUCES TECUM*** <br> ***(Videotaped)*** |

To:  Defendant City of Davenport, Iowa and Mason Roth:  y*ou are hereby notified* that the following oral deposition(s) will be taken of a representative(s) of the Davenport Police Department, pursuant to **I.R.C.P.  1.707(5)**.  Pursuant to **I.R.C.P.  1.707(5)**, Defendant City of Davenport, Iowa is requested to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf.  The City of Davenport is advised of its duty to make such designations pursuant to **I.R.C.P.  1.707(5)**.  Also, the designee is asked to provide documents and other information as requested below.  The person(s) so designated must testify about information known or reasonably available to the City of Davenport and/or the Davenport Police Department on the following particular subjects:

1. Training of Davenport police officers including Mason Roth, particularly on dealing with:

    a. Individuals with Mental Illness;
    b. Suicidal individuals;
    c. Armed suicidal individuals;
    d. Differences between dealing with armed suicidal individuals versus armed individuals suspected of using the weapon in a crime, *e.g*., robbery.
    e. Use of deadly force;
    f. Use of handguns;
    g. Use of rifles;
    h. Identification of guns and handguns vs. BB guns and toy guns;
    i. Assessing risk of harm to self and others;
    j. Interaction with individuals exercising 2nd Amendment right to open carry a firearm; and
    k. The total hours spend on training per month, including in each of these identified areas.

2. The evaluation and hiring of Mason Roth, including all background checks conducted, references contacted and prior employers contacted.

Exhibit MM

E-FILED  2023 MAY 08 10:08 AM SCOTT - CLERK OF DISTRICT COURT

Please provide copies of all documents provided by Roth as part of his hiring process and copies of all documents generated as part of that process, including interview notes, evaluations and testing.

3.      Equipment provided to all, or some, Davenport police officers, including Mason Roth, including:

    a.    handguns;
    b.    rifles;
    c.    Bean Bag Rounds; and
    d.    Any other non-lethal equipment that may be used in responding to armed and non-compliant individuals.

4.    Davenport Police Departmental policy and procedure regarding the following particulars:

    a.    Disciplining personal for the violation of policy;
    b.    Disciplining personal for the violation of Iowa law;
    c.    History of disciplining personal for the past ten years, identifying if any officers that have been disciplined for use of excessive force and the extent of the discipline;
    d.    Engaging emotionally distraught individuals;
    e.    Engaging armed suicidal individuals;
    f.    Differentiating between real weapons and toys or BB guns;
    g.    Application of Distance + Cover = Time when dealing with armed suicidal individuals;
    h.    Use of force and in particular the use of deadly force;
    i.    Assessing risk to self and others, particularly risk of imminent serious physical injury or death;
    j.    Interaction of with individuals exercising 2nd Amendment right to open carry a firearm.

5.      Whether Defendant Roth violated any Iowa law or Davenport Police Departmental policy with regard to the subject matter shooting death of Bobby Jo Klum.

6.      Whether the City of Davenport ratifies and approves the conduct of Defendant Roth in shooting and killing Bobby Jo Klum as being in compliance with applicable laws, rules, training and procedure for the State of Iowa and the City of Davenport Police Department.

7.      Whether Defendant Roth was disciplined in any way for his conduct during the subject matter shooting and killing of Bobby Jo Klum; and if so, the details and extent of the discipline.

8.      Whether any training was conducted before or after the subject matter incident regarding officers following supervisory instructions and recognizing the difference between the use of lethal and non-lethal rounds of ammunition.

**The deposition of Lt. Marc Hanssen, the named Representative, is to take place on**

**Tuesday, May 16, 2023, beginning at 3:00 pm at offices of Lane & Waterman located at 220 N.**

Exhibit MM

E-FILED  2023 MAY 08 10:08 AM SCOTT - CLERK OF DISTRICT COURT

**Main Street, Suite 600, Davenport, Iowa.**

Said deposition will be taken before an officer authorized to administer oaths, to be used in accordance with the Iowa Rules of Civil Procedure relating to depositions.   You are invited to attend the deposition and cross-examine.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Phone: (319) 861-3001
Fax: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:     */s/ David A. O'Brien*
          DAVID A. O'BRIEN, AT0005870

By:     */s/ Nicholas C. Rowley*
          NICHOLAS C. ROWLEY AT0022407
          Trial Lawyers for Justice
          421. W. Water Street
          Decorah, IA 52101
          (563)382-5071

By:     */s/ Barrie Duchesneau*
          BARRIE DUCHESNEAU AT0015198
          Trial Lawyers for Justice
          421 W. Water Street
          Decorah, IA 52101
          (563)382-5071

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Iowa Courts E-Filing system which will provide notification of said filing to all counsel of record.

Jason J. O'Rourke
Alex C. Barnett
Lane & Waterman LLP
220 North Main Street, Suite 600
Davenport, IA 52801
**ATTORNEYS FOR DEFENDANTS**

**EMAILED May 8, 2023**

Rachel Waterhouse
Westphal Reporting
(563) 583-7144

E-FILED  2023 MAY 08 10:08 AM SCOTT - CLERK OF DISTRICT COURT

rachel@westphalreporting.com
PO Box 3397
Dubuque, IA 52004-3397
Home - Westphal Reporting

**COURT REPORTER**

/s/ *Julia Daugherty*

Exhibit MM

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

### IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| NICOLE KLUM, individually, and as Administrator of the Estate of BOBBY JO KLUM, individually, | Case No. LACE 135302 |
| **Plaintiffs,** | |
| v. | **MOTION FOR LEAVE TO AMEND PETITION AT LAW AND JURY DEMAND** |
| CITY OF DAVENPORT and MASON ROTH, | |
| **Defendants.** | |

COMES NOW the Plaintiff, Nicole Klum, individually, as Administrator of the Estate of Bobby Jo Klum, and in support of her Motion for Leave to file an Amended and Substituted Petition and Jury Demand, states to the Court, as follows:

1.  Plaintiff moves the Court for leave to file an Amended and Substituted Petition and Jury Demand, pursuant to Iowa Rules of Civil Procedure 1.402(4). See attached Amended and Substituted Petition.

2.  Plaintiff notes that "[l]eave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires."  Iowa R. Civ. P. 1.402(4).

3.  Plaintiff notes the that two-year statute of limitations has not yet run for filing new claims regarding this incident that occurred on October 13, 2021.  Therefore, Plaintiff asserts that adding new Plaintiff, Wanda Albright, Bobby Jo Klum's mother, asserting a loss of adult child consortium claim pursuant to I.C.A. 613.15A, to this lawsuit, rather than filing a separate lawsuit, would be more efficient and save judicial resources.

Exhibit NN

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

4.      Plaintiff notes that the original petition filed in this case relied upon *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), which was recently reversed by the Iowa Supreme Court to some, as yet unidentified extent, depending on the common law and statutory underpinnings of the asserted Iowa Constitutional right, making the assertion of corresponding federal constitutional protections necessary in this case.  See *Burnett v. Iowa*, Case No. 22-1010, issued May 5, 2023.

5.      The attached Amended and Substituted Petition makes an attempt to plead Plaintiff's claims in a manner consistent with the Iowa Supreme Court's most recent interpretation of Iowa's 166 year-old Constitution.

WHEREFORE, Plaintiffs pray that the Court grant their Motion for Leave to File the attached Amended and Substituted Petition and Jury Demand; that the Court deem the proposed Amended and Substituted Petition and Jury Demand as formally filed; and for any such further relief as the Court deems just.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Telephone:  (319) 861-3001
Facsimile:   (319)861-3007
E-mail: dave@daveobrienlaw.com

By:      /s/ *David A. O'Brien*
          DAVID A. O'BRIEN, AT0005870

By:      /s/ *Nicholas C. Rowley*
          NICHOLAS C. ROWLEY AT0022407
          Trial Lawyers for Justice
          421. W. Water Street
          Decorah, IA 52101
          (563)382-5071

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

By:     */s/ Barrie Duchesneau*
        BARRIE DUCHESNEAU AT0015198
        Trial Lawyers for Justice
        421 W. Water Street
        Decorah, IA 52101
        (563)382-5071

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Iowa Courts E-Filing system which will provide notification of said filing to all counsel of record.

/s/ Julia Daugherty

Exhibit NN

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

NICOLE KLUM, individually and as                )
Administrator of the Estate of BOBBY JO          )
KLUM,                                            )        Case No.  LACE135302
                                                 )
      Plaintiff,                               )
                                                 )
vs.                                              )        **DEFENDANTS' RESPONSE TO**
                                                 )        **PLAINTIFF'S MOTION FOR LEAVE TO**
                                                 )        **AMEND PETITION**
CITY OF DAVENPORT and MASON                      )
ROTH,                                            )
                                                 )
      Defendants.                              )

Defendants City of Davenport and Mason Roth, through their attorneys Lane & Waterman LLP, submit the following Response to Plaintiff's Motion for Leave to Amend Petition:

1.      Plaintiff filed a Motion for Leave to Amend her Petition on June 6, 2023, seeking to add a party, dismiss certain claims and add other claims, including claims based on the United States Constitution.

2.      Defendants do not resist Plaintiff's Motion for Leave to Amend.  By not resisting, however, Defendants do not waive any of their prior denials or defenses that have been or may be asserted.  Defendants further do not waive their right to remove this matter to Federal Court, as this matter has now become removable with the addition of claims under the United States Constitution and 42 U.S.C. § 1983.

Exhibit OO

E-FILED  2023 JUN 09 2:09 PM SCOTT - CLERK OF DISTRICT COURT

LANE & WATERMAN LLP

*/s/Jason J. O'Rourke*
Jason J. O'Rourke AT0005963
Alex C. Barnett AT0012641
220 North Main Street, Suite 600
Davenport, IA 52801
Telephone: (563) 324-3246
Fax: (563) 324-1616
Email: jorourke@l-wlaw.com
Email: abarnett@l-wlaw.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2023, I electronically filed the foregoing with the Scott County Clerk of Court using the Iowa Courts E-Filing system which will provide notification of such filing to all counsel of record.

By */s/Jason J. O'Rourke*

2

Exhibit OO

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

### IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| **NICOLE KLUM, individually, and as Administrator of the Estate of BOBBY JO KLUM and WANDA ALBRIGHT, individually,** | **Case No.** |
| **Plaintiffs,** | |
| **v.** | **AMENDED PETITION AT LAW AND JURY DEMAND** |
| **CITY OF DAVENPORT and MASON ROTH,** | |
| **Defendants.** | |

**COMES NOW** the Plaintiffs, Nicole Klum, individually and as Administrator of the Estate of Bobby Jo Klum and Wanda Albright, to file this Amended Petition and Jury Demand against Defendants City of Davenport and Mason Roth, as follows:

### INTRODUCTION

1.      This is an action brought to redress the deprivation – under color of policy, regulation, official decision, custom or usage – of rights secured to Plaintiff by 42 U.S.C. § 1983 arising under the Fourth Amendment, incorporated to the states through the Fourteenth Amendment to the United States Constitution; the Constitution of the State of Iowa, Article I, Section 8, for monetary damages, as allowed by Iowa statute and/or common law; and includes Iowa common law negligence and loss of consortium claims.

2.      All violations alleged herein set out below, with particular facts and circumstances cited in support of the allegations, and all the rules and laws alleged to have been violated by the Defendants, including the Constitutional protections that were violated, were clearly established at the time Davenport Police Officer, Mason Roth, shot and killed Bobby Jo Klum.

Exhibit OO1

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

**PARTIES**

3.      At all times material hereto, Nicole Klum (hereinafter referred to as "Klum") was a resident of Scott County, Iowa.   Klum is the wife of Bobby Jo Klum and the Personal Representative of the Estate of Bobby Jo Klum, deceased (hereinafter referred to as "Bobby") who was a citizen and resident of Scott County, Iowa.   Klum brings this action pursuant to Iowa Code Sections: 611.20, 611.21, 613.15 and 633.336, on behalf of and for the benefit of Decedent, Bobby Jo Klum and herself as decedent's spouse.

4.      At all times material hereto, Wanda Albright (hereinafter referred to as "Albright") was a citizen and resident of Scott County, Iowa.  Albright is the mother of Bobby Jo Klum and brings this action on behalf of herself for the loss of adult child consortium pursuant to I.C.A 613.15A

5.      The Defendant City of Davenport employed Defendant, Mason Roth, as a Police Officer; failed to properly train him; and trained Roth in pseudo-scientific methods and practices for the use deadly force rejected by the law enforcement scientific community, the psychological academic community, the professional law enforcement community and in violation of applicable state and federal law.

6.      Defendant, Mason Roth, (hereinafter referred to as "Roth") was at all times material hereto an employee of the City of Davenport and acting within the scope of his employment.

**FACTUAL BACKGROUND**

7.      Defendant Roth shot and killed Klum on October 13, 2021, because he was improperly trained by the Davenport Police Department to essentially "shoot first and ask questions later."

Exhibit OO1

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

8.      Defendant Roth shot and killed Klum even though he conceded that Klum never made any movement with a gun he was holding to his own head.

9.      Roth was improperly trained by the City of Davenport using concepts pushed by the illegitimate Force Science Institute that have been roundly rejected by legitimate professional and academic institutions as being pseudo-science.  See, *e.g*., The New York Times, "Training Officers to Shoot First, and He Will Answer Questions Later," August 1, 2015; INSIDER, "Police training programs have a pseudoscience problem," June 2020; The Fayetteville Observer, "Fayetteville police seminar canceled over leader controversy," August 8, 2015; Los Angeles Times, "Officer training by institute fosters fear, critics say," June 19, 2020; and The New York Times, "How Paid Experts Help Exonerate Police After Deaths in Custody," December 26, 2021.

10.      Defendant Roth was improperly trained to believe, "I know that we've done lots of training where a suspect can have a gun either in a pocket or even pointed at their head and the suspect can go from that position to pointing the gun at you and firing a round before you can react. Even if you have your weapon out and aimed at them, your reaction time is never going to be as fast as their action."  Roth is referring to the alleged, but roundly rejected, "action versus reaction time deficit," as claimed by the Force Science Institute.  See Dep. Ex. 2, p. 43, Roth's post incident interview with the Iowa Department of Criminal Investigation.

11.      The training concept used by the Davenport Police Department is nonsense and is based upon illegitimate studies done without following legitimate scientific protocols and pursuant to the false premise that the alleged "action versus reaction deficit" is similar to the perception/reaction time lapse widely accepted in motor vehicle collision investigations. However, the perception/reaction time lapse is based upon a motorist encountering an unanticipated obstacle, not a highly trained marksman with their rifle sight trained on an individual

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

perceived as a potential threat.  Common sense dictates that in situations where a law enforcement officer has a suspect in their rifle sight, the officer could pull the trigger before any suspect could move a gun toward the officer or another, aim and fire.

12.     Bobby was 37 years old at the time he was killed by Defendant Roth, on or about October 13, 2021.

13.     On October 13, 2021, a Davenport police officer was attempting to locate Bobby based upon an outstanding warrant.

14.     Bobby left his home intending to visit his spouse, Nicole, at her nearby place of employment, saw a police officer parked in an alley behind his home at 804 Iowa St., kept moving away from the officer and through the neighborhood to the north of where he lived.

15.     Bobby did not want to go to jail and was suicidal.

16.     Bobby was walking through the neighborhood with a pellet gun he pulled from a bag he was carrying pointed at his own head.

17.     Additional law enforcement officers arrived and were in the process of setting up a perimeter while they searched for and monitored Bobby, who continued meandering through the neighborhood holding the pellet gun to his own head.

18.     Bobby was surrounded by law enforcement officers as he walked through the neighborhood.

19.     As many as 40 law enforcement officers responded to the call and were in the process of moving into position to assist with setting up a perimeter and seeking safe resolution of the incident.

20.     All of the officers present had adequate distance and cover from Bobby and were never in danger of being shot by Bobby.

Exhibit OO1

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

21.     The muzzle of the gun was always pointed at Bobby's own head.

22.     Bobby never threatened anyone verbally.

23.     Bobby never threatened anyone physically, except himself, by his conduct.

24.     Bobby remained calm while surrounded by law enforcement officers.

25.     Assuming all the homes in the neighborhood were occupied, Bobby was never more than 100 feet away from an innocent bystander during the incident.

26.     Ultimately, at a least a dozen other officers were present on or near Iowa St. between 8th and 9th and monitoring Bobby, just as Defendant Roth was doing at the time.

27.     A group of bystanders gathered outside a home known as 802 E. 8th St. watching events unfold to the north.



Dep. Ex. 33, p. 2, Grafton Cruiser Cam.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

28.     Two of those individuals from the multiple family dwelling at 802 E. 8th St., a mother and an approximately seven-year-old child, walked north on the east side of Iowa St. towards the corner of 9th St.  The rest of the bystanders stayed in the yard of 802 E. 8th St., approximately one-half block south of where Bobby was shot and killed. The top red circle shows two officers, including Defendant Roth, waiting for Bobby to come out of the alley at E. 9 and ½ St., onto Iowa St.  The bottom circle identifies the location where Bobby was shot and killed, a full block to the south. Bobby is not yet visible and will ultimately come out from the west side of the alley known as E. 9 and ½ St. and start walking to the south on Iowa St.



Dep. Ex. 33, p. 1, Precious Bystander Video.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

29.     Bobby walked past numerous bystanders while walking thru the neighborhood, including those located in a vehicle at the corner of Iowa St. and E. 9th St.



See Dep. Ex. 34, p. 2 of the West Bystander Video.

30.     A supervisor on the scene gave approval for less lethal weapons to be used.

31.     Bobby started to walk backwards to the south, while facing north, on the east side of Iowa St. between E. 8th St. and E. 9th St.



See Dep. Ex. 34, p. 3 of the West Bystander Video.

Exhibit OO1

32.     A screengrab from officer Angela Jarrin's Body Worn Camera shows Bobby at the time the first rubber bullet is fired. The red circle shows no bystanders in the area of the east side of 8 and ½ St. and Bobby has not yet even started to cross Iowa St.



Dep. Ex. 35, p. 3, Jarrin Body Worn Camera.

33.     After being hit with the first rubber bullet, Bobby changed course to head toward the east side of the street. The red circle to the right shows Bobby and the red circle to the left again shows no bystanders in the area of the east side of 8 and ½ St. as Bobby starts to move in that direction.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT



Dep. Ex. 35, p. 4, Jarrin Body Worn Camera.

34.     While crossing Iowa St. a second rubber bullet round was fired at Bobby, but that round either missed or just grazed Bobby.

35.     In an interview with the DCI after the shooting, Defendant Roth claimed he saw "probably a dozen people on the east side of the street down the street from the suspect;" those people "ignored warnings to go inside" and "kept watching;" Klum "changed directions and was walking straight at them;" and Roth "took the safety off…focused in on [Klum] and fired a round." See Dep. Ex. 2, pp. 44-45.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

36.     Video of the incident establishes that only 2 people were ever in the area described by Roth, the mother and child depicted in paragraph 28 above and they vacated that area well before Bobby started heading to the east side of Iowa St.  All the other bystanders on the east side of Iowa St. near the corner with E. 8th St. stayed in the yard of the house located at 802 E. 8th St.

37.      Roth's only claim to justify the use of deadly force was that Klum was advancing toward a group of bystanders who allegedly were in imminent danger of death or serious physical injury by Klum's conduct, including in danger of being taken hostage by Klum.

38.     In his DCI interview Defendant Roth was asked to identify where he was located at the time he fired on an overhead of the scene and Roth complied by drawing a red x at the corner of Iowa St. and E. 9th St.  See Deposition Exhibit 1, below.



E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

39.     Roth was also asked to identify the location of the cruiser he was using for cover and the path Klum was walking at the time.  Roth drew a red rectangle at the corner of Iowa St. and E. 9th pointing to the west and a path along the west sidewalk crossing over to the east side around E. 8 and ½ St.

40.     Roth drew a circle where the alleged group of bystanders were located, the ones he believed to be facing a threat of imminent death or serious physical injury.  Roth drew a red oval along the east sidewalk extending from just north of E. 8 and ½ St., through the intersection and including some of the area to the south of the intersection.

41.      Video taken at the scene by law enforcement and bystanders establishes that no bystanders were in, or even within 100 feet of, the red oval identified by Defendant Roth as the location of bystanders whose lives he was saving at the time he shot and killed Bobby Klum.

42.     While Bobby was still on the west side of the street, the mother and daughter were running up the east side of Iowa St. See Dep. Ex. 30, p. 5, Precious Bystander Screengrab.



E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

43.     Deposition Exhibit 30, p. 6, Precious Bystander Screengrab, shows the daughter already out of the picture with the mother running south at the edge of the circle identified by Roth as where the alleged bystanders were located when he shot Bobby.  Bobby is still on the west side of the street now facing south and no other bystanders are in the area.  This screengrab is from at least 15 seconds before Defendant Roth shot and killed Bobby.



44.     The videos of the incident establish that the first rubber bullet is fired while Bobby is on the west side of Iowa St. facing north and walking backwards.  The second rubber bullet is fired three seconds after the first rubber bullet.  The shot Defendant Roth fired killing Bobby was fired 15 seconds after the second rubber bullet.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

45.     Dep. Ex. 33, p. 6, Grafton Cruiser Cam Screengrab, shows the mother getting close to entering the house and is taken three seconds before Roth fires the shot that kills Bobby. Note that while the mother was not in any jeopardy from Bobby she was at this point directly in Defendant Roth's line of fire.



46.     Dep. Ex. 33, p. 7, is taken from Deputy Grafton's cruiser camera right as Roth fires the shot that killed Bobby.  Note the mother is now in the house and only 3 people are still outside all behind cover.

Exhibit OO1

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT



47.     The video of the incident unequivocally establishes that no bystanders were in, or even near, the red oval identified by Defendant Roth within ten seconds of the time he used deadly force on Bobby Klum.

48.     The video establishes that the bystanders outside 802 E. 8th St. heeded officers warning to seek cover before Defendant Roth shot and killed Bobby.

49.     That video establishes that the mother and child who initially wandered to the north on the east side of Iowa St. toward E. 9th St. were both back safely inside 802 E. 8th St. at the time Defendant Roth fired the lethal shot that killed Bobby.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

50.     The video establishes that all other bystanders in the area were also either safely in the house or behind cover (one wearing an orange shirt behind the corner of the house and two individuals on the stairway leading to the second floor of the house), a half block to the south of where Bobby was shot and killed.  See Dep. Ex. 33, p. 7, Grafton Cruiser Cam Screengrabs paragraph 45 above.

51.     No supervisor on the scene ever authorized the use of lethal force.

52.     The attempt to subdue Bobby using less than lethal means was confirmation by all other law enforcement officers present that Bobby was not engaging in any conduct that justified the use of deadly force.

53.     Bobby was walking away from the officers and not in the direction of any bystanders at the time Roth shot him thru the back at a slight angle as Bobby was walking southeast across Iowa St.

54.     None of the other numerous law enforcement officers in the area at the time assessed the threat Bobby posed as sufficient to respond with the use of deadly force or they would have followed their training and inflicted deadly force upon Bobby.

55.     After Defendant Roth shot and killed Bobby, he stated, "got 'em."

56.     After Defendant Roth shot and killed Bobby he was asked if he was using less than lethal and Roth indicated that he used "lethal."

57.     Other officers at the scene, including supervisory personnel, were surprised to find out that Defendant Roth used lethal force.

58.     Bobby took no actions that justified the use of deadly force.

59.     Defendant Roth failed to follow the law by using lethal force when only less than lethal force was justified in order to apprehend Bobby.

Exhibit OO1

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

60.     Defendant Roth failed to follow the law by shooting and killing Bobby even though Bobby engaged in no conduct that justified the use of deadly force.

61.     Defendant Roth did not act as an objectively reasonable officer would have acted under the circumstances.

62.     The prohibition against using lethal force against an individual who posed no immediate threat of serious injury or death to anyone else was clearly established at the time Defendant Roth violated that rule in shooting and killing Bobby through the back while he was walking away from officers holding a BB gun to his own head.  See I.C.A. §704, §804.8 and *Tennessee v. Garner*, 471 U.S. 1 (1985).

63.     The prohibition against using lethal force against an armed suicidal suspect unless they move the weapon away from their own head and toward others was clearly established at the time Defendant Roth shot and killed Bobby.  See *Partridge v. City of Benton*, 929 F.3d 562 (8th Cir. 2019)

64.     Defendant Roth was aware that all other law enforcement officers were attempting to subdue Bobby with less than lethal means.

65.     Roth was a trained marksman formerly with the Illinois National Guard.

66.     Neither Roth nor the Davenport Chief of Police were able to identify any of the claimed bystanders whose lives were allegedly saved by Roth's decision to use deadly force on Bobby, with the Chief of Police flat out refusing to answer this critical question when being deposed.

67.     Neither Roth nor the Davenport Police Department were able to identify these critical bystander witnesses whose lives were allegedly in jeopardy, even though the Defendants

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

concede that preparing detailed reports with all key information, including the names of any witnesses, is a critical part of the job for law enforcement officers.

68.     Roth murdered a vulnerable, emotionally distraught man holding a BB gun to his own head while all other reasonable officers in the area took measures to deescalate the situation.

69.     The State of Iowa's investigation into the incident established that the BB gun Bobby held was never pointed at anyone other than himself.

70.     Properly trained law enforcement officers know that the way to handle armed and mentally unstable individuals is to follow the axiom that distance + cover = time, and time is on the side of law enforcement officers in such situations.  Roth violated this rule by prematurely shooting and killing Bobby.

71.      All Officers present, including Defendant Roth, were trained to set up at a sufficient distance, and behind sufficient cover, so that they are not in danger while one officer calmly attempts to establish a rapport and negotiate with the distraught individual.

72.     Defendant Roth had adequate distance and adequate cover, but panicked and killed Bobby anyway because he was improperly trained to shoot first.

73.     Any suggestion that Defendant Roth reasonably feared a hostage situation as Bobby walked through the perimeter is completely unfounded since all bystanders were safe and approximately a half a block away from Bobby at the time he was shot and killed by Defendant Roth.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

74.    It should have been clear to Defendant Roth, as it was to every other law enforcement officer present, that lethal force was unnecessary, reactive, and would constitute criminal behavior.

75.    The Office of the Iowa State Medical Examiner deemed Bobby's death a homicide.

76.    The bullet from Defendant Roth's rifle entered Bobby's back and tore through his spinal cord, adrenal gland, liver, diaphragm and right lung before exiting through his chest and causing his entirely avoidable death.

77.    The bullet Roth fired went through Bobby's body and put others at risk including those bystanders at the corner of Iowa St. and E. 8th, and all the homes in the line of fire along the east side of Iowa St., south of E. 8th St.

78.    Defendant Roth violated his training and Iowa law by firing in the direction of innocent bystanders.  See I.C.A. 704.2(c), "[t]he discharge of a firearm...in the direction of some person with the knowledge of the person's presence there, even though no intent to inflict serious physical injury can be shown," is considered to have used deadly force under Iowa law.

79.    There can be no legitimate dispute about Roth shooting and killing Bobby because the entire sequence of key events was captured on numerous cruiser and body cameras, along with the recordings from a number of bystanders.

80.    All the alleged actions of the Defendants were conducted under color of state law.

81.    Defendant City of Davenport is liable for the conduct of Defendant Roth under the doctrine of *Respondeat Superior* for Iowa based claims and pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), based upon the faulty training provided to

Defendant Roth and the City of Davenport's after-the-fact ratification of Roth's conduct as in compliance with its policy.

82.    In exonerating Defendant Roth from criminal charges for the wrongful death of Bobby, Scott County Attorney, Michael Walton, accurately noted that Bobby "never pointed the BB gun" at anyone, but completely misapplied applicable law by opining that the shooting was justified because of "how quickly the direction of the gun could change."  If that was the actual legal standard to be applied then anyone carrying a weapon in the right to carry state of Iowa could automatically be shot and killed at any time by law enforcement officers.

83.     Using the standard that anyone carrying a gun could be killed because the direction of the gun **could** change, allows Davenport Police Department officers to shoot and kill anyone carrying a gun, including all of the approximately one out of ten Iowans who exercise their constitutional right to own a gun and open carry a firearm in Iowa.

84.    The standard applied for use of deadly force by the Scott County Attorney is also in direct violation of both federal and Iowa law.

## COUNT I

### USE OF EXCESSIVE DEADLY FORCE IN VIOLATION OF FOURTH AMENDMENT TO THE U.S. CONSTITUTION and ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION

85.    Plaintiffs incorporate paragraphs 1 through 84 above as though fully set forth herein.

86.    Defendant Roth's use of excessive force in causing Bobby's wrongful death was in violation of the 4th Amendment to the U.S. Constitution and Article 1, Section 8 of the Iowa Constitution. Defendant Roth fired his weapon at Bobby in an unreasonable, unnecessary and reckless manner, resulting in Bobby's death.  Such wrongful conduct was recognizable at

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

common law as forming the basis for the award of monetary damages. Such wrongful conduct is also recognized by Iowa statutory law as forming the basis of the award of money damages. See I.C.A. 670.1(4), "'Tort' means every civil wrong which results in wrongful death or injury to person or injury to property or injury to personal or property rights and includes but is not restricted to… [the] impairment of any right under any constitutional provision…."

87.    Defendant Roth violated the right of Bobby to be free from the use of excessive force in being placed under arrest, as guaranteed by Article I, Section Eight, of the Iowa Constitution and the 4th Amendment to the U.S. Constitution.

88.    Defendant City of Davenport caused Bobby's death by failing to adequately train and supervise Defendant Roth in the use of deadly force, including teaching him to follow pseudo-scientific research from Force Science Institute which led directly to the death of Bobby Jo Klum.

89.    Defendants proximately caused damages including pre-death pain and suffering, the loss of spousal consortium and the loss of adult child consortium, to Plaintiffs by the use of excessive force in effectuating the wrongful death of Bobby in violation of rights guaranteed by Article I, Section Eight, of the Iowa Constitution and the 4th Amendment to the U.S. Constitution.

90.    Defendants deprived Plaintiff of the rights guaranteed under Section I, Article 8, of the Iowa Constitution and the 4th Amendment to the U.S. Constitution by seizing Bobby such that no reasonable person in Bobby's position would have believed they were free to leave without being taken into custody.

91.    Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this petition.

92.    Defendant Roth acted with reckless disregard for the health and safety of Bobby and/or in a malicious manner subjecting him to punitive damages.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Davenport and Mason Roth, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for punitive damages against Defendant Roth; for attorneys' fees as allowed by law; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

**COUNT II**

**WRONGFUL DEATH – NEGLIGENCE - IOWA COMMON LAW**

93.     Plaintiff incorporates paragraphs 1 through 92 above as though fully set forth herein.

94.     At the time Defendant Roth shot and killed Bobby he knew or should have known that Bobby presented no imminent danger to the public.

95.     Defendant Roth made the decision to discharge his firearm at Bobby at a time when none of the numerous armed officers present believed Bobby posed an imminent threat to them or anyone else.

96.     Defendant Roth had ample opportunity for deliberation prior to shooting and killing Bobby.

97.     Defendant Roth made the decision to shoot and kill Bobby at a time when waiting, seeking additional cover, or even retreating, were clear and viable options, and without using other strategies and alternative weapons, other than lethal force, to neutralize Bobby.

98.     In firing his weapon at Bobby, Defendant Roth acted with the specific intent to cause harm without justification.

99.     Defendant Roth owed Plaintiff a duty to act reasonably in the use of deadly force and to conform to an objectively reasonable standard of conduct regarding when, where and under what circumstances the use of deadly force is warranted.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

100.    Defendant Roth breached that duty by discharging his service weapon at Bobby when Bobby did not pose an imminent threat of serious physical injury or death to anyone, and the options of waiting, seeking additional cover, using non-lethal weapons, or retreating, as the other armed officers present chose to do, were all readily available to him.

101.    Defendant City of Davenport, owed Plaintiff a duty to have in place reasonable policies and procedures regarding the use of deadly force, and/or to properly train, equip and supervise its officers, including Defendant Roth, in an objectively reasonable standard of conduct regarding when, where and under what circumstances the use of deadly force is warranted.

102.    Defendant City of Davenport had a duty to avoid training its police officers using pseudo-scientific principles advanced by a discredited organization.

103.    Defendant City of Davenport breached those duties by not having in place reasonable policies and procedures regarding the use of deadly force; and/or by failing to properly train, equip and/or supervise Defendant Roth regarding the appropriate use of deadly force; and or by mis-training Roth to believe he could not pull the trigger faster than Bobby could move the gun from his own head, turn towards a target and shoot.

104.    The Defendants' breach of duty owed caused injuries and damages to the Plaintiffs including the wrongful death of Bobby and the loss of consortium for Klum and Albright.

105.    Defendant Roth acted negligently and recklessly by using excessive force to shoot and kill Bobby even though Bobby posed no imminent threat to Roth or anyone else at the time.

106.    Defendant City of Davenport ratified the conduct of Defendant Roth after he took the actions complained of in this complaint.

Exhibit OO1

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

107.    The Defendants have no immunities for common law claims in this case pursuant to the Iowa Municipal Tort Claims Act, I.C.A. 670.4, for numerous reasons, including 1) statutory immunities cannot be used to defeat constitutional claims that have a common law tort basis; 2) the City of Davenport has purchased insurance coverage for such claims including the subject matter lawsuit and pursuant to I.C.A. 670.7(2)("The procurement of [] insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4 to the extent stated in the policy…"); and 3) the IMTCA specifically approved money damage claims for constitutional torts by including such claims in its tort definition.  See I.C.A 670.1(4).

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Davenport and Mason Roth, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for punitive damages against Defendant Roth; for attorneys' fees as allowed by law; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

## COUNT III

## LOSS OF CONSORTIUM – NICOLE KLUM and WANDA ALBRIGHT

108.    Plaintiff incorporates paragraphs 1 through 107 above as though fully set forth herein.

109.    Plaintiff, Nicole Klum, was the wife of deceased, Bobby Jo Klum.

110.    Plaintiff Wanda Albright was the mother of deceased, Bobby Jo Klum.

111.    Since Bobby's death Nicole Klum has suffered a loss of consortium, including but not limited to: a loss of aid, companionship, cooperation, and spousal affection of Bobby.

112.    Since Bobby's death Wanda Albright has suffered a loss of consortium, including but not limited to: a loss of aid, companionship, cooperation, and motherly affection of Bobby.

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

113.    As a result of said losses, Plaintiffs, Nicole Klum and Wanda Albright, have been damaged.  The Defendants are liable to them for loss of consortium.

114.    Klum's losses are in addition to the losses sustained by the Estate of Bobby Jo Klum as the result of his death caused by the wrongful conduct of the Defendants.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants, the City of Davenport and Mason Roth, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for punitive damages against Defendant Roth; for attorneys' fees as allowed by law; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

## JURY DEMAND

The Plaintiffs, Nicole Klum, individually, and as Administrator of the Estate of Bobby Jo Klum and Wanda Albright, individually, respectfully requests a trial by jury on all legal claims raised by their Petition.

Respectfully submitted,

**Dave O'Brien Law**
1500 Center St. NE
Cedar Rapids, Iowa 52402
Telephone:  (319) 861-3001
Facsimile:   (319)861-3007
E-mail: dave@daveobrienlaw.com

By:     /s/ David A. O'Brien
        DAVID A. O'BRIEN, AT0005870

By:     /s/ Nicholas C. Rowley
        NICHOLAS C. ROWLEY AT0022407
        Trial Lawyers for Justice
        421. W. Water Street
        Decorah, IA 52101

E-FILED  2023 JUN 06 1:20 PM SCOTT - CLERK OF DISTRICT COURT

(563)382-5071

By:     */s/ Barrie Duchesneau*
        BARRIE DUCHESNEAU AT0015198
        Trial Lawyers for Justice
        421 W. Water Street
        Decorah, IA 52101
        (563)382-5071

ORIGINAL FILED.

E-FILED                    LACE135302 - 2023 JUN 29 03:54 PM          SCOTT
                          CLERK OF DISTRICT COURT                Page 1 of 2

## IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

NICOLE SUE KLUM
ESTATE OF BOBBY JO KLUM

      Plaintiff(s),

  vs.

MASON ROTH
CITY OF DAVENPORT

      Defendant(s).

Case No: 07821  LACE135302

# ORDER

Plaintiff's motion for leave to amend is GRANTED.


ALL ABOVE IS SO ORDERED this 29th day of June, 2023.

Clerk to notify all self-represented litigants and attorneys of record.

7CV001

Exhibit PP

State of Iowa Courts

| | |
|---|---|
| **Case Number** | **Case Title** |
| LACE135302 | KLUM NICOLE VS CITY OF DAVENPORT ET AL |
| **Type:** | OTHER ORDER |

So Ordered

Mark Fowler, District Judge
Seventh Judicial District of Iowa

Electronically signed on 2023-06-29 15:54:18

Exhibit PP