IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| NICOLE KLUM, individually and as administrator of the Estate of Bobby Jo Klum, and WANDA ALBRIGHT, individually, | No. 3:23-cv-00043-RGE-WPK |
| Plaintiffs, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| CITY OF DAVENPORT and MASON ROTH, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Nicole Klum, suing individually and as the administrator of the estate of her late husband Bobby Jo Klum, and Plaintiff Wanda Albright, the mother of Bobby Jo Klum, bring this lawsuit against Defendants City of Davenport and Mason Roth. Notice Removal 1, ECF No. 1; Answer ¶¶ 3–4, ECF No. 3. Davenport Police Officer Mason Roth shot and killed Bobby Jo Klum during an attempt to arrest him. Pls.' Statement Facts Supp. Mot. Partial Summ. J. ¶¶ 1–2, 4–5, ECF No. 15-1; Defs.' Resp. Pls.' Statement Facts Supp. Mot. Partial Summ. J. ¶¶ 1–2, 4–5, ECF No. 23-1.  Plaintiffs claim that Roth used excessive force against Klum in violation of the United States Constitution and the Iowa Constitution, and that the City of Davenport caused Klum's death by failing to adequately train and supervise Roth (Count I). Am. Pet. ¶¶ 85–92, ECF No. 1-1 at 256–58. Plaintiffs also assert a negligence claim against Defendants (Count II). *Id.* ¶¶ 93–107, ECF No. 1-1 at 258–60. Wanda Albright asserts a claim for loss of consortium as well. (Count III). *Id.* ¶¶ 108–14, ECF No. 1-1 at 260–61.

Now before the Court are the parties' motions for summary judgment. Plaintiffs move for partial summary judgment holding Defendants liable for violation of the United States Constitution

and the Iowa Constitution, and for negligently causing Klum's death (Counts I and II). Pls.' Mot. Partial Summ. J., ECF No. 15. Defendants move for summary judgment in their favor on all of Plaintiffs' claims, asserting Defendants are entitled to immunity from Plaintiffs' claims. Defs.' Mot. Summ. J., ECF No. 22.

For the reasons set forth below, the Court grants Defendants' motion and denies Plaintiffs' motion.

## II.    BACKGROUND

### A.    Factual Background

Except as otherwise stated, there is no genuine issue as to the following facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Around 3:30 p.m. on October 13, 2021, Davenport Police Officer Dustin Mooty parked his patrol vehicle near a residence on Iowa Street, seeking to locate Klum. Pls.' App. Supp. Mot. Partial Summ. J. Pls.' App. 045, ECF No. 15-2; *accord* ECF No. 15-1 ¶¶ 4–5; ECF No. 23-1 ¶¶ 4–5. Mooty was aware there was an outstanding warrant for Klum's arrest concerning a probation violation. ECF No. 15-1 ¶ 5; ECF No. 23-1 ¶ 5; ECF No. 15-2 at Pls.' App. 045. While waiting in his vehicle, Mooty observed Klum walk from the yard of a residence into an alley adjacent to the residence. *See* Pls.' Resp. Defs.' Statement Facts ¶ 15, ECF No. 30-2; *accord* ECF No. 15-2 at Pls.' App. 045. When Klum saw Mooty, Klum began to flee. ECF No. 15-2 at App. 045; ECF No. 15-1 ¶ 8; ECF No. 23-1 ¶ 8. At 3:37 p.m., Mooty turned on his vehicle's emergency lights and sounded his siren while pulling into the driveway of the residence, but Klum continued to flee. ECF No. 15-2 at Pls.' App. 045; *accord* Mooty Body Camera 15:37:04–18, Defs.' Combined App. Supp. Defs.' Mot. Summ. J. and Resist. at Def. App. 4, ECF No. 23-2. Mooty

exited his vehicle and began chasing Klum on foot. ECF No. 30-2 ¶ 17.[1]

While running after Klum, Mooty reported over his radio that he was in pursuit of Klum. *Id.* ¶ 18; *accord* Mooty Body Camera 15:37:16, ECF No. 23-2 at Def. App. 4. He twice demanded that Klum stop and told Klum there was a warrant for his arrest. ECF No. ¶ 19; *accord* Mooty Body Camera 15:37:35–42, ECF No. 23-2 at Def. App. 4. Approaching Klum from across a street, Mooty observed Klum turn toward him multiple times; he saw that Klum was pointing a gun to his head. Mooty Body Camera 15:38:08–12, ECF No. 23-2 at Def. App. 4; *accord* ECF No. 30-2 ¶ 21. Mooty reported this over the radio. ECF No. 30-2 ¶ 23. Klum continued to disobey Mooty's commands to stop and continued to flee through the residential neighborhood. *Id.* ¶ 22. Mooty reported over the radio a description of Klum—a "neon hoodie, gray pants"—and his direction of travel. Mooty Body Camera 15:38:18–26, ECF No. 23-2 at Def. App. 4. He repeated that Klum had a gun to his head. *Id.* He then slowed his pursuit of Klum. *Id.* at 15:38:26–39:41.

At this time, shortly before 3:40 p.m., Mooty was joined by Officer Lucas Rusk, who began to pursue Klum as well. *Id.* at 15:39:00–11; Rusk Body Camera 15:39:00–11, ECF No. 23-2 at Def. App. 5; *accord* ECF No. 30-2 ¶ 27. Other officers also arrived and began to assist in the pursuit of Klum. ECF No. 15-1 ¶ 11; ECF No. 23-1 ¶ 11. The officers lost contact with Klum for several minutes. *See* ECF No. 30-2 ¶¶ 24, 27. At 3:45 p.m., Rusk encountered Klum. *Id.* ¶ 27. Klum had shed the neon hoodie and was now wearing a red sweatshirt. *Id.* ¶ 28. He continued to carry a gun. *Id.* Rusk asked Klum multiple times to put the gun down and asked to "talk about this." *Id.* ¶ 29; *accord* Rusk Body Camera 15:45:00–43, ECF No. 23-2 at Def. App. 5. Klum refused and initially walked away from Rusk. ECF No. 30-2 ¶ 30. A minute later he began walking toward Rusk, and although Rusk again told Klum to put the gun down, Klum continued to refuse to do so.

---

[1] Throughout this order, pin citations for police officer body camera footage are to the time-of-day data recorded by the footage, rather than the playback timestamp.

*Id.* ¶ 31; *accord* Rusk Body Camera 15:46:40–47:30, ECF No. 23-2 at Def. App. 5.

At this point, at 3:47 p.m., Rusk lost sight of Klum. Rusk Body Camera 15:47:10–45, ECF No. 23-2 at Def. App. 3. At roughly the same time, Klum encountered Roth and another officer. ECF No. 15-1 ¶ 17; ECF No. 23-1 ¶ 17; *accord* Roth Body Camera 15:47:30–35, ECF No. 23-2 at Def. App. 3. Klum was walking down an alley referred to as 9½ Street in the direction of Iowa Steet. ECF No. 15-1 ¶ 17; ECF No. 23-1 ¶ 17. As Klum walked toward Roth, Roth twice told Klum to put his hands up. Roth Body Camera 15:47:33–38, ECF No. 23-2 at Def. App. 3. Roth then began backing away as he twice told Klum to drop the gun. *Id.* at 15:47:38–51. Klum continued to walk toward Roth, moving eastward along 9½ Street toward its intersection with Iowa Street. *Id.*; ECF No. 15-1 ¶¶ 17, 19; ECF No. 23-1 ¶¶ 17, 19; *see also* ECF No. 15-2 at Pls.' App. 014. Encouraged by another officer to "back up," Roth walked backwards, moving north along Iowa Street. Roth Body Camera 15:47:38–51, ECF No. 23-2 at Def. App. 3; *see also* ECF No. 15-2 at Pls.' App. 014. At 3:48 p.m., Roth turned the corner of the intersection with Iowa Street and began moving south on the west side of the street. Roth Body Camera 15:47:51–48:01, ECF No. 23-2 at Def. App. 3; ECF No. 30-2 ¶ 34; ECF No. 15-1 ¶ 19; ECF No. 23-1 ¶ 19; *see also* ECF No. 15-2 at Pls.' App. 014.

At this time, Roth knew that officers had been pursuing Klum for ten minutes, since 3:37 p.m. Roth Dep. 13:15–20, ECF No. 15-2 at Pls.' App. 074 (indicating Roth heard Mooty's statement over the radio that Mooty was pursuing Klum on foot); Mooty Body Camera 15:37:16–35, ECF No. 23-2 at Def. App. 4 (containing Mooty's statement at 3:37 p.m. that he was pursuing Klum). Roth had heard Officer Mooty's statement over the radio that Klum was carrying a gun and observed Klum carrying what Roth, at the time, perceived to be a gun. Roth Dep. 13:15–20, ECF No. 15-2 at Pls.' App. 074; Roth Body Camera 15:39:35–45, ECF No. 23-2 at Def. App. 3 (containing Roth's statement he was heading to the "gun call"); *id.* at 13:47:38–51 (telling Klum

to "drop the gun").[2] He knew Klum was committing crimes by fleeing from arrest, but he was not aware of any other crimes that Klum may have committed. Roth Dep. 14:20–16:4, ECF No. 15-2 at Pls.' App. 074.

As Klum walked south on Iowa Street, he held the gun to his head, and bystanders looked on. Synced Video at 0:49, ECF No. 15-2 at Pls.' App. 049. One bystander, Tina West, observed from her car on the eastern side of the intersection of 9th Street and Iowa Street. ECF No. 15-1 ¶ 21; ECF No. 23-1 ¶ 21. Several other bystanders observed from a position one block further south, on the eastern side of Iowa Street near its intersection with 8th Street. Clay Decl. ¶¶ 6–7, ECF No. 15-2 at Pls.' App. 106. Two of these bystanders, a woman named Lerita Clay and her daughter, had walked north on the eastern side of Iowa Street toward its intersection with 9th Street shortly prior to Klum approaching that intersection. Synced Video 0:04–0:16, ECF No. 15-2 at Pls.' App. 049; Clay Decl. ¶ 1, ECF No. 15-2 at Pls.' App. 106. Several officers repeatedly shouted at the bystanders to get out of the street and go inside. ECF No. 30-2 ¶ 35; *see also* Roth Body Camera 15:48:01–25. Before reaching the intersection of Iowa Street and 9th Street, Klum turned to the officers following him and then turned back, continuously holding the gun to his head. Synced Video 1:06–28, ECF No. 15-2 at Pls.' App. 049. The officers shouted repeatedly at Klum to drop the gun. *Id.* ¶ 34.

After Klum crossed 9th street, the officers following him moved south toward the intersection of 9th and Iowa Street, collecting behind a police car on the north side of the intersection. Roth Body Camera 15:48:41–56, ECF No. 23-2 at Def. App. 3. The officers continued to instruct the bystanders to go inside their homes. *Id.* Klum again turned to face the officers

---

[2] Without citation to the record, Plaintiffs contend "Klum was holding a BB gun" during the incident, not a lethal weapon. Pls.' Br. Supp. Mot. Partial Summ. J. 24, ECF No. 18. But Plaintiffs "concede for purposes of [their motion for summary judgment] that it was reasonable for Roth to treat Klum as if he was holding a real gun to his own head." *Id.*

pursuing him, walking backwards. Synced Video 1:30–40, ECF No. 15-2 at Pls.' App. 049. While Klum was turned, walking backwards on the west side of Iowa Street, Clay and her daughter began sprinting south on the east side of Iowa Street, just south of its intersection with 9th Street and directly across the street from Klum. *Id.* at 1:35–41. At this time, 3:48 p.m., Officer Robert Welch deployed a 40mm "less lethal" rubber bullet that impacted Klum on his upper chest. *Id.* at 1:35–51; ECF No. 15-1 ¶¶ 25–26; ECF No. 23-1 ¶¶ 25–26; ECF No. 30-2 ¶¶ 36–37. Klum was not stopped by the impact of the rubber bullet, and after he was hit, he turned away from the officers and began walking across Iowa Street in a "southeasterly direction" toward a collection of bystanders. ECF No. 30-2 ¶ 37; *see* Synced Video 1:41–55, ECF No. 15-2 at Pls.' App. 049. *Id.* at 1:41–55; ECF No. 30-2 ¶ 37. As Klum crossed Iowa Street he was again commanded to stop walking and drop his gun; he did not comply. ECF No. 30-2 ¶ 41. Within a few seconds of the first less lethal round, Officer Angela Jarrin fired a second 40mm less lethal round that either missed or grazed Klum. ECF No. 15-1 ¶ 29; ECF No. 23-1 ¶ 29.

Fifteen seconds after the second less lethal round was fired, as Klum continued to diagonally cross Iowa Street, Roth fired a lethal round that struck and killed Klum. Roth Body Camera 15:49:00–22, ECF No. 23-2 at Def. App. 3; ECF No. 15-1 ¶¶ 2, 46; ECF No. 23-1 ¶¶ 2, 46. At this time, ten seconds past 3:49 p.m., Klum was 148 feet from Clay, who stood near the residence at the intersection of Iowa Street and Eighth Street. Roth Body Camera 15:49:00–22, ECF No. 23-2 at Def. App. 3; ECF No. 30-2 at ¶ 56. A second bystander was 179 feet away, near the same residence. ECF No. 30-2 ¶ 57.

Additional facts are discussed below as necessary.

### B.     Procedural Background

In August 2022, Nicole Klum filed suit in the Iowa District Court for Scott County against the City of Davenport and Roth. ECF No. 1-1 at 3. Nicole Klum and Wanda Albright filed an

amended petition in June 2023. *Id.* at 238. Plaintiffs' amended petition asserts several claims collectively styled as three counts. *Id.* at 256–61. It asserts that, due to Roth's use of excessive force in seizing Klum, Defendants are liable for violation of the Fourth Amendment to the United States Constitution and for violation of article I, section 8 of the Iowa Constitution. *Id.* at 256–58. It further asserts Defendants are liable under Iowa common law for negligently causing Klum's wrongful death. *Id.* at 258–60. Finally, the amended petition asserts claims for loss of consortium. *Id.* at 260–61.

In July 2023, Defendants removed the case to this Court. ECF No. 1. In December 2023, Nicole Klum stipulated to the dismissal of her loss of consortium claim. Stipulation Partial Dismissal, ECF No. 12. Plaintiffs now move for partial summary judgment, asking the Court to issue judgment holding Defendants liable for Plaintiffs' constitutional claims and negligence claims. ECF No. 15. Defendants move for summary judgment dismissing all claims against them. ECF No. 22. Neither party requests oral argument, and the Court finds the parties' briefings and exhibits adequately present the issues. *See* LR 7(c); Fed. R. Civ. P. 78(b). The Court decides the parties' motions as set forth below.

## III.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). A genuine dispute of fact exists when the issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250 (1986); *accord Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." (internal quotation marks and citation omitted). To preclude summary judgment, a genuine dispute of fact must concern a material fact—that is, a fact "that might affect

the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). When assessing the record pertinent to a fact at issue, the Court "may consider only the portion of the submitted materials that is admissible or useable at trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (internal quotation marks omitted) (quoting *Walker v. Wayne Cnty.*, 850 F.2d 433, 434 (8th Cir. 1988)).

"The movant bears the initial responsibility of informing the district court of . . . those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson*, 643 F.3d at 1042 (alteration in original) (second omission in original) (internal quotation marks and citation omitted). This responsibility can be met by "produc[ing] evidence negating an essential element of the nonmoving party's case" or by "point[ing] out that the nonmoving party lacks the evidence" to prove a material fact. *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018) (citation omitted). Once the movant meets this responsibility, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing a genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (internal quotation marks and citation omitted). The nonmovant thus bears "the obligation to come forward with specific facts showing that there is a genuine issue for trial." *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010) (citation omitted). In satisfying that obligation a party "may not merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (cleaned up). Rather the party "must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [the party's] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (citation omitted).

If the nonmoving party establishes a genuine dispute as to the material facts, those facts are viewed in the light most favorable to the nonmoving party—but the nonmoving party enjoys

this benefit only if there is a genuine issue of fact. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Further, in cases where, as here, there is video evidence of an incident at issue, the Court will not adopt an account of facts plainly contradicted by the evidence in the recording. *See id.*; *accord Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) ("Because the videotape clearly contradicts the version of the story told by [the plaintiff], we must 'view the facts in the light depicted by the videotape.'" (alteration omitted) (quoting *Scott*, 550 U.S. at 381)).

## IV.   DISCUSSION

Plaintiffs move for partial summary judgment holding Defendants liable for Klum's rights against the use of excessive force under the Fourth Amendment to the United States Constitution and under the Iowa Constitution. ECF No. 15 at 1. Plaintiffs also move for partial summary judgment holding Defendants liable for negligently causing Klum's death. *Id.* Defendants resist Plaintiffs' motion and move for summary judgment dismissing all of Plaintiffs' claims, including their constitutional claims, their negligence claims, and Albright's claim for loss of consortium. ECF No. 22 ¶ 3; *see also id.* ¶ 4 (noting the legal arguments asserted in resistance to Plaintiffs' motion are the same as the arguments asserted in support of Defendants' motion for summary judgment as to Counts I and II); Defs.' Resist. Pls.' Mot. Partial Summ. J. ¶ 1, ECF No. 23 (same). The Court begins by addressing the parties' motions as to Plaintiffs' federal constitutional claim. The Court then addresses the disputes as to Plaintiffs' claim under Iowa's constitution. Last the Court addresses the disputes as to Plaintiffs' common law claims.

### A.   Plaintiffs' Claims Under Federal Law

Plaintiffs' amended petition asserts Roth violated the Fourth Amendment by using excessive and unreasonable deadly force during the arrest of Klum. *See* Am. Pet. ¶¶ 86–87, ECF No. 1-1 at 256–57. In addition to asserting Roth's liability for this violation, Plaintiffs further assert the City of Davenport is liable because it failed to adequately train and supervise Roth in the use

of deadly force. *Id.* ¶ 88, ECF No. 1-1 at 257. Plaintiffs move for summary judgment in favor of both Defendants' liability. Defs.' Br. Supp. Mot. Summ. J. 17–32, ECF No. 18 (arguing Roth used excessive force and the City failed to properly train him); *see also* Pls.' Combined Reply Supp. Mot. Partial Summ. J. and Resist. Defs.' Mot. Summ. J. 5–18, ECF No. 32. Defendants move for summary judgment in their favor, arguing Plaintiffs' motion must be denied and Defendants' motion granted because the undisputed facts demonstrate Roth is entitled to qualified immunity and the City of Davenport is not subject to direct liability. Defs.' Br. Supp. Mot. Summ. J. and Resist. Pls.' Partial Mot. Summ. J. 12–32, ECF No. 25; Defs.' Reply Supp. Mot. Summ. J. 5–12, ECF No. 35. The Court first addresses whether Roth is entitled to qualified immunity and then turns to the City of Davenport's direct liability. For the reasons set forth below, the Court denies these aspects of Plaintiffs' motion and grants these aspects of Defendants' motion.

### 1.      Roth's entitlement to qualified immunity

In support of their resistance and motion, Defendants argue Roth is entitled to qualified immunity. ECF No. 25 at 12–26. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine, when applicable, is more than an affirmative defense for a government official sued in his or her individual capacity. Rather, it inoculates a defendant from suit and therefore must be addressed as an initial matter. *See id.* at 231; *see also Solomon v. Petray*, 699 F.3d 1034, 1038 (8th Cir. 2012) ("Qualified immunity 'is an *immunity from suit* rather than merely a defense to liability.'" (internal quotation marks and citation omitted)).

Qualified immunity involves a two-step inquiry: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was

clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citations omitted). Under the second prong, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014) (citation omitted). "Under 'existing precedent,' the constitutional question that the officer faced must have been 'beyond debate,'" *Tatum v. Robinson*, 858 F.3d 544, 547 (8th Cir. 2017) (citing *Plumhoff*, 572 U.S. at 778–79), and the court must look at the state of the law at the time of the incident, *DeBoise v. Taser Int'l, Inc.*, 760 F.3d 892, 896 (8th Cir. 2014) (citation omitted). Additionally, courts must avoid defining "clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015)).

Plaintiffs assert Roth violated Klum's Fourth Amendment right against unreasonable seizure due to use of excessive deadly force. ECF No. 18 at 17–26. The Court begins by determining whether Roth violated this constitutional right. The Court then turns to the assessment of whether that right was clearly established at the time Klum was killed.

a.    Prong 1: Whether Klum's constitutional right was violated

Plaintiffs argue Roth violated Klum's constitutional right against unreasonable seizure because Roth's use of deadly force was objectively unreasonable under the circumstances. ECF No. 18 at 17–18. Addressing Roth's concern that Klum posed an imminent threat to bystanders, Plaintiffs argue the bystanders present were not close enough to be in imminent danger. ECF No. 18 at 21–26. Plaintiffs also argue Roth's explanation of his use of deadly force betrays that his assessment relied on improper speculation, indicating his action was objectively unreasonable. ECF No. 18 at 18–21; ECF No. 32 at 5–6. Last, Plaintiffs emphasize that Roth's action was

objectively unreasonable in part because he failed to warn Klum he would use deadly force if Klum did not stop. ECF No. 32 at 12.

Defendants argue Roth did not violate Klum's constitutional right against unreasonable seizure. Defendants argue Roth's use of deadly force was justified in light of the factors set forth in *Graham v. Connor*, namely because he was fleeing arrest; he held a handgun, and he was walking toward bystanders—posing an immediate threat to them. ECF No. 25 at 14–16 (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)); ECF No. 35 at 7–8. Defendants also argue Roth was not required to provide an explicit warning to Klum before using deadly force. ECF No. 35 at 7 (citing *Loch v. City of Lichtfield*, 689 F.3d 961, 967 (8th Cir. 2012)). Upon review of the parties' arguments, the record, and the pertinent law, the Court finds there is no genuine dispute as to the material facts and Defendants are entitled to judgment that Roth did not violate Klum's Fourth Amendment right against unreasonable seizure as a matter of law.

"The Fourth Amendment protects individuals against law enforcement's use of unreasonable force during seizure." *Wealot v. Brooks*, 865 F.3d 1119, 1125 (8th Cir. 2017) (citing *Graham*, 490 U.S. at 394). Under the Fourth Amendment and the caselaw interpreting it, "apprehension by the use of deadly force is a seizure" and the force exercised in seizing a suspect must not be unreasonable. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The determination as to whether the force used during seizure is unreasonable "requires careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee*, 471 U.S. at 8–9). "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee*, 471 U.S. at 11. But "[w]here the officer has probable cause to believe that the

suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id.* at 11; *see also Liggins v. Cohen*, 971 F.3d 798, 801 (8th Cir. 2020) ("In dangerous situations where an officer has reasonable grounds to believe that there is an imminent threat of serious harm, the officer may be justified in using a firearm before a subject actually points a weapon at the officer or others." (citing *Malone v. Hinman*, 847 F.3d 949, 954–55 (8th Cir. 2017); *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001)). The Supreme Court has also indicated a reasonable exercise of deadly force may involve "some warning" "where feasible." *Tennessee*, 471 U.S. at 11–12.

This "reasonableness" inquiry is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). At the same time, the facts and circumstances assessed must be those known "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted); *accord Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995) ("[T]he reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure."); *id.* at 649 n.3 ("[O]nly facts known to the officer immediately prior to the moment of seizure were to be factored into the 'reasonableness' calculation.").

Further, even when an officer's action is based on a misperception, the action is reasonable if the misperception was objectively reasonable. *Loch*, 689 F.3d at 965 ("An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment." (citation omitted)); *accord Partlow v. Stadler*, 774 F.3d 497, 500 (8th Cir. 2014) ("It is possible the officers were mistaken in perceiving that Partlow was taking aim at them. Any such mistake, however, was objectively reasonable in light of the circumstances known to the officers." (citations omitted)). The Supreme Court has emphasized, "[t]he calculus of reasonableness must embody

allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. In deciding whether the Fourth Amendment has been violated, courts should not second-guess whether officers may have had an alternative course of action available, because "[t]he Constitution . . . requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision." *Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012) (omission in original) (quoting *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993)). The reasonableness of an officer's actions under the Fourth Amendment is "a pure question of law." *Scott*, 550 U.S. at 381 n.8.

Upon review of the undisputed facts, the Court finds Roth's use of deadly force to seize Klum was not objectively unreasonable. At the time Roth shot Klum, Roth possessed knowledge of a limited set of facts. *Cf. Schulz*, 44 F.3d at 648 ("[T]he reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure."). Roth knew Klum had been evading arrest for over ten minutes. Roth Dep. 13:15–20, ECF No. 15-2 at Pls.' App. 074; Mooty Body Camera 15:37:16–35, ECF No. 23-2 at Def. App. 4. He was aware of Mooty's report that Klum was carrying a gun and reasonably perceived that Klum was carrying a gun when he encountered Klum. Roth Dep. 13:15–20, ECF No. 15-2 at Pls.' App. 074; ECF No. 30-2 ¶ 23 (stating Mooty reported over the radio that Klum had a gun to his head); Roth Body Camera 15:39:35–45, ECF No. 23-2 at Def. App. 3 (containing Roth's statement he was heading to the "gun call"); id. at 13:47:38–51 (telling Klum to "drop the gun"). ECF No. 30-2 ¶ 23 (stating Mooty reported over the radio that Klum had a gun to his head). He knew Klum had ignored several commands to put down the gun he carried. ECF No. 30-2 ¶¶ 32, 41; Roth Body Camera 15:47:30–47, 15:49:01–06, ECF No. 23-2 at Def. App. 3; ECF No. 15-1 ¶ 32; ECF No. 23-1 ¶ 32.

Roth knew rubber bullets had been fired on Klum. *See* Roth Body Camera 15:48:55–49:09. Roth saw that despite these commands and the firing of less-lethal rounds, Klum continued to walk toward a residence toward which several bystanders had fled on foot less than 30 seconds before Roth fired. ECF No. 30-2 ¶ 41; Synced Video 1:30–2:05, ECF No. 15-2 at Pls.' App. 049 (depicting bystanders fleeing south on Iowa Street at the time the first less-lethal round is fired and then gathering at a residence on the eastern side of the street); Roth Body Camera 15:48:52–49:02 (depicting Roth looking South on Iowa Street from its intersection with 9th Street); *accord* ECF No. 15-1 ¶ 20; ECF No. 23-1 ¶ 20. There is not a genuine dispute as to any of these facts.

The parties dispute whether an objectively reasonable officer would have viewed Klum as an immediate threat to the bystanders at the time Roth fired. *See* ECF No. 18 at 21–24; ECF No. 25 at 14–15. The Court finds, as a matter of law, an objectively reasonable officer in Roth's position would view Klum as posing an immediate threat to the bystanders at the time Klum was shot. *Cf. Scott*, 550 U.S. at 381 n.8. Klum evaded arrest for twelve minutes, possessing what Roth and officers on the scene reasonably perceived to be a deadly weapon. A suspect fleeing arrest while carrying a firearm is reasonably viewed as posing an immediate threat to nearby officers and bystanders because it "would take only an instant" for the suspect to point and shoot. *Liggins*, 971 F.3d at 800. Although Klum held the gun to his head, the inference that this indicated mental distress or illness did not reduce the immediacy or severity of the threat posed. *See* Roth Dep. 16:8–10, ECF No. 15-2 at Pls.' App. 074 (containing Roth's statement he saw Klum "holding the gun to his head"); *Kong ex rel. Kong v. City of Burnsville*, 960 F.3d 985, 991 (8th Cir. 2020) ("[M]ental illness or intoxication does not reduce the immediate and significant threat a suspect poses." (citations omitted)). Further, the absence of evidence establishing Klum pointed his gun toward a bystander does not necessitate a conclusion that he posed no threat to them. *see Liggins*, 971 F.3d at 801 ("In dangerous situations where an officer has reasonable grounds to believe that

there is an imminent threat of serious harm, the officer may be justified in using a firearm before a subject actually points a weapon at the officer or others." (citation omitted)).

Plaintiffs suggest Klum could not reasonably be viewed as an immediate or imminent threat at the time he was shot because he was not physically close enough to the nearest bystanders to pose a threat. ECF No. 18 at 24–25. It is undisputed that the two bystanders closest to Klum were 148 feet and 179 feet away from him. ECF No. 30-2 ¶¶ 56–57. It is also undisputed that a handgun is a lethal threat to a person within 300 feet. *Id.* ¶ 58. Because Roth knew Klum had evaded arrest for over ten minutes, had disobeyed officers' commands to drop his weapon, and was not subdued by less lethal rounds only fifteen seconds before Roth fired the lethal shot, *see also* ECF No. 15-1 ¶ 69; ECF No. 23-1 ¶ 69; Roth Body Camera 15:49:01–06, ECF No. 23-2 at Def. App. 3, an officer in Roth's position would reasonably view Klum as an immediate—if not imminent—threat to bystanders who were close enough to be shot and killed in "only an instant," *Liggins*, 971, F.3d at 800; *see also Loch*, 689 F.3d at 966–67 (describing events occurring over the course of "just fifteen to twenty seconds" as "the type of 'tense, uncertain, and rapidly evolving' situation requiring 'split-second judgments' that we are hesitant to second-guess with the benefit of hindsight" (quoting *Graham*, 490 U.S. at 396–97)); Roth Body Camera 15:49:01–06, ECF No. 23-2 at Def. App. 3 (showing the screams of bystanders could be heard from Roth's position fifteen seconds before and immediately after he shot Klum).

This assessment of the threat Klum posed is based on "actual information" about Klum's behavior and the proximity of bystanders, at the time Roth fired the lethal rounds, not "after-the-fact speculation" of a "hypothetical harm." *Cf. Z.J. ex rel. Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672, 682–83 (8th Cir. 2018) (finding assessment of the threats allegedly justifying a SWAT team member's decision to throw a "flash-bang grenade" into a house could not rely on the assumption that people in the house might pose a threat when the suspect was

already in custody and they neither knew who was in the house nor possessed any indication that people in the residence would pose a threat); *Graham*, 490 U.S. at 397 (assessing facts from objective standpoint at the time of event, not 20/20 hindsight). Further, the reasonable exercise of deadly force in these circumstances did not require expressly warning Klum that such force would be used. Officers, including Roth, had commanded Klum to drop his weapon and stop while the officers' own firearms were drawn. *See e.g.*, Roth Body Camera 15:47:30–47, 15:49:01–06, ECF No. 23-2 at Def. App. 3. This conduct was sufficient to put Klum "on notice that his 'escalation of the situation would result in the use of [an officer's] firearm.'" *Loch*, 689 F.3d at 967 (quoting *Estate of Morgan*, 686 F.3d at 498). For these reasons, because Klum had resisted arrest for over ten minutes and because a reasonable officer in Roth's position would have viewed Klum as posing an immediate deadly threat to bystanders, the Court concludes Roth's use of deadly force to seize Klum did not violate Klum's right against unreasonable seizure under the Fourth Amendment. *Cf. Liggins*, 971 F.3d at 801–02 (finding deadly force was not unreasonable when used to seize a suspect fleeing arrest with a gun in hand and running in the general direction of the firing officer). On these grounds Roth is entitled to qualified immunity. *Brown*, 574 F.3d at 496.

    b.  Prong 2: Whether the law was "clearly established"

   As a second independent justification for Roth's qualified immunity, the Court also finds Plaintiffs have not carried their burden of producing cases showing it was clearly established that Roth's use of deadly force, in the circumstances at issue, violated Klum's right against unreasonable seizure. *Id.* at 496; *see also Hanson as Tr. for Layton v. Best*, 915 F.3d 543, 548 (8th Cir. 2019) (stating the plaintiff has the burden of demonstrating his right was "clearly established" by identifying controlling authority from the Supreme Court or Eighth Circuit that puts the issue beyond debate).

   The primary case on which Plaintiffs appear to rely is *Partridge v. City of Benton*. ECF

No. 18 at 18 (citing 929 F.3d 562 (8th Cir. 2019)) (describing *Partridge* as "right on point"); ECF No. 32 at 12–13 (same). In *Partridge*, the Eighth Circuit addressed an appeal of a motion on the pleadings in which the allegations stated an officer had been called to respond to a minor who was armed, suicidal, and under the influence of cough syrup and possibly marijuana. 929 F.3d at 564–65. The officer found the minor in an isolated area and told him to drop his gun. *Id.* at 565. Taking the allegations in the complaint as true and drawing all inferences in the plaintiff's favor, the Eighth Circuit read the facts to indicate the minor was shot while moving the gun in compliance with the officer's orders, never pointing the gun at the officer while doing so. *Id.* The Eighth Circuit held no reasonable officer would have viewed the minor as posing an immediate threat at that time and concluded the use of deadly force was unreasonable. *Id.*

The facts of *Partridge*, however, are materially different from those in this case. Klum, unlike the minor in *Partridge*, was a 37-year-old adult and a suspect fleeing arrest. ECF No. 3 ¶ 12; ECF No. 30-2 ¶¶ 59–60. Further, Klum was not in an isolated area; he was in a residential area near bystanders and advancing toward them. Synced Video 1:30–2:05, ECF No. 15-2 at Pls.' App. 049. Due to these differences, more factors support the reasonableness of using deadly force against Klum than against the minor in *Partridge*. *See Graham*, 490 U.S. at 396 (indicating reasonableness depends in part on whether the suspect poses an immediate threat to the officer or others and whether he is "attempting to evade arrest by flight"). Accordingly, the Eighth Circuit's conclusion in *Partridge* that the officer used unreasonably excessive force did not clearly establish that the same would be true in the circumstances of Klum's death. *See Kisela*, 584 U.S. at 104 (explaining the law is not clearly established if described at a "high level of generality" and further emphasizing "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts").

*Kong*, a case cited by Defendants, further supports the conclusion that Klum's purported right against deadly force within the circumstances at issue was not clearly established. *See* ECF No. 25 at 22 (citing *Kong*, 960 F.3d 985). In *Kong*, an individual, Map Kong, initially sat in his car waving a knife, ignoring officers' commands to drop his weapon and submit to arrest. 960 F.3d at 989–90. After the officers used a non-lethal means in an attempt to subdue him, a taser, Kong fell out his vehicle and ran with knife in hand through a parking lot in which bystanders sat in their vehicles. *Id.* at 990. Officers then fired lethal rounds, killing Kong. *Id.* The Eighth Circuit held that Kong did not possess a clearly established right under the Fourth Amendment against this seizure by deadly force. *Id.* at 991–92. This holding supports the conclusion that Klum also lacked a clearly established right against such seizure because Kong, carrying a knife rather than a gun, posed a risk to the bystanders in vehicles that was less immediate than the risk posed by Klum to two bystanders not protected by similar cover. *See id.* at 991–93.

For these reasons, Klum did not possess a clearly established right against seizure by deadly force. *Cf. Brown*, 574 F.3d at 496. The Court thus concludes both prongs of the qualified immunity analysis independently establish Roth's entitlement to qualified immunity. *Id.*

### 2. Davenport's liability under the Fourth Amendment

Plaintiffs argue the City of Davenport is directly liable for Roth's alleged constitutional violations under a theory of *Monell* liability because the City of Davenport "mis-trained" Roth. ECF No. 18 at 32; *accord* ECF No. 32 at 16–18 (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978)); *see also* Am. Pet. ¶ 88, ECF No. 1-1 at 257 (asserting the City of Davenport caused Klum's death by "failing to adequately train and supervise Defendant Roth"). Defendants argue the City of Davenport is not directly liable under *Monell* because Roth did not violate Klum's constitutional rights. ECF No. 25 at 26. Defendants further argue Plaintiffs have presented no evidence of a policy or custom of using unconstitutional deadly force or of

a failure to train exhibiting deliberate indifference to violations of federal constitutional rights. *Id.* at 27–30; ECF No. 35 at 11–12.

"[I]n order for [*Monell*] liability to attach, individual liability first must be found on an underlying substantive claim." *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) (internal quotation marks and citations omitted); *accord Webb v. City of Waterloo*, No. 17-CV-CJW-MAR, 2019 WL 6736219, at *20 (N.D. Iowa Dec. 11, 2019) ("A municipality cannot be held liable under *Monell* unless plaintiff suffered a constitutional injury at the hands of the municipality's officer." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). As discussed above, the Court has concluded Roth did not violate Klum's constitutional right against unreasonable seizure. *See supra* Section IV.A.1.a. For this reason, the City of Davenport cannot be held liable under *Monell. Cf. Johnson*, 926 F.3d at 506.

Further, Plaintiffs have failed to raise evidence showing at least a genuine issue of fact as to whether the City of Davenport has a policy or custom employing unconstitutional practices or whether the City of Davenport has failed to train officers in a manner showing deliberate indifference to violations of federal constitutional rights. A municipality may be directly liable for a constitutional injury when the injury "occurs during the execution of a government's policy or custom" and the plaintiff establishes "a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." *Williams v. City of Burlington*, 516 F. Supp. 3d 851, 871 (S.D. Iowa 2021) (first quoting *Monell*, 436 U.S. at 694; then quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). A failure to train may also create direct liability for a constitutional deprivation if the decision to not train shows deliberate indifference to a "pattern of similar constitutional violations by untrained employees." *Folkerts v. City of Waverly*, 707 F.3d 975, 982 (8th Cir. 2013) (citation omitted). Here, Plaintiffs fail to raise evidence showing at least a genuine issue as to any of these prerequisites for direct liability.

Plaintiffs emphasize they do not assert a failure to train theory. ECF No. 32 at 17. Rather they seek to show the City of Davenport had a "policy" of training officers in an unconstitutional "shoot first" strategy for managing armed suspects. *Id.* at 17–18; *accord* ECF No. 18 at 26–32. They further argue Roth violated Klum's constitutional right against unreasonable seizure "because Roth applied this unlawful training." ECF No. 32 at 18. But the evidence cited by Plaintiffs would support, at most, the finding that the City of Davenport had a policy of teaching officers principles about their reaction times relative to the amount of time a suspect may take to point and shoot his weapon. *See* Hanssen Dep. 56:10–60:20, ECF No. 15-2 at Pls.' App. 058–59; Defs.' Resp. Pls.' Requests for Admissions Nos. 1, 2, Pls.' App. Supp. Mot. Summ. J., ECF No. 15-2 at Pls.' App. 085 (admitting Roth accurately describes his training when stating it informed him "[e]ven if you have your weapon out and aimed at [an armed suspect], your reaction time is never going to be as fast as their reaction"). This evidence does not indicate it was the City of Davenport's policy to exercise lethal force to seize armed suspects in situations similar to those in which Roth shot Klum. *See* Hanssen Dep. 56:23–57:22, 60:14–20, ECF No. 15-2 at Pls.' App. 058–59 (stating the fact a person is holding a gun, viewed in light of the training, is not "alone in and of itself" justification for use of deadly force).

Accordingly, Plaintiffs have failed to raise a genuine issue as to whether there was a policy of the City of Davenport that directly caused the use of lethal force that Plaintiffs believe to be a constitutional violation. *Cf. Williams*, 516 F. Supp. 3d at 871. Defendants are entitled to judgment as a matter of law on Plaintiffs' *Monell* claim on this further basis as well.

## B.   Plaintiffs' Claims Under Iowa Law

In Plaintiffs' amended petition, they assert Defendants violated article I, section 8 of the Iowa Constitution for the same reasons that Defendants purportedly violated the Fourth Amendment. Am. Pet. ¶¶ 85–92, ECF No. 1-1 at 256–57. Plaintiffs also assert negligence claims

against Roth and the City of Davenport under Iowa common law. *Id.* ¶¶ 93–107, ECF No. 1-1 at 258–60. They allege Roth violated a duty to exercise reasonable care by using unwarranted deadly force against Klum. *Id.* ¶¶ 99–100, ECF No. 1-1 at 258–59. They also allege the City of Davenport violated a duty to exercise reasonable care by not having reasonable policies on the use of deadly force and by failing to properly train, equip and supervise Roth regarding the use of deadly force. *Id.* ¶¶ 101–03, ECF No. 1-1 at 259. Further, Albright asserts a claim for loss of consortium due to Klum's death. *Id.* ¶¶ 108–114, ECF No. 1-1 at 260–61. Last, in their resistance to Defendants' motion for summary judgment, Plaintiffs—for the first time—argue certain allegations asserted in the background facts of the amended petition as well as Counts I and II also plead claims for "assault, battery and for violation of express statutes on use of deadly force, [Iowa Code §§] 804.8 and 704." ECF No. 32 at 19–20 (citing Am Pet. ¶¶ 2, 21–23, 35, 60, 62, 68, 70, 74, 76, 86, 98, 105, ECF No. 1-1 at 238, 242, 246, 253, 254–56, 258–59).

Plaintiffs move for summary judgment holding Defendants liable for Plaintiffs' negligence claims. *See* ECF No. 15 at 1. Defendants move for summary judgment on all of Plaintiffs' state law claims. *See* ECF No. 22; *see also* ECF No. 35 at 12–13 (arguing Plaintiffs have not pled claims for assault, battery, or violation of Iowa Code §§ 704 and 804.8). For the reasons set forth below, Defendants' motion is granted as to Plaintiffs' claims under state law. As an initial matter, the Court explains its decision to exercise supplemental jurisdiction over these claims despite granting Defendants' summary judgment of Plaintiffs' claims under federal law. Next the Court addresses the disputes as to Plaintiffs' claims asserted directly under the Iowa Constitution. Then the Court addresses Plaintiffs' argument that they have pled claims for assault and battery. Last the Court addresses Plaintiffs' claims for negligence and loss of consortium.

### 1.    Supplemental jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 377 (1994). The Court has found Defendants are entitled to summary judgment on each of Plaintiffs' federal law claims—the only claims over which the Court has original jurisdiction. *See supra* Section IV.A; 28 U.S.C. § 1331. Accordingly, the Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims. *See Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018) ("A district court [that] has dismissed all claims over which it has original jurisdiction may decline to exercise supplemental jurisdiction." (alteration in original) (internal quotation marks omitted) (quoting 28 U.S.C. § 1367(c)(3))). In determining how to exercise its discretion, the Court considers "the stage at which the federal claims were disposed of, 'the difficulty of the state claim, the amount of judicial time and energy already invested in it, the amount of additional time and energy necessary for its resolution, and the availability of a state forum.'" *Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) (quoting *Koke v. Stifel, Nicolaus & Co., Inc.*, 620 F.2d 1340, 1346 (8th Cir. 1980)). Plaintiffs' federal law claims were not dismissed until the summary judgment stage; the Court and parties have already invested significant time and energy into the case, and the amount of additional time and energy necessary for the resolution of the remaining matters is relatively minimal. The Court thus finds it appropriate to exercise supplemental jurisdiction over the remaining state law claims. *Cf. id.*

### 2.  Plaintiffs' claims under the Iowa Constitution

Plaintiffs' amended petition asserts in Count I that Roth's alleged use of excessive deadly force violated article I, section 8 of the Iowa Constitution. Am. Pet. ¶¶ 85–92, ECF No. 1-1 at 256–57. Plaintiffs now concede "that private rights of action directly under the Iowa Constitution are not allowed." ECF No. 32 at 19. Consistent with this concession, Defendants argue Plaintiffs' claims in Count I asserting violation of the Iowa Constitution must be dismissed because they are no longer cognizable actions under Iowa law. ECF No. 25 at 32–33.

Indeed, in *Burnett v. Smith*, the Iowa Supreme Court held there is no "standalone cause of

action for money damages under the Iowa Constitution unless authorized by common law, an Iowa statute, or the express terms of a provision of the Iowa Constitution." 990 N.W.2d 289, 307 (Iowa 2023). Article I, section 8 of the Iowa Constitution lacks an express cause of action. *See* Iowa Const. art. I, § 8; *White v. Harkrider*, 990 N.W.2d 647, 652 (Iowa 2023) (affirming dismissal of the plaintiff's constitutional tort claim under article I, section 8 of the Iowa Constitution); *Wagner v. State*, No. 22-1625, 2024 WL 1295494, at *2–3 (Iowa Ct. App. Mar. 27, 2024) (concluding constitutional tort claims, including those asserting violation of article I, section 8 of the Iowa Constitution, "are no longer recognized as a cause of action" (citing *Burnett*, 990 N.W.2d at 307)). For this reason, Defendants are entitled to summary judgment dismissing Plaintiffs' claims seeking relief for violation of article I, section 8 of the Iowa Constitution.[3]

### 3.    Plaintiffs' claims for assault and battery

Plaintiffs argue certain allegations asserted across the background facts of the amended petition and in Counts I and II state claims for "assault, battery and for violation of express statutes on use of deadly force, [Iowa Code §§] 804.8 and 704." ECF No. 32 at 19–20 (citing Am. Pet. ¶¶ 2, 21–23, 35, 60, 62, 68, 70, 74, 76, 86, 98, 105, ECF No. 1-1 at 238, 242, 246, 253, 254–56,

---

[3] Plaintiffs attempt to partially reframe their reliance on the Iowa Constitution by arguing that, under *Burnett*, common law claims recognized at the time of the adoption of the Iowa Constitution—such as assault and battery—are "protected by the Iowa Constitution." ECF No. 32 at 24; *see also id.* at 19–24. By this Plaintiffs seem to mean that such claims are insulated from defenses asserting immunity from suit under Iowa statutes. *See id.* at 24–26; *id.* at 26 ("As the Iowa Supreme Court held in *White v. Harkrider*, constitutional claims that survive *Burnett* are subject to the common law defense of justification, not qualified immunity. The Iowa founders would have been puzzled by the notion of qualified immunity which was first applied in the 1960s." (citations omitted)). Plaintiffs' position, however, is not persuasive because the case on which they rely, *White v. Harkrider*, does not support that position. *See White*, 990 N.W.2d at 652, 656–57 (nowhere addressing immunity and instead finding that the plaintiff's constitutional tort claims cannot proceed, that the common law assault claim was adequately alleged for purposes of the motion to dismiss, and that the defendant's affirmative defense of justification was inapposite to the issue of the sufficiency of the plaintiff's pleading). Furthermore, as set forth below, Plaintiffs belatedly raised claims for assault and battery will not be recognized at this late stage.

258–59). Defendants reply that Plaintiffs' allegations do not appropriately plead claims for assault, battery, or violations of Iowa Code §§ 704 and 804.8. ECF No. 35 at 12–13. The Court concurs with Defendants' position. Iowa Code §§ 704 and 804.8 do not themselves support an independent claim, and at this late stage in the litigation, the Court declines to recognize Plaintiffs' disparate allegations as adequately pleading common law claims for assault and battery.

As an initial matter, the Court does not recognize Plaintiffs' contentions under Iowa Code §§ 704 and 804.8. "A private statutory cause of action exists only when the statute, explicitly or implicitly, provides such a cause of action." *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 254 (Iowa 2012) (internal quotation marks and citations omitted). Iowa Code §§ 704 and 804.8 do not provide private causes of action separate and apart from those provided by the common law. *See* Iowa Code §§ 704.1–704.13 (defining "reasonable force" and "deadly force" and stating justifications for the use of such force); *see also Blacketer v. Iowa Div. of Narcotics Enf't*, No. 07-0561, 2007 WL 4191979, at *3 (Iowa Ct. App. Nov. 29, 2007) ("Section 804.8 does not state a cause of action but rather is a defense to what would otherwise be an assault or battery."). For this reason, insofar as Plaintiffs sought to assert claims independently and directly under Iowa Code §§ 704 and 804.8, the Court does not recognize such claims.

As to Plaintiffs' contention that the amended petition contains common law assault and battery claims, the Court declines to recognize these claims. Under the law of the Eighth Circuit, trial courts properly refuse to consider claims newly identified after the close of discovery and on the eve of summary judgment. *See Wendt v. Iowa*, 971 F.3d 816, 820–21 (8th Cir. 2020). This rule derives from the requirement under Federal Rule of Civil Procedure 8, that pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins.*, 897 F.3d 987, 992–93 (8th Cir. 2018) (omission in

original) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).[4] Although the pleading requirements under

the Federal Rules of Civil Procedure, are "relatively permissive," they "do not entitle parties to

manufacture claims, which were not pled, late into the litigation for the purposes of avoiding

summary judgment." *Wendt*, 971 F.3d at 821 (quoting *Singleton v. Ark. Hous. Auth. Prop. & Cas.

Self-Insured Fund*, 934 F.3d 830, 837 (8th Cir. 2019)). In *Wendt*, this led the Eighth Circuit to find

the district court properly declined to consider a claim that a search warrant was overbroad, noting

that the argument about overbreadth was first raised after the close of discovery. *Id.* Further,

although the plaintiffs argued their complaint contained allegations about overbreadth as part of

their claim for lack of probable cause, the court emphasized that the Supreme Court's qualified

immunity analysis distinguishes facts establishing an overbroad warrant and facts in an affidavit

establishing actual probable cause. *See id.*

Similar to the overbreadth claim in *Wendt*, this Court views Plaintiffs' newly articulated

claims for assault and battery as improperly "manufacture[d] claims" barred by the notice

requirement of the federal pleading rules. *Singleton*, 934 F.3d at 837. Plaintiffs' amended petition

expressly identifies four sources of law under which their claims are asserted—the Fourth

Amendment of the United States Constitution, article I, section 8 of the Iowa Constitution,

negligence under the Iowa common law, and loss of consortium under the Iowa common law. Am.

Pet. ¶¶ 85–114, ECF No. 1-1 at 256–61. The amended petition nowhere references common law

---

[4] The parties cite to pleading standards under Iowa law, but federal courts apply federal pleading standards even when adjudicating state law claims. *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013) ("We apply federal pleading standards—Rules 8 and 12(b)(6)— to the state substantive law to determine if a complaint makes out a claim under state law." (citations omitted)); *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938–39 (8th Cir. 2012) ("By including federal claims in [the] state-court complaint, [the plaintiff] subjected [themselves] to the possibility that the defendant would remove the case to federal court, where [the] complaint would be governed by the current federal pleading standard." (internal quotation marks and citations omitted)).

claims for assault or battery. *See generally id.* Plaintiffs suggest the existence of such claims for the first time in their resistance to Defendants' motion for summary judgment. ECF No. 32 at 19–23. Plaintiffs argue assault and battery are similar to excessive force claims, but the elements of assault and battery are distinct from constitutional tort claims asserting excessive force. *Compare* Restatement (Second) of Torts §§ 13–18 (1965), and *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 388–89 (Iowa 2000) (citing Restatement (Second) of Torts §§ 13, 18 (1965)), *with Scott*, 550 U.S. at 381 n.8, *Graham*, 490 U.S. at 396, and *Wilson v. Lamp*, 995 F.3d 628, 635 (8th Cir. 2021) (noting the "Iowa Supreme Court's standard for excessive force does not materially differ from the federal standard"). Moreover, the alleged facts that Plaintiffs now identify as supportive of purported claims of assault and battery are pulled from the background allegations and from counts expressly associated with the constitutional tort and negligence claims. ECF No. 32 at 19–20 (citing Am Pet. ¶¶ 2, 21–23, 35, 60, 62, 68, 70, 74, 76, 86, 98, 105, ECF No. 1-1 at 238, 242, 246, 253, 254–56, 258–59). Such pleadings did not provide sufficient notice of an intention to assert claims of assault and battery. *Cf. WireCo WorldGroup*, 897 F.3d at 992–93. Further, discovery closed on February 1, 2024, and trial is set for September 2024. Scheduling Order, ECF No. 8. Permitting Plaintiffs to now assert these insufficiently pleaded claims at this late stage in the litigation would be inconsistent with the Eighth Circuit's interpretation of the Federal Rules of Civil Procedure. *Cf. Wendt*, 971 F.3d at 821.

For the foregoing reasons, Plaintiffs' newly raised claims for assault, battery, and violation of Iowa Code §§ 704 and 804.8 are not recognized.[5]

---

[5] Even were the Court to recognize the claims for assault and battery, Defendants would be entitled to summary judgment on those claims. The Court's conclusion that Roth's use of deadly force was objectively reasonable under the Fourth Amendment would require that the Court grant summary judgment on state law assault and battery claims arising from the same conduct. *Dunn v. Doe 1–22*, 670 F. Supp. 3d 735, 843 (S.D. Iowa 2023) (citing *Dooley v. Tharp*, 856 F.3d 1177, 1184 (8th Cir. 2017)).

#### 4.    Plaintiffs' claims for negligence and loss of consortium

Defendants argue they are entitled to summary judgment on Plaintiffs' negligence claims and Albright's loss of consortium claim. ECF No. 25 at 37–41. As to Plaintiffs' claim asserting Roth was negligent in his use of excessive force, *see* Am. Pet. ¶¶ 99, 105, ECF No. 1-1 at 258–59, Defendants argue Roth's use of force was not negligent for the same reason it did not violate the Fourth Amendment—his use of force was objectively reasonable. ECF No. 25 at 37–38. Defendants also argue Iowa's statutes providing qualified immunity to officers and employees of municipalities, and emergency response immunity further bolster the conclusion that Roth is not liable for negligence. ECF No. 25 at 38–39. As to the City of Davenport's liability, Defendants argue it is neither vicariously liable for Roth's actions nor liable for negligently supervising Roth because he did not commit an underlying tortious act. *Id.* at 39–40. Last, Defendants argue Albright's loss of consortium claim cannot lie because Defendants are not otherwise liable for Plaintiffs' injuries. *Id.* at 41. Plaintiffs' only response to these arguments is that Defendants waived "[a]ny claim to statutory immunity" by purchasing insurance coverage for the claims made in this case. ECF No. 32 at 26.

The Court first addresses Roth's liability for negligence and his entitlement to qualified immunity under Iowa law. The Court then addresses the City of Davenport's liability for Roth's alleged negligence. The Court does not reach Defendants' discussion of emergency response immunity. Last the Court addresses Albright's loss of consortium claim.

#### a.    Roth's liability for negligence and statutory qualified immunity

The Court finds Roth is entitled to summary judgment dismissing Plaintiffs' negligence claim against him because the conclusion that his use of force was objectively reasonable under the Fourth Amendment requires the further conclusion that his use of force was not negligent under Iowa law. *See Church v. Anderson*, 249 F. Supp. 3d 963, 979 (N.D. Iowa 2017). Iowa statue

authorizes officers to use reasonable force "necessary to effect the arrest or defend any person from bodily harm while making the arrest." Iowa Code § 804.8. This authorization has been interpreted as applying a standard that is "essentially the same as the federal Fourth Amendment objective reasonableness standard of *Graham v. Connor.*" *Lawyer v. City of Council Bluffs*, 240 F. Supp. 2d 941, 954–55 (S.D. Iowa 2002) (citing *Chelf v. Civil Serv. Comm'n of City of Davenport*, 515 N.W.2d 353, 355–56 (Iowa Ct. App. 1994)). Accordingly, where an officer's use of force to effect arrest is found objectively reasonable under the Fourth Amendment, this is sufficient to direct the further conclusion that the officer's use of force was not negligent under Iowa law. *Dooley v. Tharp*, 856 F.3d 1177, 1184 (8th Cir. 2017); *accord Church*, 249 F. Supp. 3d at 979; *Lawyer*, 240 F. Supp. 2d at 954–55; *Christiansen v. Eral*, No. 22-1971, 2024 WL 108848, at *5 (Iowa Ct. App. Jan. 10, 2024) (finding the conclusion that officer action was an objectively reasonable seizure under the Fourth Amendment implies the officer's actions "cannot be negligent because they were authorized under law"); *see also Burnett*, 990 N.W.2d at 299 ("The common law tradition permitted common law claims against local law enforcement officials for tortious actions taken in excess of their authority."). On these grounds, the Court finds Roth's use of force was not negligent because it was objectively reasonable under the Fourth Amendment. *Cf. Dooley*, 856 F.3d at 1184; *Christiansen*, 2024 WL 108848, at *5.

The Court finds this conclusion concerning Roth's liability is bolstered by the qualified immunity to which Roth is entitled under Iowa statute. Iowa Code § 670.2 states, "Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." *See also* Iowa Code § 670.1(2) (defining "[m]unicipality" to include cities). Iowa Code section 670.4A, however, exempts from monetary damages liability all employees and officers who are subject to a claim if:

> The right, privilege, or immunity secured by law [and on which the claim is based] was not clearly established at the time of the alleged deprivation, or at the time of the alleged deprivation the state of the law was not sufficiently clear that every reasonable employee would have understood that the conduct alleged constituted a violation of law.

Iowa Code § 670.4A(1)(a). This statute adopts "a state law version of qualified immunity that tracks the qualified immunity doctrine as it exists under federal law." *Stark v. Hamelton*, No. 3:18-cv-00069-RGE-SHL, 2021 WL 4056716, at *4 (S.D. Iowa Sept. 2, 2021) (citation omitted). Pursuant to this statute, the authorities cited above concerning Klum's qualified immunity under *Graham v. Connor* and its progeny show, at least, that it was not clearly established that Roth's use of force was negligent at the time Klum was killed. *Cf. id.*; *Christiansen*, 2024 WL 108848, at *5; *see supra* Section IV.A.1.a. Further, this immunity is not waived by the City of Davenport's insurance policy. Iowa Code § 670.7(2) states, "The procurement of [] insurance constitutes a waiver of the defense of governmental immunity as to those exceptions listed in section 670.4 to the extent stated in the policy." But Roth's qualified immunity arises under § 670.4A. The Court does not reach the parties' dispute as to Defendants' emergency response immunity under § 640.4(k).

b.      The City of Davenport's liability for negligence

Defendants argue the City of Davenport is neither vicariously liable for Roth's negligence nor liable for negligently hiring, supervising, or retaining Roth because Roth's use of force was not negligent. ECF No. 25 at 39–41. The Court finds Defendants' position persuasive. "[A]n adjudication that the agent was not negligent will preclude the principal's vicarious liability." *Hook v. Trevino*, 839 N.W.2d 434, 441 (Iowa 2013). Similarly, to recover on a theory of negligent hiring, supervision, or retention, "an injured party must show the employee's underlying tort or wrongful act caused a compensable injury, in addition to proving the negligent hiring, supervision, or retention by the employer was a cause of those injuries." *Struck v. Mercy Health Srvs.-Iowa*

*Corp.*, 973 N.W.2d 533, 544 (Iowa 2022) (internal quotation marks and citation omitted); *accord Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999)("[A]n employer cannot be held liable for negligent supervision or training where the conduct that proper supervision and training would have avoided is not actionable against the employee."). Accordingly, Plaintiffs' negligence claims against the City of Davenport fail on either a vicarious liability theory or a negligent, hiring, supervision, or retention theory because the Court has concluded Roth was not negligent. *Cf. Hook*, 839 N.W. at 441; *Struck*, 973 N.W.2d at 544.

c.    Defendants' liability for loss of consortium

Because Plaintiffs' have not established either Roth or the City of Davenport are liable for Klum's alleged injuries, Albright's loss of consortium claim cannot lie. *See Kelly v. Ethicon, Inc.*, 511 F. Supp. 3d 939, 956 (N.D. Iowa 2021) (noting loss of consortium cannot lie when the defendant is not liable for the plaintiff's injuries on the underlying claims). On these grounds, Defendants are entitled to summary judgment as to Albright's loss of consortium claim as well.

## V.    CONCLUSION

As set forth above, the Court finds there is no genuine issue of material fact as to Plaintiffs' excessive force claim under the Fourth Amendment, and the Court finds Defendants are entitled to summary judgment that Roth's use of force was objectively reasonable and to Roth's qualified immunity. The Court also concludes Defendants are entitled to summary judgment on Plaintiffs' *Monell* claim against the City of Davenport. Further, the Court does not recognize Plaintiffs' attempt to belatedly raise new claims for assault and battery. As to Plaintiffs' negligence claims, the Court finds Defendants are entitled to summary judgment because the conclusion that Roth used objectively reasonable force under the Fourth Amendment directs the further conclusion that he was not negligent under Iowa law. Last, because Defendants are entitled to judgment that they are not liable for Plaintiffs' Fourth Amendment and negligence claims, the Court further concludes

Defendants are not liable for Albright's loss of consortium claim.

**IT IS ORDERED** that Defendants City of Davenport and Mason Roth's Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs Nicole Klum and Wanda Albright's Motion for Partial Summary Judgment, ECF No. 15, is **DENIED**.

Each party is responsible for its own costs.

The Clerk of Court is ordered to enter judgment in favor of Defendants City of Davenport and Mason Roth and against Plaintiffs Nicole Klum and Wanda Albright.

**IT IS SO ORDERED.**

Dated this 30th day of May, 2024.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE